IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>and<br><br>JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARK and LATESHA THOMAS,<br><br>Plaintiffs-Interveners,<br><br>vs.<br><br>CRST VAN EXPEDITED, INC.,<br><br>Defendant. | No. 07-CV-95-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is the "Motion Under Rule 16(f) for an Order to Show Cause Concerning the EEOC's Identification of Class Members" ("Motion") (docket no. 56). The court held a hearing ("Hearing") on the Motion on November 12, 2008. Attorneys Jean Kamp and Brian Tyndall represented Plaintiff Equal Employment Opportunity Commission ("the EEOC"). Attorneys Kevin Visser, Thomas Wolle, John Mathias and Robert Markowski represented Defendant CRST Van Expedited, Inc. ("CRST").[1] The Motion is fully submitted and ready for decision.

---

[1] Plaintiffs-Interveners Janet Boot, Barbara Grant, Cindy Moffett, Remcey Jeunenne Peeples, Monika Stark and Latesha Thomas appeared at the Hearing through Attorneys
(continued…)

## II. PROCEDURAL BACKGROUND

On November 16, 2007, the EEOC filed the First Amended Complaint (docket no. 8) against CRST. Pursuant to 42 U.S.C. § 2000e-5(f)(1), the EEOC brings suit in its own name "to correct [CRST's] unlawful employment practices on the basis of sex, and to provide appropriate relief to [Ms. Monika Stark] and a class of similarly situated female employees of [CRST] who were adversely affected by such practices." First Amended Complaint at 1; *see Gen. Tele. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 324 (1980) (stating that § 2000e-5(f)(1) grants the EEOC "authority to bring suit in its own name for the purpose . . . of securing relief for a group of aggrieved individuals"). The EEOC alleges CRST engaged in a pattern or practice of sex discrimination against its female truck drivers, in violation of 42 U.S.C. §§ 2000e-2 and 2000e-3. Specifically, the EEOC alleges:

> 7. Since at least July 2005, CRST engaged in unlawful employment practices . . . . [T]wo of its lead drivers subjected [Ms. Stark] to sexual harassment . . . (including . . . unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments), which further created a sexually hostile and offensive work environment. . . .
>
> 8. Other similarly situated female employees of CRST were also subjected to [similar] sexual harassment and a sexually hostile and offensive work environment while working for CRST, from their lead drivers or team drivers . . . .
>
> 9. The effect of [such] practices . . . has been to deprive [Ms. Stark] and class of similarly situated female employees of equal employment opportunities, and to otherwise adversely affect their status as employees, because of sex.

---

[1](…continued)
Jeffrey Tronvold and Matthew Reilly but do not take a position on the Motion.

First Amended Complaint at 2-3. The EEOC alleges CRST refused to take prompt and appropriate action to prevent, correct and protect its female truck drivers from the harassment and the hostile environment. The EEOC seeks compensatory damages, punitive damages and injunctive relief on behalf of Ms. Stark and the other similarly situated women.

On May 1, 2008, CRST filed an Amended Answer (docket no. 36). CRST denies the substance of the First Amended Complaint.

On February 8, 2008, the court entered a Scheduling Order and Discovery Plan ("Scheduling Order") (docket no. 21), pursuant to Federal Rules of Civil Procedure 16(b) and 26(f) and Local Rule 16. The parties had proposed various deadlines to the court, and the court accepted them. The court set the following deadlines: initial disclosures—February 27, 2008; motions to add parties— May 1, 2008; motions to amend pleadings—May 1, 2008; expert witnesses—August 7, 2008 (Plaintiff), October 7, 2008 (Defendant) and November 7, 2008 (Plaintiff's rebuttal); completion of discovery—December 7, 2008; dispositive motions—January 15, 2009; and trial ready—May 15, 2009. The court later scheduled a jury trial for the two-week period beginning on June 15, 2009.

On August 7, 2008, the EEOC filed a Motion to Modify Scheduling Order (docket no. 37). The EEOC asked the court to continue the "deadlines for identification and discovery of treating medical or psychological witnesses only" to November 7, 2008. Motion to Modify at 1. The EEOC indicated it was still in the process of identifying aggrieved individuals and wished to reserve the opportunity to call their treating medical or psychological witnesses at trial.

On August 8, 2008, CRST filed a Response (docket no. 38). CRST argued:
> [U]ntil the EEOC completes the identification of women on whose behalf it seeks relief in this lawsuit . . . it is not possible to set a definite schedule for expert disclosures or for

3

> completing other fact discovery to which CRST is entitled before CRST is required to produce expert reports. At the present time, . . . CRST cannot evaluate the practicality of the EEOC's proposed schedule modifications. Likewise, CRST is not in a position to make representations to the [c]ourt regarding the feasability of other aspects of the discovery schedule, including the December 7[, 2008,] discovery cut-off date.
>
> * * *
>
> According to [the EEOC], it is still "in the process of identifying class members from, among other things, lists of drivers provided by [CRST]. Even though the EEOC proposes a deadline for the completion of expert discovery and appears to endorse the current discovery schedule in other respects, it offers no proposed end date for its identification of [allegedly aggrieved individuals]. Without knowing when this process will end, CRST cannot commit itself to dates for completing the fact and expert discovery to which it is entitled.

Response at 3. CRST suggested a deadline of September 4, 2008, "as the end date by which EEOC completes its identification of class members." *Id.* at 4.

On August 18, 2008, the EEOC filed a Reply (docket no. 42). The EEOC stated it had identified 49 aggrieved individuals after mailing thousands of letters to current and former CRST female drivers and soliciting their participation in this lawsuit. Reply at 1. The EEOC promised to identify "the bulk" of aggrieved individuals before October 15, 2008, and "expect[ed] the total class [would] reach between 100 and 150 individuals." *Id.* at 1-2. The EEOC suggested that the discovery deadline of December 7, 2008, serve as "the closing date" for identification. *Id.* at 2-3.

On August 20, 2008, Judge Scoles issued an Order Modifying Discovery Plan ("Order") (docket no. 44). Judge Scoles ruled:

> The [c]ourt concludes that a deadline for identifying class members should be established. After reviewing the parties' respective positions, the [c]ourt concludes that [the EEOC] should be required to disclose the identity of class

4

> members not later than October 15, 2008. The deadlines for disclosure of expert witnesses will be extended to November 1, 2008, December 1, 2008, and December 15, 2008, respectively.
>
> To accommodate the extensions, the [c]ourt also extends the discovery deadline to January 15, 2009, and the dispositive motions deadline to February 1, 2009. . . . .

Order at 2 (footnote omitted).

### III. MERITS

#### A. *Motion*

On November 6, 2008, CRST filed the Motion. CRST contends the EEOC is attempting an end-run around the Order. Prior to the Order, the EEOC had a practice of not identifying a woman as an aggrieved individual until she affirmatively advised the EEOC that she wished to have the EEOC participate in this lawsuit on her behalf. After the Order, however, the EEOC adopted a new practice of "naming everyone and asking questions later." Brief in Support of Motion (docket no. 56-2), at 10.

On or before October 15, 2008, the EEOC "identified" a grand total of approximately 270 aggrieved individuals. (Although the EEOC actually disclosed 294 women, the EEOC admits its disclosures contain duplicates and a man.) CRST opines the EEOC's disclosures include women (1) who had not affirmatively agreed to participate in this lawsuit and (2) whom the EEOC did not have a good faith reason to believe were victims of actionable sex discrimination. CRST claims the EEOC's new practice violates the letter and spirit of the Order. CRST opines that, if allowed to stand, CRST's new practice would render the Order largely meaningless and "promises to impose a huge and unwarranted discovery expense on CRST and an even greater burden on the limited time and resources of this [c]ourt." *Id.* at 6.

CRST asks the court to strike two categories of women from the EEOC's

disclosures. First, the court should strike all women who have not given the EEOC their informed consent to assert claims against CRST on their behalf. Second, CRST asks the court to strike "any women that the EEOC, as of the October 15 deadline, was unprepared to assert—consistent with the standards imposed by [Federal] Rule [of Civil Procedure] 11—were claiming to have experienced severe or pervasive sexual harassment." *Id.* at 7 (adopting the standard for pattern-or-practice claims set forth in *EEOC v. Int'l Profit Assocs., Inc.*, No. 01-C-4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007)).

### B. Resistance

On November 12, 2008, the EEOC filed a Resistance (docket no. 60). The EEOC "understood the Order to require that EEOC identify all persons for whom it intends to seek relief." Resistance (docket no. 60), at 5. The EEOC maintains it complied with the Order.

The EEOC maintains CRST's argument that the court should strike all women who have not given the EEOC their informed consent is based upon a false premise that such women must "opt in" to this lawsuit as if Federal Rule of Civil Procedure 23 governed. The EEOC states:

> [The] EEOC identified all women whom it had then discovered who meet its definition for the class for whom it seeks relief. [The] EEOC respectfully submits that as "master of its [own] case," it has sole discretion to determine the group of persons for whom to seek relief. Of course, it acknowledges the [c]ourt's right to set the deadline for identifying those persons for discovery purposes, and CRST's right to challenge, at the appropriate time, the substantive merits of each claim. [The] EEOC also acknowledges CRST's right to seek discovery, at the appropriate time, concerning each class member, and to seek relief if [the] EEOC is unable to provide the class member for deposition. In this case, [the] EEOC has not identified the very few women who have advised it that they do not wish to be included. It has had . . . personal contact with 132 of the identified class members, each of whom has

> provided credible evidence that she meets the criteria for class membership. [The] EEOC does intend to seek relief for []class members[] whom it has spoken to since October 15 and those whom it has thus far been unable to speak with personally, but who have made credible complaints included in CRST's investigative files, or who have communicated to [the] EEOC that they believe they are victims of harassment.

*Id.* at 10 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) (footnote omitted)).

Second, the EEOC denies CRST's allegation that the EEOC disclosed women whom the EEOC knew did not have viable claims of sex discrimination. While not conceding that CRST states the proper legal standard, the EEOC states it nonetheless had a good-faith belief that each of the approximately 270 identified aggrieved individuals suffered severe or pervasive sexual harassment.

## *C. Analysis*

The court declines to strike all women who have not given the EEOC informed consent. The court agrees with the EEOC that Federal Rule of Civil Procedure 23 does not apply here. *See Gen Tele. Co.*, 446 U.S. at 324 ("[The EEOC's] authority . . . is in no way dependent upon Rule 23, and the Rule has no application to a § [2000e-5(f)(1)] suit."). There is no obligation for aggrieved individuals to "opt in" to the lawsuit; the EEOC may proceed on behalf of such individuals with or without their consent. The Supreme Court has stated:

> If it were true that the EEOC could prosecute its claim only with [an allegedly aggrieved individual's] consent . . . the [lower] court's analysis might be persuasive. But once a[n administrative] charge is filed, the exact opposite is true under the statute—the EEOC is in command of the process. The EEOC has exclusive jurisdiction over the claim for 180 days. During that time, the employee must obtain a right-to-sue letter from the agency before prosecuting the claim. If, however, the EEOC files suit on its own, the employee has no

7

> independent cause of action, although the employee may intervene in the EEOC's suit. In fact, the EEOC takes the position that it may pursue a claim on the employee's behalf even after the employee has disavowed any desire to seek relief. The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. [I]t is the [EEOC's] province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief. And if the [EEOC] makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum.

*Waffle House*, 534 U.S. at 291-92 (citations omitted).

The court also declines to strike any other women from the EEOC's disclosure lists for any purported failure to comply with Rule 11. The EEOC represents to the court that, as of October 15, 2008, it had a good-faith belief that each and every one of the approximately 270 women disclosed to CRST has an actionable claim for sex discrimination. Further, the EEOC represents to the court that none of these women have advised the EEOC that they do not want the EEOC to pursue claims on their behalf. The court will take the EEOC's representations to the court at face value. The court takes the EEOC's representations at face value, because the court presumptively trusts members of the bar appearing in this court to tell the truth. Further, the court does not know, with any particularity, the underlying facts and circumstances that led the EEOC to disclose each allegedly aggrieved individual to CRST. If during the course of discovery CRST discovers evidence that sheds doubt on the EEOC's representations to the court, CRST may file an appropriate motion.

Although the EEOC is "the master of its own case," the court retains inherent case management authority. Fed. R. Civ. P. 26(f); Fed. R. Civ. P. 16(b); LR 16. The court remains concerned that, absent further orders from the court, CRST might unfairly face a "moving target" of prospective plaintiffs as discovery winds down and trial approaches.

To forestall any prejudice to CRST, the court shall adopt the following three rules. First, the EEOC shall immediately file with the court a corrected list of the approximately 270 women it disclosed as of October 15, 2008. Second, the EEOC shall make all women on the list available to CRST for a deposition before the conclusion of discovery on January 15, 2008. If the EEOC fails to make a woman available, as a discovery sanction the court will not permit her to testify at trial and will bar the EEOC from seeking relief on her behalf in this case. Third, as soon as the EEOC learns that it no longer wishes to pursue individual claims on behalf of any of the women on the list, it must immediately inform CRST and file an amended disclosure list with the court.

Although the EEOC arguably did not comply with the spirit of the Order—the obvious purpose of the Order was to pin down the allegedly aggrieved individuals in this case as soon as possible—the court can discern little prejudice to CRST so long as these three rules are in place. CRST retains its right to conduct discovery of all persons who will pursue claims against it at trial.

The court recognizes that expert witness reports will be due before the close of discovery. CRST maintains that it will suffer prejudice, because its experts will not know when they write their reports whether this is truly a 270-person pattern-or-practice case. The court agrees that the number of aggrieved individuals seeking relief in this case is relevant to the merits. *See, e.g., EEOC v. Dial Corp.*, 469 F.3d 735, 741 (8th Cir. 2006) (requiring plaintiffs to prove "'regular and purposeful' discrimination" and "show that more than an isolated act of discrimination occurred and that 'discrimination was the company's standard operating procedure'") (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339, 360 (1977)). Consistent with the EEOC's representations to the court, CRST may assume with some certainty that this is approximately a 270-person pattern-or-practice case. Should the EEOC's representations to the court turn out to be false, CRST may file an appropriate motion for sanctions and permission to file a

9

supplemental or substituted expert report.

## IV.  OTHER ISSUES

The parties raised two other issues at the Hearing. The court discusses each issue, in turn.

### A.  Attorney-Client Privilege

In the Motion, CRST claims the EEOC is impermissibly asserting an attorney-client privilege with all of the approximately 270 aggrieved individuals, even though it does not have a consensual attorney-client relationship with the vast majority of them. CRST wants to talk with some of these women outside of the confines of a deposition to find out whether they might possess evidence beneficial to CRST's defense. The EEOC concedes it does not have an attorney-client relationship with such women but nonetheless asks the court to order CRST to refrain from speaking with them "about the subject matter of individual complaints of sex harassment." *Id*. at 12. At the Hearing, the EEOC expressed a concern about "the possibilities of intimidation."

The court holds that CRST may talk with all women with whom the EEOC does not have a consensual attorney-client relationship and may do so about any subject. The EEOC's proffered restriction on CRST's ability to contact these women is overbroad based on the record presently before the court. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) ("[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."). There is no evidence to substantiate the EEOC's amorphous concern about intimidation. The court takes counsel for CRST at their word when they represent to the court that they will not engage in improper intimidation.

Within ten days, the EEOC shall file a list of all women with whom it claims an attorney-client relationship.

*B. Bifurcation*

In its Resistance and at the Hearing, the EEOC repeatedly expressed its position that the court should bifurcate trial into at least two phases. According to the EEOC, one jury would decide whether CRST engaged in a pattern or practice of sex discrimination. Only later would the parties conduct discovery as to the individual plaintiffs' damages and submit their claims to other juries and possibly a special master for final judgment. CRST insists that a single, unified proceeding is more manageable and points out that another case in which the EEOC's method of bifurcation was adopted is about to enter its eighth year.

The court has not agreed to bifurcation. Further, the parties did not agree to bifurcation of discovery and trial in the Scheduling Order. There is no written motion before the court on bifurcation or modification of the Scheduling Order and thus nothing upon which the court may rule. Therefore the parties should proceed with the assumption that the discovery deadline applies to the issues of liability as well as individual damages.

**IT IS SO ORDERED.**

**DATED** this 19th day of November, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA