UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARK, and LATESHA THOMAS, | ) ) ) ) ) ) |
| Plaintiff-Interveners, | ) ) |
| v. | ) ) Case No. 1:07-cv-00095-LRR |
| CRST VAN EXPEDITED, INC., | ) ) ) |
| Defendant. | ) ) |

**BRIEF IN SUPPORT OF MOTION TO BIFURCATE THE TRIAL AND FOR TRIAL MANAGEMENT ORDER**

This motion is brought pursuant to Fed. R. Civ. P. 16(c)(2)(D), (L), and (P) and Fed. R. Civ. P. 42(b), for an order bifurcating the trial of this action into two phases, the first of which would determine whether there is a pattern or practice of discrimination at CRST as alleged by EEOC and the related issues of class-wide punitive damages and injunctive relief; and the second of which would determine the relief (other than punitive damages) to be awarded to individual class members in the event of a pattern or practice finding in the first phase.[1]

EEOC respectfully submits that this procedure is both necessary and just in this action, in order to (1) eliminate unnecessary proof and cumulative evidence under Rule 16(c)(2)(D) by

---

[1] In the event of a finding of no pattern or practice in the first phase, the second phase would still determine whether individual class members were entitled to relief, but would also consider individual punitive damage awards. In that situation, the determination of injunctive relief would likely await the conclusion of the second phase.

allowing the parties to present all necessary proof on the pattern or practice issue once instead of multiple times; (2) manage the length of this potentially protracted trial under Rule 16(c)(2)(L) by allowing the major issues to be determined early, and the less involved questions of individual relief to be deferred until later, when settlement or prompt adjudication are both more likely; and (3) make the trial as just, speedy, and inexpensive as possible for all concerned, under Rule 16(c)(2)(P).

## I. FACTUAL BACKGROUND

This action was commenced in the public interest and on behalf of Monika Starke and a class of other women who drove trucks for CRST and were sexually harassed while doing so. The trucks are part of CRST's fleet of "team" trucks, which make expedited deliveries of freight by traveling essentially non-stop from start to destination. The trucks all have two sleeper berths that are used by the drivers. Generally the off-duty driver uses the sleeper berth, while the other one drives.

On November 19, 2008, the Court ordered that EEOC would not be allowed to present testimony of or seek individual monetary relief for any class member whom it was unable to present for deposition by January 15, 2009. EEOC presented 154 class members for deposition by January 15. EEOC has sought relief from the November 19, 2008 order,[2] but at a minimum, EEOC will be seeking monetary relief at trial for 154 female drivers who were sexually harassed at CRST.

Each of the women in EEOC's class was subjected to sexual harassment by the male driver on her truck, ranging from exposure to pornography, nudity, masturbation and graphic

---

[2] See EEOC's Motion to Compel and for Sanctions (filed January 27, 2009), and Motion for Leave to Seek Relief for Women Who Were Not Deposed by January 15, 2009 Due to Exceptional Circumstances (filed January 29, 2009), which are currently pending. A hearing with respect to these motions will be held on February 10, 2009.

2

sexual comments, to groping, propositions for sex, and rape. None of them was adequately protected from the harassment by CRST. EEOC's complaint alleges that the lack of adequate protection was a pattern or practice at CRST. EEOC is requesting injunctive relief to prevent any further continuation of that pattern or practice; punitive damages to deter such conduct by CRST or others; and financial relief for those affected by it.

The pattern or practice issue involves, in its briefest form, whether CRST's management, knowing of the recurrent problem of sex harassment of its women drivers, took adequate action to promptly and effectively correct and prevent it. The evidence on this issue will center on various long-standing practices at CRST, including: (1) its business model for expedited teams and the difficulties posed by that model for women who are assigned with men; (2) its inadequate training of drivers and trainers regarding sexual harassment; (3) its failure to impose adequate discipline on driver who commit acts of sexual harassment; (4) its repeated failure and inability to promptly remove women from harassment situations; (5) its practice of discrediting harassment complaints by inexperienced drivers and trainees in favor of experienced drivers and trainers accused of harassment; (6) its ineffective reporting and investigative systems; and related systemic problems.

CRST has stated in discovery that its policies and practices are, in essence, the best it can do. It has not made any major or fundamental changes in regard to its sex harassment policy, its training, its means of responding to complaints of sex harassment, or its personnel who have responsibility for sex harassment prevention. It has denied that any such major or fundamental changes are necessary.

Instead, CRST has sought to show, through discovery depositions of all the class members, that any problems experienced are not the fault of CRST. This defense takes several

3

forms,[3] but each relates back to CRST's policies and practices: the person complaining either did not complain properly under CRST's rules, did not appreciate CRST's methods of dealing with the complaint, or does not have a complaint because the conduct was not serious enough– i.e., the alleged misconduct is a non-actionable, if perhaps regrettable, part of being a team driver. In CRST's view, as expressed by in a letter, signed by its President, Mike Gannon, every single one of the claims against it results from "a fundamental misunderstanding of the team driver working situation, how it operates, and the procedures CRST already has in place to deal with and take appropriate action regarding any reported instances of employee misconduct." CRST letter to "Dear Former CRST Van Ex Driver," February 27, 2008, attached as Exhibit 1.

EEOC believes, given this record, that CRST has effectively admitted (as it must) that the pattern or practice issue is primary, and should be determined first. EEOC expects the parties can expeditiously present their cases as to whether CRST's long-standing policies and practices are the problem, as EEOC contends, or the effective solution, as CRST contends. This is the pattern or practice question, one which can be decided by a well-informed jury in phase I.[4]

---

[3] CRST's arguments were stated in "Defendant CRST Van Expedited, Inc.'s Motion For Case Management Order With Respect To Form And Scheduling Of Summary Judgment Motions" dated January 12, 2009, in the following list of its proposed "omnibus" summary judgment motions: "(1) against class members whose deposition testimony does not support a claim of 'severe or pervasive' sexual harassment; (2) against class members who did not make timely complaints as required by CRST's corporate policy against sexual harassment; (3) against class members whose complaints were promptly and effectively handled by CRST personnel; (4) against class members whose claims are defeated by two or more of the foregoing grounds; and (5) against class members whose claims are subject to summary judgment based upon a uniquely applicable ground, such as the statute of limitations."

[4] EEOC estimates that 20 to 30 of its class members will be adequate to present all the needed evidence on the flaws in CRST's systems critical to the pattern or practice finding. EEOC would of course have the right to call other witnesses, including CRST witnesses adversely. EEOC anticipates its case in chief would take approximately three weeks to present.

4

On the other hand, CRST previously has taken the position that its defense should be offered not in a phase I trial but in a "unified" proceeding.[5] It appears to be CRST's view that the only way to try this action is to have each class members present her individual evidence, not only as to the harassment she sustained, but also as to the specific flaws in CRST's policies and practices that led to her situation.[6] The repetition and inefficiency of such a method is clear.

## II. THE TRIAL OF EEOC'S PATTERN OR PRACTICE CLAIM SHOULD BE BIFURCATED

EEOC proposes that the trial of its pattern or practice claim be bifurcated into a liability phase and individual relief phase. During Phase I, the jury will decide whether CRST engaged in a pattern or practice of sexual harassment and the amount of punitive damages, if any, CRST should pay.[7] During Phase II, the jury will decide whether individual class members should be awarded compensatory damages.

Federal Rule of Civil Procedure 42(b) provides that a court can bifurcate a proceeding in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy. District Courts have broad discretion to bifurcate issues for trial. O'Dell v. Hercules, Inc., 904 F.2d 1194 (8th Cir. 1990). In exercising their discretion, trial courts

---

[5] See Excerpt of Transcript of November 12, 2008 Motion Hearing, p. 49, attached as Exhibit 2; Declaration of Jean P. Kamp, ¶ 2, filed herewith.

[6] CRST presumably would repeat, for each class member, its evidence regarding the policies and practices, and would cross-examine the class member to attempt to show that she failed to follow the complaint procedure or did not give CRST proper credit for its policies and practices.

[7] The Interveners have brought sexual harassment claims under Title VII, 42 U.S.C. § 2000e-2 and the Iowa Civil Rights Act, Iowa Code § 216.6, and retaliation claims under Title VII, 42 U.S.C. § 2000e-3 and the Iowa Civil Rights Act, Iowa Code §216.11. Liability for the Interveners' sexual harassment claims can be determined in Phase I of the trial as part of the pattern or practice sexual harassment claim. Because only the Interveners have retaliation claims, liability for their retaliation claims should be determined during the individual relief proceedings of Phase II.

5

should consider the preservation of constitutional rights, judicial economy, the likelihood of inconsistent results, and the possibility of confusion. Id.

The pattern or practice method of proof was established by the Supreme Court in International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 329, 360 (1977), a case involving allegations of discriminatory hiring. In a pattern or practice case, the plaintiff must show that "discrimination was the company's standard operating procedure – the regular rather than the unusual practice." Id. Teamsters outlined the burdens of proof to be applied in a pattern or practice case:

> The plaintiff in a pattern-or-practice case is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. At the initial, 'liability' stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed.

Id. at 360. Once the pattern or practice is proven, an inference arises "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." Id. at 362. To prove a claimant's entitlement to relief in Teamsters, the government needed to show during the remedial stage that the claimant unsuccessfully applied for a job. It did not need to prove that each individual claimant was the victim of discrimination. Id. at 361-62. Rather, the burden of proof on that issue shifted to the defendant. It could avoid liability for individual monetary relief by proving that a claimant was not hired for a lawful reason. Id. at 362.

The Supreme Court recognized in Teamsters that pattern or practice claims should be bifurcated. Id. at 361 ("When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the

6

liability phase of the trial to determine the scope of the individual relief"). Likewise, the Eighth Circuit and the Manual for Complex Litigation acknowledge that pattern or practice claims are typically bifurcated. Craik v. Minnesota State Univ. Bd., 731 F.2d 465, 470 (8th Cir. 1984) ("The trial of class actions is usually bifurcated into a liability phase and a remedial phase."); Manual for Complex Litigation, Fourth, § 32.45.

Every court EEOC is aware of to have considered the question of bifurcating a pattern or practice sexual harassment case has ordered bifurcation of the issues of liability and individual damages. See, e.g., EEOC v. Burlington Med. Supplies, Inc., 536 F. Supp. 2d, 647, 656 (E.D. Va. 2008) ("All courts to consider the issue have divided the trial into two phases."); EEOC v. Int'l Profit Associates, Inc., 01 C 4427, 2007 WL 3120069, *16 (N.D. Ill. Oct. 23, 2007); EEOC v. Dial Corp., 259 F. Supp. 2d 710, 713-715 (N.D. Ill. 2003) ("Dial II"); EEOC v. Mitsubishi Motor Mfg. of Am., Inc., 990 F. Supp 1059, 1070 (C.D. Ill. 1998); Jenson v. Eveleth Taconite Co. 824 F. Supp. 847, 856 (D. Minn. 1993); Neal v. Director, D.C. Dep't of Corr., Civ. A. No. 93-2420, 1995 WL 517249, *1-2 (D.D.C. Aug, 9, 1995). See also, EEOC v. Foster Wheeler Constr., Inc., No. 98 C 1601, 1999 WL 528200, *2-3, (N.D. Ill. July 13, 1999) (bifurcating racial harassment case).

### A. What EEOC Must Prove To Hold CRST Liable for a Pattern or Practice of Sexual Harassment in Phase I

Courts have applied the Teamsters framework, in modified form, to pattern or practice sexual harassment cases. See e.g., Burlington Med. Supplies, 536 F. Supp. 2d at 658; Int'l Profit Assocs., 2007 WL 3120069 at *17; Bremiller v. Cleveland Psychiatric Inst., 195 F.R.D. 1, 25-26 (N.D. Ohio 2000); EEOC v. Dial Corp., 156 F. Supp. 2d 926, 947 (N.D. Ill. 2001) ("Dial I"); Warnell v. Ford Motor Company, 189 F.R.D. 383, 387-88 (N.D. Ill. 1999); Mitsubishi, 990 F. Supp. at 1081.

7

Accordingly, during Phase I of the trial, EEOC will have to establish that CRST should be held liable for engaging in a pattern or practice of sexual harassment. To do so, EEOC must prove that CRST had a pattern or practice of exposing women to sexual harassment and that CRST failed to take appropriate remedial action to prevent the pattern or practice of harassment.[8] Jenson, 824 F. Supp. at 875; Dial I, 156 F. Supp. 2d at 946; Bremiller, 195 F.R.D. at 25 (holding that the "existence of a company's policy of exposing women to a sexually hostile work environment is the basis for pattern or practice liability"); Mitsubishi, 990 F. Supp. at 1073.

EEOC is not required to prove at the liability stage that each claimant found the harassment subjectively offensive. "[T]he 'landscape of the total work environment, rather than the subjective experiences of each individual claimant,' [] is the focus for establishing a company policy or practice of tolerating widespread and systemic discrimination in the workplace." Mitsubishi, 990 F. Supp. at 1074. See also Warnell, 189 F.R.D. at 387; Markham v. White, 171 F.R.D. 217, 222 (N.D. Ill. 1997). Nor must EEOC prove that each claimant was subjected to severe or pervasive harassment. "Rather, the issue under the pattern or practice framework is whether there was a systemic culture of harassment and whether it was 'standard operating procedure' to permit such conduct without consequences or discipline to those responsible." Employees Committed for Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423, 430 (W.D.N.Y. 2005).

CRST cannot avoid liability for the pattern or practice of harassment by arguing that it adequately addressed the harassment suffered by a particular woman. "The assertion that it may have investigated individual cases of sexual harassment will not be a defense to pattern or

---

[8] It is not necessary for purposes of this motion to resolve whether the negligence standard or vicarious liability standard and Faragher/Ellerth affirmative defense should be used to determine whether CRST is liable for the pattern or practice of sexual harassment. EEOC anticipates that this issue will be decided in the context of CRST's motions for summary judgment.

8

practice liability." Jenson, 824 F. Supp. at 887. Rather, "a systemic remedy is necessary to correct a company-wide problem. 'Situation-specific' responses will not suffice." Mitsubishi, 990 F. Supp. at 1075 (omitting footnote).

> **B.  What EEOC Must Prove in Phase II To Recover Damages For Individual Claimants**

If EEOC establishes that CRST engaged in a pattern or practice of sexual harassment, then every member of the class is a "potential victim" who may be entitled to damages. Jenson, 824 F. Supp. at 867. To establish that class members are entitled to monetary relief, EEOC must show that they were exposed to sexual harassment they found subjectively offensive and that they were harmed. This is because "the other elements of a hostile environment claim are established by the court's determination in the liability phase of the proceedings." Jenson, 824 F. Supp. at 876. Cf. Mitsubishi, 990 F. Supp. at 1078-79 (shifting burden of production to employer to produce evidence that class members were not subjectively offended if employer was found liable for engaging in a pattern or practice of sexual harassment). But see Int'l Profit Assocs., 2007 WL 3120069 at *17 (holding EEOC must prove that each class member was subjected to objectively and subjectively severe or pervasive harassment to be entitled to damages).

Numerous courts have held that the objective element of a harassment claim is established by demonstrating severe or pervasive harassment on a class-wide basis, and does not have to be proved individually for each class member seeking to recover damages. See e.g., Burlington Med. Supplies, 536 F.Supp.2d at 660; EEOC v. Scolari Warehouse Markets, Inc., 488 F.Supp. 2d 1117, 1137 (D. Nev. 2007); Warnell, 189 F.R.D. at 387; Markham, 171 F.R.D. at 222; Newsome v. Up-To-Date Laundry, Inc., 219 F.R.D. 356, 362 (D. Md. 2004); Wilfong v. Rent-A-Center, Inc., 00-CV-680-DRH, 2001 WL 1795093, *5 (S.D. Ill. Dec. 27, 2001).

9

In the pending case of Int'l Profit Associates, Inc., 2007 WL 3120069 at * 16, the court has rejected the analyses in Jenson, Mitsubishi, and Dial, holding that Phase II would require that EEOC prove for each class member for whom it seeks monetary relief that she experienced severe or pervasive harassment which would offend a reasonable person. The court acknowledged (and held in later rulings denying summary judgment on individual claims) that the extent of such proof would depend on whether a pattern or practice had been proven. See EEOC v. Int'l Profit Assocs., 2008 WL 4876860, *5-6 (N.D. Ill. 2008) (denying summary judgment against Claimant #65, "…[S]tanding by itself, the remark made by No. 65's supervisor falls more into the category of 'sexually suggestive' comments and fails to rise to the level of pervasive and serve conduct that substantially alters to conditions of employment. However, given the totality of circumstances, i.e., a finding in Phase I that the level of hostility in the work environment at IPA was pervasive and severe, and her co-workers continuous bragging about their sexual experiences, there is a genuine issue of material fact as to whether No. 65 was objectively subjected to a hostile environment." ). EEOC submits that the Jenson/Mitsubishi/Dial model of proof makes the most sense, but that the extent of the requirement for proof of objective harm should be addressed in the motions for summary judgment apparently planned by CRST, particularly in light of the unusual characteristics of the work place here, where the victim is isolated and alone with the harasser in the confined space of the truck and far from home.

Once EEOC proves in Phase I that CRST failed to take appropriate remedial action to rectify the pattern or practice of sexual harassment, that issue is resolved for all class members in Phase II. Jenson, 824 F. Supp. at 876. In other words, CRST's failure to prevent or remedy a

10

class-wide pattern of sexual harassment would—and should—prevent CRST from escaping liability for failing to prevent the resulting harassment if an individual claimant.

Allocating the burdens of proof as EEOC proposes is consistent with the Teamsters paradigm. Just as Teamsters permitted the defendant to argue in damages proceedings that individual claimants were not eligible for relief because they were denied jobs for non-discriminatory reasons, Teamsters, 431 U.S. at 362, CRST here could argue that individual claimants are not eligible for monetary relief because the alleged harassment did not occur, the harassment was not because of their sex, or the claimants were not subjectively offended. But just as Teamsters prohibited the defendant from avoiding liability by arguing in the damages phase that it did not have a policy against discriminating against minority applicants, id. at 361-62, here, CRST would be prohibited from arguing in the damages phase that it did not have a policy of subjecting its female employees to a sexually hostile work environment and failing to remedy the harassment.

### C. Liability and Punitive Damages Should be Decided by the Same Jury in Phase I

While the issue of individual compensatory damages should be bifurcated from the question of liability, the issue of punitive damages should be determined during the liability phase. This approach has been adopted in pattern or practice discrimination cases, including sexual harassment cases. EEOC v. Outback Steak House of Florida, Inc., 576 F. Supp. 2d 1202, 1206 (D. Colo. 2008) (holding that punitive damages could be determined on a class-wide basis during the first phase of the trial on claims of sex discrimination in hiring and promotion; EEOC v. LA Weight Loss, No. WDQ-02-CV-648 slip op. at 2 (D. Md. May 25, 2004) (holding punitive damages could be determined in Phase I of trial on sex discrimination claims) (attached hereto as Exhibit 3); Dial II, 259 F. Supp. 2d at 712-13 (holding punitive damages could be determined on

11

a class-wide basis in Phase I of a sexual harassment case); Palmer v. Combined Ins. Co. of Am., 217 F.R.D. 430, 438-439 (N.D. Ill. 2003) (holding that plaintiffs in a sexual harassment and sex discrimination class action could seek a punitive damages award on a class-wide basis). See also Hilao v. Estate of Marcos, 103 F.3d 767, 780-81 (9th Cir. 1996) (holding punitive damages could be determined on a class-wide basis); Watson v. Shell Oil Co., 979 F.2d 1014, 1018-19 (5th Cir. 1992) (same); Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 474 (5th Cir. 1986) (same); Buchanan v. Consol. Stores Corp., 217 F.R.D. 178, 188-89 (D. Md. 2003) (same); Day v. NLO, 851 F. Supp. 869, 884 (S.D. Ohio 1994); In re Federal Skywalk Cases, 95 F.R.D. 483, 486 (W.D. Mo. 1982) (same). But see, e.g., Int'l Profit Assocs., 2007 WL 3120069 at *11 (holding Seventh Circuit precedent precluded award of class-wide punitive damages).

Punitive damages are appropriate for class-wide treatment because the determination of punitive damages in this case will not depend on circumstances that are unique to any individual class member. The purposes of punitive damages are to punish the defendant for its reprehensible conduct and to deter such conduct in the future. See, e.g., State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). An award of punitive damages requires a showing that the employer acted with malice or reckless disregard of the federally protected rights of its employees and a basis for imputing liability to the employer. Kolstad v. American Dental Ass'n, 527 U.S. 526, 536, 540. An employer can avoid liability for punitive damages by proving that its agents were acting contrary to its good faith efforts to comply with Title VII. Id. at 545. The malice and reckless indifference standard focuses on the employer's state of mind, which is an issue common to all class members. See also id. at 535, 538 ("Most often, however, eligibility for punitive awards is characterized in terms of a defendant's motive or intent").

12

Likewise, whether CRST's policies or practices did or did not constitute a good faith efforts to comply with Title VII is a question that is common to every class member.

The evidence the parties will use to prove or defeat CRST's liability for the pattern or practice of sexual harassment will be almost identical to the evidence the parties will use to prove or defeat EEOC's request for punitive damages. To prove that CRST maintained and tolerated a sexually hostile work environment, EEOC will rely on evidence that female drivers were subjected to severe or pervasive sexual harassment, that the harassment was routine, that CRST knew of the pattern of harassment because of the over 180 complaints of sexual harassment it has received, and that despite this knowledge, CRST failed to take adequate steps to protect its female drivers from harassment. EEOC will rely on this same evidence with respect to its punitive damages claim to show that CRST acted with malice or reckless disregard to the rights of its female employees. EEOC anticipates that CRST will rely on the same evidence to defend itself against liability and punitive damages. For example, CRST will likely present evidence that it attempted to prevent and remedy sexual harassment to rebut EEOC's claim that it tolerated a pattern or practice of sexual harassment and that it made good faith efforts to comply with Title VII.

In Barefield v. Chevron, No. 86-2427, 1988 WL 188433 *4 (N.D. Cal. Dec. 6, 1988), a pattern or practice discrimination class action, the court noted several potential problems if punitive damages were awarded individually:

> Practical and equitable considerations also strongly favor the determination of the amount of punitive damages, if any, in stage one. Requiring each class member to litigate the appropriate amount of punitive damages due him or her in stage two proceedings would not only be inefficient but could also result in claimants with comparable actual damages receiving substantially unequal punitive damages awards. There is also the risk that punitive damages will be awarded to initial claimants and then reduced or eliminated for later class members on the assumption that the defendant has already been sufficiently punished. Conversely,

> defendants risk having the individual punitive awards cumulate into an excessive amount. These potential pitfalls can be avoided by creating, if appropriate, one reasonable punitive damage fund in stage one, which will then be fairly apportioned among class members in relation to any actual damages they establish in stage two.

Id.

Having a jury decide punitive damages at any phase of the trial other than during the first phase of a bifurcated trial would be unworkable. If separate juries are used in the liability and damages phases, with punitive damages being tried in Phase II, the parties would have to reintroduce much of the evidence presented in the liability phase, because nearly all of the evidence relevant to liability is also relevant to punitive damages. This would defeat the efficiency and judicial economy achieved from bifurcation.[9]

After the conclusion of Phase II, the Court could distribute to each class member a percentage of the punitive damages award equal to the percentage she received of the total compensatory damages awarded.[10] See Barefield, 1988 WL 188433 at *4 (holding punitive damages could be determined on a class-wide basis and distributed based on actual damages awarded to class members); In re Federal Skywalk Cases, 95 F.R.D. at 485 (same). For example, if a class member received five percent of all compensatory damages awarded, she could also receive five percent of the class punitive damages award. Such a distribution would result in individual punitive damages awards that reflect both the reprehensibility of CRST's conduct (as

---

[9] The only alternative is to have a single jury decide liability in Phase I and compensatory and punitive damages in Phase II. EEOC does not oppose using a single jury for Phase I and Phase II, but this would present practical problems. Jurors would have to serve for months, rather than for a few weeks, as under EEOC's proposal. Additionally, jurors would be deciding punitive damages at the end of Phase II, despite the relevant evidence having been presented weeks or months prior during Phase I.

[10] If the Phase II jury decided that there were class members who were victims of the pattern or practice of sexual harassment, but determined that they should not receive any compensatory damages, the Court could still award those class members a nominal amount of punitive damages. A plaintiff can be awarded punitive damages although they do not receive compensatory damages. Timm v. Progressive Steel Treating, Inc., 137 F.3d 1008, 1010 (7th Cir. 1998).

14

determined by the Phase I jury) and the degree of harm experienced by each class member (as determined by the Phase II jury). This is consistent with the Supreme Court's decision in BMW of North Am., Inc. v. Gore, 517 U.S. 559, 575 (1996), which identified the reprehensibility of the defendant's conduct and the relationship between punitive damages and the degree of harm as two guideposts that a court should consider when evaluating the reasonableness of a punitive damages award. In allocating punitive damages, the Court can also take into account the third guidepost the Supreme Court identified in BMW: the difference between the punitive damages awarded in this case and punitive damages awarded in similar cases. Id.

### D. Bifurcating the Trial As EEOC Proposes Will Promote Judicial Economy and Avoid Jury Confusion

If the trial is bifurcated as EEOC proposes, the parties would present evidence in Phase I related to the question of whether CRST engaged in a pattern or practice of sexual harassment. Such evidence would include testimony related to the sexual harassment female drivers experienced, complaints of harassment made to CRST, CRST's response to their complaints, CRST's sexual harassment policy, training CRST conducted regarding sexual harassment, and expert testimony regarding statistical evidence. EEOC anticipates that in Phase I it would call as witnesses between 20 and 30 class members, approximately a half dozen CRST managers, and its expert witness. It estimates that the presentation of its case would last approximately three weeks.

The question of CRST's liability for a pattern or practice of sexual harassment should be decided early in the trial because the resolution of this question will dictate the standard of proof applicable to the individual class members' claims and whether certain evidence need be presented at all. See Craik, 731 F.2d at 471 (holding that magistrate judge committed error by deciding individual claims before addressing the plaintiffs' class pattern or practice

15

discrimination claim). If EEOC prevails in Phase I, as discussed above, each class member could obtain monetary relief if the jury in Phase II found that she experienced sexual harassment, that the harassment was offensive to her, and that she was harmed. However, EEOC would not have to prove that CRST was negligent with respect to each class member or that it should be held vicariously liable for the harassment, as CRST's negligence or vicarious liability would have been proven in Phase I. Evidence with respect to CRST's knowledge that each class member was being sexually harassed and CRST's efforts to prevent or remedy harassment of each class member would be unnecessary and many hours of needless testimony could be avoided.

If the jury ruled against EEOC in Phase I on the pattern or practice claim, then the trial would still proceed to Phase II, but EEOC would have to prove for each class member the elements of an individual sexual harassment claim, including that the harassment she experienced was severe or pervasive and a basis for holding CRST liable for the harassment experienced by that class member. Either way, an early finding on the pattern or practice claim prior to the presentation of evidence on class members' individual claims will promote the goals of efficiency and judicial economy because the parties will know the standard of proof applicable to the individual claims for relief and can focus their presentation of evidence accordingly.

Bifurcation of the trial in this case will also result in a more manageable trial. A single, unbifurcated trial would likely last several months, placing a considerable burden on the Court and jurors. Some of this burden can be alleviated by bifurcating the trial. It will no doubt be easier to schedule and find jurors for Phase I, which should last only a few weeks, than a single, unified trial, which could go on for many months. In Phase II, a jury different from the one that determined liability, upon receiving appropriate instructions about the significance of the

16

findings in Phase I, could fairly determine the class members' entitlement to compensatory damages. Further, the court could use a series of different juries to determine compensatory damages for any number of (e.g., ten) class members at a time.

Additionally, bifurcating the trial will simplify the jury's (or juries') task. A non-bifurcated trial on liability and damages would require the jury to listen to the testimony of potentially hundreds of witnesses and last for months.[11] The jury would have to be instructed on the standard of proof for pattern or practice claims as well as the standard of proof applicable to individual claims. But the first question the jury would have to answer is whether CRST engaged in pattern or practice of sexual harassment. See Craik, 731 F.2d at 471. If the jury found CRST liable for the pattern or practice, the instructions regarding the standard of proof for individual claims were unnecessary, but may potentially confuse the jury when deciding whether class members are entitled to individual relief. The jury's task will be made easier by bifurcating the trial, so that the jury during Phase I has to decide liability and punitive damages, without getting bogged down in testimony or deliberations concerning the damages claims of all of the class members. Similarly, the Phase II jury's (or juries') task will be simplified because liability and punitive damages will already have been decided, and it can focus solely on class members' entitlement to compensatory damages.

Finally, bifurcating the trial will not run afoul of the Seventh Amendment. Courts have held that bifurcating compensatory damages from liability does not violate the Seventh Amendment because the factual questions decided at the liability stage are distinct from questions of compensatory damages. See Dial I, 156 F. Supp. 2d at 957-958; Foster Wheeler, 1999 WL 528200 at *2. Even if class members who will testify in both Phase I and Phase II

---

[11] In its Initial Disclosures and supplements thereto, CRST has identified over 500 witnesses with knowledge related to EEOC's claims.

present similar testimony in each phase, the Seventh Amendment is not violated because it only prohibits a subsequent jury from re-deciding the same factual question; it does not prohibit different juries from hearing the same evidence. Houseman v. U.S. Aviation Underwriters, 171 F.3d 1117, 1128 (7th Cir. 1999).

## CONCLUSION

For the foregoing reasons, EEOC respectfully requests that the Court issue an order bifurcating the trial of this action into two phases, the first of which would determine whether there is a pattern or practice of sexual harassment at CRST and the related issues of class-wide punitive damages and injunctive relief; and the second of which would determine the relief (other than punitive damages) to be awarded to individual class members in the event of a pattern or practice finding in the first phase.

Respectfully submitted,

s/Ann M. Henry
Ann M. Henry
IL Bar # 6272394
EQUAL EMPLOYMENT OPPORTUNITY
 COMMISSION
Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Telephone: (312) 353-8558
Fax: (312) 353-8555
E-Mail: ann.henry@eeoc.gov

# CERTIFICATE OF SERVICE

Ann Henry, an attorney, hereby certifies that on February 2, 2009, she electronically filed the foregoing **EEOC's Brief in Support of Motion to Bifurcate the Trial and For Trial Management Order** using the CM/ECF system which will send notification of such filing to the following counsel of record:

Robert T. Markowski, Esq.
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-2736
Fax (312) 840-7736
RMarkowski@jenner.com

Thomas D. Wolle, Esq.
Moyer & Bergman, P.L.C.
P.O. Box 1943
2720 First Ave. N. E.
Cedar Rapids, IA 52406-1943
Tel (319) 366-7331
Fax (319) 366-3668
twolle@moyerbergman.com

Jeffrey R. Tronvold, Esq.
Eels & Tronvold Law Offices PLLC
1921 51st Street, NE
Cedar Rapids, IA 52402
Tel (319) 393-1020
Fax (319) 393-4000
jeff@eells-tronvold.com

          s/ Ann M. Henry
          Ann M. Henry
          IL Bar # 6272394
          EQUAL EMPLOYMENT OPPORTUNITY
           COMMISSION
          Chicago District Office
          500 West Madison Street, Suite 2000
          Chicago, Illinois 60661
          Telephone: (312) 353-8558
          Fax: (312) 353-8555
          E-Mail: ann.henry@eeoc.gov