**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| and | No. 07-CV-95-LRR |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARK, LATESHA THOMAS and NICOLE ANN CINQUEMANO, | **ORDER** |
| Plaintiffs-Interveners, | |
| vs. | |
| CRST VAN EXPEDITED, INC., | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Plaintiff Equal Employment Opportunity Commission's "Motion to Bifurcate the Trial and for Trial Management Order" ("Motion") (docket no. 136).[1]

## *II. PROCEDURAL BACKGROUND*

On November 16, 2007, the EEOC filed the First Amended Complaint (docket no. 8) against Defendant CRST Van Expedited, Inc. ("CRST"). Pursuant to 42 U.S.C.

---

[1] Plaintiffs-Interveners Janet Boot, Barbara Grant, Cindy Moffett, Remcey Jeunenne Peeples, Monika Stark, Latesha Thomas and Nicole Ann Cinquemano join the Motion but did not file separate briefs. The court need not separately discuss their claims in the instant Order, because their positions are subsumed within the EEOC's position.

§ 2000e-5(f)(1), the EEOC brings suit in its own name "to correct [CRST's] unlawful employment practices on the basis of sex, and to provide appropriate relief to [Ms. Monika Stark] and a class of similarly situated female employees of [CRST] who were adversely affected by such practices." First Amended Complaint at 1; *see Gen. Tele. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 324 (1980) (stating that § 2000e-5(f)(1) grants the EEOC "authority to bring suit in its own name for the purpose . . . of securing relief for a group of aggrieved individuals"). The EEOC alleges CRST engaged in a pattern or practice of sex discrimination against its female truck drivers, in violation of 42 U.S.C. §§ 2000e-2 and 2000e-3. Specifically, the EEOC alleges:

> 7. Since at least July 2005, CRST engaged in unlawful employment practices . . . . [T]wo of its lead drivers subjected [Ms. Stark] to sexual harassment . . . (including . . . unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments), which further created a sexually hostile and offensive work environment . . . .
>
> 8. Other similarly situated female employees of CRST were also subjected to [similar] sexual harassment and a sexually hostile and offensive work environment while working for CRST, from their lead drivers or team drivers . . . .
>
> 9. The effect of [such] practices . . . has been to deprive [Ms. Stark] and class of similarly situated female employees of equal employment opportunities, and to otherwise adversely affect their status as employees, because of sex.

First Amended Complaint at 2-3. The EEOC alleges CRST refused to take prompt and appropriate action to prevent, correct and protect its female truck drivers from the harassment and the hostile environment. The EEOC seeks compensatory damages, punitive damages and injunctive relief on behalf of Ms. Stark and the other similarly situated women.

On May 1, 2008, CRST filed an Amended Answer (docket no. 36). CRST denies the substance of the First Amended Complaint.

On February 8, 2008, the court entered a Scheduling Order and Discovery Plan ("Scheduling Order") (docket no. 21), pursuant to Federal Rules of Civil Procedure 16(b) and 26(f) and Local Rule 16. The parties had previously proposed various deadlines to the court, and the court accepted them. The court later scheduled a jury trial for the two-week period beginning on June 15, 2009. The parties never suggested that the court should bifurcate the trial into separate phases or empanel multiple juries. Accordingly, both the Scheduling Order and Trial Management Order (docket no. 22) contemplate a single, unified proceeding and one jury selection.

In late 2008, the EEOC began suggesting in court filings that the court should bifurcate the trial into separate phases. The EEOC did not, however, file a motion or otherwise formally request bifurcation of the trial. During a show-cause hearing on November 12, 2008, the court indicated that it was "perplexed as to why this late in the case [the] EEOC is suggesting bifurcation . . . [which] should have been brought up at the time the [S]cheduling [O]rder was suggested." Transcript (docket no. 69), at 3. The court reminded the EEOC that the Northern District of Iowa is historically one of the busiest judicial districts in the country on a filings-per-judge basis, and the court must rely on parties' representations in their proposed scheduling order and discovery plans. The court also reminded the EEOC that the parties do not ultimately control the court's docket. The EEOC indicated it did not fully understand the purpose of the Scheduling Order; it disclaimed any knowledge that it should have raised the issue of bifurcation at the outset of these proceedings. The EEOC indicated that it anticipated filing a formal motion for bifurcation in the near future.

On November 19, 2008, the court issued an order in connection with the show-cause hearing. The court stated:

> In its Resistance and at the Hearing, the EEOC repeatedly expressed its position that the court should bifurcate trial into at least two phases. According to the EEOC, one jury would decide whether CRST engaged in a pattern or practice of sex discrimination. Only later would the parties conduct discovery as to the individual plaintiffs' damages and submit their claims to other juries and possibly a special master for final judgment. CRST insists that a single, unified proceeding is more manageable and points out that another case in which the EEOC's method of bifurcation was adopted is about to enter its eighth year.
>
> The court has not agreed to bifurcation. Further, the parties did not agree to bifurcation of discovery and trial in the Scheduling Order. There is no written motion before the court on bifurcation or modification of the Scheduling Order and thus nothing upon which the court may rule.

Order (docket no. 66), at 11.

On February 2, 2009, the EEOC filed the Motion. The EEOC now formally asks the court to bifurcate the trial into the two phases quoted above. On February 19, 2009, CRST filed a Resistance. On February 24, 2009, the EEOC filed a Reply.

Neither party requests oral argument, and the court finds oral argument is not appropriate. The Motion is fully submitted and ready for decision.

### *III. MOTION*

The court shall deny the Motion. The EEOC has not shown "good cause" for modification of the Scheduling Order. Fed. R. Civ. P. 16; *see, e.g., Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (stating the "good-cause standard is not optional"). The EEOC should have apprised the court of its intention to seek a bifurcated trial when it conferred with CRST and agreed to the Scheduling Order. The court entered the Scheduling Order under Rule 16 and relied upon the parties' representations when planning its busy schedule.

Even if the court were to excuse the EEOC's failure to propose bifurcation in the

Scheduling Order on grounds of counsel's oversight, the EEOC has failed to explain why it waited more than two months to file the instant Motion. The EEOC was on notice as early as November 12, 2008 that it should file a motion to bifurcate but waited until February 2, 2009 to file the Motion. The EEOC is equitably estopped from seeking relief at this very late stage in the proceedings. Dramatically altering the proposed trial format now would greatly prejudice CRST. CRST has conducted its discovery with the Scheduling Order in mind, and trial is less than four months away.

In any event, it remains the court's belief that a single, unified proceeding is the best method of trial in this particular pattern-or-practice case. Such a proceeding will avoid unnecessary cumulative evidence and otherwise facilitate the just, speedy and economical disposition of this action. *See* Fed. R. Civ. P. 16(c)(2) (stating matters for consideration at the original pretrial conference). EEOC's citation to an eight-year-old district court case as an example of a case in which bifurcation was allowed on a prior occasion only *strengthens* CRST's position and the court's original decision in the Scheduling Order. *But see EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 656 (E.D. Va. 2008) ("All courts to consider the issue have divided the trial into two phases.").

The EEOC's newfound proposal for the calculation of any punitive damages is particularly troublesome to the court. The EEOC proposes that, during the putative first-phase of the trial, a jury would decide the total amount of punitive damages—even though the jury would not have heard evidence on the overwhelming majority of the alleged victims' individual Title VII claims. In the second phase the court would then mechanically divide up and distribute the first jury's punitive damages award to each alleged victim. The distribution percentage would equal the amount of compensatory damages awarded to that alleged victim by another jury divided by the total amount of compensatory damages all juries award all alleged victims. This hyper-formulaic approach

to punitive damages is anathema to the Supreme Court's recent teaching that punitive damages awards are improper when a jury is left to speculate as to the circumstances under which a person is injured. *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007). The Due Process Clause forbids the "arbitrary punishments" which the EEOC would have the court sanction in this case. *Id.*

Contrary to the EEOC's proposal, punitive damages will be the last issue the jury resolves, not one of the first issues. The court only anticipates instructing the jury on the issue of punitive damages in the event of a plaintiff's verdict. Separating the issues of punitive damages and liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of CRST, will improperly prejudice the jury's determination of liability. *See, e.g., Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) (ordering isolation of punitive damages from liability).

## IV. DISPOSITION

The Motion (docket no. 136) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 25th day of February, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA