**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARKE, LATESHA THOMAS, and NICOLE ANN CINQUEMANO, | ) | **Case No. 1:07-cv-95** |
| | ) | |
| Plaintiffs/Interveners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRST VAN EXPEDITED, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CRST'S MEMORANDUM IN SUPPORT OF ITS MOTION TO**
**EXCLUDE CERTAIN EXPERT TESTIMONY OF DR. MICHAEL A. CAMPION**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 2

      A.    CRST's Policies ...................................................................................... 3

      B.    CRST Experts .......................................................................................... 3

      C.    EEOC Rebuttal Expert ............................................................................ 4

III.  ARGUMENT .................................................................................................. 6

      A.    Legal Standards Governing the Admissibility of Dr. Campion's
            Testimony. ............................................................................................... 6

      B.    Dr. Campion Failed to Base Certain of His Opinions On Sufficient
            Facts Or Data And Reliable Principles and Methods, Rendering His
            Opinions Unreliable and Irrelevant. ....................................................... 8

            1.    Dr. Campion should be precluded from rebutting Dr. Baker's
                  descriptive statistics on the incidence of allegations of sexual
                  harassment at CRST, and, in particular, he should be
                  precluded from testifying that 1 in 10 female employees
                  experienced sexual harassment at CRST. ....................................... 11

            2.    Dr. Campion should be precluded from testifying that the
                  sexual harassment training provided by CRST is insufficient ......... 12

            3.    Dr. Campion should be precluded from testifying that male
                  drivers at CRST do not understand the sexual harassment
                  policy. ............................................................................................. 14

            4.    Dr. Campion should be precluded from testifying that the
                  punishments at CRST are not progressive and are not severe
                  enough. ............................................................................................ 15

            5.    Dr. Campion should be precluded from testifying that CRST
                  puts women in "harm's way" and, thus, stronger HR policies
                  and practices are required. ............................................................. 17

            6.    Dr. Campion should be precluded from testifying that CRST
                  does not have a policy against co-drivers having sexual
                  relationships. .................................................................................. 17

      CONCLUSION ...................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993).................................................................................................. passim

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..................................................................................................7, 8, 9, 16

*Kemp v. Tyson Seafood Group, Inc.*,
   No. Civ. 5-96-173 JRT/RLE, 2000 WL 1062105 (D. Minn. July 19, 2000)....................14, 17

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137, 153-58 (1999) ............................................................................................7, 10

*McCabe v. Macauley*
   No. 05-CV-73-LRR, 2008 WL 2980009 (N.D. Iowa Apr. 29, 2008) ......................6, 8, 10, 15

*Zeigler v. Fisher-Price, Inc.*,
   No. C01-3089-PAZ, 2003 WL 25686840 (N.D. Iowa July 1, 2003) ........................................9

## I.   __INTRODUCTION__

CRST seeks to exclude certain testimony of EEOC rebuttal expert, Dr. Michael Campion, as inadmissible under the strictures of relevance and reliability imposed by Federal Rules of Evidence 403 and 702.[1]   The United States Supreme Court has emphasized the duty of a trial court to act as a gatekeeper and ensure that proffered expert testimony meets these requirements. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

An expert's role is to aid the jury, not to confuse the jury with unreliable information and rank speculation.   In order for Dr. Campion's opinions to be admissible, they must conform to the strictures of Rules 403 and 702 of the Federal Rules of Evidence; therefore, they must be "not only relevant, but reliable."   *Daubert*, 509 U.S. at 589.   Despite Dr. Campion's experience, he still must demonstrate that the opinions he provides in this litigation have a basis beyond his own word.   Even the most renowned expert must provide support for his or her positions and conclusions, lest such opinions be excluded.

As set forth herein, certain of Dr. Campion's opinions fall short of the standards set forth in Rule 702 and discussed in *Daubert.*   Dr. Campion's testimony is not based upon sufficient facts or data because (i) he either did not request or review necessary information, *e.g.,* investigation files and CRST orientation and training materials; and (ii) his testimony is the product of unsupported propositions rather than reliable methods and principles, *e.g.*, many of his statements are *ipse dixit* conclusions, meaning that Dr. Campion states the conclusions

---

[1] In light of this Court's April 30, 2009 order granting CRST's motion for summary judgment and dismissing with prejudice EEOC's pattern or practice claim, and this Court's April 30, 2009 order overruling EEOC's Objections to Magistrate Judge Scoles' Ruling on the Motion to Strike the 99 women who did not appear for depositions by January 15, 2009, significant aspects of Dr. Campion's opinions are now irrelevant.   Counsel for CRST intends to meet and confer with counsel for EEOC to determine whether EEOC intends to have Dr. Campion testify as a witness at trial and to discuss the issues addressed herein.

himself but provides no supporting authority for these statements. *See* Fed. R. Evid. 702. Thus, certain of Dr. Campion's opinions are irrelevant and unreliable, rendering them unhelpful to the jury and, therefore, inadmissible at trial.

## II.    FACTUAL BACKGROUND

Neither EEOC nor Interveners disclosed an affirmative expert witness in this case by the November 1, 2008 deadline set forth by this Court. (01/26/09 Order, Doc. No. 124, at 2.) CRST disclosed its experts, Dr. Mary Baker, a labor economist employed by Economic Research Services Group, and Dr. Jone Papinchock, an Industrial and Organizational Psychologist employed by Valtera, and submitted their expert reports by the December 1, 2008 deadline. (08/20/08 Order, Doc. No. 44, at 3; Ex. 1, Baker Report 1-3; Ex. 2, Papinchock Report 1.) EEOC disclosed its rebuttal expert, Dr. Michael Campion, an Industrial and Organizational Psychologist and a Professor of Management at Purdue University, and submitted his report on December 15, 2008. (Ex. 3, Campion Report 1-2.)

Through his rebuttal report and deposition testimony, Dr. Campion attempts to rebut certain opinions of CRST's experts. However, unlike the analysis conducted by CRST's experts, Dr. Campion bases a large part of his rebuttal opinion on pure speculation and unsupported assertions. He simply relies on his years of experience in the field of industrial and organizational psychology and makes vague references to "literature" that may be available, but which he states he did not review and analyze for the purpose of this case, nor was able to cite to or reference. (Ex. 4, Campion Dep. 77-78.)

Dr. Campion admits, both in his report and at his deposition that he had "not had a chance to conduct a thorough review of the literature on HR policies, and thus will not offer opinions on whether CRST's policies conform to the HR practices recommended in the literature." (Ex. 3, Campion Report 15; Ex. 4, Campion Dep. 72-73.) In short, he admits that he

cannot and will not rebut Dr. Papinchock's opinions that CRST's sexual harassment policy, its sexual harassment investigation procedures, and its discipline policy and procedures reflect "the recommended practices in the human resources literature." (Ex. 2, Papinchock Report 19-24, 36-41, 50-55.) Instead, Dr. Campion has opted to attack limited aspects of Dr. Papinchock's analysis by making generic unsupported assertions based on research he believes he "could find" that CRST's training is inadequate (Ex. 4, Campion Dep. 77) and CRST's punishments are not severe enough (Ex. 4, Campion Dep. 107-110), and by setting forth observations which are confusing and would serve only to mislead the jury.

### A.    CRST's Policies

CRST has adopted and enforces a written policy against sexual harassment. CRST provides training with respect to its sexual harassment policy for all its drivers. Each new driver also receives a Professional Driver's Handbook that contains its policy against sexual harassment and telephone numbers for drivers to call in the event they experience sexual harassment. Upon receiving a sexual harassment complaint from a female driver, CRST's objective is to remove her from the truck as soon as reasonably possible. CRST's policy against sexual harassment includes procedures for enforcement. Personnel in the Human Resources Department investigate all reported harassment complaints and are authorized to take various actions against an alleged harasser. (Ex. 5, L. Oetken Decl. ¶¶ 9-11, 19-23, 25-28, CRST P/P App. 0144-0147, 0152-0154.)

### B.    CRST Experts

CRST retained a Ph.D. Economist and a Ph.D. Industrial and Organizational Psychologist as its experts in this case. Dr. Baker's opinions involve (i) the statistical analyses of the gender composition of CRST's truck driver workforce to determine whether CRST employs women in numbers consistent with those of the relevant labor market, and (ii) the preparation of statistics to

3

describe the incidence of allegations of sexual harassment and to measure the amount of time the female truck drivers who were deposed in this case drove with the men they accuse of sexual harassment.  (Ex. 1, Baker Report 1.)  Dr. Papinchock analyzed CRST's sexual harassment policy and procedures as well as the recommended practices in the human resources literature. She opines that the sexual harassment policy and procedures at CRST, as well as related operational procedures, provide protection for potential victims of sexual harassment and reflect recommended practices as outlined in the human resources literature.  (Ex. 2, Papinchock Report at v.)

### C.    EEOC Rebuttal Expert

EEOC chose not to identify its own affirmative expert, but instead opted to hire Dr. Campion as a rebuttal expert to respond to the opinions of CRST's experts.  Dr. Campion was contacted and retained as EEOC's rebuttal expert "about a week before [his] report was due." (Ex. 4, Campion Dep. 14.)  He acknowledged that it is uncommon for him to prepare a report within such a short timeframe and conceded throughout his deposition testimony that he did not have time to conduct certain review and analysis due to time constraints.  (Ex. 4, Campion Dep. 15, 30, 88, 107-108.)

Dr. Campion admits in his deposition that he formulated his opinions without actually looking at the content of the sexual harassment training provided to CRST drivers.  (Ex. 4, Campion Dep. 75, 89-90.)  He admits that he reviewed only the two CRST expert reports and the exhibits attached to those reports but did not review the full set of materials relied upon the by CRST experts.  (Ex. 4, Campion Dep. 73-74.)  For example, Dr. Papinchock listed in Appendix A to her report the volumes of materials (training and other) that she read and analyzed in order to prepare her report.  Dr. Campion did not look at these materials:  "I did not review all of the materials she reviewed because of time constraints."  (Ex. 4, Campion Dep. 28-30.)  Dr.

Campion also states with respect to a number of his opinions that he has not collected or reviewed certain data. (Ex. 4, Campion Dep. 24-25, 29.) At other times, Dr. Campion makes reference to his belief or to research in general, and relies on his own personal experience. (Ex. 4, Campion Dep. 77, 97, 98-99, 262-263.)

While some of Dr. Campion's rebuttal points are mere observations and critiques of the CRST experts' methodologies, other points are Dr. Campion's unsupported statements, masked as expert opinions. Such statements, unsupported by any authority, are unreliable. Testimony regarding such statements should be excluded. Specifically, as discussed more fully below, CRST asks this court to preclude Dr. Campion from testifying on any of the following topics:

(1)     Dr. Campion should be precluded from rebutting Dr. Baker's descriptive statistics on the incidence of allegations of sexual harassment at CRST, and, in particular, he should be precluded from testifying that 1 in 10 female employees experienced sexual harassment at CRST. (Ex. 3, Campion Report 10-15.)

(2)     Dr. Campion should be precluded from testifying that the sexual harassment training provided by CRST is insufficient. (Ex. 3, Campion Report 15-16.)

(3)     Dr. Campion should be precluded from testifying that the punishments at CRST are not progressive and are not severe enough. (Ex. 3, Campion Report 16-18.)

(4)     Dr. Campion should be precluded from testifying that male drivers at CRST do not understand the sexual harassment policy. (Ex. 3, Campion Report 19; Ex. 4, Campion Dep. 84.)

(5)     Dr. Campion should be precluded from testifying that CRST does not have a policy against co-drivers having sexual relationships. (Ex. 3, Campion Report 19.)

(6)     Dr. Campion should be precluded from testifying that CRST puts women in "harm's way" and, thus, stronger HR policies and practices are required.  (Ex. 3, Campion Report 19.)

## III.   ARGUMENT

Certain of Dr. Campion's rebuttal opinions should be excluded because they are unreliable, irrelevant and simply not helpful to the trier of fact.

### A.     Legal Standards Governing the Admissibility of Dr. Campion's Testimony.

As this Court recognized in *McCabe v. Macauley*, a party seeking admission of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. No. 05-CV-73-LRR, 2008 WL 2980009, at *4 (N.D. Iowa Apr. 29, 2008) (citing Fed. R. Evid. 702 advisory committee's note).  Because the role of an expert witness is to assist the trier of fact in understanding the evidence, to the extent the expert's testimony is not helpful in this way, it is inadmissible at trial.  *Daubert*, 509 U.S. at 591.  Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the United States Supreme Court explained that the trial court has a gatekeeping role of determining the admissibility of expert testimony under Rules 403 and 702. *See* 509 U.S. at 589.  A trial court's objective is to ensure that the expert's testimony rests on a reliable foundation and is relevant, particularly in light of the fact that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Id.* at 595, 597.

The "[p]roposed testimony must be supported by appropriate validation." *Id.* at 590.  By ensuring this type of reliability, the risk of prejudice is lessened.

The *Daubert* court set forth factors that could be considered in analyzing the reliability of an expert's testimony:  (1) whether the expert's technique or theory can be or has been tested -- that is, whether the expert's theory can be examined in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.  *Id.* at 593-94.

The Supreme Court in *Kumho Tire Co. v. Carmichael*, extended the *Daubert* analysis to non-scientific expert testimony involving "technical, or other specialized knowledge."  526 U.S. 137, 153-58 (1999) (applying *Daubert* flexibly to expert's visual/tactile method of tire failure analysis and excluding his methodology as unreliable).  The court clarified that the objective is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.  This means that *ipse dixit* statements of an expert, without more, do not meet the standards of admissibility.  *Id.* at 157 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  The "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Joiner*, 522 U.S. at 146.  Intellectual rigor requires more than making unsupported assertions in support of an expert's opinion.

The Committee Notes to Rule 702 clearly specify:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Last year in *McCabe*, this Court excluded unsupported expert testimony, applying the same standard articulated above. 2008 WL 2980009, at *3-4. Defendants had argued, among other things, that the expert's testimony consisted "of legal conclusions and other irrelevant observation that would not assist the jury's factual determinations" and was based on an invalid methodology. *Id.* at *3. This Court found that the expert report and deposition of plaintiff's expert was "devoid of any analysis" and that the expert failed to present or explain whatever methodology he used. *Id.* at *5. This Court stated that "[i]t is not sufficient to simply draw on 'experience' without any explanation whatsoever," and excluded the proffered expert testimony. *Id.* at *5.

In addition to requiring valid, supported methodologies in arriving at an expert's conclusions, the opinions proffered also must be based on sufficient facts or data and must fit the particular facts of the case. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. To the extent the methodology or presumptions upon which the opinions are based do not fit the facts of the case, they may be excluded as unhelpful or unreliable. *See Joiner*, 522 U.S. at 146 (finding the studies upon which expert opinions were based were too distinct from the facts of the case at hand).

**B.      Dr. Campion Failed to Base Certain of His Opinions On Sufficient Facts Or Data And Reliable Principles and Methods, Rendering His Opinions Unreliable and Irrelevant.**

Rule 702 requires opinions to be based on sufficient facts or data. Certain of Dr. Campion's opinions do not meet this standard because he admits that he has not had an

opportunity to review many documents necessary to his conclusions.  In formulating his rebuttal to Dr. Papinchock's report he "did not review all of the materials she reviewed because of time constraints."  (Ex. 4, Campion Dep. 30.)  He provides many examples of information he did not receive from EEOC, did not request, or did not know he had in his possession.  (Ex. 4, Campion Dep. 28-30, 41, 82.)  Indeed, Dr. Campion admits that EEOC provided him only with the limited information he identifies in his expert report, to the exclusion of the volumes of relevant information that CRST produced to EEOC in this case.  (Ex. 4, Campion Dep. 28.)  Providing an opinion about information that he has not reviewed is nothing more than speculation.  This is precisely what Rule 702 and *Daubert* seek to prevent.  Without having reviewed sufficient CRST facts or data, Dr. Campion's opinions are not opinions relevant to *this* case.  *Cf. Joiner*, 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

*Daubert* and its progeny also require a sound basis for an expert's opinion prior to admitting it as trial testimony presented to the jury — basically, ensuring that "the testimony is the product of reliable principles and methods."  Fed. R. Evid. 702.  Many opinions presented by Dr. Campion do not meet this standard.  Dr. Campion makes statements based solely upon his personal experience but provides no support, either from literature, research or studies, for his assertions.  Dr. Campion's experience-based opinions do not indicate that his expert opinion is based on "good grounds" as opposed to "subjective speculation that masquerades as scientific knowledge."  *Zeigler v. Fisher-Price, Inc.*, No. C01-3089-PAZ, 2003 WL 25686840, at *3, *10 (N.D. Iowa July 1, 2003) (disallowing expert's "unsupported personal observations").  *See also* Fed. R. Evid. 702 advisory committee's note ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can

be admitted.").  Unsupported statements do not pass muster under *Joiner* and should be excluded.  *Cf. McCabe*, at *5 ("It is not sufficient to simply draw on 'experience' without any explanation whatsoever.").

While there may be some disciplines in which a person's experience alone is adequate, even in those disciplines it may be necessary to inquire as to the acceptance of the methodology by others in that field.  *See Kumho Tire*, 526 U.S. at 151 (stating that even for a witness whose expertise is based purely on experience, such as a perfume tester, it would be useful to ask that witness whether others in the field recognize the preparation as acceptable).  Dr. Campion, however, does not practice in a purely experience-based field, such as perfume-testing; he is a social scientist who in his normal practice relies on testing and published literature (and, in fact, he himself publishes literature).  Here, however, he does not appear to apply the same level of intellectual rigor, but rather asks that the Court and jury rely upon his "assurances."

Throughout his report and deposition are numerous examples in which Dr. Campion bases his conclusions and opinions on his experience, such as: his experience with "orientation training" (Ex. 3, Campion Report 15-16); his "practical experience" (Ex. 4, Campion Dep. 81, 98-99); stating "I would instead rely on my experience" (Ex. 4, Campion Dep. 98); "my experience in working with other companies" (Ex. 4, Campion Dep. 111).  Curiously, with respect to statements for which he relies upon his experience, he admits, "but I -- again, I don't have an analysis that I have done" or reiterates that he has not read or analyzed the relevant literature.  (Ex. 4, Campion Dep. 111.)  However, in an apparent effort to preserve the reliability of his testimony he states, for example, that he "believe[s] [he] could find evidence to suggest that training that is of cursory nature, very short in duration, does not -- does not lead to a high level of learning in terms of knowledge or behavior change."  (Ex. 4, Campion Dep. 77.)  The

time for Dr. Campion to "find evidence" supporting his conclusions was before his rebuttal report was due.

Dr. Campion's statements based upon *unidentified* literature he believes he has seen and his own *undocumented* experiences do not demonstrate the types of statements that are "grounded, well-reasoned, and not speculative" and should be excluded.  For these reasons, Dr. Campion's opinions that are based on insufficient data, inaccurate data, and personal experience without any further support should be excluded.

1.     **Dr. Campion should be precluded from rebutting Dr. Baker's descriptive statistics on the incidence of allegations of sexual harassment at CRST, and, in particular, he should be precluded from testifying that 1 in 10 female employees experienced sexual harassment at CRST.**

In Dr. Campion's rebuttal to Dr. Baker's statistical analysis, he opines that Dr. Baker's statistical analysis should not be limited to the 155 female truck drivers who were deposed in this case, but, instead, should take into account a much broader universe of complaints received by CRST.  (Ex. 3, Campion Report 11-12.)  The reasoning in Magistrate Scoles's order excluding evidence related to the 99 women not produced for depositions in this case applies with even greater force to excluding Dr. Campion's testimony which seeks to expand Dr. Baker's statistical analysis even beyond the 99 women addressed in Magistrate Scoles's order to *any* woman who may have complained.  (*See* 04/16/09 Order, Doc. No. 193, at 7-8.)  Evidence relating to claims that are not at issue in this case are clearly not admissible to prove that sexual harassment occurred, that CRST had a policy of tolerating it, or that it was not effectively stopped by CRST.  Where the undisputed facts establish that a particular claim is not a violation of Title VII, EEOC's expert should not be permitted to include such claims in his rebuttal analysis.  "Mere allegations, no matter how numerous, cannot support a finding that an employer knew or should have known of actual harassment in the workplace."  (*Id.* at 7.)  Such allegations should be

barred under Federal Rule of Evidence 401.  Moreover, the reasoning of Magistrate Judge Scoles's order excluding evidence related to the 99 women who were not produced for depositions is applicable here as well: "To allow evidence regarding . . . complaints in which the complainant is not entitled to recover would unnecessarily 'introduce cumbersome collateral issues.'"  (*Id.* at 8.)  Therefore, Dr. Campion should be precluded from testifying as to his rebuttal analysis concluding that "the total number of women harassed becomes 293" as compared to the 155 female truck drivers who were deposed in this case, "or 10.9% of the total female workforce" and stating "when about 1 in 10 female employees experience sexual harassment at a great enough level to be willing to file a formal claim, it could be considered a large percentage in an absolute (and practical) sense."  (Ex. 3, Campion Report 12.)  Given this Court's April 30, 2009 order granting CRST's motion for summary judgment and dismissing EEOC's pattern or practice claim, this case now involves only the claims of individual female truck drivers.  Any testimony or evidence of Dr. Campion's rebuttal analysis encompassing claims by others is irrelevant and will serve to confuse the jury.

> **2.**      **Dr. Campion should be precluded from testifying that the sexual harassment training provided by CRST is insufficient.**

Dr. Campion opines that the sexual harassment training that drivers receive during orientation is insufficient.  (Ex. 3, Campion Report 15-16.)  His opinion is based on insufficient information and should be excluded.  Dr. Campion openly admits that he has not reviewed the manuals, handbooks, or current policies, practices and procedures at CRST.  (Ex. 4, Campion Dep. 74-76.)  He also states that he "has not had a chance to conduct a thorough review of the literature on HR policies, and thus will not offer opinions on whether CRST's policies conform to the HR practices recommended in the literature."  (Ex. 3, Campion Report 15; Ex. 4, Campion Dep. 72-73.)  Failing to review even these basic materials renders any opinion Dr. Campion

might offer fundamentally deficient.  (Ex. 3, Campion Report 16; Ex. 4, Campion Dep. 79-81.)

He supports his conclusion as to the insufficiency of training, not with any published literature

on human resources policies—because as he admits, he did not analyze any—but with self-

serving statements that he is knowledgeable on the subject (*See* Ex. 4, Campion Dep. 78-79; Ex.

3, Campion Report 15) and with the claim that he is "very well versed in training research and

principles of training and cumulative body of knowledge of what we know about training in

industry." (Ex. 4, Campion Dep. 88.)  Without citing to any authority, Dr. Campion instead

relies on his experience, stating "I can assure you [the CRST training] wouldn't get high scores."

(Ex. 4, Campion Dep. 88.)  Additionally, he opines that the training requirement that drivers sign

a form acknowledging that they have read and understood the sexual harassment policy is

insufficient based on his "practical experience."  He opines that "little learning goes on in an

orientation session about such matters and also . . . having employees sign forms at the time they

are hired cannot be used to conclude that they really understand everything they are signing.  So

the signatures don't to me impress me either."  (Ex. 4, Campion Dep. 81.)  He goes on to testify

that the basis for his belief that new hires sign forms without understanding them is "30 years" of

experience -- "people don't read" or understand the forms they sign.  (Ex. 4, Campion Dep. 97.)

Dr. Campion does not stop there.  In arriving at his conclusion that CRST's training is

insufficient, he also relied upon a negative stereotype he holds about male truck drivers.  (Ex. 4,

Campion Dep. 280-281.)  He states: "I don't mean to stereotype but it's a male-dominated

occupation with a -- with I think men who are kind of, you know, more -- you know, less refined.

Sorry to say that." (Ex. 4, Campion Dep. 280.)  Use of a stereotype is not the type of grounded,

well-reasoned and non-speculative opinion that a court would consider helpful to a jury, nor can

Dr. Campion argue that it is appropriate for an industrial psychologist to base conclusion on

13

stereotypes.  (*See* Ex. 6, Papinchock Dep. 45-47 ("[I]t makes me think about when Dr. Campion in his deposition referred to stereotypes, which sort of shocked me because if any group should not rely on a stereotype for an opinion, it's an industrial psychologist.  I mean, we know how serious the use of a stereotype is.").)

These types of unsubstantiated statements cannot be admitted to support Dr. Campion's conclusion that CRST's training is insufficient.  "[A]n expert's mere belief in the legitimacy of his opinions is insufficient to allow the admissibility of the conclusions reached."  *Kemp v. Tyson Seafood Group, Inc.*, No. Civ. 5-96-173 JRT/RLE, 2000 WL 1062105, at *5 (D. Minn. July 19, 2000).

### 3. Dr. Campion should be precluded from testifying that male drivers at CRST do not understand the sexual harassment policy.

Dr. Campion states that he is "concerned" that male truck drivers who have completed the training program may not understand CRST's policy prohibiting sexual harassment, despite the fact that they attended the training and signed the acknowledgement confirming that they had read and understood the policy.  (Ex. 4, Campion Dep. 81, 84.)

> Q.    Are you aware of instances at CRST in which a man who has completed the orientation program, the driver trainer program, has said that he didn't know that sexual harassment was prohibited at CRST?
>
> A.    See, and that's my concern.
>
> Q.    Are you aware of any man ever saying I went through the training and I didn't realize that CRST prohibited sexual harassment?
>
> A.    That's my concern.
>
> Q.    All right.  But are you aware of anyone ever saying that?
>
> A.    I have no data.  But, see, that's it.  It's not been demonstrated, so I cannot prove it but I believe that's a concern.

(Ex. 4, Campion Dep. 84.)

14

Dr. Campion has no data or other information to demonstrate or support his "concern" that any of the male truck drivers who went through training did not understand that CRST prohibited sexual harassment, and such testimony has no place in this case. (Ex. 4, Campion Dep. 84); *See McCabe*, 2008 WL 2980009, at *5.

> **4.      Dr. Campion should be precluded from testifying that the punishments at CRST are not progressive and are not severe enough.**

With respect to the severity of punishments for sexual harassment complaints, Dr. Campion provides as an opinion his belief that the punishments for sexual harassment at CRST are "generally not severe." (Ex. 3, Campion Report 7-8, 17.)  When asked whether there should have been more employee terminations based on sexual harassment allegations, Dr. Campion testified, "I haven't really studied that.  Can I -- can I freewheel just a little bit?" (Ex. 4, Campion Dep. 110.)  Dr. Campion did not review any of the HR investigation files that CRST produced to EEOC so that he could evaluate the nature of the complaints and the punishments that were given and, thus, did not evaluate the information provided to HR in an effort to determine whether a punishment was severe enough for a given complaint (Ex. 4, Campion Dep. 40-41, 107-108) and whether punishments were progressive; in other words, whether subsequent punishments became more severe.

Dr. Campion relied solely on the Positive Work Environment (PWE) chart (Ex. 4, Campion Dep. 220), which is a document used by CRST's HR department to keep track of complaints made by and against CRST's employees that could potentially be covered by CRST's sexual harassment policy.  For example, in the December 16, 2008, version of the PWE Chart that EEOC attached to its summary judgment response, less than one-third of the entries concern complaints by one of the 155 female truck drivers who were deposed in this case. (Ex. 7, J. Barnes Decl. Ex. 1, EEOC P/P App. 1191-1193.)  As discussed above, all complaints against

CRST drivers other than the specific allegations by female truck drivers who were deposed and the male drivers they accuse of harassment are not relevant and evidence and argument related to them should be excluded because it is unfairly prejudicial to CRST.  This is particularly true in the case of the PWE chart because it merely lists the bare bones of each complaint made, regardless of merit, and notes the ultimate outcome of each complaint in shorthand, without explaining how and why that outcome was reached.  The better source of information relating to punishments with respect to the 155 female truck drivers who were deposed are the HR investigations files for each of the claims reported to HR.

However, without conducting any analysis of the HR investigation files of these female truck drivers, Dr. Campion concludes, in a vacuum, that the sexual harassment punishments were not severe enough.  As this Court found in its April 30, 2009 order granting CRST's motion for summary judgment and dismissing with prejudice EEOC's pattern and practice claim, CRST's investigations do not always produce sufficient information in order to determine whether any violation has occurred in the first instance.  (04/30/09 Order, Doc. No. 197, at 63.)  Plainly, therefore, the actions taken by CRST must take this into account.

Because Dr. Campion did not review the necessary investigation files, rebuttal testimony concluding that CRST's punishments were not progressive and were not severe enough, based on the PWE chart alone, is not sufficiently tied to the facts of this case and is, therefore, not relevant and not helpful.  *See Daubert*, 509 U.S. at 591; *Joiner*, 522 U.S. at 146 (requiring a link between actual data and the methodology employed).  Indeed, he admits that "if time had allowed, I would have liked to have read these files as well.  Absolutely."  (Ex. 4, Campion Dep. 232-233.)

**5.      Dr. Campion should be precluded from testifying that CRST puts women in "harm's way" and, thus, stronger HR policies and practices are required.**

Dr. Campion also concludes that the job of a truck driver puts women's in "harm's way" necessitating stronger HR policies and practices.  (Ex. 3, Campion Report 19.)  Again, Dr. Campion's failure to read literature on the subject of HR policies renders any such testimony inadmissible, particularly in light of his assurance that he "has not had a chance to conduct a thorough review of the literature on HR policies, and thus will not offer opinions on whether CRST's policies conform to the HR practices recommended in the literature."  (Ex. 3, Campion Report 15.)  Rebuttal testimony concluding that CRST needs stronger HR Policies and procedures, absent a thorough review of CRST's policies and procedures and the body of literature on HR policies, is unsupported and unreliable.

**6.      Dr. Campion should be precluded from testifying that CRST does not have a policy against co-drivers having sexual relationships.**

Expert testimony assists the trier of fact to understand the evidence when it provides information beyond the common knowledge of the trier of fact.  *See Kemp*, 2000 WL 1062105, at *5 ("Such an exchange, unaided by a competent foundation, is of no assistance to a Jury. Indeed, if admitted, the expert's bare opinions would usurp the Jury's factfinding function, since the Jury would have nothing, other than the experts' superficial appearance, upon which to accept, or reject, their respective opinions.").

As part of his rebuttal to Dr. Papinchock's report, Dr. Campion states: "The company apparently does not have a policy against co-drivers having sexual relationships, which makes sexual harassment violations more difficult to distinguish or to prevent."  (Ex. 3, Campion Report 8.)  Dr. Campion does not state that such a policy is a recommended practice; instead, he confirms that this is just something he "noted" based on his "observations" of what some other organizations do.  (Ex. 4, Campion Dep. 45-46.)  He states "our concern here" is that the lack of

17

such a policy "might encourage rather than discourage male drivers from making, you know, overtures to women that they are driving with, so we -- we expressed that concern." (Ex. 4, Campion Dep. 46.)  First of all, in light of the fact that he cites to no studies on the subject, and he admits that he cannot opine with respect to recommended human resources practices, it is irrelevant what he believes other organizations might do.  Furthermore, it is not clear how this "observation" would be helpful to the jury, yet he categorizes this "concern" as one of his "opinions," giving it an illusion of credence, rather than a simple observation that any trier of fact can make for him or herself.  Not only is Dr. Campion's presentation of this statement confusing, it is also prejudicial to the extent it implies wrongdoing or failure of CRST to follow a recommended practice and should be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, CRST respectfully requests that this Court enter an order precluding plaintiffs from introducing the testimony of Dr. Michael A. Campion, a witness retained by EEOC to testify as a rebuttal expert at trial, on any or all of the following topics:

(1)     Dr. Campion should be precluded from rebutting Dr. Baker's descriptive statistics on the incidence of allegations of sexual harassment at CRST, and, in particular, he should be precluded from testifying that 1 in 10 female employees experienced sexual harassment at CRST.

(2)     Dr. Campion should be precluded from testifying that the sexual harassment training provided by CRST is insufficient.

(3)     Dr. Campion should be precluded from testifying that the punishments at CRST are not progressive and are not severe enough.

(4)     Dr. Campion should be precluded from testifying that male drivers at CRST do not understand the sexual harassment policy.

18

(5)     Dr. Campion should be precluded from testifying that CRST does not have a
policy against co-drivers having sexual relationships.

(6)     Dr. Campion should be precluded from testifying that CRST puts women in
harms way and, thus, stronger HR policies and practices are required.

Dated:  April 30, 2009                    Respectfully submitted,

                                          **CRST VAN EXPEDITED, INC.**

                                          By:   s/ John H. Mathias, Jr.
                                                One of its attorneys

Kevin J. Visser                           John H. Mathias, Jr.
Thomas D. Wolle                           Robert T. Markowski
Simmons, Perrine, Moyer &                 Sally K. Sears Coder
   Bergman, P.L.C.                        Jenner & Block LLP
115 Third Street SE, Suite 1200           330 N. Wabash Avenue
Cedar Rapids, IA  52401-1266              Chicago, Illinois  60611
319-366-1917                              312-222-9350

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2009, I electronically filed the foregoing **CRST'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF DR. MICHAEL A. CAMPION** with the Clerk of the United States District Court, Northern District of Iowa, Cedar Rapids Division, using the ECF system, which will send notification of such filing to:

Brian C. Tyndall, Esq.
Equal Employment Opportunity Commission
Milwaukee Area Office
310 West Wisconsin Avenue- Suite 800
Milwaukee, WI 53203
brian.tyndall@eeoc.gov

Jeffrey R. Tronvold
Matthew James Reilly
Eells & Tronvold
1921 51st Street NE
Cedar Rapids, Iowa 52402
jeff@eells-tronvold.com
matt@eells-tronvold.com

Nicholas J. Pladson
Equal Employment Opportunity Commission
330 Second Avenue South, Suite 430
Minneapolis, Minnesota 55401
nicholas.pladson@eeoc.gov

Ann Henry
Equal Employment Opportunity
Commission
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Ann.Henry@EEOC.gov

Jean P. Kamp
Equal Employment Opportunity Commission
Chicago District Office
500 W. Madison Street, Suite 2000
Chicago, Illinois 60661
Jean.Kamp@eeoc.gov

Jeanne Szromba
Equal Employment Opportunity
Commission
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Jeanne.Szromba@EEOC.GOV

Kevin J. Visser
Thomas D. Wolle
Simmons, Perrine, Moyer &
    Bergman, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
kvisser@simmonsperrine.com
twolle@simmonsperrine.com

s/John H. Mathias, Jr.
One of Defendant's Attorneys