**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:07-cv-95 |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARKE, LATESHA THOMAS, and NICOLE ANN CINQUEMANO, | ) ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs/Interveners, | ) ) | |
| v. | ) ) | |
| CRST VAN EXPEDITED, INC., | ) ) | |
| Defendant. | ) | |

<u>**CRST VAN EXPEDITED, INC.'S MOTIONS IN LIMINE**</u>

Kevin J. Visser
Thomas D. Wolle
Simmons, Perrine, Moyer &
　　Bergman, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, Iowa 52401-1266

John H. Mathias, Jr.
Robert T. Markowski
Sally K. Sears Coder
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
312-222-9350

## <u>TABLE OF CONTENTS</u>

ARGUMENT ...........................................................................................................................1

1.   **Plaintiffs Should Be Barred From Introducing Evidence Or Argument With The Court's Order Granting CRST Summary Judgment on EEOC's Pattern or Practice Claim.** ............................................................1

2.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations And Claims That Are Not Part Of This Case.** ...................2

   A.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Harassment That Occurred Before February 4, 2005, Or After October 15, 2008.** ................................................2

   B.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations By Female Drivers Who Are Not Asserting Individual Claims.** ............................................................5

   C.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Female Drivers Whose Claims Are Defeated On Summary Judgment.** ..................................................7

   D.   **Plaintiffs Should Be Barred From Introducing Testimony About Alleged Sexual Harassment Experienced By People Other Than The Witness Testifying.** ....................................................8

   E.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Other Types Of Alleged Discrimination** ................12

   F.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Sexual Harassment Of Female Class Members Committed By Female Employees.** ............................................14

   G.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations Of Harassment By Male CRST Employees Who Are Not Lead Or Co-Drivers.** ..........................................15

   H.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Former CRST Fleet Manager Kiley Eisenmann's Allegations of Sexual Harassment.** ..........................................16

   I.   **Plaintiffs Should Be Barred From Introducing CRST's Positive Work Environment Chart, Employee Relations Chart, And the "Lead-No Female Students" Spreadsheet, And From Making Any Reference To Or Argument About The Charts.** ........................................18

3.      EEOC Determination Letters And Any Evidence And Argument
        Concerning Such Determinations Should Be Excluded. ........................19

4.      Plaintiffs Should Be Barred From Using The Unrelated Disciplinary And
        Safety Records Of Men Accused Of Sexual Harassment......................21

5.      Plaintiffs Should Be Precluded From Asking Witnesses To Opine
        Whether Alleged Conduct Constituted Sexual Harassment..................23

6.      Plaintiffs Should Be Barred From Introducing Evidence And Argument
        Related To Offers Of Settlement And Prior Settlements......................25

7.      Plaintiffs Should Be Barred From Arguing That CRST's Sexual
        Harassment Policy And Training Program Are Insufficient, Inadequate,
        Or Deficient. ........................................................................27

8.      The Court Should Limit Evidence And Argument Regarding Damages. ...........30

9.      The Court Should Exclude Evidence And Argument Regarding Front
        Pay. ....................................................................................32

10.     Evidence Of CRST's Net Worth And Finances Should Be Excluded At
        Least Until Punitive Damages Are Relevant In The Case......................32

11.     Plaintiffs Should Be Barred From Arguing That CRST's Efforts To
        Collect Amounts Due On Class Members' Contracts Constitute
        Retaliation............................................................................34

12.     Plaintiffs Should Be Barred From Arguing That Short-Term Delays In
        Training And Driving Constituted Tangible Employment Actions.....................36

13.     Plaintiffs Should Be Barred From Introducing Evidence And Argument
        Regarding Drivers Who Received A "No Female Restriction" And
        Subsequently Drove With A Female Driver, Where There Was No
        Subsequent Complaint Of Sexual Harassment By That Female.......................37

14.     Plaintiffs Should Be Barred From Referring To CRST's Failure To Call
        Or Produce Witnesses Who Are Not Under CRST's Control. ...........................40

15.     Plaintiffs Should Be Barred From Arguing That Other, Unidentified
        Women Have Been Harassed But Are Afraid To Make Claims. ........................41

16.     Plaintiffs Should Be Barred From Introducing Evidence And Argument
        Regarding Criminal Charges or Accusations Against Men Accused Of
        Harassment That Resulted In Acquittal.................................................43

17.     Plaintiffs Should Be Barred From Introducing Evidence And Argument
        Regarding Alleged Harassers' Convictions For Sexual Offenses.........................43

18.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Harassers' Convictions For Crimes Other Than Sexual Offenses**................................................................................45

19.   **Plaintiffs Should Be Barred From Comparing This Case To Other Cases Brought By EEOC.** ...............................................................46

20.   **CRST Requests The Court To Instruct The Jury That CRST Is Precluded By Law From Requesting That Employees Take Lie Detector Tests**.......................................................................................46

21.   **CRST Requests That The Court Exclude Claims For Personal Property Left On Trucks.**................................................................47

22.   **Plaintiffs Should Be Barred From Introducing Photographs Or Photocopies Of Photographs Of The Alleged Bruises Female Drivers Claim They Received.** ................................................................48

23.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding The Fact That Cynthia Moffett Was Charged With And Acquitted Of Two Counts of Aggravated Battery.** .................................50

24.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument That Cynthia Moffett Was Displaced By Hurricane Katrina.** .............52

25.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Relating To Barbara Wallace's Truck Accident While Employed By CRST.**.........................................................................................53

26.   **EEOC's Expert, Dr. Campion, Should Be Barred From Offering Any Testimony During Plaintiffs' Case, And Should Be Limited To Rebuttal Testimony Only.** ..................................................................53

27.   **Plaintiffs Should Be Barred From Introducing Expert Testimony That Was Not Disclosed in Its Expert's Rebuttal Report.** ..............................54

28.   **Plaintiffs Should Be Barred From Introducing Expert Testimony Regarding Whether CRST's Practices and Procedures Conform With Recommended Practices in the Human Resources Literature.**.....................56

29.   **CRST's Motion in limine to preclude the EEOC from offering evidence or argument regarding the solicitation of class members And for additional relief.** .......................................................................57

A.    **Key Factual Background**..........................................................58

B.    **EEOC Chose to Designate a 30(b)(6) Witness Who Lacked Knowledge**..............63

**C.      The Court May Sanction EEOC for Its Violation of Rule 30(b)(6) and the January 20, 2009 Order**...........................................................................................**65**

**CONCLUSION** .....................................................................................................................**67**

# <u>TABLE OF AUTHORITIES</u>

**Pages**

**Cases**

*Abebe v. City of Waterloo*,
    No. C98-2074 MJM, 2000 WL 34030862 (N.D. Iowa Sept. 7, 2000) ..................................... 21

*Adams v. O'Reilly Automotive, Inc.*,
    538 F.3d 926 (8th Cir. 2008) ................................................................................................ 6

*Albert v. Ober Gatlinburg, Inc.*,
    No. 3:02-CV-277, 2006 WL 897958 (E.D. Tenn. Apr. 6, 2006)........................................... 53

*Bank of New York v. Meridien Biao Bank Tanzania, Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997) ........................................................................................ 63

*Benedict v. Zimmer*,
    405 F. Supp. 2d 1026 (N.D. Iowa 2005)............................................................................. 29

*Berry v. Oswalt*,
    143 F.3d 1127 (8th Cir. 1998) ............................................................................................ 22

*Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*,
    228 F.3d 275 (3d Cir. 2000) ......................................................................................... 64, 65

*Bradford v. Norfolk S. Corp.*,
    54 F.3d 1412 (8th Cir. 1995) .............................................................................................. 52

*Brooks v. CBS Radio, Inc.*,
    No. 07-0519, 2007 WL 4454312 (E.D. Pa. Dec. 17, 2007)................................................ 13

*Buhmeyer v. Case New Holland, Inc.*,
    No. 3:04-CV-90095, 2006 WL 1722333 (S.D. Iowa June 22, 2006)................................... 31

*Burke v. Deere & Co.*,
    6 F.3d 497 (8th Cir. 1993) , *cert. denied*, 510 U.S. 1115 (1994)............................................. 34

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998).................................................................................................... 27, 36

*Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*,
    201 F.R.D. 33 (D. Mass. 2001)........................................................................................... 64

*Carrington v. City of Des Moines, Iowa*,
    481 F.3d 1046 (8th Cir.2007) ............................................................................................. 35

*Chadwell v. Koch Ref. Co.*,
251 F.3d 727 (8th Cir. 2001) .................................................................. 10

*Coleman v. Rahija*,
114 F.3d 778 (8th Cir. 1997) .................................................................. 33

*Cook v. City of Elkader*,
No. C03-1029, 2005 WL 331389 (N.D. Iowa Feb. 11, 2005).................. 42

*Cotton v. District of Columbia*,
541 F. Supp. 2d 195 (D.C. Cir. 2008).................................................... 30

*Crimm v. Mo. Pac. R.R. Co.*,
750 F.2d 703 (8th Cir. 1984) .................................................................. 40

*CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*,
No. CIV-04-651-F, 2006 WL 335765 (W.D. Okla. Feb. 14, 2006) ......... 34

*Currie v. Haywood County*,
234 Fed. Appx. 369 (6th Cir. 2007)........................................................ 29

*Dahlgren v. First Nat'l Bank of Holdrege*,
533 F.3d 681 (8th Cir. 2008) .................................................................. 26

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 578 (1993)............................................................................... 27

*Dick v. Phone Directories Co.*,
397 F.3d 1256 (10th Cir. 2005) .............................................................. 10

*Dravo Corp. v. Liberty Mutual Ins. Co.*,
164 F.R.D. 70 (D. Neb 1995).................................................................. 63

*Duy Ngo v. Storlie*,
No. 03-3376, 2006 WL 1579873 (D. Minn. June 2, 2006) ..................... 29

*EEOC v. UMB Bank Fin. Corp.*,
558 F.3d 784 (8th Cir. 2009) ....................................................... 6, 16, 17

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)............................................................................... 27

*Greyhound Lines, Inc. v. Miller*,
402 F.2d 134 (8th Cir. 1968) .................................................................. 25

*Harlston v. McDonnell Douglas Corp.*,
37 F.3d 379 (8th Cir. 1994) .................................................................... 36

*Harris v. Smith*,
   372 F.2d 806 (8th Cir. 1967) ............................................................ 24

*Hogan v. Am. Tel. & Tel. Co.*,
   812 F.2d 409 (8th Cir. 1987) ............................................................ 24

*Holly D. v. Cal. Inst. of Tech.*,
   339 F.3d 1158 (9th Cir. 2003) ........................................................... 28

*Honda Motor Co. v. Oberg*,
   512 U.S. 415 (1994)......................................................................... 34

*Huber v. Hovey*,
   501 N.W.2d 53 (Iowa 1993) .............................................................. 47

*Johnson v. Ashby*,
   808 F.2d 676 (8th Cir. 1987) ............................................................ 38

*Johnson v. Elk Lake Sch. Dist.*,
   283 F.3d 138 (3d Cir. 2002) ............................................................. 44

*Johnson v. Yellow Freight Sys., Inc.*,
   734 F.2d 1304 (8th Cir. 1984) ........................................................... 20

*Jones v. Cargill*,
   490 F. Supp. 2d 989 (N.D. Iowa 2007)..................................... 20, 32, 40

*Jones v. Clinton*,
   993 F. Supp. 1217 (E.D. Ark. 1998)..................................................... 44

*Keefer v. Provident Life & Acc. Ins. Co.*,
   238 F.3d 937 (8th Cir. 2000) ............................................................ 65

*Kemp v. Balboa*,
   23 F.3d 211 (8th Cir. 1994) ............................................................... 9

*Kline v. City of Kansas City, Mo. Fire Dep't*,
   175 F.3d 660 (8th Cir. 1999) ............................................................. 5

*Kline v. Mansfield*,
   255 Fed. Appx. 624 (3d Cir. 2007)....................................................... 29

*Kramer v. Logan Cty. Sch. Dist.*,
   157 F.3d 620 (8th Cir. 1998) ............................................................ 32

*Little Earth of United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*,807 F.2d 1433 (8th Cir.
   1986) ....................................................................................... 1

*Littleton v. McNeely,*
    --- F.3d ---, 2009 WL 938999 (8th Cir. April 9, 2009) ........................................... 48

*Marker v. Union Fidelity Life Ins. Co.,*
    125 F.R.D. 121 (M.D.N.C. 1989) ........................................................................ 65

*Marmo v. Tyson Fresh Meats, Inc.,*
    457 F.3d 748 (8th Cir. 2006) ............................................................................... 54

*McCown v. St. John's Health Sys.,*
    349 F.3d 540 (8th Cir. 2003) ............................................................................... 13

*McCrary-El v. Shaw,*
    992 F.2d 809 (8th Cir. 1993) ................................................................................. 9

*Michelson v. United States,*
    335 U.S. 469 (1948) ............................................................................................. 43

*Mitroff v. Xomox Corporation,*
    797 F.2d 271 (6th Cir. 1986) ............................................................................... 24

*Nair v. Columbus States Cmty. Coll.,*
    No. 2:02-cv-595, 2008 WL 3822341 (S.D. Ohio Aug. 12, 2008) ........................ 14

*Newhouse v. McCormick & Co., Inc.,*
    110 F.3d 635 (8th Cir. 1997) ............................................................................... 32

*Ogden v. Wax Works, Inc.,*
    29 F. Supp. 2d 1003 (N.D. Iowa 1998) ............................................................... 32

*Olivas v. ITT Hartford Life & Annuity Ins. Co.,*
    No. 94-55335, 1995 WL 349855 (9th Cir. June 9, 1995) ..................................... 42

*Olle v. Columbia Univ.,*
    332 F. Supp. 2d 599 (S.D.N.Y. 2004) ................................................................. 13

*Parsons v. First Investors Corp.,*
    122 F.3d 525 (8th Cir. 1997) ............................................................................... 32

*Paster v. Pa. R.R.,*
    43 F.2d 908 (2d Cir. 1930) .................................................................................. 26

*Prince v. Lockhart,*
    971 F.2d 118 (8th Cir. 1992) ......................................................................... 50, 51

*ProBatter Sports, LLC v. Joyner Techs., LLC,*
    2007 WL 2752080 (N.D. Iowa 2007) .................................................................. 54

*Prokosch v. Catalina Lighting, Inc.*,
193 F.R.D. 633 (D. Minn. 2000)..................................................... 63

*Rauh v. Coyne*,
744 F. Supp. 1181 (D.D.C. 1990) ................................................ 13

*Resolution Trust Corp. v. Southern Union Co., Inc.*,
985 F.2d 196 (5th Cir. 1993) ...................................................... 65

*Rivera v. Baccarat, Inc.*,
No. 95 Civ. 9478 MBM JCF, 1997 WL 777887 (S.D.N.Y. Dec. 15, 1997) ............................ 14

*Rizzo v. United States*,
304 F.2d 810 (8th Cir. 1962) ...................................................... 43

*Rooney v. Sprague Energy Corp.*,
519 F. Supp. 2d 110 (D. Maine 2007) ......................................... 31

*Schmidt v. City of Bella Villa*,
557 F.3d 564 (8th Cir. 2009) ...................................................... 49

*Schoonover v. Schneider National Carriers, Inc.*,
492 F. Supp. 2d 1103 (S.D. Iowa 2007) ..................................... 37

*Singh v. Allen Mem'l Hosp.*,
No. 04-CV-2090-LRR, 2006 WL 2051311 (N.D. Iowa July 20, 2006)................................... 13

*Starlight Int'l Inc. v. Herlihy*,
186 F.R.D. 626 (D. Kan. 1999) .................................................. 65

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)..................................................................... 34

*Thompson v. United Transp. Union*,
2008 WL 5070691 (N.D. Iowa Nov. 6, 2008) ............................ 16

*TransClean Corp. v. Bridgewood Servs., Inc.*,
101 F. Supp. 2d 788 (D. Minn. 2000)..................................... 56, 57

*Travelers Cas. & Sur. Co. of Am. v. Ernst & Young, LLP*,
542 F.3d 475 (5th Cir. 2008) ...................................................... 30

*U.S. v. Riley*,
684 F.2d 542 (8th Cir. 1982) ...................................................... 51

*U.S. v. Aranda*,
963 F.2d 211 (8th Cir. 1992) ...................................................... 22

*U.S. v. Big D Enters., Inc.*,
184 F.3d 924 (8th Cir. 1999) ................................................................. 33

*U.S. v. Burton*,
898 F.2d 595 (8th Cir. 1990) ................................................................. 41

*U.S. v. Jones*,
266 F.3d 804 (8th Cir. 2001) ................................................................. 50

*U.S. v. Jones*,
808 F.2d 561 (7th Cir. 1986) ................................................................. 51

*U.S. v. Lyon*,
567 F.2d 777 (8th Cir. 1977), *cert. denied*, 435 U.S. 918 (1978)............ 9

*U.S. v. Madden*,
482 F.2d 850 (8th Cir. 1973) ................................................................. 43

*U.S. v. Marrero-Ortiz*,
160 F.3d 768 (1st Cir. 1998)................................................................. 51

*U.S. v. Mothershed*,
859 F.2d 585 (8th Cir. 1988) ................................................................. 45

*U.S. v. Oliver*,
908 F.2d 260 (8th Cir. 1990) ................................................................. 9

*U.S. v. Schneider*,
157 F. Supp. 2d 1044 (N.D. Iowa 2001)................................................. 47

*U.S. v. Sheridan*,
No. 06-CR-115-LRR, 2006 WL 3523544 (N.D. Iowa Dec. 6, 2006) ................ 51

*U.S. v. Sumner*,
119 F.3d 658 (8th Cir. 1997) ................................................................. 44

*U.S. v. Sutton*,
732 F.2d 1483 (10th Cir. 1984) ............................................................. 51

*U.S. v. Taylor*,
166 F.R.D. 356 (M.D.N.C. 1996) ...................................................... 64, 65

*U.S. v. Viserto*,
596 F.2d 531 (2d Cir. 1979) ................................................................. 51

*U.S. v. Zaccaria*,
240 F.3d 75 (1st Cir. 2001)................................................................. 47

*United States v. Kerley*,
    643 F.2d 299 (5th Cir.1981) ................................................................ 50, 51

*Wegener v. Johnson*,
    527 F.3d 687 (8th Cir. 2008) ......................................................... 55, 56, 57

*Weger v. City of Ladue*,
    500 F.3d 710 (8th Cir. 2007) ................................................................. 35

*Williams v. Little Rock Mun. Water Works*,
    21 F.3d 218 (8th Cir. 1994) ................................................................... 16

**Statutes**

22 U.S.C. § 2002 ......................................................................................... 46

42 U.S.C. § 1983 ......................................................................................... 29

42 U.S.C. § 2000e-5(e)(1) ............................................................................ 3

**Other Authorities**

29 C.F.R. § 1626.13 ...................................................................................... 3

29 C.F.R. §§ 1601.10 ..................................................................................... 3

Fed. R. Civ. P. 30(b)(6) ..................................................................... 63, 64, 65

Fed. R. Civ. P. 37 ............................................................................. 57, 65, 66

Fed. R. Evid. 401 ................................................................... 8, 11, 14, 33

Fed. R. Evid. 402 ....................................................... 10, 12, 13, 33, 45, 50

Fed. R. Evid. 403 . 3, 5, 8, 11, 12, 13, 14, 16, 18, 20, 21, 27, 35, 38, 40, 42, 43, 44, 45, 46, 48, 50, 51, 53

Fed. R. Evid. 404 ......................................................... 21, 22, 23, 43, 45

Fed. R. Evid. 408 ................................................................ 25, 26, 27

Fed. R. Evid. 413 Historical Notes ....................................................... 44

Fed. R. Evid. 414 .................................................................................. 44

Fed. R. Evid. 415 ........................................................................... 43, 44

Fed. R. Evid. 602 .......................................................................... 9, 42

Fed. R. Evid. 608 .......................................................................................................... 23

Fed. R. Evid. 609 .................................................................................................... 45, 46

Fed. R. Evid. 609, Notes of Committee on the Judiciary, Senate Report No. 93-1277 ............... 46

Fed. R. Evid. 701 .............................................................................................. 23, 30, 42

Fed. R. Evid. 702 .......................................................................................................... 30

Fed. R. Evid. 704(a) ...................................................................................................... 20

Fed. R. Evid. 801(c) ...................................................................................................... 10

Fed. R. Evid. 802 .......................................................................................................... 50

Fed. R. Evid. 803 .......................................................................................................... 50

Fed. R. Evid. 804 .......................................................................................................... 10

Iowa Administrative Code § 161-1.6(216) ..................................................................... 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:07-cv-95 |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARKE, LATESHA THOMAS, and NICOLE ANN CINQUEMANO, | ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs/Interveners, | ) ) | |
| v. | ) ) | |
| CRST VAN EXPEDITED, INC., | ) ) | |
| Defendant. | ) | |

Defendant CRST Van Expedited, Inc. ("CRST") respectfully requests that the Court grant the following motions in limine.[1]

## ARGUMENT

1. **Plaintiffs Should Be Barred From Introducing Evidence Or Argument Inconsistent With The Court's Order Granting CRST Summary Judgment on EEOC's Pattern or Practice Claim.**

Evidence and argument inconsistent with the Court's orders are barred by the law of the case doctrine. *Little Earth of United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1438 (8th Cir. 1986) ("The law of the case doctrine applies to issues implicitly decided in

---

[1]    In light of this Court's April 30, 2009 Order granting CRST's motion for summary judgment and dismissing with prejudice EEOC's pattern or practice claim, and this Court's April 30, 2009 Order overruling EEOC's Objections to Magistrate Judge Scoles Ruling on the Motion to Strike the 99 women who EEOC did not produce for deposition by January 15, 2009, a number of the evidentiary issues raised in CRST's Motions in Limine have been decided. Counsel for CRST intends to meet and confer with counsel for EEOC about these issues and will inform the Court which Motions the parties agreed upon.

earlier stages of the same case."). Plaintiffs should be barred from introducing any evidence or argument inconsistent with the Court's order granting CRST summary judgment on EEOC's pattern and practice claim, such as any statements that suggest or imply that CRST has a pattern or practice of tolerating sexual harassment. (See 4/30/09 Order Granting Pattern or Practice SJ, Doc. No. 197.)

**2.      Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations And Claims That Are Not Part Of This Case.**

The only relevant claims of sexual harassment in this case are those between female drivers whom EEOC produced for a deposition and the alleged harassers about whom deposed female drivers complained.[2] Plaintiffs therefore should be barred from introducing evidence or argument related to all other allegations and claims, including but not limited to the specific categories that follow.

**A.      Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Harassment That Occurred Before February 4, 2005, Or After October 15, 2008.**

Plaintiffs should be barred from introducing evidence of alleged harassment that occurred prior to February 4, 2005, or after October 15, 2008.

Magistrate Judge Scoles has ruled that complaints of alleged incidents of sexual harassment occurring after October 15, 2008, were not discoverable and the law of the case bars evidence and argument about such complaints. Magistrate Judge Scoles denied EEOC's motion to compel production of any such complaints. (2/17/09 Order, Doc. No. 151, at 5.) Magistrate Judge Scoles reasoned, correctly, that since the deadline for completion of discovery had passed, complaints filed after October 15, 2008, were mere allegations that could not lead to the

---

[2]      Evidence and argument related to the 99 women listed as class members whom EEOC did not produce for a deposition is excluded by Magistrate Judge Scoles' order, as to which Chief Judge Reade recently overruled EEOC's objections. (4/16/09 Order, Doc. No. 193, at 8; 4/30/09 Order on Ruling on Mot. to Strike, Doc. No. 198.)

discovery of relevant information.   (*Id.*)   The incidents therefore had marginal relevance "at best."   (*Id.*)   "Mere allegations of sexual harassment cannot be relied upon by EEOC to establish a pattern or practice, or to support an award of punitive damages or injunctive relief."   (*Id.*) Moreover, as Magistrate Judge Scoles has pointed out, EEOC possesses evidence spanning a period of 45 and one-half months:   "If EEOC cannot establish a pattern or practice of sexual harassment during that time frame, it is doubtful that an additional three months of information will get the job done."   (*Id.*)   Therefore, the law of the case bars use of complaints of alleged incidents occurring after October 15, 2008.

Magistrate Judge Scoles' reasoning concerning post-October 15, 2008, complaints applies with equal force to evidence of alleged sexual harassment prior to February 4, 2005. Alleged harassment that occurred prior to February 4, 2005, is not actionable because it is barred by Title VII's statute of limitations, 42 U.S.C. § 2000e-5(e)(1).[3]   Likewise, as detailed in its statue of limitations briefing, there is no basis for extending the relevant period earlier than 2005. (CRST Limitations SJ Brief, Doc. No. 147, at 4-5.)

Moreover, even if claims of harassment prior to February 4, 2005, were timely (which they are not), and even if the relevant period extended earlier than 2005 (which it should not), evidence of alleged sexual harassment that occurred before February 4, 2005, should be excluded under Federal Rule of Evidence 403 because, like conduct occurring after October 15, 2008, it is at best marginally relevant, and it is unfairly prejudicial in light of the parties' understanding that the discovery period commenced with events occurring in 2005.   Just as Magistrate Judge Scoles

---

[3]   Monika Starke filed the initiating charge in this case with the Iowa Civil Rights Commission on December 1, 2005. Consequently, the limitations period extends back 300 days to February 4, 2005.   42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. §§ 1601.10, 1626.13, Iowa Administrative Code § 161-1.6(216).   See CRST's Brief Supporting Its Motion for Summary Judgment Based on Statute of Limitations and Other Grounds ("CRST Statute of Limitations Br.") (CRST Statute of Limitations Br., Doc. No. 147-5, at 2-5) for a full discussion.

held with regard to the 99 class members EEOC did not produce for deposition in this case, CRST "has not had an opportunity to examine" the relevant witnesses "regarding the factual basis for their allegations" of events prior to 2005, and CRST "cannot, therefore, effectively respond to those complaints." (*See* 4/16/09 Order, Doc. No. 193, at 7.)

Indeed, EEOC itself has acknowledged that 2005 is the appropriate date to commence discovery in this case. Nearly all of the EEOC's document requests seek information relating to each complaint of sexual harassment received by CRST since 2005. (*See*, *e.g.*, EEOC's Tenth Req. for Produc. of Docs., Doc. No. 137-3; at 2, 4; EEOC's Twelfth Req. for Produc. of Docs., Doc. No. 137-4, at 2-3.) And, throughout the year-plus discovery period, EEOC did not challenge CRST's consistent objection to producing materials predating 2005,[4] with one limited exception.[5] (*See, e.g.*, General Objection ¶ 4 in each of CRST's Resps. to EEOC's Reqs. for Produc., and specific objections in CRST's Resp. to EEOC Req. for Produc. Nos. 24-31 & 33, Doc. No. 137-5.)

Because the parties have not and should not have conducted discovery concerning any and all claims of sexual harassment prior to 2005, CRST would be prejudiced if evidence of such claims were admitted into evidence — claims that may not constitute violations of CRST's anti-harassment policy or applicable law. The prejudice to CRST if such evidence is entered at trial, in light of its marginal value, outweighs any potential benefit to EEOC, particularly given that discovery was not been conducted concerning all pre-2005 complaints. Furthermore, evidence

---

[4]     Subject to its objections, CRST produced limited, specific materials relating to individual female drivers produced by EEOC for deposition whose claims of sexual harassment predate January 2005 and certain materials relating to sex harassment training prior to 2005. CRST moved for summary judgment on untimely claims. (CRST Statute of Limitations SJ Mot., Doc. No. 147.)

[5]     EEOC filed a motion to compel the production of periodic Human Resources reports relating to sexual harassment complaints pre-dating January 1, 2005. (EEOC's Mot. to Compel Discovery, Doc. No. 133.)

of alleged sexual harassment that took place outside the 45-and-a-half month period on which the parties focused in discovery would introduce collateral issues of only marginal relevance.  It should be excluded under Federal Rule of Evidence 403.

There is also a danger that the jury will improperly consider evidence of alleged sexual harassment that occurred prior to the limitations period in a damages calculation, if any.  Damages may not be predicated on events that occur prior to the limitations period.  *See Kline v. City of Kansas City, Mo. Fire Dep't*, 175 F.3d 660, 666-67 (8th Cir. 1999).  Because in this case the liability and damages phases are not bifurcated, that risk is heightened by admission of pre-limitation period incidents.  (*See* Mot. to Exclude Evidence of CRST's Net Worth and Finances, § 10, *infra*.)

## B. Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations By Female Drivers Who Are Not Asserting Individual Claims.

EEOC, Interveners, and EEOC's expert Dr. Michael A. Campion should be barred under Federal Rule of Evidence 403 from offering evidence and argument related to, referring to, or relying upon any allegations, complaints, or reports made by anyone other than the female drivers whose claims are at issue in this action,[6] for the same reasons that Magistrate Judge Scoles excluded evidence related to the 99 women the EEOC listed as class members whom EEOC did not produce for a deposition in this case.  (*See* 4/16/09 Order, Doc. No. 193, at 6-8.)  As Magistrate Judge Scoles held with regard to undeposed female drivers, CRST "has not had an

---

[6]     Evidence and argument relating to the eight women as to whom EEOC conceded that "if CRST wins its pending motion for summary judgment based on pattern and practice, [their] claims would not meet the standard for severe and pervasive harassment in an individual sex harassment case," should also be excluded.  (EEOC Combined SJ Resp., Doc. No. 166, at 67; CRST Severe or Pervasive SJ Reply, Doc. No. 183, at 2.)  These women are Christie Basye, Kathy Cannoles, Andrea Cantrell, Joanna Carney, Helen Ferell, Madeline Lovins, Laura Taylor, and Laurie Thompson.

opportunity to examine [those] women regarding the factual basis for their allegations and cannot, therefore, effectively respond to those complaints." (*Id.* at 7.)

Moreover, in order to prove allegations by female drivers not asserting individual claims at trial, the court would have to conduct innumerable mini-trials, without the benefit of discovery on those allegations. As Magistrate Judge Scoles pointed out, "[t]his case already has 155 'class members.'" (*Id.* at 8.) Admitting evidence regarding complaints from women who are not entitled to recover "would unnecessarily 'introduce cumbersome collateral issues'" and "'[w]e have enough to manage.'" (*Id.* at 8, quoting *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009).)

EEOC and Interveners also cannot rely upon the fact that other women complained of sexual harassment without first proving that Title VII harassment in fact occurred: "[B]are allegations, without any proof as to their truth or falsity, cannot be used to establish a pattern or practice of unlawful employment activity," and "[m]ere allegations, no matter how numerous, cannot support a finding that an employer knew or should have known of actual harassment in the workplace." (*Id.* at 6-7; *see also Adams v. O'Reilly Automotive, Inc.*, 538 F.3d 926, 930 (8th Cir. 2008).) The probative value of such "bare complaints" is "substantially outweighed by the danger of unfair prejudice and confusion of the issues." (4/16/09 Order, Doc. No. 193, at 7; *UMB Bank Fin.*, 558 F.3d at 794.)

EEOC's objections to Magistrate Scoles' order on CRST's motion to strike, which this Court overruled in its April 30 order, exemplify the improper arguments that CRST seeks to exclude. For example, EEOC argues that complaints made by the 99 women are relevant "not for the truth of any particular one, but because of the notice they provided to CRST of the extent and nature of the problem." (EEOC's Objections to Ruling on Mot. to Strike, Doc. No. 196, at 7.) EEOC fails to explain how complaints that cannot be relied upon as true could be evidence

of "the extent and nature of the problem."   Similarly, EEOC argues that the complaints "are further evidence of the failure of CRST to provide training to its male and female employees about sexual harassment."  (*Id.* at 7.)  The complaints are not evidence that the allegations within them actually occurred, so they can have no bearing on whether or not CRST's training was sufficient.   The Court should bar EEOC from making any reference to allegations by women whose claims are not part of this action in order to prevent EEOC from confusing and misleading the jury with such unfounded arguments.

C.     **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Female Drivers Whose Claims Are Defeated On Summary Judgment.**

The EEOC should not be permitted to introduce evidence at trial related to the allegations of women whose claims are defeated on summary judgment.   CRST moved for summary judgment as to the claims of 121 deposed female drivers.  (*See* Summ. of CRST SJ Claims, CRST Supp. App. 3421-3429.)[7]  To the extent the Court grants CRST's motions, those women should be barred from testifying and EEOC and Interveners should not be permitted to introduce evidence relating to their allegations.   The reasoning in Magistrate Scoles' order excluding evidence related to the 99 women not produced for depositions applies with even greater force to excluding these defeated claims.  (*See* 4/16/09 Order, Doc. No. 193, at 7.)

Allegations relating to claims that are defeated because of the claimant's failure to report alleged harassment, CRST's prompt and effective response to their complaints, or because the claimant did not experience severe or pervasive sexual harassment are clearly not admissible to prove that sexual harassment of any other individual occurred, that CRST had a policy of tolerating it, or that it was not effectively stopped by CRST.   Where the undisputed facts establish that a particular claim is not a violation of Title VII, EEOC and Interveners should not

---

[7]     All references to "CRST Supp. App." refer to CRST's Supplemental Appendix filed with CRST's Summary Judgment Reply briefs, found at Doc. No. 186.

be permitted to argue otherwise.  The allegations that support claims that fail as a matter of law have no tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence.  "Mere allegations, no matter how numerous, cannot support a finding that an employer knew or should have known of actual harassment in the workplace."  (*Id.* at 7.)  Such allegations should be barred under Federal Rule of Evidence 401.

Similarly, allegations that are defeated because of judicial estoppel based on the claimant's representations to a bankruptcy court that no such claim existed, or because they are untimely under the statute of limitations, or because (as to Interveners' state law claims) the cause of action did not arise in Iowa should also be barred because they have no probative value with respect to other women's allegations.  The nature of each claim in this case is highly individualized.  The alleged harassment took place in various workplaces and was carried out by different alleged harassers.  Evidence as to one incident is not relevant to prove the others, and will only confuse the jury and waste time.  Moreover, the reasoning of Magistrate Judge Scoles' order excluding evidence related to the 99 women who were not produced for depositions is applicable here as well: "To allow evidence regarding . . . complaints in which the complainant is not entitled to recover would unnecessarily 'introduce cumbersome collateral issues.'"  (*Id.* at 8.)  All sexual harassment allegations that cannot survive as independent claims therefore should be barred as evidence for other claims under Federal Rules of Evidence 401 and 403.

**D.    Plaintiffs Should Be Barred From Introducing Testimony About Alleged Sexual Harassment Experienced By People Other Than The Witness Testifying.**

Testimony about alleged sexual harassment experienced by people other than the witness testifying should be excluded.  CRST anticipates that during the trial, Plaintiffs' counsel may seek to elicit testimony concerning allegations of sexual harassment allegedly reported to the

witness by other CRST employees.  For example, in EEOC's Statement of Additional Material Facts Which Preclude Summary Judgment on EEOC's Pattern or Practice Claim (EEOC P/P AF), EEOC identified certain female drivers who allegedly "heard of sex harassment of other women at CRST, from other drivers at CRST."  (EEOC Pattern or Practice SJ Add. Fact St. ¶ 309, Doc. No. 168-6;[8] *but see* CRST Resp. to EEOC Pattern or Practice SJ Add. Fact St. ¶ 309, Doc. No. 185-3, denying that the record supports EEOC's statement.)  EEOC also questioned female drivers about others' allegations of sexual harassment during depositions.  (*See, e.g.*, Ex. 1, McCain Dep. 79-81.)  Such testimony should be barred for six reasons: (1) it is not based on personal knowledge; (2) it is inadmissible hearsay; (3) it is irrelevant; (4) its probative value is outweighed by unfair prejudice; (5) to the extent such testimony concerns the 99 women listed as class members but not produced for depositions, it violates Magistrate Judge Scoles' April 16, 2009 Order; and (6) it would unnecessarily prolong an already lengthy trial with duplicative evidence and collateral issues.

First, testimony about allegations made by others should be excluded where the witness lacks personal knowledge of the events giving rise to the allegations.  Federal Rule of Evidence 602 specifies that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  The Eighth Circuit has interpreted Rule 602 to exclude "testimony concerning matter the witness did not observe or had no opportunity to observe."  *United States v. Lyon*, 567 F.2d 777, 783-4 (8th Cir. 1977), *cert. denied*, 435 U.S. 918 (1978) (citation omitted); *see also Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994) (following *Lyon*); *McCrary-El v. Shaw*, 992 F.2d 809, 811 (8th Cir. 1993) (same); *United States v. Oliver*, 908 F.2d 260, 263 (8th Cir. 1990) (same).  A witness testifying about

---

[8]    All references to "EEOC Pattern or Practice SJ Add. Fact St." refer to EEOC's Corrected Statement of additional facts.

alleged sexual harassment of others without having personally seen or heard the events described lacks personal knowledge of the conduct constituting the alleged harassment.

Second, testimony concerning alleged sexual harassment experienced by others is inadmissible hearsay.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c).  A witness who testifies about statements made by another individual, describing alleged sexual harassment, is making "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," because the witness is offering the absent coworker's statements to prove that the conduct the coworker experienced (1) actually occurred and (2) qualified as sexual harassment.  None of the exceptions to hearsay in Rules 803 and 804 apply to permit such testimony, and "[h]earsay evidence may not be admitted unless it falls into one of the recognized hearsay exceptions . . . ."  *Chadwell v. Koch Ref. Co.*, 251 F.3d 727, 731 (8th Cir. 2001) (excluding notes containing out-of-court statements regarding plaintiff's out-of-court statements).

In a Title VII claim for sexual harassment, statements made by the plaintiff's co-workers are excluded as hearsay.  *See, e.g.*, *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1266 n.5 (10th Cir. 2005) (citation omitted) (reversing summary judgment while affirming the district court's exclusion of hearsay evidence in a case involving same-sex harassment).  In *Dick*, for example, the Tenth Circuit affirmed the district court's exclusion of two types of testimony as hearsay: (1) testimony of plaintiff's coworker that a second coworker told the first coworker that she was a lesbian; and (2) general statements that the office was known as a "lesbian factory."  *Id.*

Third, testimony about the alleged sexual harassment of others is irrelevant and should be excluded under Federal Rule of Evidence 402.  Relevant evidence is "evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. A witness' testimony about the alleged experiences of another person has no bearing on the jury's determination as to whether the witness herself experienced sexual harassment, because an unrelated incident of alleged harassment experienced by another person does not make it more or less probable that the witness experienced conduct that could be construed as sexual harassment.

Fourth, even if deemed relevant, this Court has discretion to exclude testimony about others' allegations of sexual harassment because the danger of prejudice to CRST substantially outweighs its probative value; because the testimony has the potential to confuse the issues and mislead the jury; and because the testimony would be a "waste of time." FED. R. EVID. 403. The danger of unfair prejudice from testimony by a witness about alleged sexual harassment of others substantially outweighs any probative value the testimony may have. For example, the jury may believe that the alleged sexual harassment experienced by another person is related to the witness' situation. This is especially misleading in light of the fact that EEOC reached out to all CRST female drivers employed by CRST as of January 1, 2005, to ascertain who had allegations of sexual harassment against CRST and whether each wanted to be in the lawsuit. Allegations of harassment experienced by women who did not respond to EEOC's solicitation should not be introduced as evidence through the testimony other witnesses when the women themselves declined to join EEOC's lawsuit.

Fifth, to the extent such testimony concerns the 99 women listed as class members but not produced for depositions, it violates Magistrate Judge Scoles' order excluding evidence related to those women's claims. (*See* 4/16/09 Order, Doc. No. 193, at 8.) Judge Scoles ruled that if such evidence were admitted, "CRST would be prejudiced in violation of the Court's

discovery sanction, and the focus would shift to 99 claims for which recovery is not available." (*Id.* (citation omitted).)

Finally, the presentation of allegations of sexual harassment of others through witness testimony would unnecessarily prolong an already lengthy trial because CRST must be permitted to cross-examine each witness regarding those allegations.  As a result, the trial would become bogged down in collateral issues.

> **E.    Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Other Types Of Alleged Discrimination.**

This case involves alleged sexual harassment and sexual harassment alone.  Plaintiffs should be barred under Federal Rules of Evidence 402 and 403 from presenting evidence of alleged discrimination other than sexual harassment, such as racial discrimination, discrimination based on national origin, age discrimination, discrimination on the basis of religion, disability discrimination, or any other type of discrimination.

Certain female drivers have alleged Title VII or Iowa Civil Rights Act violations on multiple grounds.  For example, on Barbara Grant's Iowa Civil Rights Commission Complaint Form, Grant alleged, in addition to discrimination because of her gender, that she was harassed or discriminated against because her skin was not white, because she was American Indian, because she was Christian, because she was heterosexual, because she was not married, because she had children, and because she was an older person.  (Ex. 2, CRST 51330–35.)  Her summary of allegations included allegations of verbal abuse "because [her] skin was not white" and "for being a straigh[t] female, single and American Indian."  (*Id.*)  Grant also alleged that comments were made to her about her religion.   (*Id.*)   Similarly, Nona McCuien alleged during her deposition that she was subject to racial discrimination while at CRST.  ( Ex. 3, McCuien Dep. 24).  Other female drivers have alleged at various times that other employees have made racist

comments to them. (*See, e.g.*, Ex. 4, Griffith Dep. 52; Ex. 5, Tuttle Dep. 106; Ex. 6, Villareal

Dep. 46, 110, 112; Ex. 7, CRST 23772-23773, 23775-23776; Ex. 8; CRST 217745.)

Such conclusory, unfounded allegations are not relevant to Plaintiffs' claims for sexual

harassment.  Evidence and argument related to such allegations is unfairly prejudicial and

therefore should be excluded pursuant to Federal Rules of Evidence 402 and 403.  This Court has

noted in another case that "other incidents of alleged discrimination may be irrelevant, confusing

to the jury and prejudicial" to the defendant.  *Singh v. Allen Mem'l Hosp.*, No. 04-CV-2090-

LRR, 2006 WL 2051311, at *3 (N.D. Iowa July 20, 2006) (Reade, J.).  Although in *Singh,*

because of the imprecise nature of the motion in limine, this Court reserved ruling and ordered

the plaintiff to make an offer of proof before referring to evidence of other incidents of alleged

discrimination, here it is clear that any alleged discrimination that is not based on sex is not

relevant to the claims of sexual harassment.  This Court stated in *Singh* that other acts of

discrimination by the defendant would be admissible only if they "occurred close in time and are

similar in circumstances to the discrimination allegedly suffered by [Plaintiff]."  *Id.*  Neither of

those conditions applies here.

As other courts have noted, there is a "weak correlation" between different types of

discrimination that makes such evidence "of little probative value" and it is substantially

outweighed by the "very great potential for prejudice."  *Rauh v. Coyne*, 744 F. Supp. 1181, 1183

(D.D.C. 1990) (excluding evidence of racial animus in sex discrimination action); *see Brooks v.*

*CBS Radio, Inc.*, No. 07-0519, 2007 WL 4454312, at *12 (E.D. Pa. Dec. 17, 2007) ("[C]ourts

have held that evidence of sex discrimination in cases involving race discrimination, and vice

versa, is irrelevant given the lack of correlation between the two kinds of discrimination."); *Olle*

*v. Columbia Univ.*, 332 F. Supp. 2d 599, 614 (S.D.N.Y. 2004) (excluding survey responses

related to alleged race-based discrimination or sexual orientation discrimination as not relevant

to claims of sex- and age-based discrimination); *see also Nair v. Columbus States Cmty. Coll.*, No. 2:02-cv-595, 2008 WL 3822341, at *4 (S.D. Ohio Aug. 12, 2008) (excluding evidence of sexual harassment in national origin discrimination action); *Rivera v. Baccarat, Inc.*, No. 95 Civ. 9478 MBM JCF, 1997 WL 777887, at *2 (S.D.N.Y. Dec. 15, 1997) (excluding evidence of gender bias or sexual harassment in national origin and age discrimination action).

> **F.    Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Sexual Harassment Of Female Class Members Committed By Female Employees.**

Plaintiffs should be precluded under Federal Rules of Evidence 401 and 403 from introducing allegations of sexual harassment or inappropriate conduct by female employees directed to other female drivers because such conduct is not relevant to EEOC's and Interveners' claims and because any probative value of such allegations is substantially outweighed by the risk of unfair prejudice.

During Intervener Barbara Grant's deposition, she made allegations regarding the conduct of Rachael Emerson, a female driver with whom she drove.  (*See* Grant Dep. 150, CRST App. 1200.)[9]  Moreover, as CRST previously noted in its Reply in Support of CRST's Motion for Summary Judgment Against Certain Plaintiffs/Interveners ("CRST Interveners SJ Reply"), Ms. Grant's allegations with regard to Ms. Emerson are outside the scope of this lawsuit.[10]  (*See* CRST Interveners SJ Reply, Doc. No. 181, at 12.)  The Eighth Circuit requires different methods of proof for same-sex harassment claims:

> Same-sex harassment claims differ from those between males and females because the latter 'typically involve[ ] explicit or implicit proposals of sexual activity,' which create a presumption that the underlying conduct was based on

---

[9]    All references to "CRST App." refer to CRST's Appendix filed with CRST's Summary Judgment briefs, found at Doc. No. 148.)

[10]    EEOC proffered a trial exhibit that lists the alleged harasser for each deposed class member.  (Ex. 9, Harassment Information Spreadsheet)  Although EEOC did not include any females as alleged harassers, it is unclear whether Interveners will argue they were harassed by women or the witnesses themselves will do so.

> sex.  However, this presumption is applicable only if there is credible evidence to
> show that the alleged harasser is sexually attracted to the plaintiff.  Consequently,
> without this presumption, a same-sex harassment plaintiff needs other methods to
> prove that the conduct was based on sex.

*McCown v. St. John's Health Sys.*, 349 F.3d 540, 543 (8th Cir. 2003) (affirming summary

judgment for employer-defendant because evidence was insufficient to demonstrate that conduct

was "because of sex") (internal quotation and citations omitted).  Plaintiffs allege sexual

harassment by male drivers against female drivers.  Allegations regarding the conduct of female

drivers such as Ms. Emerson thus have no bearing on any fact that is of consequence to the

determination of this action, and unfair prejudice will result if irrelevant allegations of

inappropriate conduct are presented to the jury.  Therefore, Ms. Grant's allegations regarding

Ms. Emerson and any other allegations of inappropriate conduct by female employees should be

barred.

### G.   Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Allegations Of Harassment By Male CRST Employees Who Are Not Lead Or Co-Drivers.

EEOC's complaint explicitly limits the scope of alleged harassment to conduct by "lead

drivers or team drivers."  (Am. Compl., Doc. No. 8, at 1.)  Accordingly, the Court should

exclude allegations of harassment by individuals who are not lead ("trainers") or team drivers

("co-drivers"), such as the allegations that Robryna Fitch made against terminal manager Alvin

Hoggard. [11]  (Fitch Dep. 104–13, 128–29, CRST App., 1044-47, 104.)

The voluminous discovery conducted in this case and the numerous motions for summary

judgment filed by CRST focused on alleged harassment by lead or co-drivers.  Expanding the

scope of this action at this late date—more than seventeen months after the complaint was filed,

---

[11]   EEOC's trial exhibit listing alleged harassers does not include Alvin Hoggard, but CRST submits this motion in limine to preclude witnesses and Interveners, as well as EEOC, from introducing evidence or argument related to allegations against Mr. Hoggard or any other male CRST employees who are not lead or co-drivers.

a year after the deadline to amend the pleadings, and nearly five months after the close of discovery—would unfairly prejudice CRST. Allegations of harassment by other employees, in wholly different circumstances, constitute entirely new theories of liability that would require an additional round of discovery and summary judgment briefing. The costs incurred by CRST in defending this action are already great, and the scope of the allegations to be considered by this court is already wide. As Magistrate Judge Scoles noted, "'[w]e have enough to manage.'" (4/16/09 Order, Doc. No. 193, at 8, quoting *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009).)

Even if Plaintiffs properly moved this Court for leave to amend their pleadings, such a motion should fail as untimely. *See, e.g.*, *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994) (finding no abuse of discretion in denial of motion to amend complaint for employment discrimination fourteen months after filing the original complaint, six days after the discovery cutoff date set by the district court had passed, and less than three weeks before the trial date); *Thompson v. United Transp. Union*, 2008 WL 5070691, at *3 (N.D. Iowa Nov. 6, 2008) (Reade, J.) ("Permitting Plaintiffs to amend at this late state of the proceedings would delay an old case and significantly prejudice Defendant.").

### H.   Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Former CRST Fleet Manager Kiley Eisenmann's Allegations of Sexual Harassment.

Former CRST fleet manager Kiley Eisenmann, whom both Plaintiffs included on their witness lists, submitted an affidavit stating, *inter alia*, that she contacted Interveners' attorney regarding a potential sexual harassment claim against CRST. (Eisenmann Aff. ¶ 2, Interveners' App., Doc. No. 161-6, at 172-75.) Any evidence or argument relating to Ms. Eisenmann's allegations of sexual harassment should be excluded under Federal Rule of Evidence 403 because such allegations are not relevant and their admission would unfairly prejudice CRST.

Ms. Eisenmann is not a female truck driver, is not a woman for whom EEOC's asserts an individual claim, and has not been presented for deposition in this case concerning her allegations of sexual harassment.  As such, Ms. Eisenmann's allegations are not relevant to any material issue in this case.  This Court recently held in this case that "CRST does not operate a unified workplace" and that "there is little reason to assume all allegedly aggrieved persons were subjected to the same harm, just as a court might presume in the mine-run case with a unified workplace."  (4/30/09 Order, Doc. No. 197, at 66)  This is particularly true with regard to Ms. Eisenmann, a former fleet manager, who worked in circumstances that were wholly different from those of the female truck drivers who are at issue in this case.  (*See* Am. Compl., Doc. No. 8, at 1.)  Ms. Eisenmann's allegations would not assist the jury in making any determination relevant to this case, and CRST would be unfairly prejudiced if the jury is confused or misled by the admission of such evidence; jurors may improperly draw inferences about Plaintiffs' claims based upon Ms. Eisenmann's allegations.

Moreover, Ms. Eisenmann has not been presented for deposition in this case, and CRST has not conducted discovery relating to any allegations of sexual harassment by Ms. Eisenmann.  As Magistrate Judge Scoles held with regard to female truck drivers whom EEOC did not present for deposition, where CRST "has not had an opportunity to examine . . . women regarding the factual basis for their allegations and cannot, therefore, effectively respond to those complaints," evidence related to those allegations should be excluded.  (*See* 4/16/09 Order, Doc. No. 193, at 7-8.)  Admitting evidence regarding such complaints "would unnecessarily 'introduce cumbersome collateral issues.'"  (*Id.* at 8, quoting *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009).)

17

I.      **Plaintiffs Should Be Barred From Introducing CRST's Positive Work Environment Chart, Employee Relations Chart, And the "Leads-No Female Students" Spreadsheet, And From Making Any Reference To Or Argument About The Charts.**

Plaintiffs should be barred under Federal Rule of Evidence 403 from using any version of CRST's Positive Work Environment Chart ("PWE Chart"), Employee Relations Chart, or "Leads-No Female Students" Spreadsheet at trial because they include unfounded allegations unrelated to this action, and information on unrelated to individual female drivers' claims, and are unfairly prejudicial to CRST.  (*See* PWE Chart, EEOC P/P App. 1191-93; Ex. 10, Employee Relations Chart, CRST 48772-48776; Ex. 11, "Leads-No Females" Spreadsheet, CRST 23562.)[12] The PWE Chart is a document used by CRST's Human Resources department to keep track of complaints made by and against CRST's employees that could potentially be covered by CRST's sexual harassment policy.  The Employee Relations Chart is a document used to compile other employee issues; although it contains a handful of entries relating to the claims made in this case, the Employee Relations Chart was not specifically designed to track complaints made by and against CRST's employees that could potentially be covered by CRST's sexual harassment policy.  The "Leads-No Female Students" Spreadsheet, identified on EEOC's trial exhibit list, lists lead drivers who were the subject of complaints and disciplinary action taken by CRST. The vast majority of the complaints listed on the various iterations of the Charts are not related to the claims in this case.  For example, in the December 16, 2008, version of the PWE Chart that EEOC attached to its summary judgment response, only 55[13] of the 172 entries concern complaints by claimants.  (*Id.*)

---

[12]     All references to "EEOC P/P App." refer to EEOC's Pattern or Practice Appendix filed with EEOC's Summary Judgment Response briefs, found at Doc. No. 170. Pages 1191-93 of EEOC's Pattern or Practice Appendix were filed under seal.

[13]     The PWE also shows that two claimants, Catherine Granofsky-Fletcher and Antonia Aguilar, received sexual harassment complaints from male drives.  (*Id.*)

As discussed above, all complaints against CRST drivers other than the specific allegations by deposed claimants and the male drivers they accuse of harassment are not relevant and evidence and argument related to them should be excluded because it is unfairly prejudicial to CRST. This is particularly true in the case of the PWE and Employee Relations Charts because they merely list the bare bones of each complaint made, regardless of merit, and notes the ultimate outcome of each complaint in shorthand, without explaining how and why that outcome was reached. Furthermore, the "Leads-No Female Students" Spreadsheet does not list even the name of the complainant or the details of the complaint. Thus, for example, the jury could be misled into thinking that a complaint that did not result in a certain type of disciplinary action is evidence that CRST did not take the complaint seriously. CRST would have to present evidence regarding the investigation it conducted, actions it took, and reasons therefore, for each complaint listed, despite the fact that most of the complaints are wholly irrelevant to this case. In order to avoid unfair prejudice to CRST and waste of time on wholly collateral issues, the Court should exclude all versions of the PWE and Employee Relations Charts and the "Leads-No Female Students" Spreadsheet.

3. **EEOC Determination Letters And Any Evidence And Argument Concerning Such Determinations Should Be Excluded.**

A number of female drivers making claims in this case filed claims with the EEOC prior to the filing of this lawsuit. In some of those cases, the EEOC issued determination letters stating "there is reasonable cause to believe that there is a violation of Title VII." (*See, e.g.*, Ex. 12, CRST 0003.) For example, on July 12, 2007, EEOC issued a determination as to the merits of the charges filed by Intervener Monika Starke. ( Ex. 12, CRST 0003–04.) The two-page letter presented the District Director's final determination that "there is reasonable cause to believe that there is a violation of Title VII . . . in that the Respondent subjected the charging party to sexual harassment on the basis of her gender" and "in that the Respondent discharged

[Ms. Starke] and attempted to collect money from [Ms. Starke] on the basis of retaliation in violation of 704(a) of Title VII." (*Id.*)  The determination letter provided only EEOC's ultimate conclusions.  It failed to provide any detailed factual findings or any statement of what evidence was considered.  EEOC should be precluded from presenting evidence of and argument about any such determinations at trial because the probative value of EEOC's determinations "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" and would constitute the "needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The Eighth Circuit and courts in the Northern District of Iowa have excluded similar agency decisions, finding the probative value was outweighed by the prejudicial nature of such determinations.  *See Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309-10 (8th Cir. 1984); *Jones v. Cargill*, 490 F. Supp. 2d 989, 993 (N.D. Iowa 2007) (Reade, J.) (granting motion in limine to exclude EEOC determination); *Abebe v. City of Waterloo*, No. C98-2074 MJM, 2000 WL 34030862, at *3 (N.D. Iowa Sept. 7, 2000) (same).  In *Johnson*, the Eighth Circuit stated that "[w]hile EEOC reports may contain information that would be useful to the jury, their probative value may be outweighed by problems that would result from their admission," and pointed out that such determinations "vary greatly in quality and factual detail."  *Id.* at 1309. The court reviewed the EEOC's determination of reasonable cause, noted its conclusory nature, and stated that substantial evidence had been presented to the jury regarding all the matters summarized in the report.  *Id.*  Under these circumstances, to admit a determination "would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions . . . ." *Id.*, *quoted in Jones*, 490 F. Supp. 2d at 993.  The court also considered that additional time would be required at trial to hear evidence with respect to the nature and extent of EEOC's

20

investigation and concluded that the district court did not abuse its discretion in excluding the EEOC determination.  *Id.* (citing Fed. R. Evid. 403).

The Eighth Circuit's concerns in those cases regarding the probative value, prejudicial nature, and needless presentation of cumulative evidence are present here.  EEOC investigated the same claims that are brought against CRST in this suit.  Consequently, EEOC reviewed evidence similar to that which will be presented in depth at trial.  EEOC's determinations merely provide conclusory statements and do not touch upon what factors or evidence it considered in arriving at its determination and, therefore, provide little probative value.  Admission of EEOC's conclusory statements would be highly prejudicial to CRST because it "would be the functional equivalent of an expert opinion on how to view the evidence."  *See Abebe*, 2000 WL 34030862, at *3.  Furthermore, in light of the conclusory nature of EEOC's determinations, the parties will spend needless time debating weaknesses in the EEOC determinations, such as the nature and extent of EEOC's investigation, rather than focusing on the evidence presented in *this* case.

**4.      Plaintiffs Should Be Barred From Using The Unrelated Disciplinary And Safety Records Of Men Accused Of Sexual Harassment.**

Plaintiffs should be barred from offering evidence and argument regarding unrelated disciplinary investigations and actions that do not concern allegations of sexual harassment, including but not limited to driver safety "violation" screens, "accident" screens, Safety Watch Lists, accident reports, "log" violations, speeding tickets, and other traffic violations to establish the character of a male driver accused of sexual harassment.  (*See, e.g.,* Ex. 13, CRST 17308; Ex. 14, CRST 18093.)  Under Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

There is no reason, for example, to discuss before the jury the unrelated disciplinary and safety records of a specific driver accused of sexual harassment.  Use of disciplinary and safety

records to make alleged harassers appear unsympathetic to the jury would be unfairly prejudicial to CRST and is prohibited by Rule 404(b).  *See Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998) (noting that evidence is admissible under Rule 404(b) only if it is "higher in probative value than in prejudicial effect").

Absent a direct correlation to a female driver's claims of sexual harassment, disciplinary and safety records are not relevant for any other purpose.  In fact, Magistrate Judge Scoles has already found that "[i]t would appear undisputed . . . that the 'watch lists,' and the 'driver maintenance violations' screens from which the watch lists are generated, do not contain any reference to sexual harassment claims," and he noted in ruling on EEOC's motion to compel production of the watch lists that "[c]ounsel for EEOC was unable to articulate why the watch lists are relevant to the instant action."  (2/17/09 Order, Doc. No. 152, at 5–6.)  Other evidence of alleged harassers' disciplinary records is equally irrelevant to this action for any purpose other than the aforementioned comparison.

Even if Plaintiffs argue, incorrectly and inappropriately, that evidence of alleged harassers' prior acts unrelated to sexual harassment is relevant for a permitted purpose under Rule 404(b), in order for character evidence to be admitted for a permitted purpose under Rule 404 Plaintiffs must—but cannot here—show that it is "'(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue].'"  *See Berry*, 143 F.3d at 1132 (quoting *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992)).  As discussed above, this evidence is not relevant to a material issue, except as comparative evidence, and when specific alleged harassers' records are introduced by name, the prejudicial effect is very great.  Moreover, disciplinary investigations and actions unrelated to sexual harassment are, by definition, not "similar in kind."  Finally, disciplinary investigations may be based solely on

unfounded allegations and hearsay that cannot be proven by a preponderance of the evidence. Delving into those allegations would require extensive evidence on collateral issues that will involve the court in countless "mini-trials" for no good reason. (*Cf.* 4/16/09 Order, Doc. No. 193, at 8, excluding evidence related to the 99 women not produced for deposition because it would raise innumerable "cumbersome collateral issues.")

Nor is such evidence admissible for impeachment purposes: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b).

In short, the only possible purpose Plaintiffs could have for introducing evidence of specific alleged harassers' disciplinary or safety records by name would be to malign the alleged harassers' characters and prejudice the jury against them. This is prohibited by the rules of evidence. The Court should exclude such evidence.

## 5.    Plaintiffs Should Be Precluded From Asking Witnesses To Opine Whether Alleged Conduct Constituted Sexual Harassment.

The Court should bar Plaintiffs from asking witnesses (i) to offer opinion testimony regarding whether alleged conduct constituted "sexual harassment" under applicable law, and (ii) to answer questions about incomplete hypothetical factual situations, including whether those situations fall within CRST's sexual harassment policy or violate that policy.

Witnesses should be prohibited from offering opinion testimony about whether conduct is "sexual harassment" under Title VII or the Iowa Civil Rights Act ("ICRA") because that is an ultimate issue in this case and such testimony will confuse the jury and usurp its function. A lay witness may give his or her opinion only if it is based on his or her perception and is helpful either in understanding his testimony or in determining factual issues. *See* Fed. R. Evid. 701.

"Opinion testimony is not helpful to the factfinder if it is couched as a legal conclusion." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987) (citation omitted).

For example, in *Mitroff v. Xomox Corporation*, the court held that admission of witness testimony that the defendant engaged in a pattern of age discrimination warranted a new trial. *See* 797 F.2d 271, 274-75, 277 (6th Cir. 1986). The court found that these statements amounted to legal conclusions. *See id.* at 276. Furthermore, the testimony did not help the jury in determining a "fact issue" because it went to the "ultimate issue" of the case. *Id.*. The court stated: "Although testimony which embraces an ultimate issue is not objectionable, seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Id.* (citation omitted). Plaintiffs should be barred from asking witnesses whether conduct constituted sexual harassment under applicable law because lay witnesses' opinions on that issue would not be helpful to the jury, and would confuse and mislead the jury regarding its exclusive role in making the determination of whether conduct violated Title VII or the ICRA.

CRST believes that questions about whether a female driver subjectively believed certain conduct she experience was "sexual harassment," and about conduct that may or may not fall within CRST's sexual harassment policy, are appropriate areas of inquiry. However, Plaintiffs should not be permitted to present witnesses with incomplete hypotheticals, and then inquire whether those factual situations fall within CRST's sexual harassment policy or violate that policy. *Cf. Harris v. Smith*, 372 F.2d 806, 812 (8th Cir. 1967) (holding in the context of cross-examination of an expert that "[w]here a hypothetical question leaves out facts in evidence which so qualify the facts included that an answer to the question would be misleading and based upon inadequate premises, objection to the question should be sustained...."). The following passage

from the deposition of a CRST employee illustrates the confusion that can arise when witnesses

are presented with incomplete hypotheticals:

> Q.      Do you think CRST should have a specific rule prohibiting
> lead drivers from asking their trainees for sex, period, whether it's
> unwelcome or not?
>
> * * *
>
> A.      What if the lead driver is the spouse of the other person?
> Q.      My understanding is that doesn't happen very often, but an
> exception could be made.
>          If there is an exception made for spouses, do you think
> CRST should have a rule prohibiting lead drivers from asking
> students for sex?
>
> * * *
>
> A.      Do you think that if -- you think that there should be an
> exception to it, the spouse?
> Q.      Yeah.  That's what my last question was.  Assuming that
> there is an exception for spouses.
> A.      Engagement?
> Q:      Well, do you think CRST should have a policy prohibiting
> a lead driver from asking a trainee for sex unless they are already
> in a consensual relationship at the time they start training?
>
> * * *
>
> A.      I guess now I'm kind of confused on exactly what you're
> asking.  You're asking should we have a blanket proposal, but then
> you've carved off spouses, then engagement, and then what was
> before they started -- then it was consensual before they became
> part -- before they became a training student?

(Ex. 15, R. Corbett Dep. at 45-47.)  To avoid confusion of the jury, and Plaintiffs' counsel

should be barred from presenting witnesses with incomplete factual hypotheticals at trial.

**6.      Plaintiffs Should Be Barred From Introducing Evidence And Argument Related To Offers Of Settlement And Prior Settlements.**

"It is axiomatic that offers of settlement or compromise, absent extraordinary

circumstances, are inadmissible . . . ."  *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 139 (8th

Cir. 1968).  This "axiom," which is engrained in our evidentiary system as Federal Rule of

Evidence 408, states that "when offered to prove liability for, invalidity of, or amount of a claim

. . . or to impeach through a prior inconsistent statement or contradiction," evidence of the

following is not admissible:

> (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).

Application of this rule eliminates possible prejudice and the risk of deterring settlement,

the concerns that underlie the rule. "[T]he admission of evidence that a defendant settled a claim

with a third party arising out of the same set of operative facts carries the inherent risk that 'such

a concession of liability is almost sure to be taken as an admission of fault.'" *Dahlgren v. First*

*Nat'l Bank of Holdrege*, 533 F.3d 681, 699 (8th Cir. 2008) (citing *Paster v. Pa. R.R.*, 43 F.2d

908, 911 (2d Cir. 1930)).

Plaintiffs may seek to elicit evidence that CRST has settled or has offered to settle claims

of sexual harassment. For example, Janet Boot previously sued CRST. Pursuant to a 2001

written settlement agreement and release, the parties settled Ms. Boot's claim. (Confidential

Settlement Agreement and Release, CRST App., 3414–20.) Similarly, CRST has engaged in

EEOC's conciliation process in connection with certain claims in this case and has otherwise

offered to settle other claims. Cynthia Moffett, for example, testified that CRST offered her a

settlement of her claim. ( Ex. 16, Moffett Dep. 160.) Evidence of, and argument about, such

settlements and offers of compromise should be excluded. Admission of any evidence related to

such offers, settlements, or alleged offers or settlements would unnecessarily raise a specter of

guilt in the minds of a jury who might assume that CRST was trying to compensate the employee

for wrongdoing. Allowing such an inference by admitting evidence related to settlement would

undermine the clear language and spirit of Rule 408.  Furthermore, any settlement offers and settlements themselves are not relevant to this litigation.  For these reasons, CRST respectfully requests that the Plaintiffs be barred from introducing evidence of any settlement or offer of settlement.

**7.**   **Plaintiffs Should Be Barred From Arguing That CRST's Sexual Harassment Policy And Training Program Are Insufficient, Inadequate, Or Deficient.**

EEOC contends in its interrogatory responses that CRST's "policies, training, or practices are insufficient, inadequate or deficient."  ( Ex. 17, EEOC's Resp. to CRST's First Interrog. ¶ 1.)[14]  Plaintiffs should be precluded pursuant to Fed. R. Evid. 403 from making such an argument at trial.  This theory of liability requires support from expert testimony meeting *Daubert* standards.  *See, Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 578 (1993).  Because EEOC has identified only a rebuttal expert, and Interveners have not identified any experts, and discovery has now closed, Plaintiffs should not be permitted to argue that CRST's sexual harassment policies and training are insufficient, inadequate, or deficient.

EEOC's argument, unsupported by expert testimony, that CRST's policies and training are insufficient is vague, unfounded speculation.  In order to meet the first prong of the *Faragher/Ellerth* affirmative defense, CRST need show only that its policies and practices are reasonable, not that they are sufficient or adequate according to some arbitrary and unsupported standard.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  When EEOC attempted to use this argument in another case, the Ninth Circuit held that "[t]he legal standard for evaluating an employer's efforts to prevent and correct harassment … is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's actions as a whole established a reasonable

---

[14]   To the extent such allegations are inconsistent with this Court's April 30 Order granting summary judgment on EEOC's pattern or practice claim, they are foreclosed by the law o fthe case doctrine.  *See supra _1_.*

mechanism for prevention and correction." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003) (citing *Ellerth*, 524 U.S. at 765).

In *Holly D. v. California Institute of Technology*, EEOC argued that defendant employer Caltech's policies and training were insufficient. *Id.* at 1177. In contrast to the agency's current action against CRST, in *Holly D.* EEOC supported its argument with expert testimony. EEOC's expert proposed to testify "that an effective sexual harassment program could reasonably include each of six components not offered by Caltech" and "that an employer could reasonably communicate a sexual harassment policy by each of nine means not employed by Caltech." *Id.* Nevertheless, the court found that EEOC's expert's testimony did not sufficiently undermine Caltech's written anti-harassment policy, which was reasonable on its face, and granted summary judgment to Caltech based on the *Faragher/Ellerth* defense. *Id.*

EEOC makes a similar argument here, but without expert testimony. In its summary judgment briefing, EEOC paints a picture of what CRST's policy should be: for example, CRST should identify behaviors that violate the policy, should specify when a woman may be removed from the truck, and should state that sexual harassment must "never happen." (EEOC Aff. Def. SJ Resp., Doc. 162 at 8; EEOC Pattern or Practice SJ Resp., Doc. No. 168, at 18-19.) EEOC complains that CRST's training program is too brief and that it is not repeated after orientation. (Doc No. 162, at 8; Doc. No. 168, at 18, 20.) EEOC apparently plans to ask a jury to evaluate, for example, whether listing all the behavior, actions, words, phrases, and conversation topics that could possibly violate CRST's sexual harassment would have prevented all harassment or whether a training program that lasted twice as long would have resulted in half as many incidences of sexual harassment.

But EEOC would have a jury decide that CRST's policies and training programs are inadequate without first establishing what constitutes an adequate policy and training program.

Without expert testimony, the jury would be forced to speculate about what CRST could have done to improve its policy and training program, and whether such changes would have had the desired results.  By comparison, this Court granted summary judgment to the defendant in a product liability claim where the plaintiff's experts were barred from testifying due to failure to timely serve expert reports and stated that "the average juror needs the assistance of expert testimony to reach an intelligent decision about whether the foreseeable risks of harm posed by the device could have been reduced or avoided by the provision of reasonable instructions or warnings and, if so, whether an omission of instructions or warnings rendered the device not reasonably safe."  *Benedict v. Zimmer*, 405 F. Supp. 2d 1026, 1033 (N.D. Iowa 2005).

The EEOC's argument is similar to the "failure to train" theory of liability under 42 U.S.C. § 1983.  Under that theory, if a city's employee violates a person's constitutional rights, the city may be liable if it failed to train its employees and the failure to train caused the constitutional violation.  The complexity of the showing required is such that courts typically emphasize the sufficiency of the expert testimony presented when they weigh the merits of a claim for failure to train.  *See, e.g.*, *Kline v. Mansfield*, 255 Fed. Appx. 624, 630 (3d Cir. 2007) (unpublished) (affirming summary judgment for school district where expert testimony that additional training for school officials might have prevented student's sexual abuse by teacher was not sufficient; "the fact that further training might have prevented constitutional injury, does not, in and of itself establish a failure to train claim"); *Currie v. Haywood County*, 234 Fed. Appx. 369, 372 (6th Cir. 2007) (unpublished) (affirming summary judgment for defendant where a finding of causation would be "unacceptably tenuous" even if based upon expert's assertion that a preventative program could have caught and identified sexual assailant in time to prevent assault); *Duy Ngo v. Storlie*, No. 03-3376 (RHK/JJG), 2006 WL 1579873, at *10 (D. Minn. June 2, 2006) (granting summary judgment to defendant where plaintiff's witnesses failed to identify

specific training that would have prevented mistaken identification shooting; "[t]he absence of some hypothetical, speculative, and unknown training could not have directly caused Ngo's constitutional injury."), *aff'd on other grounds*, 495 F.3d 597 (8th Cir. 2007).

Expert testimony to support EEOC's argument is especially necessary because the circumstances under which sexual harassment allegedly occurred in this case are outside the realm of the average person's common knowledge and everyday experience.  Courts generally hold that where the subject presented is "'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layman,' expert testimony is necessary." *Cotton v. District of Columbia*, 541 F. Supp. 2d 195, 207 (D.C. Cir. 2008) (internal citations omitted) (granting summary judgment on negligent supervision claim against municipality and police officer's supervisors where plaintiff failed to establish a standard of care relative to police training); *see, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young, LLP*, 542 F.3d 475, 491 (5th Cir. 2008) ("Because Travelers' bond decision required its professionals to exercise 'special skill, knowledge, experience, [or] learning' in a complex factual scenario likely unfamiliar to a lay juror, the district court did not err in requiring Ernst & Young to present expert testimony to establish whether a reasonable surety would have acted as Travelers did in this case.").

**8.      The Court Should Limit Evidence And Argument Regarding Damages.**

The Court should limit evidence and argument regarding alleged damages because, with the exception of Monika Starke, EEOC and Interveners have not disclosed any expert witnesses. Fed. R. Evid. 701 limits testimony by lay witnesses to opinions or inferences that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  To the extent anyone other than Ms. Starke wishes to testify that she suffered from medical conditions caused by alleged harassment, such evidence is barred by Rule 701.

This Court recognized the limits of lay testimony regarding medical treatment when Magistrate Judge Scoles held that Intervener Monika Starke's doctors "may testify regarding their observations, diagnosis, and treatment of Ms. Starke, but may not testify as expert witnesses regarding their opinions on causation or prognosis," because they had not been disclosed as expert witnesses.  (1/26/09 Order, Doc. No. 124, at 4); s*ee also Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 117 (D. Maine 2007) (limiting testimony of social worker not disclosed as expert in disability discrimination action to exclude "her professional opinions—her diagnosis, her treatment plan, [plaintiff]'s clinical response to the treatment plan, and other similar matters of expert testimony"); *Buhmeyer v. Case New Holland, Inc.*, No. 3:04-CV-90095, 2006 WL 1722333, at *3 (S.D. Iowa June 22, 2006) (limiting testimony regarding medical condition or medical damages presented by plaintiff in worker's compensation case to plaintiff's subjective perceptions where no expert was disclosed).

With the exception of Ms. Starke, claimants also should be precluded from testifying that they sought or received treatment for emotional distress or other physical or mental conditions, and from presenting medical records or similar evidence, because they have not disclosed any treating physicians, therapists, or counselors as witnesses.[15]   Where CRST has not had an opportunity to cross-examine professionals who treated claimants for emotional distress, CRST cannot determine whether or to what extent such treatment was warranted, and whether the need for treatment was caused by the alleged harassment.  (*Cf.* 4/16/09 Order, Doc. No. 193, at 7.) (barring EEOC from offering evidence relating to the 99 women not produced for depositions

---

[15]    With regard to Ms. Starke, Interveners' witness list included only one of Ms. Starke's doctors, Dr. Marshall Morrison, so Ms. Starke's testimony should be limited to the treatment she received from the doctor who will testify at trial.   Ms. Starke's testimony regarding Dr. Morrison's treatment should also be limited in accordance with the limits the Court placed on Dr. Morrison's testimony.  (1/26/09 Order, Doc. No. 124, at 4.)  Ms. Starke has not, however, presented Dr. Morrison for deposition, but has agreed to do so before Dr. Morrison testifies at trial.

because "CRST has not had an opportunity to examine the 99 women regarding the factual basis for their allegations and cannot, therefore, effectively respond to those complaints.")   CRST therefore would be unfairly prejudiced by the admission of evidence that claimants sought or received treatment for emotional distress.

**9.      The Court Should Exclude Evidence And Argument Regarding Front Pay.**

To the extent EEOC or the Interveners seek front pay damages, they should be precluded from introducing evidence and argument regarding front pay before the jury.   Whether to award front pay damages and how much to award are equitable issues for the Court to decide.   *Kramer v. Logan Cty. Sch. Dist.*, 157 F.3d 620, 626 (8th Cir. 1998) (citing *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir. 1997)); *Ogden v. Wax Works, Inc*., 29 F. Supp. 2d 1003, 1011 (N.D. Iowa 1998).   Such evidence is not within the jury's province and should not be admitted or argued before the jury at trial.   *See Newhouse,* 110 F.3d at 643 (reversing judgment because district court erred in submitting equitable issue of front pay to jury)..

**10.     Evidence Of CRST's Net Worth And Finances Should Be Excluded At Least Until Punitive Damages Are Relevant In The Case.**

This Court's recent ruling on EEOC's Motion to Bifurcate the Trial and for Trial Management Order rejected EEOC's proposal for a bifurcated trial in which the jury would decide the total amount of punitive damages in the first phase of the trial.   (2/25/09 Order, Doc. No. 156, at 5–6.)   Although there will be a single trial of all issues, this Court recognized the importance of separating the issue of punitive damages.   The Order states that "punitive damages will be the last issue the jury resolves" and further states that "[s]eparating the issues of punitive damages and liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of CRST, will improperly prejudice the jury's determination of liability." (2/25/09 Order, Doc. No. 156, at 6.) (citing *Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997); s*ee also Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007).

Based on the foregoing, CRST requests that the Court preclude Plaintiffs from introducing evidence regarding CRST's net worth and financial condition unless and until they establish liability and produce sufficient evidence warranting an instruction on punitive damages.[16] Evidence and argument as to CRST's financial condition is not relevant in this case, at least, until EEOC after the jury finds liability and compensatory damages as to a particular female driver and the Court determines that there is sufficient basis to permit the EEOC to present the issue of punitive damages to the jury.  Fed. R. Evid. 401.  Rather, net worth and finances, if relevant at all, are only potentially relevant to the issue of punitive damages, which are designed to punish and deter.  *See Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997) ("Punitive damages are awarded to punish the defendant for his [or her] willful or malicious conduct and to deter others from similar behavior.") (internal quotation and citation omitted); *U.S. v. Big D Enters., Inc.*, 184 F.3d 924, 932 (8th Cir. 1999) ("Under federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded.").  Until that point, CRST's net worth and finances have no bearing on any alleged liability for sexual harassment, and are therefore irrelevant to that inquiry.  Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); *see also Coleman*, 114 F.3d at 787 ("[P]unitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown.").

Even if CRST's financial condition becomes relevant at some point, as this Court recognized in its February 25, 2009 Order, prematurely introducing evidence of CRST's financial condition before punitive damages are at issue would only serve to confuse the jury as to the difference between liability and damages and risk unfairly prejudicing CRST.  *See State*

---

[16]     The Court has provisionally ordered that CRST must produce its last two federal income tax returns "*if* information regarding CRST's financial condition becomes discoverable." (1/9/2009 Order, Doc. No. 106 at 6) (emphasis added.)

*Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("'[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.'") (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994)); *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993) (noting that evidence of a defendant's net worth and wealth is "totally irrelevant to the issue of compensatory damages" and recognizing that a jury could be "improperly influenced on compensatory damages by the magnitude of the wealth of the defendant"), *cert. denied*, 510 U.S. 1115 (1994).

**11.    Plaintiffs Should Be Barred From Arguing That CRST's Efforts To Collect Amounts Due On Class Members' Contracts Constitute Retaliation.**

EEOC has dropped its claims that CRST retaliated against female drivers in violation of Title VII.  CRST recruits and supports many new drivers by paying for their driving school tuition through a CRST-sponsored program.  (Ex. 18, Driver Employment Application, CRST 22998–23001, at ¶ 9.)  The drivers sign contracts agreeing that they are responsible for all expenses incurred in the program if they do not remain employed with CRST for a specified period of time, typically six to eight months.  (*Id.* at ¶ 11(b).)  CRST seeks reimbursement from drivers, male and female, who leave CRST's employment before the contractual period ends, and has done so since before the allegations of sexual harassment in this case were made.  (*See CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*, No. CIV-04-651-F, 2006 WL 335765, at *17, 20 (W.D. Okla. Feb. 14, 2006) (enjoining defendant from interfering with CRST's new driver training strategy and enforcing CRST's driver contracts as as "lawful means" of protecting CRST's "substantial investment in new driver training").  CRST does not automatically forgive these loans merely because a driver makes a complaint of harassment against CRST.  Loan forgiveness under those circumstances would induce pretextual complaints of harassment, which would be unfair not only to CRST but to the drivers against whom such complaints were made.

Nevertheless, EEOC, and possibly Interveners, improperly plan to use CRST's rightful attempts to collect amounts outstanding under these agreements as evidence of retaliation.[17]  ( Ex. 19, Letter from Brian Tyndall, Feb. 19, 2009.)  The Court should not permit Plaintiffs to use this evidence to argue that CRST retaliated because it is not probative of retaliation, and the argument is unfairly prejudicial under Fed. R. Evid. 403.

A claim of retaliation requires the court to consider "whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions.'"  *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007) (quoting *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir.2007)). Applying this objective standard, the Eighth Circuit has pointed out that "[i]t simply does not follow that an employer's announcement of a new policy that affects all or substantially all of its employees in the same manner would so adversely affect the Plaintiffs' lives that it would have dissuaded them from reporting … harassment."  *Id.* at 727 (holding claim of retaliation for sexual harassment was properly dismissed).  Not only is CRST's policy applied to all drivers, but it is not a *new* policy; it was put in place and enforced long before the allegations of sexual harassment in this case were advanced.  Therefore, evidence that CRST has sought to collect amounts outstanding on female drivers' agreements has no tendency to make the existence of any fact that is of consequence to the determination of their claims for retaliation more probable or less probable than it would be without such evidence.  Plaintiffs should be precluded from arguing the evidence of CRST's collection efforts shows that CRST retaliated against female drivers in this action.

---

[17]    Only Interveners Nicole Ann Cinquemano, Barbara Grant, Cynthia Moffett, Remcey Peeples, Monika Starke, and Latesha Thomas are asserting claims of retaliation in this action.

12.     **Plaintiffs Should Be Barred From Arguing That Short-Term Delays In Training And Driving Constituted Tangible Employment Actions.**

Plaintiffs have argued that they experienced tangible employment actions as a result of short-term delays, from three days to two weeks, they experienced before they were assigned new lead or co-drivers after reporting alleged sexual harassment.   (*See, e.g.*, Interveners' SJ Reply, Doc. No. 161, at 38–39.)  Plaintiffs should be barred from presenting evidence or arguing that any isolated and brief delays they experienced had a material detrimental effect on Plaintiffs' employment status.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

Any brief delays caused when a driver was removed from a truck in order to separate her from a driver against whom she alleged sexual harassment were minimal and infrequent.  The female drivers who may have experienced longer delays (those who alleged they were delayed two weeks) may have rejected the possible lead or co-drivers that CRST offered and voluntarily chose to wait for an acquaintance or a female lead or co-driver.  (*See, e.g.*, Ex. 20, T. Jones Dep. 65.)  A female driver's voluntary act cannot constitute a tangible employment action.  *See Burlington Indus.*, 524 U.S. at 762 ("A tangible employment decision requires an official act of the enterprise, a company act.").

A short-lived delay in training and driving time such as those experienced by female drivers is a "mere inconvenience" that cannot support a claim under Title VII.  *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (holding that plaintiff's reassignment could not support her claim of race and age discrimination and retaliation) (internal quotation and citations omitted).   "Changes in duties or working conditions that cause no

materially significant disadvantage … are insufficient to establish the adverse conduct required to make a prima facie case." *Id.* (citation omitted).

Claimants' delays in driving and training time were rare and brief, and there is no evidence that female drivers experienced more or greater delays than male drivers or that their overall driving careers or compensation were impacted by these short delays.[18]   Indeed, the delays female drivers experienced were no greater than CRST's normal course of business in which drivers experience delays for various reasons including weather, equipment malfunctions, and changes in co-drivers.  (*See* CRST Supp. App. 3488; Schommer Dep. 38.)  Furthermore, these brief delays had no effect on the female drivers' employment status.  Moreover, permitting EEOC to characterize CRST's efforts to prevent or remedy alleged sexual harassment as a tangible employment action would have the perverse result of handicapping employers in their efforts to comply with Title VII and the ICRA.

**13.    Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Drivers Who Received A "No Female Restriction" And Subsequently Drove With A Female Driver, Where There Was No Subsequent Complaint Of Sexual Harassment By That Female.**

EEOC's expert, Dr. Michael A. Campion, submitted his rebuttal report on December 15, 2008.  Table 9 of his report sets forth his analysis of the "frequencies of the various types of punishment" that certain drivers received.  (Ex. 21, Campion Rep. Table 9.)  Based on his analysis of the Positive Work Environment ("PWE") chart prepared by CRST's Human Resources Department, Dr. Campion concluded that 29.6 percent of the "outcomes" of HR investigations resulted in a driver receiving a "'no female partners' for the next six months"

---

[18] *Cf. Schoonover v. Schneider National Carriers, Inc.*, 492 F. Supp. 2d 1103, 1110–16, 1135 (S.D. Iowa 2007) (finding a fact question about whether an over-the-road truck driver was subjected to an adverse employment action where she was reassigned to a new truck four times in four months, she "continually" experienced mechanical problems that resulted in "large swaths of downtime," and she alleged that male drivers with whom she trained did not change trucks with the same frequency; those facts and allegations are not present in this case).

restriction ("No Female Restriction").   One day before Dr. Campion's January 8, 2009 deposition, EEOC sent to counsel for CRST an email from Dr. Campion containing additional analysis regarding the No Female Restriction.  (*See* Ex. 22, Campion Dep. Ex. 1009.)  That email set forth the names of 27 drivers who Dr. Campion concluded received the No Female Restriction after an HR investigation, but who subsequently drove with another female, despite the restriction.  Counsel for CRST did not have time prior to Dr. Campion's deposition to analyze the list of 27 drivers to determine the circumstances involving each individual.  A subsequent review of the files, however, has made clear that the analysis Dr. Campion conducted is not accurate.[19]

Plaintiffs should be barred from introducing evidence of and argument about any male drivers who received a No Female Restriction but who subsequently drove with a female, where there was no subsequent sexual harassment complaint.  The limited probative value of such evidence is substantially outweighed by the danger of undue delay, waste of time, and needless presentation of cumulative evidence to the jury.  Fed. R. Evid. 403; *see Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987) ("Trial courts have discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence.") (citations omitted).

The evidence at issue has little probative value because there are innocuous explanations for the situations where a driver with a No Female Restriction subsequently drove with a female without complaint.  Furthermore, of the 27 drivers Dr. Campion identified in his analysis as having driven with a female after receiving a No Female Restriction, only one was the subject of

---

[19]    *See* CRST's Motion to Exclude Certain Expert Testimony of Dr. Michael A. Campion, filed simultaneously with this motion, for challenges to Dr. Campion's opinions and proposed testimony.

a complaint by a subsequent female driver.[20]  Of the 26 other drivers identified by Dr. Campion, none were the subject of a complaint by a subsequent female driver and there is an explanation for why these drivers were paired with a female driver after receiving a No Female Restriction. Such explanations run the gamut, and to allow evidence or argument discussing these explanations would result in delay, waste of time, and confusion to the jury.  For example, (i) some men never drove with another female after HR received the initial complaint; (ii) others were already paired with a female at the time HR received the initial complaint, and the driver subsequently was not paired with another female;[21] (iii) in other cases the data relied upon by Dr. Campion was incorrect and the male drivers were not in fact restricted from driving with women; (iv) in other situations the driver was allowed to be paired with his wife or significant other; (v) in at least one situation a subsequent female driver was notified of the No Female Restriction but requested to be paired with that driver anyway; (vi) and others involved situations where the

---

[20]      John Kewley received a No Female restriction after Jonne Shepler made a complaint against him.  (CRST 23011, attached as Ex. 23.)  After seven months, he asked HR to lift the restriction when another lead driver approached Mr. Kewley about training the driver's wife's female friend.  (CRST 22929–30, attached as Ex. 24.)  After CRST's HR director Jim Barnes reviewed CRST's sexual harassment policy with Mr. Kewley, gave him a copy, and discussed it with him, Mr. Kewley's No Female Restriction was lifted.  (*Id.*)  Other complaints were subsequently made about Mr. Kewley and he was thereafter terminated.  (CRST 29486-87, attached as Ex. 25.)

[21]      For example, Dr. Campion identified David Goodman as a male driver who drove with women although CRST gave him a No Female Restriction.  (Campion Rep. Table 9, attached as Ex. 21.)  Mr. Goodman was paired with three female drivers: Jacqueline Sorrels, Brenda Howard, and Georgia Littlefield, after he drove with Monika Starke, the only class member who alleged that Mr. Goodman harassed her.  (D. Goodman Trip Inquiry, attached as Ex. 26, at 8–11.)  Ms. Starke did not complain to CRST about any alleged harassment by Mr. Goodman until late September 2005—approximately two months after she claims the harassment occurred.  (Starke Complaint Letter, CRST 0055–56, attached as Ex.42.)  By the time Ms. Starke belatedly complained of the purported harassment, Mr. Goodman had already driven with Ms. Sorrels and Ms. Howard.  Mr. Goodman drove with Ms. Littlefield for one day, September 29, 2005, just two days after CRST's Human Resources department received Ms. Starke's complaint and while its investigation of that complaint was ongoing.  (Harassment Investigation Notes, CRST 0060–61, attached as Ex.43; D. Goodman Trip Inquiry, CRST 224098-224108, attached as Ex.26, at 11.)  None of those three female drivers have accused Mr. Goodman of sexual harassment.

driver was inadvertently paired with an additional female driver and HR addressed the situation as soon as it learned of the pairing.  As the preceding examples show, the detailed and varied explanations relating to the 27 people included in Dr. Campion's analysis exemplify why this motion in limine is necessary.

To allow the introduction of evidence or argument that male drivers drove with female drivers although they received a No Female Restriction would require CRST to introduce detailed evidence regarding the specific reasons that each driver was paired with a woman after they drove with a woman who accused them of sexual harassment.  The Court has discretion to limit the presentation of such evidence, which does not tend to prove any female driver's claim that she was sexually harassed by a particular male driver.  *See, e.g.*, *Crimm v. Mo. Pac. R.R. Co.*, 750 F.2d 703, 708 (8th Cir. 1984) (upholding decision to exclude circumstantial evidence of company's alleged pattern of age discrimination where the evidence was of little probative value and the parties would have introduced many exhibits and numerous witnesses regarding the issue); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) (excluding evidence of racial stereotyping in race discrimination case because the probative value of such evidence was substantially outweighed by considerations of undue delay and confusion of the issues).  By delving into these collateral issues, Plaintiffs would require the Court to spend valuable trial time and ask the jury to consider evidence about situations that are not probative in this case.

## 14.    Plaintiffs Should Be Barred From Referring To CRST's Failure To Call Or Produce Witnesses Who Are Not Under CRST's Control.

Plaintiffs should be barred under Federal Rule of Evidence 403 from referring to CRST's failure to call or produce witnesses who are outside the subpoena range and/or are not under CRST's control, including but not limited to men accused of sexual harassment, because any adverse inference drawn from such failure is not relevant, would be unfairly prejudicial to CRST, and may confuse or mislead the jury.  Such comments may cause the jury to improperly

speculate that CRST failed to call or produce the witness because his or her testimony would be detrimental to CRST.   There is no ground for such speculation where a witness is equally available to EEOC and CRST is not responsible for his or her failure to testify.   *Cf. United States v. Burton*, 898 F.2d 595, 598 (8th Cir. 1990) (affirming district court's refusal to instruct jury that adverse inference could be drawn from government's failure to produce witness where witness was equally unavailable to both parties and not peculiarly within the control of the government).

15.     **Plaintiffs Should Be Barred From Arguing That Other, Unidentified Women Have Been Harassed But Are Afraid To Make Claims.**

Plaintiffs should not be permitted to argue or imply that there are other, unidentified women who have been sexually harassed but who have not made complaints because they are afraid.   In EEOC's Brief in Opposition to CRST's Motion for Summary Judgment on EEOC's Pattern or Practice Claim, for example, EEOC asserted:   "Women are afraid to complain about their co-drivers because they fear reprisal from them."   (EEOC Pattern or Practice SJ Resp., Doc. No. 168, at 14.)   As support for this statement, EEOC cited the deposition of Tracy Ball.   (*Id.* (citing EEOC Pattern or Practice SJ Add. Fact St. ¶ 311, Doc. No. 168.)   Ms. Ball's testimony does not support this statement:   she alleged that her co-driver told her that if she did not do what he told her to do, he would tell CRST that she did not pass her training.   (Ball Dep. 52-53, EEOC Pattern or Practice App. 15, Doc. No. 170.)   Moreover, Ms. Ball did not say she was afraid.   In fact, she testified that she told her co-driver, "oh yeah? That's what you going to tell me? … So that's the game we're going to play here."   (*Id.*)   The only other support EEOC cited was Gloria South's deposition, in which she alleged that her co-driver told her that if she got off the truck, he would tell CRST that she abandoned the truck.   (South Dep. 79, EEOC Pattern or Practice App. 512, Doc. No. 170.)   Neither woman said she was afraid to complain because she feared reprisal, and in fact both women made complaints and CRST investigated those claims.   (EEOC

Mot. to Compel and for Sanctions, Doc. No. 127, Ex. 15, at 2, 3.)  But even if their testimony supported EEOC's statement (which it does not), EEOC has implied that there are other, unidentified women who could complain of sexual harassment but have not out of fear.  The only claims at issue in this case are the 155 women for whom EEOC is asserting individual claims, and any other female drivers' purported reasons for not asserting an individual claim are irrelevant.

Federal Rule of Evidence 602 provides that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and Federal Rule of Evidence 701 requires that lay witness testimony be rationally based on the perception of the witness.  EEOC's speculation about unidentified women's unexpressed fear of reprisal has no foundation in the personal knowledge or rational perception of a witness.  *See Olivas v. ITT Hartford Life & Annuity Ins. Co.*, No. 94-55335, 1995 WL 349855, at *2 (9th Cir. June 9, 1995) ("No hearsay exception permits a witness to present his or her unsubstantiated opinion about a third person's thoughts or state of mind."); *Cook v. City of Elkader*, No. C03-1029, 2005 WL 331389, at *5 (N.D. Iowa Feb. 11, 2005) ("What the mayor, who had no vote in the plaintiff's termination, thought the rest of the council was thinking, fails to satisfy [Federal Rule of Evidence] 602.").

Moreover, if Plaintiffs are permitted to make similar statements at trial, the jury may be confused and misled.  Unfounded allegations have no probative value, and CRST will be unfairly prejudiced if the jury is tempted to base its judgment on EEOC's baseless speculation.  The court should prohibit EEOC under Federal Rule Evidence 403 from referring to other, unidentified women who EEOC claims are too intimidated to make complaints because any probative value of such statements is substantially outweighed by the danger of unfair prejudice.

16.     **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Criminal Charges or Accusations Against Men Accused Of Harassment That Resulted In Acquittal.**

There is no legitimate reason for EEOC or Interveners to introduce evidence or argument regarding prior criminal charges or accusations made against any of the male truck drivers if those accusations did not result in convictions.  Those accusations are irrelevant to this lawsuit, and have no permissible probative value.  "It is the long and well-settled Federal rule that it is not permissible to show that a witness has been arrested or accused of or charged with a criminal offense or to inquire as to such fact upon cross examination for the purpose of impairing his credibility where no conviction is shown."  *Rizzo v. United States*, 304 F.2d 810, 831 (8th Cir. 1962) (citations omitted).  Using evidence of other acts, crimes, and wrongs is prohibited.  Fed. R. Evid. 404(b).  Not only is that type of evidence irrelevant because it has little probative value, such evidence is unfairly prejudicial and improperly suggests to the jury a propensity to commit similar acts of misconduct.  *See* Fed. R. Evid. 403; *see also United States v. Madden*, 482 F.2d 850, 852 (8th Cir. 1973); *Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.  It happens to the innocent as well as the guilty.").

17.     **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Harassers' Convictions For Sexual Offenses.**

Federal Rule of Evidence 415 makes evidence of a party's commission of another offense of sexual assault or child molestation admissible in a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation.  But by its terms, Rule 415 applies only if a claim "is predicated on *a party's* alleged commission of conduct constituting an offense of sexual assault or child molestation."  Fed. R. Evid. 415(a) (emphasis added).  No Circuit Court of Appeals,

43

including the Eighth Circuit, has addressed whether Rule 415 applies where the person who committed the sexual offense at issue is not a party to the action.

The rationale underlying Rule 415 is not applicable here: Rule 415's enactment was based on the legislative judgment that "the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H8992 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari); *see also* 140 Cong. Rec. S12990 (Sept. 20, 1994) (statement of Sen. Dole). The balancing test is different where it is not the person who committed the acts who will be prejudiced. The "danger of convicting a criminal defendant for past, as opposed to charged, behavior or for being a bad person," cited by the Judicial Conference in their recommendation against adopting Rule 415, is multiplied where the party that will suffer prejudice had no involvement with the prior acts sought to be admitted. FED. R. EVID. 413 historical notes (reproducing Report of Judicial Conference of United States on the admission of character evidence in certain several misconduct cases). Therefore Rule 415 should not apply where, as here, the party against whom the evidence would be used is not the person whose prior acts are sought to be admitted.

Even if Rule 415 does apply, Rule 403's balancing test requires that such evidence be excluded. *See United States v. Sumner*, 119 F.3d 658, 661-62 (8th Cir. 1997) (holding that the Rule 403 balancing test applies to evidence admissible pursuant to Federal Rule of Evidence 414); *Jones v. Clinton*, 993 F. Supp. 1217, 1222 (E.D. Ark. 1998) ("The Eighth Circuit's decision in *Sumner*, then, establishes that the Rule 403 balancing test does in fact apply to Rule 415."). In this case, the prejudice of such evidence outweighs any probative value. Sexual offenses are particularly inflammatory. *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 153 n.8 (3d Cir. 2002) ("[B]ecause of the severe social stigma attached to crimes of sexual assault and child

molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act than the type of evidence that is often introduced under Rule 404(b).").  And where the party that will be prejudiced by the admission of such prior acts is not the party who committed them, as in this case, the risk of unfair prejudice is particularly substantial.

18.   **Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding Alleged Harassers' Convictions For Crimes Other Than Sexual Offenses.**

Plaintiffs should be barred under Fed. R. Evid. 402, 403, 404, and 609 from introducing evidence or argument regarding alleged harassers' convictions for crimes other than sexual offenses.  Federal Rule of Evidence 404 prohibits the use of character evidence to prove conduct in conformity therewith.  Under Rule 404(b), evidence of other crimes is inadmissible to show a propensity to commit such acts.  *See United States v. Mothershed*, 859 F.2d 585, 589-92 (8th Cir. 1988) (reversing conviction for aiding and abetting bank robbery where evidence of prior conviction for possession of stolen bank funds was improperly admitted).  The use of prior convictions for a non-character purpose is also prohibited where the convictions are for crimes that are not "similar in kind and close in time" to the acts at issue, or where the evidence is more prejudicial than probative.  *See Mothershed*, 859 F.2d at 588. (citation omitted).  Evidence of alleged harassers' non-sex offenses in not "similar in kind" to the alleged conduct in this case, so will not assist the jury in determining whether drivers' allegedly harassing conduct was motivated by sex.  Nor is such evidence relevant to any other issue in this case that constitutes a permissible purpose under Rule 404(b).  Moreover, any minimal relevance is substantially outweighed by the inflammatory nature of such evidence, which would unfairly prejudice CRST if placed before the jury.

Evidence of alleged harassers' convictions also should not be admitted for impeachment of an alleged harasser if he is called as a witness.  Fed. R. Evid. 609(a) specifically prohibits the

use, as impeachment evidence, of a misdemeanor conviction for a crime not involving dishonesty or false statement.  Rule 609(b) also prohibits the use of evidence of crimes more than ten years old for impeachment unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  Such evidence should be admitted "very rarely and only in exceptional circumstances."  Fed. R. Evid. 609, Notes of Committee on the Judiciary, Senate Report No. 93-1277.

19.    **Plaintiffs Should Be Barred From Comparing This Case To Other Cases Brought By EEOC.**

Plaintiffs should be barred from making inflammatory generalizations and comparisons about this case such as EEOC's recent statement that this is "one of the most egregious cases of sex harassment ever brought by the Commission."  (EEOC Objections to Ruling on Mot. to Strike, Doc. No. 196, at 2.)  There is no basis for such a statement because EEOC has not yet proved any sexual harassment in this case.  EEOC's unfounded generalization has no probative value.  Most seriously, however, the statement is inflammatory and prejudicial, and would therefore not be admissible under Federal Rule of Evidence 403 even if it had any relevance.  *See* Fed. R. Evid. 403 advisory committee's note ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.")

20.    **CRST Requests The Court To Instruct The Jury That CRST Is Precluded By Law From Requesting That Employees Take Lie Detector Tests.**

CRST is prohibited by the Employee Polygraph Protection Act of 1988 from directly or indirectly requiring, requesting, suggesting, or causing any employee to take or submit to any lie detector test, and from using, accepting, referring to, or inquiring about the results of any lie detector test of any employee.  *See* 22 U.S.C. § 2002.  To protect CRST against unfair prejudice

from jurors' speculation that CRST could have, but did not, ask women who complained of sexual harassment and/or accused drivers to take lie detector tests to resolve a "he said, she said" situation, CRST requests the Court to instruct the jury regarding the Employee Polygraph Protection Act.  *Cf. United States v. Zaccaria*, 240 F.3d 75, 80-81 (1st Cir. 2001) (holding district court properly barred cross-examination of secret service agent about administration of or failure to administer polygraph tests to witnesses where inquiry was designed to determine whether the government ignored its own investigation methods to protect its witnesses or felt that the witnesses were being evasive, finding "the proposed inquiry wholly irrelevant, potentially confusing, and unfairly prejudicial"); *United States v. Schneider*, 157 F. Supp. 2d 1044, 1061-63, 1071 (N.D. Iowa 2001) (granting defendant a new trial where prosecutor's closing argument improperly implied that the jury should draw an adverse inference from failure of defendant and defense witnesses to submit to polygraph examinations).

21. **CRST Requests That The Court Exclude Claims For Personal Property Left On Trucks.**

CRST drivers sign a "Personal Property Disclaimer and Release" stating that CRST is not responsible for any personal belongings, including any item stored in a tractor.  (*See, e.g.*, Ex. 27, CRST 22244.)  Such releases are valid and enforceable.  *See Huber v. Hovey*, 501 N.W.2d 53, 55, 58 (Iowa 1993) (affirming summary judgment against plaintiff in personal injury suit against racetrack where plaintiff had signed a release of liability).  The Court should therefore exclude any claims or allegations that CRST should reimburse a female driver for belongings she left on a truck, such as the claim made by Cynthia Moffett in her interrogatory responses outlining the damages she seeks in this case.  (C. Moffett Interrog. Resp. ¶ 3F, attached here as Ex. 28.)

**22.    Plaintiffs Should Be Barred From Introducing Photographs Or Photocopies Of Photographs Of The Alleged Bruises Female Drivers Claim They Received.**

Plaintiffs should be precluded from introducing the photographs, or photocopies of photographs, of bruising they allege they sustained in connection with the alleged sexual harassment.   Any probative value of those photographs is substantially outweighed by their prejudicial effect. Fed. R. Evid. 403.  The photographs lack probative value to the extent they do not clearly depict the alleged bruising the class members claim.

EEOC produced photocopies of photographs of female driver Lola Hutton, who alleges that Paul Brady physically attacked her, hitting her twice on the face with the Qualcomm machine, and punching her in the face.   (Hutton Dep. Tr. at 72:3-20, attached as Ex. 29.)   The photocopied pictures of Ms. Hutton's alleged bruises are blurry and unreadable; it is impossible to tell what part of Ms. Hutton's body is depicted in some of the pictures and in others it is unclear whether there are any marks on her or what any marks might be.   The pictures cannot be used to corroborate Ms. Hutton's allegations.   (EEOC 29_00001–04, attached as Ex. 30)   These pictures are highly prejudicial because the jury may infer that Ms. Hutton was attacked based merely on what may appear to be bruises in these blurry photocopies.   *See Littleton v. McNeely*, --- F.3d ---, 2009 WL 938999 (8th Cir. April 9, 2009) (upholding the district court decision to exclude photographs offered to prove that a woman had been drinking alcohol because they merely showed her holding an unidentified open bottle and the photographs were likely to be prejudicial).   As any probative value is outweighed by this prejudicial effect, the photocopied pictures should be excluded.

EEOC's exhibit list also includes photographs of class members Martha Griffin and Tracy Tuttle.   These photographs should be excluded for the same reasons as Ms. Hutton's photographs.  The photographs of Ms. Griffin do not clearly show bruising that corroborates Ms. Griffin's allegations.   (See CRST 243685–87, attached as Ex. 31.)   Ms. Griffin alleges that she

had bruises on her lip and chest because her trainer allegedly bit her.  (Griffin Dep. Tr. at 86–103, CRST SJ APP, attached to Doc. No. 148, at 1298–1302.)   She sent the photographs to CRST's Human Resources Department.  (Griffin Dep. Tr. at 114–15, attached as Ex. 32.)  Of the five photographs, only two show marks on Ms. Griffin's body, and neither discernibly shows that these marks were on Ms. Griffin's lip or chest.  The photographs that do discernibly depict Ms. Griffin's lip or chest are unclear, but do not appear to show any bruising.  Similarly, the photographs that Ms. Tuttle sent to CRST's Human Resources Department are blurry and confusing.  (CRST 23777-23778, 23787-23788, 229542, attached as Ex. 33; EEOC 7000003, attached as Ex. 34.)  Ms. Tuttle alleges that Jason Standridge grabbed her leg so hard it left marks, (CRST 23773, attached as Ex. 7), but it is not clear from the photographs whether it is Ms. Tuttle's arm or leg that is depicted.  These photographs do not corroborate Ms. Tuttle's or Ms. Griffin's harassment allegations, and are not probative of the alleged harassment.  Furthermore, these photographs are highly prejudicial because the jury could infer harassment based merely on the harassment allegedly depicted in the photographs, although they do not corroborate Ms. Griffin's and Ms. Tuttle's allegations.

Even if the photographs produced by EEOC or sent by female drivers to CRST did have probative value, it is unclear the Plaintiffs can lay a proper foundation to enter these photographs into evidence.  "In order to be admissible a photograph must be shown to be an accurate representation of the thing depicted as it appeared at the relevant time."  *Schmidt v. City of Bella Villa*, 557 F.3d 564, 569 (8th Cir. 2009) (upholding the exclusion of photographs based on lack of foundation evidence).

**23.    Plaintiffs Should Be Barred From Introducing Evidence And Argument Regarding The Fact That Cynthia Moffett Was Charged With And Acquitted Of Two Counts of Aggravated Battery.**

Prior to this litigation, Cynthia Moffett was involved in a violent altercation with her co-driver, John Hines, in which she slashed him repeatedly with a knife.  (Ex. 16, Moffett Dep. 143–144.)  Ms. Moffett was charged with two counts of aggravated battery and subsequently acquitted.  (*Id.* at 27.)  Plaintiffs should be barred from introducing any evidence about the criminal investigation and proceeding, commencing from the point after Ms. Moffett's arrest, because those facts are irrelevant to this civil litigation.  Fed. R. Evid. 402.  In addition, any probative value of the criminal investigation and case, including the subsequent acquittal, "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Moreover, acquittal is considered hearsay for which there is no exception.  Fed. R. Evid. 802, 803.

The Eighth Circuit has joined its sister circuits in concluding that evidence of an acquittal is properly excluded from a subsequent trial because an acquittal is irrelevant.  *Prince v. Lockhart*, 971 F.2d 118 (8th Cir. 1992).  In *Prince*, the Eighth Circuit reversed a district court's decision that had been based on a finding that refusal to permit the party to tell the jury of his acquittal rendered the trial fundamentally unfair.  *Id.* at 120.  The Eighth Circuit disagreed and reiterated the general rule that:

> [a]lthough a judgment of acquittal is relevant with respect to the issues of double jeopardy and collateral estoppel, once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted.

*Id.* at 122 (quoting *United States v. Kerley*, 643 F.2d 299, 300 (5th Cir.1981) (internal quotations and citations omitted)); *see also U.S. v. Jones*, 266 F.3d 804, 814–15 (8th Cir. 2001) ("The acquittal in the earlier trial could have been based on any one of a number of findings by the

jury.  Because the acquittals were hearsay and did not prove any one fact, appellant's substantial rights were not prejudiced by the refusal to allow the evidence to be heard by the jury.")

The *Prince* court elaborated that the two primary reasons for exclusion of such evidence is that "judgments of acquittal are hearsay," and that judgments are not relevant "because they do not prove innocence; they simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt."  *Id.* (citing *U.S. v. Sutton*, 732 F.2d 1483, 1493 (10th Cir. 1984); *U.S. v. Viserto*, 596 F.2d 531, 537 (2d Cir. 1979); *U.S.  v. Riley*, 684 F.2d 542, 546 (8th Cir. 1982); *U.S. v. Jones*, 808 F.2d 561, 566 (7th Cir. 1986); *Kerley*, 643 F.2d at 300).  Courts also find that such evidence is likely to confuse a jury and is, therefore, unfairly prejudicial.  *See U.S. v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) ("[C]ases are dismissed for a variety of reasons, many of which are unrelated to culpability. Because evidence of a dismissal may have served to confuse the jury rather than to assist it, the district court ha[s] the authority to exclude such evidence here." (citing Fed. R. Evid. 403)).

Based on this rationale, this Court not only has excluded evidence of an acquittal, but also other evidence related to the criminal proceeding in general, stating that "[e]vidence of an acquittal has little probative value."  *U.S. v. Sheridan*, No. 06-CR-115-LRR, 2006 WL 3523544, at *2 (N.D. Iowa Dec. 6, 2006) (J. Reade).  The same rationale applies here.  In addition to its irrelevance, the facts that Moffett was charged and then acquitted of these crimes would confuse the jury and would prove needlessly wasteful of the Court's and jury's time and resources. Allowing evidence of any of the events of the criminal proceeding would open the door for the parties to engage in the consideration of collateral issues, such as the extent and thoroughness of the police's investigation and the testimony elicited at that criminal trial.  Evidence and argument about these issues would be necessary if the fact of the criminal trial and acquittal are the subject of evidence or argument.  Those details, however, are otherwise irrelevant to the case at hand.

Furthermore, exclusion of the evidence would not be prejudicial to Ms. Moffett because she, like the other female drivers in this case, is free to prove her sexual harassment claim without reference to the criminal case.

Evidence of the arrest of Ms. Moffett should be permitted because it is relevant to CRST's response to Ms. Moffett's statement about a potential sexual harassment. (CRST 227162.) The first and only time Ms. Moffett "notified" CRST of alleged sexual harassment occurred in a QualComm message sent just prior before her arrest. As such, her arrest is relevant to demonstrate the reasons why CRST could not interview Ms. Moffett about the alleged sexual harassment claim, and why John Hines, her alleged harasser, continued driving for CRST after that incident without a "no female" restriction. CRST reasonably relied upon the judgment of the only other individuals who were present at the scene of the stabbing—the Jerome County Police Officers who responded to the 911 calls placed by Mr. Hines and Ms. Moffett—and who arrested Ms. Moffett, but not Mr. Hines. CRST should be permitted to present this information to the jury.

Therefore, CRST requests that Plaintiffs be barred from introducing evidence of the criminal action against Ms. Moffett, commencing *after* her arrest and through her subsequent acquittal for aggravated battery. Furthermore, to the extent any reference must be made to the prior action, CRST requests that it be referred to as the "prior proceeding."

## 24. Plaintiffs Should Be Barred From Introducing Evidence And Argument That Cynthia Moffett Was Displaced By Hurricane Katrina.

Cynthia Moffett lived in New Orleans when Hurricane Katrina struck and lost her house and her job as a result of the hurricane and its aftermath. Evidence of Ms. Moffett's association with Hurricane Katrina is not relevant to her claim for sexual harassment and could prejudice CRST by making her appear more sympathetic. *See Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1417 (8th Cir. 1995) ("Relevance is not defined by what is designed to evoke a jury's unfettered

sympathies; rather, it is limited to that which makes the existence of a fact in issue more or less probable."); *Albert v. Ober Gatlinburg, Inc.*, No. 3:02-CV-277, 2006 WL 897958, at *2–3 (E.D. Tenn. Apr. 6, 2006) (excluding any reference to whether plaintiff was affected by Hurricane Katrina because it had no probative value in personal injury action against ski resort and would be unduly prejudicial).   Plaintiffs should be barred under Federal Rule of Evidence 403 from referring to Ms. Moffett's alleged status as a victim of Hurricane Katrina during trial.

**25.   Plaintiffs Should Be Barred From Introducing Evidence And Argument Relating To Barbara Wallace's Truck Accident While Employed By CRST.**

Barbara Wallace was in an accident while riding in a CRST truck in March 2005.   The truck rolled over while Ms. Wallace's lead driver was at the wheel.   (Ex. 35, Wallace Dep. at 28–29.)   Ms. Wallace received workers' compensation for her medical treatment and lost wages. (Ex. 36, CRST 72663.)   Evidence of Ms. Wallace's accident has no relevance to her claim for sexual harassment and could prejudice CRST by making Ms. Wallace appear more sympathetic to the jury.   Plaintiffs should be barred under Fed. R. Evid. 403 from referring to Ms. Wallace's accident during trial.

**26.   EEOC's Expert, Dr. Campion, Should Be Barred From Offering Any Testimony During Plaintiffs' Case, And Should Be Limited To Rebuttal Testimony Only.**

EEOC has expressed a wish to present "expert testimony regarding statistical evidence" at trial in support of its pattern or practice claim.   (EEOC's Br. in Supp. Motion to Bifurcate the Trial and for Trial Management Order, Doc. No. 136-2, at 15.)   Given this Court's April 30 order dismissing with prejudice EEOC's pattern or practice claim, it is unclear whether EEOC still intends to present expert testimony.   As a precautionary measure, CRST submits this motion in limine banning EEOC from offering expert testimony during plaintiffs' case; such testimony should be limited to rebuttal testimony only.

As the Court noted in its Order on CRST's Motion to Exclude Starke's Treating Physicians as Witnesses, neither EEOC nor Interveners disclosed an expert witness by the November 1, 2008, deadline.  (1/26/09 Order, Doc. No. 124, at 2.)  CRST disclosed its experts, Dr. Mary Baker and Dr. Jone Papinchock, and submitted their expert reports, by the December 1, 2008, deadline.  (8/20/08 Order, Doc. No. 44, at 3).  EEOC disclosed its rebuttal expert, Dr. Michael A. Campion, and submitted his report on December 15, 2008.  (*See*, Ex. 37, Campion 12/15/08 Report.)  CRST files this motion to make clear prior to trial that EEOC is precluded from using Dr. Campion in any capacity other than as a rebuttal expert.  *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748-759 (8th Cir. 2006) (holding that defendant would be prejudiced if plaintiff's rebuttal expert were allowed to testify as a primary expert); *ProBatter Sports, LLC v. Joyner Techs., LLC*, 2007 WL 2752080 at *3-4 (N.D. Iowa 2007) (Reade, J.) (striking rebuttal expert's affidavit supporting plaintiff's motion for summary judgment to the extent that it did not constitute mere rebuttal evidence, to prevent prejudice to defendant).

**27.**   **Plaintiffs Should Be Barred From Introducing Expert Testimony That Was Not Disclosed in Its Expert's Rebuttal Report.**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that an expert file a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them."   EEOC rebuttal expert Dr. Campion submitted two analyses *after* he submitted his December 15, 2008 expert report.  Neither of the two analyses were supplements or updates to analyses included in his report; instead they were additional analyses conducted by Dr. Campion after his report was submitted.  CRST has not had an adequate opportunity to examine him about these subsequent analyses.  The first was submitted on the eve of his deposition, and as described in Part 16, *supra*, it was an analysis regarding the "frequencies of the various types of punishment" that certain drivers received.  (Ex. 21, Campion Rep. Table 9.) The document specifically focused on the imposition of "No Female Restriction" punishments

and included a list of men that Dr. Campion concluded had driven with a woman despite having received a "No Female Restriction." (Ex. 22, CRST Ex. 1009.) Because of the lateness of the submission, counsel for CRST did not have an opportunity to analyze the files for the 27 drivers identified in the list to determine the circumstances involving each individual before the deposition. Consequently, counsel was unable to adequately examine Dr. Campion on the subject. (*See* Campion Dep. 102.)

The second analysis was submitted to CRST *after* Dr. Campion's January 8, 2009 deposition. This analysis involved the tenure of alleged harassers as compared to the tenure of single women. Because this analysis was conducted after Dr. Campion was deposed, CRST did not have an opportunity to even question him on the subject and will have no opportunity to examine him with respect to this analysis prior to trial. Furthermore, at the time Dr. Campion was deposed, CRST was not on notice that Dr. Campion would submit this analysis and it came to CRST as a surprise to receive this submission.[22] CRST would be prejudiced if Dr. Campion is allowed to testify thereto.

Plaintiffs should be barred from introducing evidence regarding the additional analyses Dr. Campion conducted after submission of his report. The trial court has discretion in handling its caseload, and parties are obliged to comply with discovery deadlines imposed by the trial court in order to maintain the order and efficiency of the trial. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The trial court, in deciding the appropriate remedy for noncompliance, may consider: "surprise and prejudice to the opposing party [and] the extent to which allowing the information or testimony would disrupt the order of the court and efficiency of the trial." *Id.* Supplemental reports that are untimely submitted may be stricken from the record. *See generally*

---

[22]    For the same reasons, CRST requests that any additional analyses or reports that Dr. Campion might submit between now and the time of trial be stricken.

*Wegener v. Johnson*, 527 F.3d 687; *TransClean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795 (D. Minn. 2000) (citing Federal Rules of Civil Procedure 16(f) and 37(c)(1)).  Here, Dr. Campion could have, but did not, include these analyses in his report, and consequently, EEOC should be barred from introducing expert testimony related to submissions and analyses conducted after the December 15, 2008 deadline for EEOC's rebuttal report as set by this court.

28.     **Plaintiffs Should Be Barred From Introducing Expert Testimony Regarding Whether CRST's Practices and Procedures Conform With Recommended Practices in the Human Resources Literature.**

EEOC did not designate an expert by the November 1, 2008 deadline.[23]  Instead, it chose to retain Dr. Michael A. Campion ("Dr. Campion") as a rebuttal expert.  CRST submitted its expert reports to EEOC on December 1, 2008.  EEOC's rebuttal report was due and submitted on December 15, 2008.  CRST deposed Dr. Campion on January 8, 2009.  Both in his report and at his deposition, Dr. Campion stated that he had "not had a chance to conduct a thorough review of the literature on HR policies, and thus will not offer opinions on whether CRST's policies conform to the HR practices recommended in the literature."  He also testified that he had not conducted a thorough review of CRST's HR policies and procedures, beyond what was contained in Dr. Papinchock's report. (Campion Rep. at 15; Campion Dep. at 72-74.)  Because the expert discovery deadlines have passed and there is no further opportunity to examine Dr. Campion prior to trial, EEOC should be barred from introducing evidence or testimony at trial regarding the extent to which CRST's policies, practices, and/or procedures conform to the recommended practices in the human resources literature.

The trial court has discretion in handling its caseload, and parties are obliged to comply with discovery deadlines imposed by the trial court in order to maintain the order and efficiency of the trial.  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  The trial court, in deciding

---

[23]     Interveners did not designate any experts by the November 1, 2008 deadline either. (1/26/2009 Order, Doc. No. 124, at 2.)

the appropriate remedy for noncompliance, may consider: "surprise and prejudice to the opposing party [and] the extent to which allowing the information or testimony would disrupt the order of the court and efficiency of the trial." *Id.* Supplemental reports that are untimely submitted may be stricken from the record. *See generally Wegener v. Johnson*, 527 F.3d 687; *TransClean Corp. v. Bridgewood Svcs., Inc.*, 101 F. Supp. 2d 788, 795 (D. Minn. 2000) (citing Federal Rules of Civil Procedure 16(f) and 37(c)(1)).

Dr. Campion testified that he did not have an opportunity to review the literature on HR policies and that he would not offer opinions on whether CRST's policies conform to the HR practices recommended in the literature. (Campion Dep. 72-73.) While there is no indication that Dr. Campion will seek to testify with respect to this subject, CRST would like to eliminate any surprise or prejudice resulting from any "opinions" that Dr. Campion may later attempt to inject. In formulating its trial strategy for a trial less than two months away, CRST has relied on the statements by Dr. Campion that he does not intend to opine on the topic; allowing Dr. Campion to do so would be unduly prejudicial to CRST. Therefore, CRST moves to exclude such evidence or testimony.

**29.    CRST's Motion in limine to preclude the EEOC from offering evidence or argument regarding the solicitation of class members And for additional relief.**

After CRST obtained specific information concerning EEOC's tactics in soliciting class members, CRST served a Rule 30(b)(6) deposition notice calling for EEOC to produce a witness to testify concerning EEOC's efforts to solicit current and former CRST female drivers to join this suit. CRST had been advised by Lois Gooden, a CRST driver, that she had been contacted by a man who identified himself as an EEOC representative and that, during that telephone call, she was told that "if [she] joined the lawsuit [she] could receive a large monetary settlement from CRST." (Ex. 39, L. Gooden Decl., Doc. No. 96-2 ¶5.) According to Gooden's declaration, when she advised the EEOC representative that she had no interest in becoming a class member, the

57

EEOC representative criticized her and said "there was something wrong with [her] attitude." (*Id.*)[24]

EEOC refused to produce a witness to testify concerning its solicitation efforts and CRST filed a motion to compel. After briefing and extended argument, Magistrate Judge Scoles ordered EEOC to produce a 30(b)(6) witness to testify concerning its solicitation efforts.  (1/20/09 Order, Doc. No. 116, at 12.)  Instead of producing someone knowledgeable, however, EEOC produced a paralegal temp who had been hired a year after the lawsuit had been filed and who was unprepared to give testimony concerning facts unquestionably known to EEOC.  (Ex. 40, EEOC Dep. 5-7.)  Consequently, EEOC's chosen representative was unable to answer simple questions concerning such matters as the names of the EEOC attorneys who called class members, the identity of class members EEOC called, or the substance of EEOC's conversations with those women.  (*Id.* at 44-45; 59.)  EEOC's inability to answer such straight-forward questions is particularly troubling given the importance of the class members' credibility and motivations for joining the class.  (*See* 1/20/09 Order, Doc. No. 116, at 9.)

Given EEOC's failure to produce an adequately prepared 30(b)(6) witness in violation of the Federal Rules and the January 20, 2009 Order, CRST requests that this Court preclude EEOC from offering evidence or argument to rebut CRST's evidence concerning EEOC's solicitation efforts. CRST further requests that, as a sanction, a statement be read by the Court to the jury, making certain findings regarding EEOC's solicitation activities.

### A.    Key Factual Background.

On December 15, 2008, CRST served EEOC with a Notice of Rule 30(b)(6) Deposition. (Ex. 41, Notice of Deposition, Doc. No. 96-3.)  The topics identified included:

---

[24]  These details are outlined in CRST's Brief in Support of Its Motion to Compel EEOC to Comply With CRST's Rule 30(B)(6) Notice of Deposition, Docket No. 96, and its Reply in Support of Its Motion to Compel the EEOC to Comply with CRST's Rule 30(B)(6) Notice of Deposition, Docket No. 112.

3.     The EEOC's efforts to encourage or otherwise solicit current or former female CRST employees to participate in this litigation as "class members," including all written or oral statements used to induce such participation.

4.     All EEOC's communications with current and former CRST female employees with whom it had no attorney-client relationship at the time of such communications concerning their potential participation in this litigation, including but not limited to:

> (a) any statements regarding the potential or prospect for financial or other personal benefits, including the identity of all individuals to whom such statements were made, the identity of the EEOC representative making each such statement, and the content of each such statement;

> (b) letters of the sort sent by EEOC to Gladys Morales dated November 17, 2008, attached hereto as Exhibit A(1), including but not limited to the identity of all individuals to whom such letters were directed; [and]

> (c)  any other letters or other written communications sent to current or former CRST female employees with whom the EEOC had no attorney-client relationship at the time of the letter or written communication, including but not limited to any such letters or written communications that were labeled "privileged and confidential" or otherwise denominated in some manner as being "privileged."

(*Id.* at 4.)

EEOC refused to produce a witness to testify on its behalf concerning its efforts to solicit class members with whom it had no attorney-client relationship or its oral communications with those women.  (J. Kamp 12/18/08 Email to CRST Counsel, Doc. No. 96-4; S. Sears Coder Decl., Doc. No. 96-7, ¶¶ 8-9.)  CRST moved to compel the EEOC to produce a knowledgeable witness on those subjects.  (CRST's Mot. to Compel EEOC to Comply with 30(b)(6), Doc. No. 95, at 3.)  In a January 20, 2009 Order, Magistrate Judge Scoles granted CRST's motion to compel.  (1/20/09 Order, Doc. No. 116, at 12.)  The Order required EEOC to produce a witness to testify about its representations made in an effort to encourage women to participate in the class prior to establishment of an attorney-client relationship between EEOC and the women.  (*Id.*)  In doing so, Magistrate Judge Scoles recognized that "the information sought is not protected by the

attorney-client privilege or the work-product doctrine" and "crucial" to the preparation of the case. (*Id*. at 11.) Magistrate Judge Scoles also stated:

> [T]he information sought by CRST is relevant to the issue of witness credibility. The issue of credibility is particularly crucial in this case because in many instances the only witnesses to the alleged harassment will be the claimant and her instructor. (*Id*.)

EEOC produced Anne Louise Samson as its Rule 30(b)(6) representative. Ms Samson is a paralegal hired by EEOC through a temporary services agency. (Ex. 40, EEOC Dep. at 5.) Ms. Samson began working for EEOC in September 2008, a year after EEOC filed this suit. (*Id*. at 6-7.) Ms. Samson testified that she had no personal knowledge about EEOC's oral communications with current or former CRST female employees. (*Id*. at 46.) To prepare for EEOC's 30(b)(6) deposition, Ms. Samson only spoke with an EEOC attorney for approximately one hour, during which time she reviewed the Rule 30(b)(6) Notice and its attachment, five or six letters EEOC sent to the potential class members, and one email sent by EEOC attorney Nickolas Pladson regarding his oral communications with potential class members. (*Id*. at 25-26, 301.)

Ms. Samson testified that she made no further effort to educate herself on the EEOC's oral communications with class members or otherwise prepare for the 30(b)(6) deposition. (*Id*. at 26-27.) For example, even after receiving the email from Mr. Pladson stating that he made calls to women before an attorney-client relationship was formed – and knowing that this was a subject of the EEOC's 30(b)(6) deposition – Ms. Samson neither spoke with Mr. Pladson nor educated herself on the details of those conversations. (*Id*. at 204-06.)[25]

---

[25] While Ms. Szromba was a recipient of Mr. Pladson's email regarding his calls with women before any attorney-client relationship was formed and she met with Ms. Samson before the 30(b)(6) deposition, (*id*. at 205, 214), Ms. Samson testified that neither Ms. Szromba nor any other attorney at EEOC provided Ms.. Samson with any additional information about Mr. Pladson's calls other than what she was able to ascertain from Mr. Pladson's email. (*Id*. at 254.)

The substantial deficiencies in Ms. Samson's testimony – particularly regarding oral communications between EEOC and current or former CRST female employees with whom EEOC had no attorney-client relationship – demonstrate that EEOC chose not to educate Ms. Samson concerning the subjects of the Court ordered Rule 30(b)(6) deposition.  For example, according to Ms Samson's testimony, as EEOC's designated Rule 30(b)(6) witness she "didn't know" what efforts EEOC took to encourage or otherwise solicit current or former CRST employees to participate in the litigation as class members prior to September 2007 when the complaint was filed.  (*Id.* at 68.)

In addition, when questioned about EEOC's communications with women with whom EEOC did not have an attorney-client relationship prior to September 2008, Ms. Samson testified that EEOC attorney Brian Tyndall made such calls, but she was not able to testify as to the substance of his conversations.  (*Id.* at 36-37.)  In particular, Ms. Samson initially stated that she could not deny the fact that statements were made by Mr. Tyndall – on behalf of EEOC – to class members about the potential or prospect for financial or other personal benefits.  (*Id.* at 36)  But immediately after the EEOC's counsel asked for a break, Ms. Samson changed her testimony and stated that the EEOC did not make any calls to women with whom it did not have an attorney-client relationship before September 30, 2008.  (*Id.* at 37-38, 45.)

Ms. Samson then testified that EEOC made "[m]aybe a few [calls to women with whom EEOC did not have an attorney-client relationship] towards the end when [they] were trying to schedule depositions.  There may have been a few women."  (*Id.* at 45.)  When asked about the details of those calls, Ms. Samson's response as the EEOC's representative was:

a)      She did not know the particular names of the women the EEOC called (*id.* at 45);

b)      She did not know the number of class members the EEOC called (*id.*);

c)      She did not know the dates the EEOC called class members with whom it had no attorney-client relationship (*id.* at 46); and

      d)     She did not know on how many days the EEOC made these solicitation phone calls.  (*Id.* at 308-09.)[26]

In response to the simple question of *who* made telephone calls to class members with whom EEOC had no attorney-client relationship, Ms. Samson gave various answers:

      e)     She was "not sure exactly" who made these telephone calls.  (*Id.* at 45-46).

      f)     Ms. Samson later testified that a number of EEOC attorneys – Jean Kamp, Jeanne Szromba, Nick Pladson, Ann Henry, and Brian Tyndall – conducted such calls.  (*Id.* at 57-58; 213-14.)

      g)     Immediately following a break requested by EEOC's counsel, Ms. Samson testified that an email was sent out to the EEOC attorneys working on this case inquiring whether anybody made phone calls to women with whom EEOC had no attorney-client relationship.  Ms. Samson then testified that only EEOC attorney Nick Pladson made those calls.  (*Id.* at 213-14.)

      h)     Despite first testifying that Mr. Tyndall made calls to class members with whom EEOC did not have an attorney-client relationship, Ms. Samson then testified that Mr. Tyndall made no such calls.  (*Id.* at 307-08.)

When questioned about the substance of EEOC's conversations (before an attorney-client relationship was formed) with each class member EEOC included solely on the basis of the existence of an HR investigative file relating to those women, *i.e.*, each class member listed in the seventh and ninth initial disclosures, Ms. Samson was not able to give complete or reliable information.   Rather, she posited what EEOC "would have" said during those calls, while acknowledging that EEOC attorneys did not work from a written script.  (*Id.* at 53, 301.)[27]

---

[26] Although it admittedly sent multiple solicitation letters to certain class members, EEOC also could not identify which particular solicitation letters were sent to which class members.  (*See, e.g.,* EEOC Dep. at 291-92, 306.)

[27] After a break requested by EEOC counsel, (EEOC Dep. 50-51), Ms. Samson testified that EEOC lawyers did not say anything to the women who were potential class members about the potential financial benefit of joining the lawsuit.  (*Id.* at 55.)  When later questioned again as to how she knew that Mr. Pladson did not have conversations with the potential class members discussing that they would receive a large monetary settlement from CRST, Ms. Samson responded, "Because all they were -- I mean, I just -- I don't know, but I know we didn't, you know -- they were discussing setting up depositions, and the only women we did talk to right before the depositions, were supposed to be scheduled.  That's the only time we did speak to any

**B.      EEOC Chose to Designate a 30(b)(6) Witness Who Lacked Knowledge.**

Rule 30(b)(6) required EEOC to designate a representative who was "both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization." *Bank of New York v. Meridien Biao Bank Tanzania, Ltd.*, 171 F.R.D. 135, 150 (S.D.N.Y. 1997).   The deponent "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Id.* at 151 (internal quotations omitted, alterations in original).   Rule 30(b)(6) requires testimony as to "matters known *or reasonably available* to the organization." Fed. R. Civ. Pro. 30(b)(6) (emphasis added).   An adequately prepared 30(b)(6) witness must be able to testify about the organization's institutional knowledge, documents, and any other information reasonably available to the organization on every issue outlined in the deposition notice. *See, e.g.*, *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638-39 (D. Minn. 2000) ("If need be, the responding party 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits.'   Any other interpretation of the Rule would allow the responding corporation to 'sandbag' the depositional process 'by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.'") (internal citations omitted); *Dravo Corp. v. Liberty Mutual Ins. Co.*, 164 F.R.D. 70, 76 (D. Neb 1995) (if the designated witness does not have personal knowledge as to the matters set forth in the

---

women." (*Id.* at 217.)  When further questioned by CRST counsel as to how she knew that Mr. Pladson did not discuss the large monetary settlement if she did not speak with him about his conversations with the women, (*id.* at 216-17.), two counsel for EEOC "strenuously" objected to preclude Ms. Samson's answer. (*Id.* at 217-19.)  Ms. Samson finally stated that her knowledge regarding this issue was based solely on the fact that she "received the e-mail from Nick, and he just said that he was trying to set up depositions with women." (*Id.* at 219.)

30(b)(6) notice, the organization is obligated to prepare him "so that he may give complete, knowledgeable and binding answers" on behalf of the organization); *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38-39 (D. Mass. 2001) ("reasonably available" in the context of 30(b)(6) is analogous to production of documents under Rule 34; documents that are "reasonably available" are those that are in the "control" of the organization).

Given these obligations, EEOC's decision to produce Ms. Samson and its decision to have her fail to gather the information in EEOC's possession was "tantamount to a failure to appear" at a deposition. *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996); *see also Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 303 (3d Cir. 2000) ("If the agent [ ] is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.").

The EEOC's designated representative not only was unable to testify as to the specifics of the calls made by EEOC to women prior to the establishment of an attorney-client relationship, but she was also unable to clearly and reliably testify as to which EEOC attorneys made such calls. (Ex. 40. EEOC Dep. 45-46,.)  The fact that Ms. Samson initially testified that Mr. Tyndall made the calls in question, later testified that a number of EEOC attorneys conducted such calls, and then after the break requested by her counsel that only Mr. Pladson made such calls, demonstrates that EEOC's witness was not adequately prepared to testify to the subject matter encompassed in the Rule 30(b)(6) Notice.  (*Id.* at 45-46; 57; 213-14; 307-08.)  This information was "reasonably available" to EEOC; yet, it chose to produce a witness who would be unable to provide the information to CRST.

### C.     The Court May Sanction EEOC for Its Violation of Rule 30(b)(6) and the January 20, 2009 Order.

Courts may impose sanctions where a Rule 30(b)(6) designee fails to answer questions or otherwise appear prepared for deposition.  Fed. Rs. Civ. P. 37(a)(4), 37(d); *see also Taylor*, 166 F.R.D. at 363 ("inadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on lack of good faith, prejudice to the opposing side, and disruption of the proceedings"); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) (sanctions imposed under Rule 37(a)(4) for 30(b)(6) witness's failure to give "complete, knowledgeable and binding answers on behalf of the corporation"); *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197-98 (5th Cir. 1993) (fees and costs imposed under Rule 37(d) for failure to provide a knowledgeable witness); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 640 (D. Kan. 1999) (imposing monetary sanctions under Rule 37(d), noting that "the mere fact that a party later has an opportunity to again depose the representative does not cure the initial inadequacy of the witness").

Sanctions also may be imposed under Rule 37(b) for failure to comply with a court order. Fed. R. Civ. P. 37(b); *see also*, *e.g.*, *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 940-41 (8th Cir. 2000) (imposing sanctions under Rule 37(b) for violation of a court order).  Thus, where a party fails to comply with either a Rule 30(b)(6) deposition notice or a court order, courts have discretion to impose a broad range of sanctions, including the preclusion of evidence at trial.  *See, e.g.*, Fed. Rs. Civ. P. 37(b)(2), 37(d); *Taylor*, 166 F.R.D. at 363 (noting that party may not be permitted to introduce evidence with respect to the areas of inquiry for which it lacked knowledge); *Black Horse Lane*, 228 F.3d at 305 (affirming imposition of monetary sanctions and order precluding the party from "asserting a position and introducing evidence" contrary to the position asserted by the inadequately prepared 30(b)(6) designee during his deposition under Rules 37(b), (d)); *Keefer*, 238 F.3d at 940-41 (8th Cir. 2000) (various sanctions

65

may be imposed under Rule 37(b) for violation of a court order, and the "district court is not . . . constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances").

In this case, sanctions are warranted given EEOC's willful failure to produce a witness fully educated on EEOC's oral communications with its class members in direct contravention of Magistrate Judge Scoles' January 20, 2009 Order.  CRST was prejudiced by the resulting failure to procure complete and reliable information about EEOC's solicitation calls and oral communications with class members with whom EEOC had no attorney-client privilege -- evidence that is directly relevant to the witnesses' credibility, which Magistrate Judge Scoles has previously deemed to be "particularly crucial" in this case.  (1/20/09 Order, Doc. No. 116, at 11.)

Consequently, CRST requests that this Court impose a sanction on EEOC providing that:

(a)  EEOC be precluded from offering evidence or argument concerning its solicitation of class members in response to the evidence offered by CRST; and

(b) a statement be read to the jury by the Court stating that there has been a finding that, in soliciting class members, (i) EEOC representatives stated to prospective class members that if they joined the lawsuit as a class member they could receive a large monetary settlement from CRST, and that, (ii) if a potential class member expressed an initial reluctance to participate as a class member, the EEOC representative criticized her.

## <u>CONCLUSION</u>

For the foregoing reasons, CRST respectfully requests that the Court grant CRST's

motions in limine.

Dated:  May 6, 2009                          Respectfully submitted,

                                             **CRST VAN EXPEDITED, INC.**

                                             By:    <u>s/John H. Mathias, Jr.</u> _____
                                                    One of its attorneys
Kevin J. Visser                                     John H. Mathias, Jr.
Thomas D. Wolle                                     Robert T. Markowski
Simmons, Perrine, Moyer &                           Sally K. Sears Coder
     Bergman, P.L.C.                                Jenner & Block LLP
115 Third Street SE, Suite 1200                     330 N. Wabash Avenue
Cedar Rapids, IA  52401-1266                        Chicago, Illinois  60611
                                                    312 222-9350

                    *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2009, I electronically filed the foregoing **CRST Van Expedited Inc.'s Motions in Limine** with the Clerk of the United States District Court, Northern District of Iowa, Cedar Rapids Division, using the ECF system, which will send notification of such filing to:

Brian C. Tyndall, Esq.
Equal Employment Opportunity Commission
Milwaukee Area Office
310 West Wisconsin Avenue- Suite 800
Milwaukee, WI  53203
brian.tyndall@eeoc.gov

Nicholas J. Pladson
Equal Employment Opportunity Commission
330 Second Avenue South, Suite 430
Minneapolis, Minnesota  55401
nicholas.pladson@eeoc.gov

Jean P. Kamp
Equal Employment Opportunity Commission
Chicago District Office
500 W. Madison Street, Suite 2000
Chicago, Illinois  60661
Jean.Kamp@eeoc.gov

Kevin J. Visser
Thomas D. Wolle
Simmons, Perrine, Moyer & Bergman, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA  52401-1266
kvisser@simmonsperrine.com
twolle@simmonsperrine.com

Jeffrey R. Tronvold
Matthew James Reilly
Eells & Tronvold
1921 51st Street NE
Cedar Rapids, Iowa  52402
jeff@eells-tronvold.com
matt@eells-tronvold.com

Ann Henry
Equal Employment Opportunity Commission
500 West Madison Street, Suite 2000
Chicago, Illinois  60661
Ann.Henry@eeoc.gov

Jeanne Szromba
Equal Employment Opportunity Commission
500 West Madison Street, Suite 2000
Chicago, Illinois  60661
Jeanne.Szromba@eeoc.gov

s/John H. Mathias, Jr. _____
One of Defendant's Attorneys