**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

and

JANET BOOT, BARBARA GRANT,
CINDY MOFFETT, REMCEY
JEUNENNE PEEPLES, MONIKA
STARKE, LATESHA THOMAS and
NICOLE ANN CINQUEMANO,

Plaintiffs-Interveners,

vs.

CRST VAN EXPEDITED, INC.,

        Defendant.

No. 07-CV-95-LRR


**ORDER**

---

*TABLE OF CONTENTS*

**I.    INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.   RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . **2**
    **A.    *Administrative Proceedings*** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
        *1.    Ms. Starke's Charge of Discrimination* . . . . . . . . . . . . . . . . . **2**
        *2.    Ms. Starke's limitations period* . . . . . . . . . . . . . . . . . . . . . . **4**
    **B.    *The EEOC's Complaint*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    **C.    *Answer*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
    **D.    *Motion*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**III.  STANDARD FOR SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . . . . . . **6**

**IV.  THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    **A.    *Arguments*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
        *1.    Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

      2.    *Resistance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
      3.    *Reply* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
      4.    *Surreply* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
  **B.**   **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      1.    *Holding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
      2.    *Alternate holding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
          a.    *The EEOC generally may not resurrect dead claims* . . **14**
          b.    *The continuing violation doctrine is largely inapplicable* **18**
             i.    *Ms. Carney* . . . . . . . . . . . . . . . . . . . . . . . . **19**
             ii.   *Ms. Shadden* . . . . . . . . . . . . . . . . . . . . . . . **20**
             iii.  *Ms. Skaggs* . . . . . . . . . . . . . . . . . . . . . . . . **22**
  **C.**   **Disposition as to the Twelve Women** . . . . . . . . . . . . . . . . . . . . **23**
**V.**   **MS. BEDFORD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
  **A.**   **Arguments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
  **B.**   **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
**VI.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

## I. INTRODUCTION

The matter before the court is Defendant CRST Van Expedited, Inc.'s Motion for Summary Judgment Based on Statute of Limitations and Other Grounds ("Motion") (docket no. 147).

## II. RELEVANT PRIOR PROCEEDINGS[1]

### A. Administrative Proceedings

### 1. Ms. Starke's Charge of Discrimination

On December 1, 2005, Plaintiff-Intervener Monika Starke ("Ms. Starke") presented a Charge of Discrimination ("Charge") to Plaintiff Equal Employment Opportunity Commission ("EEOC"). Ms. Starke alleged that her employer, Defendant CRST Van

---

[1] A more complete recitation of the prior proceedings is set forth in the court's Order (docket no. 197). Once again, the claims of Plaintiffs-Interveners Monika Starke, Janet Boot, Barbara Grant, Cindy Moffett, Remcey Jeunenne Peeples, Latesha Thomas and Nicole Ann Cinquemano are not at issue.

Expedited, Inc. ("CRST"), "discriminated against [her] on the basis of . . . sex . . . , in violation of Title VII of the Civil Rights Act of 1964, [42 U.S.C. § 2000e *et seq.*,] as amended" ("Title VII"). Def.'s App'x at 2998. Ms. Starke alleged the following "particulars" in her Charge:

> I was hired by [CRST] on June 22, 2005 in the position of Truck Driver. Since my employment began with [CRST,] I have been subjected to sexual harassment on two occasions by my Lead Trainers. On July 7, 2005, Bob Smith, Lead Trainer[,] began to make sexual remarks to me whenever he gave me instructions. . . . . On July 14, 2005, I contacted the dispatcher and was told that I could not get off the truck until the next day. On July 18, 2005 through August 3, 2005, David Goodman, Lead Trainer, forced me to have unwanted sex with him on several occasions while we were traveling in order to get a passing grade.

*Id.* Further, Ms. Starke alleged that CRST "did not state why I was subjected to sexual harassment[,] which created a hostile work environment." *Id.*

Ms. Starke asked the EEOC to file her Charge and cross-file it with the Iowa Civil Rights Commission ("ICRC"). Pursuant to a work-sharing agreement,[2] the EEOC formally received the Charge on behalf of both agencies and deemed the Charge to be "initially instituted" with the ICRC. (In the work-sharing agreement, the EEOC and ICRC reciprocally designated each other as agents for receiving charges of unlawful employment practices.) The EEOC sent a copy of the Charge to the ICRC, notified the ICRC that the Charge "is to be initially investigated by the EEOC," *id.* at 3000, and began its investigation. The ICRC had waived its right to exclusive jurisdiction over charges initially instituted with it. Here, the ICRC filed the Charge on December 5, 2005 but apparently stayed its own investigation pending the EEOC proceedings.

_____

[2] For further explanation of the work-sharing agreement between the EEOC and the ICRC, see *Millage v. City of Sioux City*, 258 F. Supp. 2d 976, 985-86 (N.D. Iowa 2003) (Bennett, C.J.).

## 2. Ms. Starke's limitations period

Because the EEOC deemed the Charge to be "initially instituted" with the ICRC, Ms. Starke's Charge was timely filed as to any alleged unlawful employment practice occurring on or after February 4, 2005, *i.e.*, any such practice occurring within 300 days of the filing of the Charge. In relevant part, Title VII's statute of limitations provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . , except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State . . . with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e-5(e)(1); *see, e.g., Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359-60 n.8 (1977) ("If a charge has been initially filed with or referred to a state . . . agency, it must be filed with the EEOC within 300 days after the practice occurred . . . ."). An influential treatise explains

> there is a dual aspect to the Title VII limitations periods; they have a retrospective, as well as a prospective, aspect. In other words, not only must charges be filed within 180 (or 300) days after a discriminatory event, but also, as a general rule, the aggrieved party can only achieve redress for discriminatory acts which occurred 180 (or 300) days prior to the filing of charges.

4 Lex K. Larson, *Employment Discrimination* § 72.02, at 72-5 (2d ed. July 2008); *see, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially filed a grievance with that agency must file the charge with the EEOC within 300 days of the

employment practice."); *Millage v. City of Sioux City*, 258 F. Supp. 2d 976, 984-86 (N.D. Iowa 2003) (Bennett, C.J.) (discussing the ICRC and concluding that in Iowa an administrative charge is timely so long as it is filed within 300 days).

### B. The EEOC's Complaint

On September 27, 2007, the EEOC filed the instant lawsuit on behalf of Ms. Starke "and a class of similarly situated female employees of [CRST] . . . ." Complaint (docket no. 2), at 1. Pursuant to 42 U.S.C. § 2000e-5(f)(1) and (3) and 42 U.S.C. § 1981a, the EEOC brings suit in its own name "to correct [CRST's] unlawful employment practices on the basis of sex, and to provide appropriate relief to [Ms.] Starke and a class of similarly situated female employees of [CRST] who were adversely affected by such practices." First Amended Complaint ("EEOC's Complaint") (docket no. 8), at 1.[3] The EEOC generally alleges that Ms. Starke and the other similarly situated women "were adversely affected . . . when their lead drivers or team drivers subjected them to sexual harassment and to a sexually hostile working environment based on their gender, and CRST failed to prevent, correct, and protect them . . . ." *Id.* Notably, the EEOC did *not* allege that CRST was engaged in "a pattern or practice" of illegal sex-based discrimination or otherwise plead a violation of 42 U.S.C. § 2000e-6.

At present, the EEOC seeks monetary and equitable relief on behalf of approximately 150 allegedly aggrieved persons at the trial of this matter. The court refers to the "similarly situated female employees" who are referenced in the EEOC's Complaint as "allegedly aggrieved persons" and not as "class members." *See* Order (docket no. 197), at 9-10 (citing in part 42 U.S.C. § 2000e-5(f)(1) (referring to "[t]he person or persons aggrieved" and "the person aggrieved")). The phrase "allegedly aggrieved persons" comports with the language of § 2000e-5 and reflects the fact that the EEOC

---

[3] The EEOC's Complaint, filed on November 16, 2007, corrected a typographical error in the Complaint. Ruling (docket no. 31), at 1 n.1.

"may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule of Civil Procedure 23." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 333-34 (1980) (footnote omitted). For example, the EEOC may pursue relief on behalf of a group of allegedly aggrieved persons "even though competing interests are involved," *id.* at 331, or even if there is "a huge variance in the nature and extent of the injuries suffered" within such group, *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002) (Posner, J.). The EEOC is "the master of its own case" and possesses statutory authority to proceed on behalf of allegedly aggrieved persons without their consent. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291-92 (2002). Any limitation upon the EEOC to sue only on behalf of "similarly situated female employees" in this case was self-imposed.

### C. Answer

On November 30, 2007, CRST filed an Answer and Affirmative Defenses (docket no. 11). On May 1, 2008, CRST filed an Amended Answer and Affirmative Defenses ("Answer") (docket no. 36) to assert an additional affirmative defense. CRST denies the substance of the EEOC's Complaint and asserts seven affirmative defenses, including waiver or release, failure to exhaust administrative remedies and "untimel[iness]." Answer at 2.

### D. Motion

On February 13, 2009, CRST filed the Motion. On March 16, 2009, the EEOC filed a Resistance (docket no. 165). On March 31, 2009, CRST filed a Reply (docket no. 180). On April 14, 2009, the EEOC filed a Surreply (docket no. 192).

CRST requests oral argument on the Motion, but the court finds oral argument is not appropriate. The Motion is fully submitted and ready for decision.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return

a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. THE MERITS

### A. Arguments

#### 1. Motion

In the Motion, CRST asks the court to bar the EEOC from seeking monetary and equitable relief on behalf of twelve women insofar as they allege they were sexually

harassed before February 4, 2005, *i.e.*, more than 300 days prior to the filing of Ms. Starke's Charge on December 1, 2005. Specifically, CRST asks the court to dismiss the "claims" the EEOC is pursuing on behalf of (1) Ms. Antonia Aguilar, (2) Ms. Linda Austin, (3) Ms. Kelli Carney (in part), (4) Ms. Patrice Cohen, (5) Ms. Catherine Howard, (6) Ms. Geraldine Leach, (7) Ms. Margaret McCain, (8) Ms. Karen McCall, (9) Ms. Rachel Perhealth, (10) Ms. Faith Shadden (in part), (11) Ms. Linda Skaggs (in part) and (12) Ms. Priscilla Stephenson (collectively, "the twelve women"). Motion (docket no. 147-5), at 8. CRST asserts the "claims" of the twelve women fall outside of § 2000e-5's relevant 300-day statute of limitations. CRST concedes that all the other women the EEOC disclosed in this case generally may "piggyback" on Ms. Starke's timely charge, because they allege they were sexually harassed on or after February 4, 2005 and the EEOC has asserted a pattern or practice claim in this litigation. Brief in Support of Motion (docket no. 147-6), at 9 (citations omitted); *cf. Gen. Tel.*, 446 U.S. at 331 ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable."); *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364 (4th Cir. 1976) (permitting the EEOC to use a timely filed charge of discrimination as a "jurisdictional springboard").

In the alternative, CRST asks the court to bar the EEOC from seeking relief on behalf of the twelve women under its inherent power to impose discovery sanctions. CRST argues:

> The parties have focused virtually all of their discovery on the period from January 1, 2005 to October 15, 2008. [The] EEOC should not be permitted, after discovery is closed, to attempt to extend the period in suit by several years. Moreover, the claims of only 13 [sic] of the 153 [allegedly aggrieved women] arose in whole or in part prior to February 4, 2005, and such a small number of sporadic claims over several years provides no basis at this late stage for EEOC to [seek relief] as far as 1997, when the earliest of the [women's]

claims arose.

*Id.* at 10.

Finally, CRST presents the court with a number of independent reasons why the court should bar the EEOC from seeking relief on behalf of Mss. Austin, Aguilar, Cohen, Leach, McCain, Shadden and Skaggs. Among other things, CRST argues (1) Mss. Aguilar, Leach, McCain, Shadden and Skaggs did not suffer severe or pervasive sexual harassment; (2) Mss. Cohen, Leach and McCain did not promptly report their allegations of sexual harassment to CRST; (3) CRST took prompt remedial action with respect to Ms. Shadden's allegation of sexual harassment; and (4) Mss. Austin, McCall and Cohen filed timely charges of discrimination with the EEOC but failed to file suit within ninety days after the EEOC issued them right-to-sue letters.

### 2. *Resistance*

The EEOC claims it is not bound by any statute of limitation. The EEOC opines that "[t]his is a case brought by the [EEOC] alleging a pattern or practice of tolerating a hostile work environment based on sexual harassment" that CRST wrongly construes "as if it were a single claim of discrimination brought by a private individual." Resistance at 4. The EEOC maintains it is immune from § 2000e-5's statute of limitations and may seek relief for victims of a pattern or practice of employment discrimination "as far back as the evidence warrants." *Id.* at 6.

The EEOC "expects to prove that the pattern or practice [of tolerating sexual harassment] extended at least back to 1997 when . . . [Ms.] Janet Boot was sexually harassed in the same manner as were later victims." *Id.* The EEOC characterizes the pattern or practice of sexual harassment at CRST as forming a "continuing violation" as contemplated in *Morgan*. The EEOC thus concludes no limitations period may be enforced "so long as one incident included in the hostile work environment occurred within the statutory period." *Id.* at 7.

The EEOC concedes that a number of district courts "have refused to include

claimants beyond the 300 days" because of (1) "the language of [§ 2000e-5]" and (2) "the policies supporting repose." *Id.* The EEOC maintains these district courts were wrong. The EEOC avers that any distinction between § 2000e-6 and § 2000e-5 "is not useful" because, in its view, both statutes authorize pattern or practice cases and require "identical" elements of proof. *Id.* Without citing any controlling legal authority, the EEOC concludes that "there is no difference between pleading either statute." *Id.* at 11. The EEOC maintains that the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (S 181), 123 Stat. 5 (Jan. 29, 2009) ("Ledbetter Act") evinces a generalized Congressional intent that "Title VII is to be broadly interpreted to reach systems of discrimination . . . without artificial reliance on the charge filing periods to exclude victims of those systems of discrimination." *Id.* at 11.

The EEOC resists CRST's alternative argument that the court impose a discovery sanction upon the EEOC and bar the EEOC from seeking relief for the twelve women. The EEOC states: "CRST's claim that [the] EEOC has added these early claims at a 'late stage,' because it agreed to focus discovery on the period after January 1, 2005, is simply false." *Id.* at 6. The EEOC represents to the court that it "always told" CRST that it intended to pursue claims as far back into the past as possible. *Id.* The EEOC concludes its "tactical decision that it did not have the resources to attempt to locate all of the potential victims of CRST's conduct does not preclude it from proving that the discriminatory environment existed and that identified victims are entitled to compensation." *Id.* (footnote omitted).

Finally, the EEOC resists all of CRST's independent reasons why the claims of Mss. Aguilar, Cohen, Leach, McCain, Shadden and Skaggs fail on their merits. The EEOC variously argues (1) the twelve women suffered severe and pervasive sexual harassment; (2) the twelve women promptly reported the harassment they suffered; (3) CRST failed to take prompt remedial action with respect to Ms. Shadden's allegation of

sexual harassment; and (4) the failure of any "class member" to file her own lawsuit after receiving a right-to-sue letter from the EEOC does not bar the EEOC from seeking relief on her behalf at a later date.

### 3. *Reply*

In Reply, CRST reasserts many of the arguments in its Motion. CRST maintains that the EEOC's construction of § 2000e-5(e)(1) is absurd, because it would permit the EEOC to revive stale claims with impunity. Further, CRST argues the EEOC's arguments are misplaced. Drawing upon arguments in its contemporaneously filed "Motion for Summary Judgment on EEOC's Pattern or Practice Claim" (docket no. 150) ("Pattern or Practice Motion"), CRST maintains the EEOC has failed to present sufficient evidence to establish that CRST has engaged in "a pattern or practice [of tolerating sexual harassment]—much less one that extends back earlier than February 4, 2005." Reply at 6. Absent proof of a pattern or practice of tolerating sexual harassment, the entire foundation of the EEOC's Resistance collapses.

Even if the court were to deny the Pattern or Practice Motion, CRST insists that the EEOC is "cavalierly dismiss[ing]" important distinctions between § 2000e-5 and § 2000e-6. CRST points out that, by its very terms, § 2000e-5 contains a limitations period. CRST maintains there is no textual support within § 2000e-5 for the EEOC's attempt to seek relief beyond the 300-day limitations period. CRST maintains *Morgan* is largely inapplicable to the case at bar, because each of the twelve women alleges different harassment by different harassers at different workplaces. CRST argues, however, that "given [the] EEOC's inability to muster any proof of a pattern or practice predating February 4, 2005, there is no need for the Court to address th[ese] [alternative] legal issue[s]." *Id.* at 9.

### 4. *Surreply*

The EEOC's arguments in its Surreply solely concern its ability to pursue monetary

and other relief at trial on behalf of a thirteenth woman, Ms. Belinda Bedford. The court presents these arguments in Part V *infra*.

## B. Analysis

### 1. Holding

On April 30, 2009, the court granted the Pattern or Practice Motion. *See* Order (docket no. 197), *passim*. After pointing out ambiguities in the EEOC's Complaint, the court "assume[d] without deciding that at least one of two legal principles is true: either (1) § [2000e-5] somehow permits the EEOC to pursue a pattern or practice claim and thereby render § [2000e-6] a mere redundancy in the law or (2) the EEOC has constructively amended its complaint to assert a § [2000e-6] claim against CRST in this lawsuit in addition to its § [2000e-5] claim." *Id.* at 26. "In other words, the court assume[d] without deciding that this is a sexual harassment pattern or practice case." *Id.* The court canvassed the summary judgment record and held, as a matter of law, that the EEOC had presented the court with insufficient admissible evidence for a reasonable jury to find that CRST has engaged in a pattern or practice of tolerating sexual harassment.

The pivotal issue before the court, then, is whether Title VII's statute of limitations, 42 U.S.C. § 2000e-5(e)(1), applies when the EEOC brings suit in its own name on behalf of a group of allegedly aggrieved persons under 42 U.S.C. § 2000e-5 and there is insufficient evidence of a pattern or practice of unlawful employment discrimination. The EEOC's entire Resistance is premised upon the proposition that it is immune from § 2000e-5's statue of limitations in this case *because* it has a viable pattern or practice claim against CRST. In other words, the EEOC assumes that its pattern or practice allegations provide the requisite legal justification to revive these otherwise stale claims; the EEOC apparently assumes that, absent a showing of a pattern or practice of employment discrimination, § 2000e-5 bars the EEOC from seeking relief on behalf of the twelve women.

In light of the court's ruling on the Pattern or Practice Motion, the EEOC's fundamental premise that it has a viable pattern or practice claim against CRST is false. For this reason, the court shall grant the Motion as to the twelve women as unresisted. The EEOC has not cited any controlling legal authority that indicates it is not bound by any statute of limitations when pursuing relief on behalf of a group of allegedly aggrieved persons under § 2000e-5 absent a showing of a pattern or practice of unlawful employment discrimination. The Ledbetter Act has no relevance here. Congress enacted the Ledbetter Act "to clarify that a discriminatory compensation decision or other practice . . . . occurs each time compensation is paid to the discriminatory compensation decision or other practice[.]" 123 Stat. at 5. There is no indication Congress intended the Ledbetter Act to serve as a trump card that the EEOC might use to supersede all statutes of limitations in our nation's various civil rights acts.

In sum, the court holds that the EEOC is barred from seeking relief at trial on behalf of the twelve women insofar as they allege that they were sexually harassed before February 4, 2005.[4] The court need not reach CRST's argument concerning the appropriateness of a discovery sanction. Although CRST presents the court with legal reasons to bar the EEOC from seeking relief at trial on behalf of Mss. Shadden and Skaggs insofar as they allege that they were sexually harassed on or after February 4, 2005, the court shall deny this portion of the Motion without prejudice. The court finds it more appropriate to consider this portion of the Motion in conjunction with CRST's pending motions for summary judgment on the merits of the various allegedly aggrieved persons' claims.

---

[4] There is one exception to this bright-line ruling. As explained in Part IV.B.2.b.i *infra*, CRST does not ask the court to bar the EEOC from seeking relief on Ms. Carney's behalf for her allegation that Mr. Raymond Coplan sexually harassed her in early 2005. CRST assumes *Morgan*'s continuing violation doctrine saves this portion of Ms. Carney's claim.

Accordingly, the court shall grant in part and deny in part the Motion.

## 2. *Alternate holding*

Even if the court did not deem the Motion to be unresisted, the court would nonetheless bar the EEOC from seeking relief at trial on behalf of the twelve women insofar as they allege that they were sexually harassed before February 4, 2005. It is the opinion of the court that (1) the EEOC generally may not resurrect dead claims and (2) the continuing violation doctrine largely does not apply in this case.

### a. *The EEOC generally may not resurrect dead claims*

The Supreme Court has not directly addressed whether Title VII's statute of limitations binds the EEOC, and the circuit courts of appeals are silent.[5] Matters are messy at the district court level. Other district courts have "blurred the line between class-wide claims brought pursuant to § [2000e-5] and pattern-or-practice claims brought pursuant to § [2000e-6]." *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1143 (D. Nev. 2007). As a consequence, such district courts offer widely divergent analyses that are impossible to reconcile or even tidily summarize. All that may be said is that, whereas some district courts appear to indicate the EEOC may be subject to a statute of limitations, *see, e.g., EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659-60 (E.D. Va. 2008); *EEOC v. Wyndham Worldwide Corp.*, No. C07-1531RSM, 2008 WL 4527974, *6-*8 (W.D. Wash. Oct. 3, 2008); *EEOC v. KCD Constr., Inc.*, No. 05-2122(DSD/SRN), 2007 U.S. Dist. LEXIS 28061, *10 (D. Minn. Apr. 16, 2007);

---

[5] The Supreme Court reserved ruling on a related issue. *See Morgan*, 536 U.S. at 115 n.9 ("We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here."); *see also Jenson v. Eveleth Taconite Co.*, 824 F. Supp. 847, 878 (D. Minn. 1993) ("If Plaintiffs establish that Eveleth Mines maintained a company-wide pattern or practice of sexual harassment both before and after December 30, 1983, Eveleth Mines will be liable for acts of sexual harassment reaching back to the commencement of the policy."), *aff'd on other grounds*, 130 F.3d 1287, 1291-93 (8th Cir. 1997).

*EEOC v. GLC Rests., Inc.*, No. CV-05-0618-PCT-DGC, 2006 WL 3052224, *2-*3 (D. Ariz. Oct. 26, 2006); *EEOC v. Custom Cos.*, Nos. 02-C-3768 & 03-C-2293, 2004 WL 765891, *2-*11 (N.D. Ill. Apr. 7, 2004); *EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 544-50 (W.D. Va. 2001); *EEOC v. Harvey L. Walner & Assocs.*, No. 95-1355, 1995 WL 470233, *3-*6 (N.D. Ill. Aug. 7, 1995), *aff'd on other grounds*, 91 F.3d 963 (7th Cir. 1996); *EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1258-62 (M.D. Ala. 1980), other district courts appear to grant the EEOC the power to resurrect stale claims, *see, e.g., EEOC v. Ceisel Masonry, Inc.*, 594 F. Supp. 2d 1018, 1022 (N.D. Ill. 2009); *EEOC v. Worthington, Moore & Jacobs, Inc.*, 582 F. Supp. 2d 731, 737-38 (D. Md. 2008); *EEOC v. Scolari Warehouse Markets, Inc.*, 488 F. Supp. 2d 1117, 1136 (D. Nev. 2007); *EEOC v. L.A. Weight Loss*, 509 F. Supp. 2d 527, 534-36 (D. Md. 2007); *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 966-69 (N.D. Ill. 2001); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1083-88 (C.D. Ill. 1998).

After surveying these district court cases, the court finds the better reasoned authority holds that Title VII generally does not grant the EEOC the power to resurrect otherwise stale claims of unlawful employment discrimination.[6] The plain language of § 2000e-5 contemplates that the "charge shall be filed by *or on behalf of the person aggrieved* within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1) (emphasis added). Section 2000e-5 makes no exception for the EEOC, even though it clearly contemplates EEOC enforcement actions. Any ambiguity in the statute is the consequence of early judicial decisions, which granted the EEOC the ability to use an individual charge of discrimination as "a jurisdictional

---

[6] For example, *Ceisel* reasoned *EEOC v. Sidley Austin LLP*, 437 F.3d 695 (7th Cir. 2006) called into question *Custom* and *Walner*. *Ceisel* reads too much into *Sidley*, which simply applied *Waffle House* and held that an individual's failure to file a timely charge of discrimination does not, by itself, prevent the EEOC from seeking monetary relief on her behalf. 437 F.3d at 696. *Sidley* did not address the limitations issue presented here.

springboard" but failed to discuss the statute of limitations problems that might arise if courts were to allow the EEOC to recover for non-charging parties with stale claims. *See, e.g., Gen. Elec.*, 532 F.2d at 364 (cited with approval in *Gen. Tel.*, 446 U.S. at 331 ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.")).

The EEOC's proposed construction of its powers is inconsistent with its statutory mandate. The district court in *Burlington* aptly observed:

> The EEOC's special statutory mandate does not entitle it to "expand substantive rights, such as reviving stale claims" that would not otherwise be actionable under Title VII. On the contrary, the EEOC's ability to secure enforcement of Title VII on behalf of the public is primarily served through its ability to secure injunctive relief, not bootstrapping individual damage claims into the EEOC's enforcement action.

536 F. Supp. 2d at 659 (citation omitted); *see also Bemis*, 279 F.3d at 421 ("The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately.")

To adopt the EEOC's construction of Title VII would permit the EEOC to destroy all principles of repose and force employers to defend against zombie-like claims from the distant past. As the district court in *Sears* recognized, the Supreme Court counseled against any such construction of § 2000e-5 in *Occidental Life*:

> The [Supreme] Court implied in dicta that, unlike the 180-day period of [§] 2000e-5(f)(1), the 180-day period of [§] 2000e-5(e) is intended to be a limitations period. [T]he Court went on to state:
>
> "Congress did express concern for the need of time limitations in the fair operation of the Act, but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator. The bills

passed in both the House and the Senate contained short time periods within which charges were to be filed with the EEOC and notice given to the employer. And the debates and reports in both Houses made evident that the statute of limitations problem was perceived in terms of these provisions, rather than in terms of a later limitation on the EEOC's power to sue. That perception was reflected in the final version of the 1972 Act, which requires that a charge must be filed with the EEOC within 180 days of the alleged violation of Title VII . . . .

"The fact that the only statute of limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with the Act's overall enforcement structure a sequential series of steps beginning with the filing of a charge with the EEOC. Within this procedural framework, the benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body."

While this Court is mindful of the fact that the Court possibly had in mind only a limitations period for charges filed by individuals, the message is clear that in *Occidental Life* the majority of the Court in dicta recognized the congressional intent that [§] 2000e-5(e) is an example of a statute of limitations period applicable to suits filed under [§] 2000e-5. This Court is of the opinion that said period is also applicable to suits initiated by the EEOC . . . .

*Sears*, 490 F. Supp. at 1260 (footnote omitted) (quoting *Occidental Life*, 432 U.S. at 371-72); *see, e.g.*, *Wyndham Worldwide*, 2008 WL 4527974, at *6-*8 (applying statute of limitations to the EEOC and holding that the EEOC may not "resurrect[] stale claims" in absence of pattern or practice claim); *GLC Rests.*, 2006 WL 3052224, at *2-*3 (similar).

### b.    The continuing violation doctrine is largely inapplicable

*Morgan* is largely inapplicable to the case at bar, because the EEOC has not presented evidence to show that "all acts which constitute [a] claim are part of the same

unlawful employment practice and at least one act falls within the time period." 536 U.S. at 122. As previously indicated, "there is nothing in the record which a reasonable jury might cobble together to show [CRST's] failures were part of a *pattern or a practice* of tolerating sexual harassment instead of merely isolated or sporadic failures over the course of four (or perhaps twelve) years." Order (docket no. 197), at 62 (emphasis in original). At most, *Morgan* only applies in a limited respect as to the individual "claims" of harassment that the EEOC presses in this action. *Morgan* does not permit the EEOC to "use some [allegedly aggrieved persons'] timely charges to support other [allegedly aggrieved persons'] entirely untimely claims." *GLC Rests.*, 2006 WL 3052224, at *2.

Therefore, *Morgan* certainly does not apply to the ability of the EEOC to seek relief at trial on behalf of nine women, Mss. Aguilar, Austin, Cohen, Howard, Leach, McCain, McCall, Perhealth, and Stephenson. None of these women allege any harassment on or after February 4, 2005. Ms. Aguilar alleges sexual harassment in 2004; Ms. Austin in 2001; Ms. McCain in 2003; Ms. Cohen in 2003 and 2004; Ms. Howard in 2004; Ms. Leach in 2004 and January of 2005; Ms. McCall in 2004; Ms. Perhealth in January of 2005; and Ms. Stephenson in 1999. Accordingly, the court must grant the Motion as to these nine women.

Matters are somewhat more complicated with respect to the remaining three women, Mss. Carney, Shadden and Skaggs. Each of these three women alleges she was sexually harassed before *and* after February 4, 2005. CRST asks the court to bar the EEOC from resurrecting that portion of each woman's "claim" occurring before such date; CRST does not move for summary judgment on limitations grounds for any conduct occurring on or after February 4, 2005. The court discusses each woman's allegations, in turn, and analyzes them under *Morgan* separately.

### i.    *Ms. Carney*

Ms. Carney worked for CRST from September of 2004 to April of 2005, when she

quit and went to work for Swift, Inc. She returned to CRST from June 15, 2005 to June 30, 2005. She left CRST on June 30, 2005 after entering a hospital for "pregnancy related issues." Def.'s Statement of Undisputed Material Facts at 114. Ms. Carney alleges she was sexually harassed by three men while she worked for CRST during these two stints: Messrs. Joe McCarthy, Raymond Coplan and Chris Evans.

Ms. Carney alleges her trainer Mr. McCarthy harassed her in late 2004 by promising to promote her to co-driver status and pay for many of her expenses if she had sexual relations with him. Ms. Carney and Mr. McCarthy had sexual relations on a daily basis in the cab of the semi-truck they shared. Ms. Carney also spent a week with Mr. McCarthy at his home in Boston, Massachusetts and repeatedly had sex and dinner with him.

Ms. Carney alleges Mr. Evans harassed her in late 2004. Mr. Evans was paired with her as a co-driver. He did not offer her money for sex. He would rub her shoulders, ask her why she would not have sex with an older man and told her he could "rock [her] world." Def.'s App'x at 627.

Ms. Carney alleges Mr. Coplan harassed her for a period of a month, apparently before and after February 4, 2005. When Mr. Coplan first boarded the truck, he told Ms. Carney: "Watch, I'm going to fuck you." *Id.* at 623. On their second night in the truck, he insisted that she sleep in his bed and, if she did not, he would leave her on the side of the road. That night and every night thereafter for the next month Mr. Coplan held Ms. Carney down and raped her. He threatened to kill her if she told CRST about his behavior.

CRST only moves for summary judgment with respect to Ms. Carney's allegations of sexual harassment against Messrs. McCarthy and Evans. CRST does not move for summary judgment with respect to Ms. Carney's allegations of sexual harassment against Mr. Coplan, because she alleges he continuously sexually harassed her before and after

February 4, 2005.

Applying *Morgan*, the court agrees with CRST's analysis. There is no discernible connection between the harassment of Ms. Carney by Messrs. McCarthy and Evans, on the one hand, and the harassment of Ms. Carney by Mr. Coplan, on the other. In other words, there is no evidence the actions of the three men were all "part of the same unlawful employment practice." 536 U.S. at 122. Each of the three sets of allegations by Ms. Carney involves different alleged harassers, different workplaces and different circumstances. At most, the EEOC has shown anecdotal, isolated discriminatory events. *Cf. Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 988-99 & n.4 (8th Cir. 2003) (applying *Morgan* and concluding that allegations were "entirely anecdotal and at best shows isolated discriminatory events" not a pattern or practice of discrimination or anything else that might fall within the ambit of the continuing violation doctrine) (citing in part *EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 952-53 (8th Cir. 1999) (affirming dismissal of a pattern or practice claim under the federal age discrimination act because the EEOC proved nothing more than anecdotal discriminatory acts)); *Wyndham Worldwide*, 2008 WL 4527974, at *6-*8 (declining to apply *Morgan* across allegedly aggrieved persons); *GLC Rests.*, 2006 WL 3052224, at *2-*3 (similar).

Accordingly, the court shall grant the Motion as to Ms. Carney. The EEOC may seek relief for Ms. Carney only insofar as she alleges she was sexually harassed by Mr. Coplan. The court expresses no view as to whether harassment by Messrs. McCarthy and Evans is admissible at trial.

### ii. Ms. Shadden

Ms. Shadden worked for CRST from October of 2004 through December of 2004. She was rehired in May of 2006 and presently works for CRST. Ms. Shadden worked for a number of other companies before CRST rehired her.

Ms. Shadden claims an unnamed co-driver sexually harassed her in 2004. He "was

very abusive in a sexual way," engaged in "sex talk," asked her if she "had . . . ever experienced a sexual relationship or any other type of relationship with a black man," put his hand on her thigh and touched her in her "bra area." Def.'s App'x at 2596-97.

Ms. Shadden also alleges that, after she returned to CRST in 2006, she endured repeated sexual advances. Three other drivers "hit on [her] once." *Id.* at 2602. Ms. Shadden also claims Mr. Carl Bowling, a student driver whom she was training, sexually harassed her in late April and early May of 2007. She alleges Mr. Bowling asked her to pretend to be his girlfriend around other men, asked her if she would get into bed with him and, on one occasion, jumped into her bed and refused to leave. Mr. Bowling frightened Ms. Shadden because of his persistence and his laughter. Also, his conduct grew more aggressive over time.

CRST does not move for summary judgment on limitations grounds with respect to the post-February 4, 2005 conduct of Mr. Bowling and the three other men. CRST only moves for summary judgment with respect to Ms. Shadden's allegations of sexual harassment against the unnamed co-driver in 2004.

Applying *Morgan*, the court agrees with CRST's analysis. There is no discernible connection between the harassment of Ms. Shadden by the unnamed co-driver, on the one hand, and the harassment of Ms. Shadden by Mr. Bowling and the other three men on the other. In other words, there is no evidence the actions were all "part of the same unlawful employment practice." *Morgan*, 536 U.S. at 122. Each of the two sets of allegations by Ms. Carney involves different alleged harassers, different workplaces and different circumstances. At most, the EEOC has shown anecdotal, isolated discriminatory events. *Cf. Tademe*, 328 F.3d at 988-99 & n.4; *Wyndham Worldwide*, 2008 WL 4527974, at *6-*8 (declining to apply *Morgan* across allegedly aggrieved persons); *GLC Rests.*, 2006 WL 3052224, at *2-*3 (similar).

Accordingly, the court shall grant the Motion in part as to Ms. Shadden. The

EEOC may seek relief for Ms. Shadden only insofar as she alleges she was sexually harassed by Mr. Bowling and the three other men. The court expresses no view as to whether harassment by the unnamed co-driver is inadmissible at trial.

### iii.    Ms. Skaggs

Ms. Skaggs worked at CRST from February of 2003 through May of 2005. Ms. Skaggs alleges her first trainer, Mr. Dartmouth Robinson, and her last co-driver, Mr. Eules "J" Baker, Jr., sexually harassed her.

Ms. Skaggs drove with Mr. Robinson on one day on February 21, 2003. She claims Mr. Robinson told Ms. Skaggs she could sleep in the nude if she wanted or could sit with him up front nude if she liked. He mentioned that other female drivers would take their shirts off and flash other drivers.

Ms. Skaggs rode with Mr. Baker for three weeks between March 31, 2005 and April 17, 2005. Mr. Baker bragged about his sexual prowess and experiences, made perverted comments on a daily basis and he propositioned her for sex five times. He bragged he could "fuck [her] brains out" and "make [her] have more than one orgasms [sic], more than anybody else [she had] ever known." Def.'s App'x at 2868. He also offered to pay her for $100 to have sex with him in Reno, Nevada.

CRST only moves for summary judgment with respect to Ms. Skaggs's allegations of sexual harassment against Mr. Robinson. CRST does not move for summary judgment on limitations grounds with respect to Ms. Skaggs's allegations of sexual harassment against Mr. Baker, because she alleges he sexually harassed her after February 4, 2005.

Applying *Morgan*, the court agrees with CRST's analysis. There is no discernible connection between the harassment of Ms. Skaggs by Mr. Robinson, on the one hand, and the harassment of Ms. Skaggs by Mr. Baker, on the other. In other words, there is no evidence the actions of the two men were all "part of the same unlawful employment practice." 536 U.S. at 122. The two instances of sexual harassment involve different

22

alleged harassers, different workplaces and different circumstances. At most, the EEOC has shown anecdotal, isolated discriminatory events. *Cf. Tademe*, 328 F.3d at 988-99 & n.4; *Wyndham Worldwide*, 2008 WL 4527974, at *6-*8 (declining to apply *Morgan* across allegedly aggrieved persons); *GLC Rests.*, 2006 WL 3052224, at *2-*3 (similar).

Accordingly, the court shall grant the Motion in part as to Ms. Skaggs. The EEOC may seek relief for Ms. Skaggs only insofar as she alleges she was sexually harassed by Mr. Baker. The court expresses no view as to whether harassment by Mr. Robinson is inadmissible evidence at trial.

### C. Disposition as to the Twelve Women

In sum, the court shall bar the EEOC from seeking any legal relief at trial on behalf of Mss. Aguilar, Austin, Cohen, Howard, Leach, McCain, McCall, Perhealth and Stephenson. Furthermore, the court shall bar the EEOC from seeking relief at trial on behalf of Mss. Carney, Shadden and Skaggs insofar as they allege they were sexually harassed before February 4, 2005, except that the EEOC may seek relief at trial on behalf of Ms. Carney for any alleged sexual harassment suffered at the hands of Mr. Coplan.

The court shall deny the Motion in all other respects. The court shall consider CRST's alternative arguments for dismissal with respect to Mss. Shadden and Skaggs in conjunction with CRST's pending motions for summary judgment on the merits of the allegedly aggrieved persons' allegations of sexual harassment.

### V. MS. BEDFORD

### A. Arguments

In its Motion, CRST also asks the court to bar the EEOC from seeking relief for a thirteenth woman, Ms. Belinda Bedford. Ms. Bedford is not similarly situated to the other twelve women in the Motion, however, because all of her allegations of sexual harassment occurred after February 4, 2005. Ms. Bedford worked for CRST from July 19, 2007 through August 11, 2007. She alleges Mr. Steve Hall, a fellow driver, sexually harassed

her for approximately one week. On August 12, 2007, Ms. Bedford filed a timely charge of discrimination with the EEOC. The EEOC dismissed the charge and issued her a right-to-sue letter on December 27, 2007.

In the Motion, CRST claims that Ms. Bedford did not file suit within ninety days of the issuance of her right-to-sue letter or intervene in the instant lawsuit. CRST concludes the EEOC is barred from seeking relief for her. In the alternative, CRST claims Ms. Bedford's claim must fail on its merits because she did not promptly report the alleged sexual harassment to CRST.

In its Resistance, EEOC points out Ms. Bedford's "claim was apparently included in this motion in error" because she clearly alleges she was sexually harassed after February 4, 2005. Resistance at 14. The EEOC also claims CRST is wrong about the facts; the EEOC presents evidence to show Ms. Bedford filed a Title VII suit against CRST in the United States District Court for the Western District of Oklahoma on March 26, 2008 ("the Oklahoma suit"). The EEOC notes Ms. Bedford voluntarily dismissed the Oklahoma suit on July 23, 2008 with intent to proceed in the instant action as a "class member." Addressing CRST's alternative argument, the EEOC argues Ms. Bedford was not required to report her harassment sooner than she did.

In Reply, CRST repeats the arguments in its Motion but admits the EEOC's factual allegations about the Oklahoma suit. CRST maintains the EEOC may not seek relief on behalf of Ms. Bedford at trial. CRST opines Ms. Bedford should have asked for leave to intervene in the instant lawsuit instead of voluntarily dismissing the Oklahoma suit without prejudice.

In Surreply, the EEOC presents the court with an affidavit from Ms. Bedford's attorney in the Oklahoma suit, Attorney Amanda Farahany. Attorney Farahany states she advised Ms. Bedford to voluntarily dismiss her case because the EEOC could seek relief on her behalf in the instant case. Attorney Farahany maintains the voluntary dismissal of

the Oklahoma suit was not intended as a waiver of Ms. Bedford's rights.

## B. Analysis

Neither party cites any cases precisely on point. CRST cites four cases in support of its position that Ms. Bedford's actions bar the EEOC from seeking relief on her behalf in this case. All four cases are distinguishable, however, and have nothing to do with the issue before the court. *See, e.g., S.D. ex rel. Barnett v. U.S. Dep't of the Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (generally discussing rules of intervention); *Price Digital Equip. Co.*, 846 F.2d 1026, 1027 (5th Cir. 1998) (generally discussing the effect of a voluntary dismissal); *Brown Hartshorne Pub. Sch. Dist. #1*, 926 F.2d 959, 961 (10th Cir. 1991) (same). Indeed, the closest governing authority on point would appear to run counter to CRST's position. *Cf. Anderson v. Unisys Corp.*, 47 F.3d 302, 308 (8th Cir. 1995) (holding that any claimant who files an administrative charge and obtains a right-to-sue letter from the EEOC must file a timely lawsuit to preserve her cause of action). Absent citation to legal authority on point, the court declines to bar the EEOC from seeking relief for Ms. Bedford because she filed a lawsuit and dismissed it voluntarily to allow the EEOC to seek relief on her behalf. *See* LR 56.b; LR 7.e; LR 1.f.

Accordingly, the court shall deny the motion in part with respect to Ms. Bedford. The court shall consider CRST's alternative arguments for dismissal with respect to Ms. Bedford in conjunction with CRST's pending motions for summary judgment on the merits of the allegedly aggrieved persons' allegations of sexual harassment.

## VI. CONCLUSION

The Motion (docket no. 147) is **GRANTED IN PART AND DENIED IN PART**. The court **BARS** the EEOC from seeking relief at trial on behalf of (1) Ms. Antonia Aguilar, (2) Ms. Linda Austin, (3) Ms. Patrice Cohen, (4) Ms. Catherine Howard, (5) Ms. Geraldine Leach, (6) Ms. Margaret McCain, (7) Ms. Karen McCall, (8) Ms. Rachel Perhealth, and (9) Ms. Priscilla Stephenson. Furthermore, the court **BARS** the EEOC

from seeking relief at trial on behalf of (1) Ms. Kelli Carney, (2) Ms. Faith Shadden and (3) Ms. Linda Skaggs insofar as they allege they were sexually harassed before February 4, 2005, except that the EEOC may seek relief at trial on behalf of Ms. Carney for any alleged sexual harassment suffered at the hands of Mr. Coplan. The court shall rule on CRST's alternative arguments to bar the EEOC from seeking relief at trial on behalf of Mss. Bedford, Shadden and Skaggs when it rules on CRST's pending motions for summary judgment on the merits of the allegedly aggrieved persons' allegations of sexual harassment. The EEOC is ordered to file an updated list of allegedly aggrieved persons for which it intends to seek relief at trial **on or before May 12, 2009, at 5 p.m.** *See* Order (docket no. 66), *passim*.

      **IT IS SO ORDERED.**

      **DATED** this 11th day of May, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA