**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

and

BARBARA GRANT, CINDY
MOFFETT, LATESHA THOMAS and
NICOLE ANN CINQUEMANO,

Plaintiffs-Interveners,

vs.

CRST VAN EXPEDITED, INC.,

      Defendant.

No. 07-CV-95-LRR


**ORDER**

————————————

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . **2**
    *A.*   *Administrative Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
       *1.*   *Charge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
       *2.*   *Investigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
       *3.*   *The investigation broadens to a "class"* . . . . . . . . . . . . . . **7**
       *4.*   *Letter of Determination* . . . . . . . . . . . . . . . . . . . . . . . **13**
       *5.*   *Conciliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
    *B.*   *Legal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
       *1.*   *Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
       *2.*   *"The Great Unknown"* . . . . . . . . . . . . . . . . . . . . . . . **18**
       *3.*   *Order to Show Cause* . . . . . . . . . . . . . . . . . . . . . . . . **23**

III.  *STATUTORY FRAMEWORK* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

IV.   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

V.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **39**

## I.  INTRODUCTION

The matter before the court is the Order to Show Cause (docket no. 233).

## II.  RELEVANT PRIOR PROCEEDINGS

### A.  Administrative Proceedings

In September of 2005, Monika Starke contacted Plaintiff Equal Employment Opportunity Commission ("the EEOC").   Starke was working as a new truck driver for Defendant CRST Van Expedited, Inc. ("CRST").  She complained to the EEOC that two of her male trainers ("lead drivers") sexually harassed her.

The EEOC asked Starke to fill out a questionnaire.  In response to the EEOC's questions, Starke alleged that lead drivers Bobb Smith and David Goodman sexually harassed her.  Starke disclaimed any knowledge of whether other female truck drivers were sexually harassed while working for CRST.[1]

On October 18, 2005, the EEOC assigned Investigator LaVonne Williams to Starke's case. Investigator Williams reviewed Starke's questionnaire and, on October 27, 2005, interviewed Starke.   Investigator Williams drafted a formal charge of sex discrimination on Starke's behalf and mailed it to her.

### 1.   Charge

On December 1, 2005, Starke presented the Charge of Discrimination ("Charge") (EEOC No. 260-2005-06856) to the EEOC.[2]  Starke alleged that CRST "discriminated

---

[1] Starke's unfamiliarity with the plight of her female coworkers is not surprising, because CRST's truck drivers generally work in isolated two-person teams in locations across the United States.

[2] The EEOC's records indicate Starke's allegations of sexual harassment were "[f]ormalize[d]" on December 1, 2005.  EEOC Ex. 1 (docket no. 244-2), at 10.

against [her] on the basis of [her] sex (female) in that [she] was subjected to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, [42 U.S.C. § 2000e *et seq.*,] as amended" ("Title VII").   EEOC Ex. 1 ("Pl.'s Ex.") (docket no. 244-2), at 104.  Starke alleged the following "particulars" in her Charge:

> I was hired by [CRST] on June 22, 2005 in the position of Truck Driver.  Since my employment began with [CRST,] I have been subjected to sexual harassment on two occasions by my Lead Trainers.  On July 7, 2005, Bob[b] Smith, Lead Trainer[,] began to make sexual remarks to me whenever he gave me instructions.  He told me that the gear stick is not the penis of my husband, I don't have to touch the gear stick so often.  "You got big tits for your size, etc . . ."  I informed Bob[b] Smith that I was not interested in a sexual relationship with him.  On July 14, 2005, I contacted the dispatcher and was told that I could not get off the truck until the next day. On July 18, 2005 through August 3, 2005, David Goodman, Lead Trainer, forced me to have unwanted sex with him on several occasions while we were traveling in order to get a passing grade.

*Id.*  Further, Starke alleged that CRST "did not state why [she] was subjected to sexual harassment[,] which created a hostile work environment."  *Id.*

Starke asked the EEOC to file her Charge and cross-file it with the Iowa Civil Rights Commission ("ICRC").  Pursuant to a work-sharing agreement, the EEOC formally received the Charge on behalf of both agencies and deemed the Charge to be "initially instituted" with the ICRC.   (In the work-sharing agreement, the EEOC and ICRC reciprocally designated each other as agents for receiving charges of unlawful employment practices.)  The EEOC sent a copy of the Charge to the ICRC, notified the ICRC that the Charge "is to be initially investigated by the EEOC," *id.* at 105, and began its formal investigation.[3]

---

[3] The ICRC waived its right to exclusive jurisdiction over charges initially instituted with it.  For further explanation of the work-sharing agreement, *see Millage v. City of*

###### 2.      *Investigation*

The EEOC ordered CRST to file a response to the Charge on or before December 30, 2005.  Specifically, the EEOC asked for "a written position statement on each of the allegations of the [C]harge, accompanied by documentary evidence and/or written statements, where appropriate.  Also include any additional information and explanation you deem relevant to the charge."  *Id.* at 409.  To this end, the EEOC sent CRST a "Request for Information" ("RFI"), in which it asked CRST "to submit information and records relevant to the [Charge]."  *Id.* at 408.

The EEOC advised CRST that its investigation was limited to an eleven-month time frame.  The EEOC stated: "The following dates are considered to be the 'relevant period' for the attached [RFI]: January 2, 2005—November 2, 2005."  *Id.*  Further, the scope of the EEOC's investigation was focused on Starke and not other women.  Apart from asking CRST general questions about the nature of its business and its policies and procedures against sexual harassment, the RFI dealt only with Starke's allegations in the Charge.[4]

---

*Sioux City*, 258 F. Supp. 2d 976, 985-86 (N.D. Iowa 2003) (Bennett, C.J.).  Because the EEOC deemed the Charge to be "initially instituted" with the ICRC, it was timely filed as to any alleged unlawful employment practice occurring on or after February 4, 2005, *i.e.*, any such practice occurring within 300 days of the filing of the Charge.  42 U.S.C. § 2000e-5(e)(1); *see, e.g., Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 360 n.8 (1977) ("If a charge has been initially filed with or referred to a state . . . agency, it must be filed with the EEOC within 300 days after the practice occurred . . . .").

[4] In relevant part, the EEOC asked for the following categories of information:

> 2.      State whether [Starke] complained to any supervisor or manager regarding the conduct described in the [Charge].  If your answer is yes, identify the person or persons with whom the complaint was registered and describe each and every action taken by [CRST] in response to that complaint.  Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.
>
> 3.      State whether any other individual has complained to

On December 21, 2005, CRST sent the EEOC its "position statement" and provided all of the information that the EEOC sought in the RFI.[5]  CRST "vehemently denie[d]" that it had discriminated against Starke on the basis of sex.  *Id.* at 359.  CRST told the EEOC that it had investigated Starke's complaints against Smith and Goodman.

In investigating Starke's complaint against Smith, CRST interviewed Smith, Frank Taylor and Madeline Lovins.  Smith "admitted to making inappropriate comments while training Ms. Starke, but nothing physical."  *Id.* at 360.  "He said that was the way in

---

> any supervisor or manager concerning the conduct described in the [Charge].  If the answer is yes, please list the following:
> a.     name, sex, position, of individual placing the complaint,
> b.     name, sex, position, of supervisor or manager, and
> c.     any actions taken by [CRST] in response to the complaint.
>      Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.
> 4.     Identify every individual who, to your knowledge, has information relevant to the allegations.  For each such individual, provide the following:
> a.     name, sex, position,
> b.     whether a present or former employee (if applicable), and
> c.     address and telephone number
> 5.     Identify the other employees who worked with [Starke] during the relevant period.  Include:
> a.     name, sex, position,
> b.     last known address and telephone
> Submit copies of daily assignment sheets, time cards, attendance and records for the individuals listed in #5, including [Starke].

Pl.'s Ex. 1 at 429.

[5] Indeed, CRST provided more information than the EEOC requested.  In response to the third category of information, CRST identified two other female drivers, Lori Essig and Tamara Thiel, as having filed formal charges of discrimination with the EEOC against CRST during the relevant time frame.

which he trained." *Id.* Taylor, an eyewitness to some of the alleged sexual harassment, told CRST that Smith had made inappropriate comments towards Starke. When Taylor told Starke that Starke should not drive with Smith if she were uncomfortable, Starke ignored Taylor's advice. Lovins, one of Smith's other trainees, raved about Mr. Smith's abilities. Based on this investigation, CRST gave Smith a "final verbal warning" for making inappropriate comments to Starke and barred Smith from training or driving with women.

In investigating Starke's complaint against Goodman, CRST learned that, on August 3, 2005, Starke reported to CRST in a routine evaluation that Goodman had treated her "very well." *Id.* at 360. Further, Starke did not report the alleged harassment in a timely manner; CRST did not learn of Starke's allegations against Goodman until September 27, 2005, in a letter from one of her attorneys. When CRST confronted Goodman with Starke's allegations, Goodman responded that he and Starke had a consensual sexual relationship. Goodman's current co-driver, Timothy Walker, attested to such a relationship between Goodman and Starke. Walker had listened to four "love messages" Starke had left on Goodman's voicemail. *Id.* at 361. CRST's investigation ended prematurely on September 30, 2005, when CRST fired Goodman for an unrelated reason.

In the ensuing months, the EEOC sent a series of supplemental RFIs to CRST. On March 1, 2006, Bloomer requested the following information from CRST on or before March 15, 2006:

> 1.     Provide the full name, last known home address, last known home and cell telephone numbers, and social security number for all female drivers that drove with [Smith] and/or [Goodman] during their employment with [CRST].
> 2.     State whether there were any other complaints of harassment made against either [Smith] and/or [Goodman] by any other female employees. If yes, provide all documentation relevant to these complaints, including: the complaint, who

made the complaint (with contact information), position title of person making the complaint, who received the complaint and date received, who investigated the complaint, records of the investigation, and outcome of the complaint.

3.  Provide a copy of all disciplinary records involving [Starke], [Smith], and [Goodman], including discharge paperwork.

4.  Provide the last known home address, home and cell telephone numbers, and social security number for [Taylor] and [Lovins].

*Id.* at 351. On March 10, 2006, CRST provided information to the EEOC in response to the first supplemental RFI.

On June 21, 2006, the EEOC sent a second supplemental RFI to CRST.  The EEOC requested that, on or before July 4, 2006, CRST provide the EEOC with three categories of information:

1.  A complete copy of all documents relating to each of [Starke]'s complaints, verbal and written; including, but not limited to, notes on calendars, telephone contact notes, and all other documents, etc.

2.  Provide a complete copy of [CRST]'s investigative documents relating to each of [Starke]'s complaints.  This is [sic] includes, but is not limited to: original interview notes, original phone contact notes, related internal e-mails, etc.

3.  Provide a complete copy of the discharge documentation for [Smith] and [Goodman] and state the specific reason for the discharge of each; include the name and position title of the person(s) that recommended the discharge and the name and position title of the person(s) that made the final discharge decision.

*Id.* at 347. On June 30, 2006, CRST provided information to the EEOC in response to the second supplemental RFI.

### 3.   *The investigation broadens to a "class"*

As the foregoing RFIs demonstrate, the EEOC did not take CRST's denial of

wrongdoing at face value but instead conducted a lengthy investigation of Starke's allegations.[6]   Investigator Pamela Bloomer, whom the EEOC assigned to Starke's case on or about February 24, 2006, interviewed various persons, including Starke, witnesses to Starke's alleged sexual harassment and former co-workers of Goodman and Smith. Investigator Bloomer exchanged correspondence and conversed over the telephone with James Barnes, CRST's Director of Human Resources, and attorneys for both Starke and CRST.

During the course of her investigation, Investigator Bloomer learned that four other female CRST truck drivers, Lori Essig, Rhonda Morgan,[7] Remcey Peeples[8] and Tamara Thiel, had filed formal charges of discrimination against CRST for alleged sexual harassment.   On July 28, 2006, the EEOC sent a third supplemental RFI to CRST.   The

---

[6] Notwithstanding the EEOC's broad powers, it appears that the EEOC never issued any administrative subpoenas but instead wholly relied upon voluntary compliance from CRST.   *Cf.* 42 U.S.C. § 2000e-9 (EEOC's subpoena powers); § 2000e-8(a) (same); *EEOC v. W. Publ'g Co.*, 502 F.2d 599, 603 (8th Cir. 1974) (holding that the EEOC "is entitled to have access to, for the purposes of examination and copying, all evidence which is relevant and material to the . . . charge's allegations that discrimination [occurred]"); *EEOC v. Fed. Ex. Corp.*, 558 F.3d 842, 855 (9th Cir. 2009) (holding that an EEOC subpoena that sought information as to a "class" of allegedly aggrieved individuals was not overbroad simply because the EEOC's investigation was ultimately founded upon a single charge of discrimination), *petition for cert. filed*, 77 U.S.L.W. 3680 (Jun. 1, 2009) (No. 08-1500).

[7] On November 9, 2005, Morgan filed a Title VII lawsuit against CRST. *See generally Morgan v. CRST Van Expedited, Inc.*, No. 05-CV-181-JAJ, 2007 WL 402407 (N.D. Iowa Feb. 1, 2007).   The case settled in March of 2007 after the court denied CRST's motion for summary judgment.

[8] On January 30, 2006, Peeples filed a charge of discrimination against CRST. Peeples alleged that her trainer, Robert Stanley, sexually harassed her while she worked for CRST and CRST then retaliated against her when she reported the sexual harassment. The sexual harassment and retaliation ended on or before September 7, 2005.   The EEOC eventually assigned Investigator Bloomer to look into Peeples' charge.

EEOC requested that, on or before August 8, 2006, CRST provide the EEOC with "a copy of all other [c]harges of [d]iscrimination that [CRST] has received in the past five years from any government agency that alleges sexual harassment." *Id.* at 316. The EEOC also asked for "the name, gender, home address, and home telephone number of all employees that were trained by either [Smith] and/or [Goodman]," including "the dates of the training and documentation of any complaints made against these two trainers by any of these trainees." *Id.* CRST provided information to the EEOC in response to the third supplemental RFI on July 31, 2006.[9]

In January of 2007, Investigator Bloomer expressed concern to Barnes about "the conduct of CRST's male lead drivers when they are training female drivers." *Id.* at 241.

> Specifically, [Investigator Bloomer] stated that it seems the "mentality" is that it is acceptable for male lead drivers to exert power and influence over female students, which may create a hostile work environment for the female drivers. [Investigator Bloomer] also expressed concern regarding the number of complaints lodged against CRST based on alleged "sexual favors" that male lead drivers requested of female student drivers.

*Id.*

On January 19, 2007, Barnes sent a letter to Investigator Bloomer, in which he recounted their phone conversation and sought "to address the concerns [Investigator Bloomer] raised . . . related to the two sexual harassment complaints of Monika Starke and Remcey Peeples." *Id.* Barnes stated that the number of complaints of sexual harassment was "quite minimal" and not "quite high" as the EEOC was postulating. *Id.* Barnes

---

[9] CRST sent the EEOC copies or partial copies of charges of discrimination for Linda Austin (filed 2001), Patrice Cohen (filed 2004), Lori Essig (filed 2005), Jessica Goodrich (filed 2004), Sharon Hatcher (filed 2004), Bruce Hutchings (filed 2002), Karen McCall (filed 2004), Maryann Redding (filed 2002), Tamara Thiel (filed 2005), Gail Whisby (filed 2005) and Imogene Wilkie (filed 2002). CRST also represented to the EEOC that "Smith had one complaint after . . . Starke . . . which led to his termination." *Id.* at 313.

stressed that, since December of 2005, CRST had delivered 4,715 loads with a male lead driver and a female trainee yet CRST only "was made aware of and investigated eight situations in which a female student alleged a male lead driver engaged in sexual harassment." *Id.* at 241-42. Barnes claimed that CRST took "[p]rompt remedial action designed to end the harassment" so that only one student had filed a complaint with the EEOC. *Id.* at 242. By Barnes' calculations, "only 1.3% of all female students who had a male lead driver had any kind of issue involving alleged sexual harassment." *Id.* Barnes also pointed out to the EEOC that CRST had taken certain measures to prevent sexual harassment. He urged the EEOC to find "no probable cause" in the Starke and Peeples matters. *Id.*

On March 22, 2007, the EEOC propounded a fourth supplemental RFI to CRST. In relevant part, the EEOC requested the following categories of information on or before April 17, 2007:[10]

> 1. Most recent home and cell (if known) telephone number(s), home address, position title, social security number, and dates of employment for: Timothy Walker, Bryan Holliman, Chris Sullivan, Jeff Frances, all dispatchers that worked at any time on July 14, 2005 through July 15, 2005, and all female drivers, including student drivers regardless of hire date, who were employed at any time from January 1, 2005 to the present. If any of these individuals are no longer employed, please state the reason and provide supporting documentation.
> 2. Complete personnel files for: [Smith], [Goodman], [Starke], Robert Stanley, [Peeples], Roger Hooper, Glen Minor, Rick Long, and [Morgan].
> 3. For each female driver that began her employment on or after January 1, 2005 (including drivers that are no longer employed) state the dates of her training and the name(s),

---

[10] The deadline was originally April 10, 2007. CRST asked for and received a one-week extension from the EEOC.

telephone number(s), home address, and social security number of the driver(s) she drove with during her training period and the dates on which she drove with each driver.

4.     For each female driver, regardless of hire date, who was employed at anytime from January 1, 2005 to the present (including student drivers) state the name(s), telephone number(s), home address, and social security number of all of her co-drivers from the period of January 1, 2005 to the present and the dates she drove with each driver.

*Id.* at 216.

On April 11 and 12, 2007, Barnes notified Investigator Bloomer that CRST would provide the EEOC with the first and second categories of information before the deadline. Barnes balked, however, at providing the EEOC with the third and fourth categories of information before the EEOC's deadline. Barnes characterized it as an "administrative nightmare." *Id.* at 213. Barnes pointed out that CRST had approximately 3000 drivers at any given time and suffered from an annual turnover rate of 150%. Barnes promised to immediately send the EEOC the first and second categories of information and to continue to work on compiling the third and fourth categories of information.

Investigator Bloomer "stated it would be O.K. to combine [the third and fourth categories of information and] just give me the requested info[rmation] on female employees . . . without having to make [a] distinction of who was [the] trainer [and] who was [the] co-driver." *Id.* at 213. Investigator Bloomer also granted CRST an extension to April 30, 2007 to provide the EEOC with the requested information.

On April 13, 2007, Thomas Wolle, one of CRST's attorneys, contacted Investigator

11

Bloomer.  Attorney Wolle wrote:

> [Y]ou have requested information which, generally, requires CRST to cull thousands of files and records pertaining to all female drivers.  These requests are overly broad and burdensome, and would probably require the company to spend literally hundreds of hours trying to compile the information.  Moreover, I fail to see how these requests (i.e., the names of all female drivers from January 1, 2005 to present, along with phone number, address, social security number, and a listing of all of the co-drivers and trainers of such female drivers) are pertinent to the [Charge], either standing alone or in conjunction with the complaint lodged against CRST by [Peeples], which I understand you are also investigating.
>
> * * *
>
> [W]hile CRST is agreeable to providing information which will assist the EEOC in its investigation of specific charges of harassment, the requests which you've made are overly broad and not reasonably related to the charges being investigated.

*Id.* at 211.

On April 26, 2007, Investigator Bloomer left a message for Attorney Wolle and informed him that "the remainder of the info[rmation was] still due on [April 30, 2007]." *Id.* at 209.  Investigator Bloomer threatened to "issue a subpoena if [she did not] receive this info[rmation] from him by [April 30, 2007]." *Id.*

CRST did not provide the EEOC with the remainder of the requested information before April 30, 2007, but the EEOC did not issue an administrative subpoena.  On May 4, 2007, Attorney Wolle called Investigator Bloomer and left a message in which he indicated that CRST still "want[ed] a narrower inquiry." *Id.* at 207.  On May 11, 2007, Attorney Wolle and Investigator Bloomer had a telephone conversation, in which Attorney Wolle characterized the EEOC's request as "overly broad." *Id.* at 207.  He promised to meet with CRST's management about the EEOC's request and get back to Investigator Bloomer on or before May 16, 2007.

On May 18, 2007, Attorney Wolle informed investigator Bloomer that CRST had agreed to provide the remainder of the requested information on or before May 30, 2007. On May 29, 2007, CRST mailed the remainder of the requested information to the EEOC on a computer disc.[11]

### 4.    Letter of Determination

On July 12, 2007, the EEOC issued a Letter of Determination to CRST.  The Letter of Determination was encaptioned "*Monika Starke, Charging Party v. CRST International, Inc., Respondent.*"  In relevant part, John P. Rowe, District Director of the EEOC, wrote:

> I have considered all the evidence disclosed during the investigation and find that there is reasonable cause to believe that there is a violation of [Title VII], as amended, in that [CRST] subjected [Starke] to sexual harassment on the basis of her gender.  In addition, I find that there is reasonable cause to believe that [CRST] has subjected a class of employees and prospective employees to sexual harassment, in violation of Title VII.
>
>                             \* \* \*
>
> This determination is final.  When the [EEOC] finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the [EEOC] in reaching a just resolution of this matter. . . .
>
> If [CRST] wishes to accept this invitation to participate in conciliation efforts, it may do so at this time by proposing terms for a conciliation agreement.  That agreement should be provided to the [EEOC] representative within (14) days of the date of this determination.  . . . .
>
> Should [CRST] have further questions regarding the conciliation process or the conciliation terms it would like to

---

[11]  The parties did not provide the court with the disc.  From the record presently before the court, it appears that the disc contained all of the information the EEOC requested.

> propose, we encourage it to contact the assigned [EEOC]
> representative.  Should there be no response from [CRST]
> within (14) days, we may conclude that further conciliation
> efforts in this matter would be futile or non-productive.

*Id.* at 22-23.

### 5.    *Conciliation*

On August 6, 2007, Attorney Wolle informed Investigator Bloomer that CRST wished to participate in conciliation.  On August 7, 2007, Attorney Wolle apologized to Investigator Bloomer for taking so long to respond to the EEOC's offer to conciliate.  He then stated: "My client is interested in conciliation.  Please contact me to schedule the same.  Thank you."  *Id.* at 16.

On August 8, 2007, Investigator Bloomer explained the EEOC's view of the conciliation process to Attorney Wolle in a voicemail message.  Investigator Bloomer also asked Attorney Wolle to "[p]lease send . . . [CRST's] proposal by August 16, 2007[,] so that we can set up the meeting you requested."  *Id.* at 17.  Attorney Wolle responded and "indicat[ed] he wanted [the] EEOC to suggest a proposal for conciliation instead of the other way around."  Stipulation (docket no. 247-2), at 5.

On August 17, 2007, Attorney Wolle and Investigator Bloomer spoke on the telephone.  Investigator Bloomer recounts their conversation as follows:

> We discussed several issues including [the] EEOC's request
> that a monitor be appointed to examine the employer's
> workplace to discover and eliminate sexual harassment, and
> relief for the class.  He told me he wanted more information
> regarding the class.  I was not able to provide names of all
> class members at that time, or an indication of the size of the
> class, but I believe I told him that [the] EEOC would require
> as part of conciliation that CRST send a letter to past and
> present employees to help identify class members so
> settlements could be paid to them.
> * * *
> Mr. Wolle told me on August 17, 2007 that he would think

14

over [the] EEOC's proposal and would try to call me back. *Id.*

On August 24, 2007, Attorney Wolle spoke to Investigator Bloomer on the telephone and "told [her] that he had spoken to [Starke's] counsel, that it did not appear conciliation would be successful, and that he would send a confirming email." *Id.* Investigator Bloomer told Attorney Wolle that "the next step after conciliation would be [the] EEOC's internal decision whether to litigate on behalf of [Starke] and the class or provide [Starke] with a [right-to-sue] letter. *Id.*[12]

On August 27, 2007, Attorney Wolle emailed Investigator Bloomer. The subject of the email was "Monika Starke/CRST Van Expedited, Inc." *Id.* at 13. Attorney Wolle wrote the email "to confirm our phone conference . . . , in which I indicated that, in light of the monetary demand made by Ms. Starke's attorney . . . , CRST does not wish to engage in conciliation efforts because we are confident that conciliation will not result in a resolution of this matter." *Id.*

On August 28, 2007, the EEOC informed CRST that the EEOC had "determined that its efforts to conciliate [the Charge] as required by [Title VII] have been unsuccessful." *Id.* at 9. The EEOC stated that "further conciliation efforts would be futile or non-productive," indicated it would "not make further efforts to conciliate [the Charge]," and was "forwarding the case to our legal unit for possible litigation." *Id.*

### B. Legal Proceedings

#### 1. Complaint

On September 27, 2007, the EEOC filed the instant lawsuit on behalf of Starke "and a class of similarly situated female employees of [CRST] . . . ." Complaint (docket no. 2), at 1. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC brought

---

[12] On June 28, 2006, one of Starke's attorneys asked the EEOC for a right-to-sue letter. Pl.'s Ex. 1 at 119.

suit in its own name "to correct [CRST's] unlawful employment practices on the basis of sex, and to provide appropriate relief to [Starke] and a class of similarly situated female employees of [CRST] who were adversely affected by such practices." First Amended Complaint ("EEOC's Complaint") (docket no. 8), at 1.[13] The EEOC generally alleges that Starke and the other similarly situated women "were adversely affected . . . when their lead drivers or team drivers subjected them to sexual harassment and to a sexually hostile working environment based on their gender, and CRST failed to prevent, correct, and protect them . . . ." *Id.*[14]

The heart of the EEOC's Complaint contains the following specific allegations against CRST:

> 7.      Since at least July 2005, CRST engaged in unlawful employment practices in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3. Among other things, two of its lead drivers subjected Starke to sexual harassment during their supervision of [her] (including, but not limited to, unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments), which further created a sexually hostile and offensive work environment.  CRST is liable for the harm caused by the harassment and the hostile and offensive work environment because of the actions of its lead drivers and because of its failure and refusal to take prompt and

---

[13] The EEOC's Complaint, filed on November 16, 2007, corrected a typographical error in the Complaint.  Ruling (docket no. 31), at 1 n.1.

[14] Notably, the EEOC did *not* allege that CRST was engaged in "a pattern or practice" of illegal sex-based discrimination or otherwise plead a violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6.  Earlier in these proceedings, the court assumed the EEOC had the right to maintain a pattern-or-practice claim in this case but dismissed it with prejudice.  The court held as a matter of law that there was insufficient evidence from which a reasonable jury could find that it was CRST's "standard operating procedure" to tolerate sexual harassment.  Order (docket no. 197), at 57 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

appropriate action to prevent, correct, and protect Starke from the harassment and the hostile work environment, culminating in her discharge from employment with CRST.

8.    Other similarly situated female employees of CRST were also subjected to sexual harassment and a sexually hostile and offensive work environment while working for CRST, including, among other things, unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments from their lead drivers or team drivers. CRST is liable for harm caused by the harassment and the hostile and offensive work environment because of the actions of its lead drivers or team drivers and because of its failure and refusal to take prompt and appropriate action to prevent, correct, and protect its female employees from the harassment and the hostile environment.

9.    The effect of the practices complained of in Paragraphs 7 and 8 above has been to deprive Starke and class of similarly situated female employees of equal employment opportunities, and to otherwise adversely affect their status as employees, because of sex.

EEOC's Complaint at 2-3.  The EEOC alleges that CRST's actions "were intentional" and "done with malice or with reckless indifference to the federally protected rights of Starke and the class of similarly situated female employees." *Id.* at 3.

The EEOC asks the court for "a permanent injunction enjoining CRST and its officers, successors, and assigns, and all persons in active concert or participation with them, from engaging in sexual harassment [and] any other employment practice which discriminates on the basis of sex." *Id.* at 4.  The EEOC further asks the court to "[o]rder CRST to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices." *Id.*  Finally, the EEOC asks the court to order CRST to pay Starke and the similarly situated female employees compensatory damages,

punitive damages and ordinary costs.  *Id.*

### 2.     *"The Great Unknown"*

The Letter of Determination did not provide CRST with any notice as to the size of the "class of employees and prospective employees [subjected] to sexual  harassment." Pl.'s Ex. at 22.  Similarly, the EEOC's Complaint provides no indication of how many "similarly situated female employees" the EEOC alleged to exist.[15]  EEOC's Complaint at 3.  In other words, it was unclear whether the instant Section 706 lawsuit involved two, twenty or two thousand "allegedly aggrieved persons."  42 U.S.C. § 2000e-5(f)(1).

In the initial stages of this case, it appeared the number of allegedly aggrieved persons was relatively small.  On February 8, 2008, the court adopted the parties' Scheduling Order and Discovery Plan ("Scheduling Order") (docket no. 21).  Among other things, the parties agreed to a December 7, 2008 deadline for completion of discovery and a trial ready date of May 15, 2009.  The parties estimated that trial would last "**20** days."

---

[15] The vague reference in the EEOC's Complaint to "Starke and a class of similarly situated female employees" added unnecessary confusion to this case in at least two other respects:

First, the phrase "Starke and a class of similarly situated female employees" does not comport with the language or structure of Section 706, the statute under which the EEOC sued.  *See* 42 U.S.C. § 2000e-5(f)(1) (referring to "[t]he person or persons aggrieved" and "the person aggrieved").  Such phrase naturally evokes the thought of Starke as the named plaintiff in a Rule 23 class action against CRST; to the contrary, it is settled that a Section 706 federal enforcement action bears little resemblance in practice to a Rule 23 class action.  *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 333-34 (1980); *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002) (Posner, J.).

Second, the phrase "Starke and a class of similarly situated female employees" does not mirror the Letter of Determination.  In the Letter of Determination, the EEOC found reasonable cause to believe that CRST "subjected [Starke] to sexual harassment on the basis of her gender" and "has subjected a class of employees and prospective employees to sexual harassment, in violation of Title VII."

18

Scheduling Order at 2 (emphasis in original). In reliance upon the parties' representations, the court scheduled trial to commence at some time "during the two-week period beginning on June 15, 2009" with the exact dates and times of the trial to be determined closer in time to the trial date. Trial Management Order (docket no. 22), at 1 (emphasis omitted).

As discovery progressed, however, it became clear that the EEOC did not know how many allegedly aggrieved persons on whose behalf it was seeking relief. Instead, the EEOC was using discovery to find them. On May 29, 2008, for example, the EEOC sent 2,000 letters to former CRST female employees to solicit their participation in this lawsuit. On September 28, 2008, the EEOC sent another 730 solicitation letters to former CRST female employees. There was a clear and present danger that this case would drag on for years as the EEOC conducted wide-ranging discovery and continued to identify allegedly aggrieved persons. The EEOC's litigation strategy was untenable: CRST faced a continuously moving target of allegedly aggrieved persons, the risk of never-ending discovery and indefinite continuance of trial.

On August 8, 2008, CRST asked the court to establish a date "by which [the] EEOC completes its identification of class members." Response (docket no. 38), at 4. The EEOC responded that it had identified "a total of 49 class members so far," predicted the "total class will reach between 100 and 150 individuals," indicated it believed it could identify "the bulk of the class members" by October 15, 2008, and suggested a December 7, 2008 deadline for identifying the "class members." Reply (docket no. 42), at 1-3.

On August 20, 2008, the court set a October 15, 2008 deadline for the EEOC "to disclose the identity of class members." Order Modifying Discovery Plan (docket no. 44), at 2. The court also continued the parties' previously agreed-upon discovery deadline to January 15, 2009.

By October 15, 2008, the EEOC identified approximately 270 allegedly aggrieved persons to CRST. The number of "class members" greatly increased in the ten days

immediately preceding the deadline.  Prior to October 7, 2008, the EEOC had identified only seventy-nine "class members" to CRST.  On October 7, 2008, the EEOC identified 40 new "class members" and advised CRST that the "[i]nvestigation is continuing." Seventh Supplement to Initial Disclosures (docket no. 243-5), at 1.  On October 15, 2008, the EEOC identified 119 more "class members" and again advised CRST that the "[i]nvestigation is continuing."  Eighth Supplement to Initial Disclosures (docket no. 243-6), at 1;  Ninth Supplement to Initial Disclosures (docket no. 243-7), at 1;  Tenth Supplement to Initial Disclosures (docket no. 243-8), at 1.  Also on October 15, 2008, the EEOC partially identified 66 additional persons[16] and stated the "EEOC expects [that] all [of] these individuals are class members. . . ."  Eleventh Supplement to Initial Disclosures (docket no. 243-9), at 1.  Again, the EEOC stated that the "[i]nvestigation is continuing." *Id.* at 1.

The total number of allegedly aggrieved persons identified or partially identified by the EEOC by October 15, 2008 was much greater than CRST had anticipated based upon the EEOC's prior representations to the court.  *See, e.g.,* Response (docket no. 42), at 1-2 (EEOC estimating "the total class will reach between 100 and 150 individuals"); Scheduling Order at 2 (EEOC estimating a twenty-day trial).  Therefore, on November 6, 2008, CRST filed a "Motion under Rule 16(f) for an Order to Show Cause Concerning the EEOC's Identification of Class Members" ("Motion to Show Cause") (docket no. 56). CRST alleged that the EEOC did not have a good-faith basis for naming so many allegedly aggrieved persons; CRST accused the EEOC of adopting a policy of "naming everyone

---

[16] The EEOC apparently did not know the addresses of any of these 66 women; indeed, the EEOC did not even know how to spell many of their names.  The EEOC stated that it "understands that CRST has information relating to the addresses of these individuals" and "expressly reserves the right to amend this disclosure as investigation and discovery, including discovery into these individuals' potential claims, is conducted." Eleventh Supplement to Initial Disclosures (docket no. 243-9), at 1.

and asking questions later" just before the October 15, 2008 deadline. Brief in Support of Motion to Show Cause (docket no. 56-2), at 10. CRST alleged that the EEOC had simply added a large number of names found in CRST's human resources files without ever speaking to those individuals. Further, the EEOC had indicated to CRST that it reserved unto itself the option in the future "to remove some women from this list at a later date." *Id.* at 11.

In ruling upon the Motion to Show Cause, the court held that the EEOC had complied with the letter, if not the spirit, of the court's order. The court took the EEOC at its word that it had a good-faith belief that each and every one of the approximately 270 women it had disclosed to CRST before the deadline had an actionable claim for sex discrimination. Recognizing that the EEOC is "the master of its own case" (in the sense that it has the statutory authority to proceed on behalf of allegedly aggrieved persons without their consent), *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002), the court declined to "strike" all women who had not given the EEOC informed consent to proceed on their behalf in this case. The court expressed concern, however, that "CRST [still] might unfairly face a 'moving target' of prospective plaintiffs as discovery winds down and trial approaches." Order (docket no. 66), at 8.

The court invoked its inherent case management authority, Fed. R. Civ. P. 26(f), Fed. R. Civ. P. 16(b) and LR 16, and adopted the following three rules to forestall any prejudice to CRST. The court ordered the EEOC to (1) immediately file with the court a corrected list of the approximately 270 allegedly aggrieved persons it had disclosed to CRST on October 15, 2008 (the list the EEOC previously disclosed contained many errors); (2) immediately inform CRST and file an amended disclosure list with the court as soon as it learned that it no longer wished to pursue individual claims on behalf of any of the women on the list; and (3) make all allegedly aggrieved persons on whose behalf the EEOC sought relief available to CRST for a deposition before the conclusion of discovery

21

on January 15, 2009.  The court then ordered: "If the EEOC fails to make a woman available, as a discovery sanction the court will not permit her to testify at trial and will bar the EEOC from seeking relief on her behalf in this case." *Id.* at 9.

Subsequently, the EEOC made approximately 150 of the 270 allegedly aggrieved women available for deposition.  Because the EEOC did not make the remainder of the women available to CRST for deposition prior to January 15, 2009, the court held that the EEOC could not seek relief for them.

In ruling upon a series of dispositive motions, the court examined the merits of most of the approximately 150 allegedly aggrieved persons' allegations.  The court held that CRST could not be held liable for the allegations of the majority of these women, including Starke and Peeples, and barred the EEOC from seeking relief on their behalf at trial.  At present, the EEOC intends to seek relief at trial on behalf of 67 allegedly aggrieved persons: Kierston Alleva, Tracy Ball, Stacy Barager, Pamela Barlow, Belinda Bedford, Mary Bender, Lillie Bingaman, Peggy Blake, Amber Blauvelt, Adda Brown-Lenzer, Deborah Carey, Kelli Carney, Diana Chester, Margaret Daniels, Darleaner Deese, Donna Dickson, Barbara Dixon, Nicole Edwards, Cynthia Fisk, Robryna Fitch, Yvonne Fortner, Marie Foster, Barbara Grant, Zelestine Grant, Martha Griffin, Sherri Halley, Wanda Hasbell, Catherine Heckman, Victoria High, Carolyn Hunsucker, Lola Hutton, Sheila Jackson, Tequila Jackson, Diona Johnson, Angela Lesmeister, Tessa Medley, Patricia Merritt, Cindy Moffett, Valerie Montoya, Debra Moorer, Veronica Mora, Julie Noernberg, Bobbi O'Dell, Anya Owens, Kathleen Peterson, Carole Petitt, Margaret Rice, Shalitha Ross, Denise Roundtree, Mechelle Schuder, Jammie Scott, Cathy Shaw, Annette Smith, Gloria South, Latesha Thomas, Doris Tiberio, Joyce Toppin, Tracye Taylor, Tracy Tuttle, Ramona Villarreal, Rebecca Waisr, Barbara Wallace, Tiani Warden Thompson,

Kimberly Watson, Rhonda Wellman, Tameisha Wilson and Pamela Wright-Hoffman.[17] The EEOC contends that these 67 women fall within the "class" in the Letter of Determination and the "class" in the EEOC's Complaint.

### 3.   Order to Show Cause

On May 11, 2009, the EEOC filed a "Motion for Order to Show Cause Why Plaintiff EEOC's Section 706 Claims on Behalf of Allegedly Aggrieved Persons Should Not Be Dismissed for Failure to Exhaust Remedies" ("Motion") (docket no. 222-1).   On May 15, 2009, the EEOC filed a Resistance (docket no. 229-1) to the Motion.[18]

On May 18, 2009, the court granted the Motion and issued the Order to Show Cause.   The court had "doubts about the EEOC's ability to pursue this matter in whole or in part at trial" in light of the Eighth Circuit Court of Appeals' statements in *EEOC v. Delight Wholesale Co.*, 973 F.2d 664 (8th Cir. 1992).   In *Delight Wholesale*, the Eighth Circuit Court of Appeals stated:

> The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge.   The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge *or*

---

[17] The court notes that, on April 3, 2007, the EEOC issued Foster a right-to-sue letter and stated that "the [EEOC] is unable to conclude that the information obtained establishes violations of the statutes."   Def.'s Ex. 4 to Motion (docket no. 222-6), at 3. On December 27, 2007, the EEOC issued an identical letter to Bedford.   *Id.* at 2.

[18] On the same date, Plaintiffs-Interveners Barbara Grant, Cindy Moffett, Latesha Thomas and Nicole Ann Cinquemano and former Plaintiffs-Interveners Janet Boot and Remcey Jeunenne Peeples filed a Response (docket no. 230) to the Motion.   The court agrees that the Motion "clearly does not address whether [these seven women] have met the preconditions to pursue their suits," Response at 4, and so the court does not discuss their claims here.

> *developed during a reasonable investigation of the charge, so*
> *long as the additional allegations of discrimination are*
> *included in the reasonable cause determination and subject to*
> *a conciliation proceeding.*

973 F.2d at 668-69 (emphasis added and citations omitted).  The Eighth Circuit Court of Appeals held that certain claims not included in the original charge of discrimination were "properly before the district court" but stressed that the EEOC discovered the unincluded claims during a reasonable investigation of the charge, the unincluded claims were "clearly like or related to the substance of the EEOC charge," the "EEOC included the [unincluded claims] in its reasonable cause determination" and the "EEOC gave [the employer] an opportunity to conciliate [the unincluded claims]."  *Id.* at 669.

On May 29, 2009, the parties filed their Exhibits (docket nos. 243, 244, 245 & 246), a Stipulation (docket no. 247-2) and an Allegedly Aggrieved Persons Chart (docket no. 247-1).  On June 1, 2009, the court held a show cause hearing.  Attorneys Brian C. Tyndall, Jean P. Kamp, Jeanne Bowman Szromba, Ann M. Henry and Nicholas J. Pladson represented the EEOC.  Attorneys John H. Mathias, Jr., Robert T. Markowski, Sally K. Sears Coder and Kevin J. Visser represented CRST.  On July 17, 2009, the parties filed an Amended Allegedly Aggrieved Persons Chart (docket no. 261).

The matter is fully submitted and ready for decision.

### III.  STATUTORY FRAMEWORK

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  "The Supreme Court has determined . . . that sexual harassment 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' qualifies as [unlawful] sex discrimination under Title VII."  *Adams v. O'Reilly Auto., Inc.*, 538 F.3d 926, 928 (8th Cir. 2008) (quoting *Meritor Savs. Bank v. Vinson*, 477 U.S. 57,

67 (1986)).

Section 706 of Title VII, 42 U.S.C. § 2000e-5, authorizes the EEOC to bring suit in its own name to ferret out unlawful sexual harassment. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 324 (1980) (succinctly explaining, in the seminal § 706 case, that the EEOC "need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals"). Specifically, § 706 permits the EEOC to sue a private employer on behalf of a "person or persons aggrieved" by the employer's unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1).

The EEOC may file a § 706 lawsuit against a private employer, after the filing of a charge of unlawful employment discrimination with the EEOC, if the EEOC finds "reasonable cause" to believe the employer has violated Title VII and makes a good-faith attempt to settle the matter through conciliation. *Id.* In *Occidental Life Insurance Company of California v. EEOC*, the Supreme Court neatly explained:

> Congress established an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court. That procedure begins when a charge is filed with the EEOC alleging that an employer has engaged in an unlawful employment practice. A charge must be filed within 180 [or 300] days after the occurrence of the allegedly unlawful practice, and the EEOC is directed to serve notice of the charge on the employer within 10 days of filing. The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true. This determination is to be made "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." If the EEOC finds that there is reasonable cause it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." When "the Commission is unable to secure . . . a conciliation agreement acceptable to the Commission, the Commission may bring a

civil action against any respondent not a government, governmental agency, or political subdivision named in the charge."

432 U.S. 355, 359-60 (1977) (footnotes, citations and alteration omitted).

The EEOC is "master of its own case" when bringing suits on behalf of allegedly aggrieved persons in a § 706 lawsuit. *Waffle House*, 534 U.S. at 291. For example, it may bring suit with or without the consent of the allegedly aggrieved persons. *Id.* at 291-92. Nonetheless, it is axiomatic that the EEOC stands in the shoes of those allegedly aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain individual relief for them. Likewise, the full range of legal remedies available to individuals is generally available to the EEOC if the EEOC prevails on their behalf. The EEOC is entitled to equitable relief, 42 U.S.C. § 2000e-5(g), and it may also usually pursue compensatory and punitive damages, 42 U.S.C. § 1981a(a)(1).

Although a § 706 lawsuit must begin with a formal charge of discrimination, *Occidental Life*, 432 U.S. at 359, a § 706 lawsuit "is not confined to the specific allegations in the charge," *Delight Wholesale*, 973 F.2d at 668. While Section 706 does not expressly contemplate that the EEOC might bring suit as to matters not contained in a charge of discrimination, it is a judicially created doctrine that "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *Gen. Tel.*, 446 U.S. at 331 (citing *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364 (4th Cir. 1976) and *EEOC v. McLean Trucking Co.*, 525 F.2d 1007, 1010 (6th Cir. 1975)).[19] In other words, the EEOC's lawsuit may include "discrimination

---

[19]The plain language of § 706 contemplates that the "charge shall be filed by *or on behalf of the person aggrieved* within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1) (emphasis added). Section 2000e-5 makes no exception for the EEOC, even though it clearly contemplates EEOC enforcement actions. To promote judicial and administrative economy, courts granted the EEOC the ability to use an individual charge of discrimination as "a jurisdictional

like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." *Delight Wholesale*, 973 F.2d at 668.

The leeway afforded to the EEOC by this judicially created "reasonable investigation rule" is broad but not absolute. "The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination . . . developed during a reasonable investigation of the charge, *so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding*. *Id.* at 668-69 (emphasis added); *see also EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1976) ("[T]he original charge is sufficient to support EEOC administrative action, as well as an EEOC civil suit, for any discrimination stated in the charge itself or discovered in the course of a reasonable investigation of that charge, *provided such additional discrimination was included in the EEOC 'reasonable cause' determination and was followed by compliance with the conciliation procedures of [Title VII]*." (Emphasis added.)). As long as the EEOC investigates, issues a reasonable cause determination for and conciliates the additional allegations of discrimination, the reasonable investigation rule is quite expansive. A noted treatise summarizes the state of the "reasonable investigation rule" as follows:

> Thus, *subject to the investigation and conciliation requirements* . . . ., it has been held that the EEOC can bring an action alleging sex discrimination when the initial charge only alleged race discrimination, an action alleging classwide discrimination where the original charge only alleged discrimination against an individual, an action for discrimination occurring at other branches of the employer's operation than that where the charging party was employed, and an action to redress race discrimination in promotions, transfers, and terms and

springboard" without requiring the formality of multiple charges of discrimination. *See, e.g., Gen. Elec.*, 532 F.2d at 364 (cited with approval in *Gen. Tel.*, 446 U.S. at 331).

> conditions of employment when the original charge alleged
> only discrimination in hiring and discharges.

4 Lex K. Larson, *Employment Discrimination* § 75.01[2][a], at 75-10 (2d ed. July 2008). (footnotes omitted, emphasis added).

As the italicized portions of the preceding paragraph make clear, the EEOC may not use the reasonable investigation rule to circumvent Title VII's "integrated, multistep enforcement procedure" of investigation, determination and conciliation as to the additional allegations of discrimination. *Occidental Life*, 432 U.S. at 355. "[T]here must be investigation and conciliation of a claim before it is litigated." *EEOC v. KECO Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir. 1984). While the reasonable investigation rule allows the EEOC to expand its *administrative proceedings* beyond the mere allegations in a charge, the EEOC may only bring a § 706 lawsuit to remedy allegations of discrimination it investigates, finds reasonable cause to believe are true and attempts in good-faith to conciliate. *See, e.g., EEOC v. Am. Home Prods.*, 165 F. Supp. 2d 886, 909 (N.D. Iowa 2001) (Bennett, C.J.) ("[E]ven where additional claims are like or reasonably related to the claims asserted in the original charge, and could be reasonably expected to grow out of the investigation of the original charge, the Eighth Circuit Court of Appeals requires a determination of reasonable cause *as to those claims* and the opportunity for conciliation before the EEOC may include those claims in its suit." (Emphasis in original.)); *EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007) ("[T]he finding that the EEOC is not closely bound to the specifics of the original charge does not mean that the EEOC may bring a civil action regarding any discrimination it uncovers in the course of an investigation. Instead[,] . . . the EEOC must give adequate notice to a defendant-employer of the nature of the charges against it, as well as an opportunity to resolve all charges through conciliation."); *see also EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005) (Posner, J.) ("The charge incites the investigation, *but if the*

28

*investigation turns up additional violations the [EEOC] can add them to its suit.*" (Emphasis added.)); *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996) ("[The] EEOC may allege in a complaint whatever unlawful conduct it has uncovered *during the course of its investigation*, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint." (Emphasis added.)); *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) ("The [EEOC's] functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII.  It is difficult to believe Congress directed the [EEOC] . . . [to] institute such litigation before it makes a determination." (quoting *EEOC v. E.I. DuPont de Nemours & Co.*, 373 F. Supp. 1321, 1333 (D. Del. 1974))), *aff'd*, 516 F.2d 1297 (3d Cir. 1975)); *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 979 (S.D. Ind. 2003) ("[T]he eventual lawsuit must arise from the 'scope of the investigation.'  Each step along the administrative path—from charge to investigation and from investigation to lawsuit—must grow out of the one before it.").

With respect to Title VII's conciliation requirement, "[n]othing less than a 'reasonable' effort to resolve with the employer the issues raised by the complainant will do." *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1260 (11th Cir. 2003).  "This effort must, at a minimum, make clear to the employer the basis for the EEOC's charges against it." *Id.*  "Otherwise, it cannot be said that the [EEOC] has provided a meaningful conciliation opportunity." *Id.*  "[C]onciliation is at the heart of Title VII." *Id.*  A lawsuit is "a last resort." *Id.*

## IV.  ANALYSIS

It is not disputed that the EEOC was entitled to expand its investigation of Starke's Charge and consider whether CRST had tolerated the sexual harassment of other female drivers.  The EEOC "ascertain[ed]" the allegations of a number of other female drivers, including Essig, Morgan, Peeples and Thiel,  "in the course of a reasonable investigation

of" Starke's Charge. *Gen. Tel.*, 446 U.S. at 331. These other female drivers alleged sex "discrimination like or related to the substance of the allegations" in Starke's Charge and their allegations could "be expected to grow out of the investigation triggered by" Starke's Charge. *Delight Wholesale*, 973 F.2d at 668.

Furthermore, the court may not second-guess the EEOC's findings in the Letter of Determination that "there [was] reasonable cause to believe that there [was] a violation of [Title VII], as amended, in that [CRST] subjected [Starke] to sexual harassment on the basis of her gender" and "reasonable cause to believe that [CRST] ha[d] subjected a class of employees and prospective employees to sexual harassment, in violation of Title VII." Pl.'s Ex. at 22. The court does not have jurisdiction to review the EEOC's "Case Log" for Starke's Charge for the purpose of making de novo reasonable cause findings. *See, e.g., Caterpillar*, 409 F.3d at 833 ("[Courts] have no business limiting the suit to claims that the court finds to be supported by the evidence obtained in the [EEOC's] investigation. The existence of probable cause to sue is generally and in this instance not judicially reviewable.").

> "That line of inquiry would deflect the efforts of both the court and the parties from the main purpose of this litigation: to determine whether [a defendant] has actually violated Title VII. Acceptance of [such a] theory would entitle every Title VII defendant to litigate as a preliminary matter whether EEOC had a reasonable basis for its determination . . . . [This determination] would effectively make every Title VII suit a two-step action: First, the parties would litigate the question of whether EEOC had a reasonable basis for its initial finding, and only then would the parties proceed to litigate the merits of the action."

> [N]othing in the legislative history of Title VII indicates that Congress intended such challenges. [I]t is one thing to require the EEOC to adhere to its statutorily mandated procedures, but quite another to unduly burden that agency with additional lengthy litigation. [T]he EEOC's reasonable cause

> determination does not adjudicate rights and liabilities; it merely places the defendant on notice of the charges against him. If the charge is not meritorious, procedures are available to secure relief, i.e.[,] a de novo trial in the district court.

*KECO*, 748 F.2d at 1100 (quoting *EEOC v. Chi. Miniature Lamp Works*, 526 F. Supp. 974 (N.D. Ill. 1981)).

That said, the case at bar is one of those exceptionally rare § 706 cases in which the record shows that the EEOC did not conduct *any* investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial before filing the Complaint—let alone issue a reasonable cause determination as to those allegations or conciliate them.  The record shows that the EEOC wholly abandoned its statutory duties as to the remaining 67 allegedly aggrieved persons in this case.  As to the 67 allegedly aggrieved persons for whom the EEOC presently intends to seek relief at trial, the following facts are undisputed:

●	The EEOC did not investigate the specific allegations of any of the 67 allegedly aggrieved persons until after the Complaint was filed.  For example, the EEOC did not interview any witnesses or subpoena any documents to determine whether any of their allegations were true.

●	The EEOC did not identify any of the 67 allegedly aggrieved persons as members of the Letter of Determination's "class" until after it filed the Complaint.  Indeed, prior to filing the Complaint, CRST enquired as to the size of the "class" and the EEOC responded that it did not know.

●	The EEOC did not make a reasonable cause determination as to the specific allegations of any of the 67 allegedly aggrieved persons prior to filing the Complaint. Indeed, at the time the EEOC issued the Letter of Determination on July 12, 2007, 27 of the remaining 67 allegedly aggrieved persons *had not yet been sexually harassed*.  Indeed, most of these 27 women allege they were sexually harassed *after the instant lawsuit was*

*filed*. Although 38 of the remaining 40 allegedly aggrieved persons allege they were sexually harassed before the EEOC issued the Letter of Determination on July 12, 2007, the EEOC admits that it was not even aware of their allegations until after the filing of the Complaint.[20]  The EEOC used discovery in the instant lawsuit to find them.

- The EEOC did not attempt to conciliate the specific allegations of the 67 allegedly aggrieved persons prior to filing the Complaint.

The EEOC cites no binding legal authority that allows it to do what it is attempting to do in this case, *i.e.*, bootstrap the investigation, determination and conciliation of the allegations of Starke and a handful of other allegedly aggrieved persons into a § 706 lawsuit with hundreds of allegedly aggrieved persons.  The mere fact that Starke and a handful of other women allege they were sexually harassed while working for CRST provides no basis for the EEOC to litigate the allegations of 67 other women in this lawsuit.[21]  To the contrary, when presented with analogous facts, the courts have largely resisted the EEOC's attempts to perfect an end-run around Title VII's statutory prerequisites to suit. *See, e.g., EEOC v. Target Corp.*, No. 02-C-146, 2007 WL 1461298 (E.D. Wis. May 16, 2007); *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1263-68 (D. Colo. 2007); *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 982-83 (S.D. Ind. 2003); *EEOC v. E. Hills Ford Sales, Inc.*, 445 F. Supp. 985, 987-89 (W.D. Pa. 1978).

---

[20] The two exceptions are Shaw and Thomas.  Shaw alleges that she was sexually harassed in February and March of 2006.  Thomas alleges that she was sexually harassed in November and December of 2006.

[21] The court expresses no view as to whether the EEOC's investigation, determination and conciliation of Starke's Charge would be sufficient to support a pattern-or-practice lawsuit. *Cf. EEOC v. Dial Corp.*, 156 F. Supp. 2d at 934-44 (N.D. Ill. 2001) (permitting the EEOC to use discovery to find more victims of sexual harassment in a pattern-or-practice case).

Target is instructive.  In Target, as here, the EEOC sought to seek relief in a § 706
action on behalf of an allegedly aggrieved person, James Daniels, who never filed a charge
of discrimination against the defendant and whose allegations the EEOC did not investigate
before filing its complaint in federal district court.  2007 WL 1461298 at *2.  It was
undisputed that the EEOC did not learn of Daniels' allegations of discrimination against
Target until after the lawsuit was filed.  Id.  Chief Judge Rudolph T. Randa of the United
States District Court for the Eastern District of Wisconsin barred the EEOC from seeking
relief on Daniels' behalf.  Chief Judge Randa reasoned:

> The EEOC only learned of Daniels' . . . allegations during the
> course of discovery in this lawsuit. There is a clear distinction
> between "facts gathered during the scope of an investigation
> and facts gathered during the discovery phase of an
> already-filed lawsuit." Jillian's, 297 F. Supp. 2d at 981. An
> EEOC complaint must be "the product of the investigation that
> reasonably grew out of the underlying charges." Jillian's, 297
> F. Supp. 2d at 980 (emphasis added). The EEOC may not use
> discovery in the resulting lawsuit "as a fishing expedition" to
> uncover more violations. [W]alner, 91 F.3d at 971.
>
> It is true that a "suit by the EEOC is not confined 'to claims
> typified by those of the charging party . . . and [the defendant]
> is mistaken to think that the EEOC's complaint must be closely
> related to the charge that kicked off the [EEOC]'s
> investigation." [Caterpillar], 409 F.3d [at] 833[.] However,
> Caterpillar also states that: "'Any violations that the EEOC
> ascertains in the course of a reasonable investigation of the
> charging party's complaint are actionable.'" Caterpillar, 409
> F.3d at 833 (quoting [Gen. Tel.] Co. v. EEOC, 446 U.S. [at
> 331])) (emphasis added). Applying that standard, it is clear
> that the alleged violations with respect to Daniels were not
> discovered by the EEOC in the course of its investigation into
> [a charging party's] complaint.

Target, 2007 WL 1461298, at *3 (emphasis in Target).  The court adopts this portion of

Judge Randa's analysis in full.[22]   What happened in the case at bar is similar to what happened in *Target*.   It is the opposite of what happened in *Delight Wholesale*, wherein the Eighth Circuit Court of Appeals pointed out that the "EEOC gave [the defendant] an opportunity to conciliate all three allegations [at issue in the lawsuit].   Thus, all three claims were properly before the district court."   973 F.2d at 669.

To rule to the contrary would severely undermine if not completely eviscerate Title VII's "integrated, multistep enforcement procedure," *Occidental Life*, 432 U.S. at 355, expand the power of the EEOC far beyond what Congress intended and greatly increase litigation costs.   As counsel for CRST observed at the show cause hearing:

> Congress could not possibly have intended . . . to enfranchise [the EEOC] to use what amounts to weapons rather than a genuine process . . . . [T]here's a process that's in place according to statute.   There can't possibly be empty formalism.
>
> Congress could not possibly have intended that simply by naming one person, you can then thereafter file a lawsuit and then figure out where you're going to go from there and impose this incredible expense that's been imposed on us, on defense, just to get to the point where [we know how many allegedly aggrieved persons on whose behalf the EEOC seeks relief].

Transcript (docket no. 254), at 9.   To accept the EEOC's view of its own authority would also impose an untenable burden upon the federal district courts, as the EEOC might avoid administrative proceedings for the vast majority of allegedly aggrieved persons.

> [Yet] Congress could not possibly have intended that our federal district courts be burdened with the task of conducting

---

[22] The court declines to follow *Target*'s additional statement that the "EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." *Id.* at 2 (citation and internal quotation marks omitted). This statement is inconsistent with *Delight Wholesale*.

mass trials of Title VII sexual harassment claims before a single jury absent some specifically charged unlawful practice commonly affecting all such claims, particularly when few of the claims were identified during the administrative process which Congress intended to act as a filter before any claims reached a federal court.   Instead, [the] EEOC should be required to satisfy the conditions precedent of charging, investigating, finding reasonable cause, and conciliating each such unrelated claims before filing suit.

Brief in Support of Motion (docket no. 222-2), at 13.[23]

---

[23] The observations of one commentator proved prophetic in the case at bar.  The commentator wrote:

By allowing claims not investigated in good faith to proceed to trial, mildly unfavorable employment decisions may become the subject of formal EEOC charges. . . . This may realistically equate to more frivolous suits reaching the courts. . . . Permitting the [EEOC] to circumvent its requirements can only broaden the number and scope of issues litigated, which, in turn, increases the time and expense of discovery and trials. Ultimately, when the EEOC only does enough to satisfy the "conciliation checkbox," the opportunity for mediation, arbitration or settlement and the quality of judicial decision-making is potentially diminished because more cases will require formal adjudication.

* * *

Title VII is a remedial statute created to 'further promote equal employment opportunities for American workers, and, as such, it is construed in favor of the complainant.   Congress recognized that the judicial system is not always the most efficient or best medium for resolving employment disputes; therefore, the [EEOC] should only take a matter to trial if conciliation 'proves to be impossible.' . . . Congress gave substantial weight to the premise that the EEOC would have to investigate and seek voluntary compliance before developing a lawsuit.

Anthony P. Zana, *A Pragmatic Approach to EEOC Misconduct: Drawing a Line on*

The EEOC stresses that CRST knew or should have known many other women were complaining of sexual harassment and would continue to complain of sexual harassment after the EEOC filed this lawsuit. Even the most recalcitrant employer who flouts Title VII's prohibitions against unlawful employment discrimination, however, is due the process that Title VII mandates. *Cf. EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974) ("We agree with the court below that the regulation affords even the most uncooperative and recalcitrant respondent 'the right to be told that it has one last chance to attempt conciliation.'"). Congress surely did not intend that employers, even ones whose workplaces might be rife with sexual harassment, face the moving target of allegedly aggrieved persons that CRST faced in both the administrative and legal phases of this dispute.

The EEOC's failure to investigate the claims of the 67 allegedly aggrieved persons deprived CRST of a meaningful opportunity to engage in conciliation and foreclosed any possibility that the parties might settle all or some of this dispute without the expense of a federal lawsuit. The EEOC's insistence that the 67 allegedly aggrieved persons for whom it now seeks relief are truly part of the "class" of persons it referenced in the Letter of Determination is not well taken. This argument does nothing more than trade on the inherent ambiguity in the term "class" to the EEOC's own advantage. *Cf. Outback Steakhouse*, 520 F. Supp. 2d at 1267 ("Defendants had every reason to believe that the 'class' the EEOC was referring to in its determination was a *regional* class."); *Jillian's*, 279 F. Supp. 2d at 982-983 (finding the EEOC attempted to use the indeterminate term "class" in a letter of determination to impermissibly expand a regional administrative investigation into a nationwide lawsuit). Even if the court assumes that the EEOC need not identify each and every allegedly aggrieved person before filing a lawsuit, the EEOC's vague reference to a "class" in the Letter of Determination may only be understood in the

---

*Commission Bad Faith in Title VII Litigation*, 73 Miss. L. J. 289, 316-17, 320-21 (2003).

context of the scope of the investigation that the EEOC actually conducted.   The EEOC certainly may not simply issue a vague letter of determination as a predicate to meaningful conciliation.   "It is, after all, *the EEOC's duty* to put Defendants on notice of the scope of the charges against them in order to give every incentive and allowance for settlement of the claims prior to filing the suit in court." *Outback*, 520 F. Supp. 2d at 1267 (emphasis in original); *see also Asplundh*, 340 F.3d at 1260 ("[A]t a minimum, [the EEOC must] make clear to the employer the basis for the EEOC's charges against it.   Otherwise, it cannot be said that the [EEOC] has provided a meaningful conciliation opportunity." (Citation omitted.)).   Here, Attorney Wolle unsuccessfully implored the EEOC to give CRST more information about the size of the "class."

In sum, the court is unpersuaded that CRST knew or should have known during the administrative phase of this dispute that it would need to defend against the allegations of the 67 allegedly aggrieved persons in the instant lawsuit.   *Cf. Jillian's*, 279 F. Supp. 2d at 982 ("We are unpersuaded by the EEOC's evidence that [the defendant] knew or should have known that it was subject to a nationwide class action, since virtually all of that evidence is the product of discovery that occurred after it closed its investigation and filed its lawsuit.").   *Id*.   Because the EEOC did not investigate, issue a reasonable cause determination or conciliate the claims of the 67 allegedly aggrieved persons, the court shall bar the EEOC from seeking relief on their behalf at trial and dismiss the EEOC's Complaint.   *See, e.g., Pierce Packing*, 669 F.2d at 608 ("Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC[.]"); *EEOC v. Am Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981) (same); *Outback*, 520 F. Supp. 2d at 1268 n.1 ("The EEOC does not contest that proper notice to a defendant-employer of the charges against it is a jurisdictional prerequisite to the EEOC filing suit against that employer.").   *cf. Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 524-25 (5th Cir. 1980)  (discussing the EEOC's "condition precedents" to

suit).[24]

Here, dismissal is a severe but appropriate remedy. Although dozens of potentially meritorious sexual harassment claims may now never see the inside of a courtroom, to rule to the contrary would work a greater evil insofar as it would permit the EEOC to perfect an end-run around Title VII's "integrated, multistep enforcement procedure." *Occidental Life*, 432 U.S. at 355. It would ratify a "sue first, ask questions later" litigation strategy on the part of the EEOC, which would be anathema to Congressional intent.[25] The court cannot ignore the law as it is written by Congress and construed by the Eighth Circuit

---

[24] Had the EEOC not wholly abdicated its role in the administrative process, the court might have stayed the instant action for further conciliation in lieu of dismissal. *Compare EEOC v. Golden Lender Fin. Group*, 2000 WL 381426, *5-*6 (S.D.N.Y. Apr. 13, 2000) (staying case because "it cannot be said that the EEOC has made absolutely no efforts to conciliate"), *with EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1256 (M.D. Ala. 1989) ("[T]he weight of the authority seems to be that the total failure to conciliate is a bar to suit by the EEOC.").

[25] The court expresses no view as to whether the trial attorneys for the EEOC acted in bad faith. The court notes that, upon filing the Complaint, the EEOC's higher-level attorneys issued a press release entitled "**TRUCKING GIANT CRST SUED FOR SEXUAL HARASSMENT OF FEMALE 'TEAM' DRIVERS**." Mr. John Hendrickson, Regional Attorney for the Chicago District, and Mr. John P. Rowe, District Director of the Chicago District Office, commented on CRST's alleged practices. Def.'s Ex. 5 (docket no. 222-7), at 2 (emphasis in original). For example, Mr. Hendrickson stated: "This situation is chilling to contemplate: being trained by a sexual harasser on the open road in a sleeper cab, and not getting immediate help when you complain. We think the repetitive nature of the situation as alleged here makes this case especially compelling . . . ." *Id.* at 3. Mr. Hendrickson also attended an employment law conference in Chicago on October 1, 2008, in which he "highlighted the rampant sexual harassment exhibited by trucking giant CRST and their weak, if typical, defense that it was 'all the woman's fault." Def.'s Ex. 3 (docket 243-3), at 1. In *Asplundh*, the Eleventh Circuit Court of Appeals affirmed the dismissal of an EEOC enforcement action and an award of attorneys' fees against the EEOC. 340 F.3d at 1261. The Eleventh Circuit Court of Appeals opined that the EEOC may have avoided conciliation to make headlines and press its case against the employer in the media. *Id.*

Court of Appeals in *Delight Wholesale*.

The government, like its citizens, must follow the law.  The EEOC must respect Title VII's administrative scheme and follow the "clearly delineated paths to justice" that Congress has created.  *Cf. Langbord v. U.S. Dep't of Treasury*, 2009 WL 2342638, *15 (E.D. Pa. 2009).  "Seeking shortcuts to these paths does nothing more than undermine their valuable function and erode the meaning of the rights they are designed to protect." *Id.*  "It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government."  *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961) (Black, J., dissenting) (quoted in *Langbord*, 2009 WL 2342638, at *15).

## V.  CONCLUSION

**IT IS THEREFORE ORDERED:**

(1)   The court **BARS** the EEOC from seeking relief at trial in this case on behalf of Kierston Alleva, Tracy Ball, Stacy Barager, Pamela Barlow, Belinda Bedford, Mary Bender, Lillie Bingaman, Peggy Blake, Amber Blauvelt, Adda Brown-Lenzer, Deborah Carey, Kelli Carney, Diana Chester, Margaret Daniels, Darleaner Deese, Donna Dickson, Barbara Dixon, Nicole Edwards, Cynthia Fisk, Robryna Fitch, Yvonne Fortner, Marie Foster, Barbara Grant, Zelestine Grant, Martha Griffin, Sherri Halley, Wanda Hasbell, Catherine Heckman, Victoria High, Carolyn Hunsucker, Lola Hutton, Sheila Jackson, Tequila Jackson, Diona Johnson, Angela Lesmeister, Tessa Medley, Patricia Merritt, Cindy Moffett, Valerie Montoya, Debra Moorer, Veronica Mora, Julie Noernberg, Bobbi O'Dell, Anya Owens, Kathleen Peterson, Carole Petitt, Margaret Rice, Shalitha Ross, Denise Roundtree, Mechelle Schuder, Jammie Scott, Cathy Shaw, Annette Smith, Gloria South, Latesha Thomas, Doris Tiberio, Joyce Toppin, Tracye Taylor, Tracy Tuttle, Ramona Villarreal, Rebecca Waisr, Barbara Wallace, Tiani Warden Thompson, Kimberly

Watson, Rhonda Wellman, Tameisha Wilson and Pamela Wright-Hoffman.

(2)     The EEOC's Complaint (docket no. 8) is **DISMISSED**.

(3)     The EEOC shall pay CRST's ordinary costs.

(4)     CRST may file its request for costs **10 court days** after the disposition of the entire case.

(5)     Now that CRST is a "prevailing party" as to the EEOC, 42 U.S.C. § 2000e-5(k), CRST may file an application for attorneys' fees from the EEOC within **20 court days** after disposition of the entire case.

(6)     Formal judgment shall not enter against the EEOC and in favor of CRST until the court enters judgment on the pending claims of the remaining Plaintiffs-Interveners.

**IT IS SO ORDERED.**

**DATED** this 13th day of August, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA