## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:07-cv-95 |
| JANET BOOT, BARBARA GRANT, CINDY MOFFETT, REMCEY JEUNENNE PEEPLES, MONIKA STARKE, LATESHA THOMAS, and NICOLE ANN CINQUEMANO, | ) ) ) ) ) ) | |
| Plaintiffs/Interveners, | ) ) | |
| v. | ) ) | |
| CRST VAN EXPEDITED, INC., | ) ) | |
| Defendant. | ) | |

**CRST VAN EXPEDITED, INC.'S PETITION IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 2000e-5(k)**

Kevin J. Visser
Thomas D. Wolle
Simmons, Perrine, Moyer &
 Bergman, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
319 366-7331

John H. Mathias, Jr.
Robert T. Markowski
Sally K. Sears Coder
Jenner & Block LLP
353 N. Clark Street
Chicago, Il 60654
312 222-9350

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

   I.  CRST IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND  COSTS
      PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964. ...........................4

     A.  42 U.S.C. § 2000e-5(k) Provides the Statutory Basis for CRST's Right to an
        Award of Attorneys' Fees and Costs as the Prevailing Party. .......................................4

     B.  Case Law Applying § 2000e-5(k) Authorizes an Award of Attorneys' Fees to
        a Prevailing Defendant in a Civil Rights Action Brought by the EEOC Under
        the Circumstances Present in this Litigation..................................................................4

   II.  LEGAL STANDARDS FOR AWARD OF ATTORNEYS' FEES ...................................9

   III. CRST'S ATTORNEYS' FEES ARE REASONABLE. ...................................................11

     A.  The Hourly Rates Charged By CRST's Lead Counsel Are Reasonable. ...................12

     B.  The Time Expended by CRST's Counsel Was Reasonable. .......................................13

     C.  The Fees Charged And Expenses Incurred by CRST's Iowa Counsel Are
        Reasonable. ...................................................................................................................18

   IV. CRST'S EXPENSES, INCLUDING ITS EXPERT WITNESS EXPENSES,  ARE
      RECOVERABLE AND REASONABLE. .......................................................................21

     A.  Long Distance Telephone Expenses. .........................................................................21

     B.  Messenger and Overnight Express..............................................................................21

     C.  Fees for Investigators...................................................................................................21

     D.  Expert Witness Fees.....................................................................................................22

     E.  Mock Jury. ....................................................................................................................23

     F.  Computer Legal Research.............................................................................................24

     G.  Postage .........................................................................................................................24

     H.  Travel and Related Expenses .......................................................................................25

     I.  Demonstratives for Trial ..............................................................................................25

     J.  Fees Incurred in Preparation of Fee Application .........................................................25

CONCLUSION.....................................................................................................................26

Pursuant to 42 U.S.C. § 2000e-5(k) and Local Rule 54.1, CRST Van Expedited, Inc. ("CRST"), respectfully moves this Court for an order awarding reimbursement from EEOC for the attorneys' fees, expenses, and costs it has incurred in almost two years of intensive litigation ending with the dismissal of all claims of the Equal Employment Opportunity Commission ("EEOC"). This Court is authorized to make such an award pursuant to its previous rulings that CRST is the "prevailing party." (8/13/09 Order to Show Cause, Doc. No. 263; 5/13/09 Order on Judicial Estoppel, Doc. No. 225.)

## INTRODUCTION

This case was filed by EEOC on September 27, 2007, on behalf of a single allegedly aggrieved person, Monika Starke, and an unidentified "class of similarly situated female employees" of CRST. (Doc. No. 1.) At the time of filing, however, EEOC had neither investigated nor offered to conciliate with CRST any claims other than that of Ms. Starke and had given no indication of the identities of any other members of its purported "class." After filing, EEOC requested and received the full cooperation of CRST in providing contact information for thousands of present or former female drivers, to whom EEOC then subsequently sent solicitation letters holding out the prospect of substantial monetary compensation if they made allegations of sexual harassment against CRST. Still later, EEOC requested and received from CRST the Human Resources files of every female driver who had made any complaint of sexual harassment over the past several years and then, over CRST's objection (Doc. No. 56), added the vast majority of them as claimants without even attempting to talk to them.

At its high point, EEOC purported to bring sexual harassment claims against CRST on behalf of over 290 individual female drivers, seeking compensatory and punitive damages and injunctive relief predicated upon the assertion, subsequently rejected by this Court, that CRST

had engaged in an unlawful pattern or practice of tolerating sexual harassment.  EEOC's lawsuit left CRST only two choices.  It could either give up in the face of these government allegations or defend itself against the hundreds of individual claims ultimately advanced by EEOC as the case unfolded, each one of which was highly dependent upon its own facts and circumstances.

EEOC's strategy was plainly designed to pressure CRST into a settlement by making the case extraordinarily burdensome to defend.  Simultaneously, while posturing as if it were completely immune from any constraints regarding pretrial publicity, EEOC vilified CRST in press releases and at industry gatherings, thereby waging a secondary but no less intensive campaign of public intimidation against CRST and its management.

CRST chose not to capitulate to EEOC's unfounded allegation that it tolerated sexual harassment and in doing so incurred the millions of dollars in fees and expenses necessary to mount a defense. CRST now clearly has emerged as a prevailing party, with this Court's dismissal of EEOC's "pattern or practice" claim and more than 200 individual claims by summary judgment or procedural default, and with this Court's August 13, 2009 dismissal of the remaining 67 individual "allegedly aggrieved party" claims because of EEOC's complete failure to satisfy the conditions precedent mandated by Congress under Title VII for EEOC to pursue those claims.

In its August 13, 2009 Order dismissing all that remained of EEOC's complaint (Doc. No. 263), this Court found that EEOC failed in every particular to discharge its statutory duty:

- "The EEOC did not investigate the specific allegations of any of the 67 allegedly aggrieved persons until after the Complaint was filed."  (Doc. No. 263 at 31.)

- "The EEOC did not identify any of the 67 allegedly aggrieved persons as members of the Letter of Determination's 'class' until after it filed the Complaint."  (Doc. No. 263 at 31.)

- "The EEOC did not make a reasonable cause determination as to the specific allegations of any of the 67 allegedly aggrieved persons prior to filing the

2

Complaint.  Indeed, at the time the EEOC issued the Letter of Determination on July 12, 2007, 27 of the remaining 67 allegedly aggrieved persons *had not yet been sexually harassed*. . . . Although 38 of the remaining 40 allegedly aggrieved persons allege they were sexually harassed before the EEOC issued the Letter of Determination on July 12, 2007, the EEOC admits that it was not even aware of their allegations until after the filing of the Complaint."  (Doc. No. 263 at 31-32.)

- "The EEOC did not attempt to conciliate the specific allegations of the 67 allegedly aggrieved persons prior to filing the Complaint."  (Doc. No. 263 at 32.)

- "The EEOC cites no binding legal authority that allows it to do what it is attempting to do in this case, i.e., bootstrap the investigation, determination and conciliation of the allegations of Starke and a handful of other allegedly aggrieved persons into a § 706 lawsuit with hundreds of allegedly aggrieved persons." (Doc. No. 263 at 32.)

- "[A]t a minimum, [the EEOC must] make clear to the employer the basis for the EEOC's charges against it.  Otherwise, it cannot be said that the [EEOC] has provided a meaningful conciliation opportunity."  (Doc. No. 263 at 37, citing *Asplundh*, 340 F. 3d 1256, 1260 (11th Cir. 2003).)

- "Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC[.]" (Doc. No. 263 at 37, citing *Pierce Packing*, 669 F. 2d 605, 608 (9th Cir. 1982).)

- "Here, dismissal is a severe but appropriate remedy. . . . [T]o rule to the contrary would work a greater evil insofar as it would permit the EEOC to perfect an end-run around Title VII's 'integrated, multistep enforcement procedure.' *Occidental Life*, 432 U.S. at 355.  It would ratify a 'sue first, ask questions later' litigation strategy on the part of the EEOC, which would be anathema to Congressional intent.  [This Court noted further that] [i]n *Asplundh*, the Eleventh Circuit Court of Appeals affirmed the dismissal of an EEOC enforcement action and an award of attorneys' fees against the EEOC.  340 F. 3d at 1261.  The Eleventh Circuit Court of Appeals opined that the EEOC may have avoided conciliation to make headlines and press its case against the employer in the media."  (Doc. No. 263 at 38.)

- "The record shows that the EEOC wholly abandoned its statutory duties. . . ." (Doc. No. 263 at 31.)

In its dismissal order, the Court expressly provided that as a "prevailing party" CRST may file an application for attorneys' fees from EEOC under 42 U.S.C. § 2000e-5(k). CRST respectfully submits that, under the compelling circumstances present here, it is appropriate to

award CRST the full amount of its statutorily allowable fees and expenses against EEOC in the

total sum of $7,633,397.77 for fees, and $569,564.64 for expenses.[1]

**ARGUMENT**

As described below, CRST is entitled to an award of attorneys' fees and disbursements

from EEOC and the fees and costs it seeks are reasonable.

**I.     CRST IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES AND COSTS
        PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.**

**A.     42 U.S.C. § 2000e-5(k) Provides the Statutory Basis for CRST's Right to an
        Award of Attorneys' Fees and Costs as the Prevailing Party.**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), specifically provides:

> In any action or proceeding under this subchapter, the court, in its discretion, may
> allow the prevailing party, other than the Commission or the United States, a
> reasonable attorney's fee (including expert fees) as part of the costs, and the
> Commission and the United States shall be liable for the costs the same as a
> private person.

The statute makes it unmistakably clear that the Court has discretion to allow CRST, as the

prevailing party, its reasonable attorneys' fees from EEOC in this case.

**B.     Case Law Applying § 2000e-5(k) Authorizes an Award of Attorneys' Fees to a
        Prevailing Defendant in a Civil Rights Action Brought by EEOC Under the
        Circumstances Present in this Litigation.**

**1.     A prevailing defendant is entitled to fees and costs against EEOC if
        EEOC acted unreasonably, vexatiously or if the complaint was
        groundless, even though not in bad faith.**

The Supreme Court has held that pursuant to Section 2000e-5(k), a court has power to

award a prevailing defendant its attorneys' fees and costs in a civil rights action, even if not

brought in bad faith, if EEOC's claim was frivolous, unreasonable, vexatious or groundless *ab*

---

[1] Although the Court's May 13, 2009 Order (Doc. No. 225), provided CRST may seek attorneys' fees and costs from Monika Starke, CRST has elected not to do so in light of her apparent financial condition.

4

*initio*, or if EEOC continued to litigate after the claim clearly became so. *Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). Under Eighth Circuit law, the district court has

broad discretion to award attorneys' fees, *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024,

1036 (8th Cir. 2007), and the award of fees is reviewable for abuse of discretion. *Fish v. St.*

*Cloud Univ.*, 295 F.3d 849, 852 (8th Cir. 2002).

Courts applying *Christiansburg* have awarded the prevailing defendant fees and costs in

cases where, as here, EEOC had engaged in an unreasonable and vexatious course of proceeding,

heedless of the fundamental principles of Title VII.  For example, in *EEOC v. Asplundh Tree*

*Expert C*o., 340 F.3d 1256, the Eleventh Circuit upheld an award of attorneys' fees where EEOC

had violated its Title VII duty to conciliate in a racial harassment and retaliation action.  *Id.* at

1259-60.  The district court had dismissed the lawsuit and awarded costs and fees to Asplundh,

holding that EEOC had failed to meet its statutory duty to engage in good-faith conciliation.  *Id.*

The Eleventh Circuit upheld the award, stating "[t]he duty to conciliate is at the heart of Title

VII."  *Id.*  "Nothing less than a reasonable effort to resolve with the employer the issues raised by

the complaint will do.  This effort must, at a minimum, make clear to the employer the basis for

the EEOC's charges against it."  *Id.*

 In *Asplundh*, EEOC conducted the investigation into the allegations, and issued a Letter

of Determination and a proposed Conciliation Agreement that did not identify a theory of

liability upon which Asplundh could be held liable, but then terminated conciliation and

announced its intent to sue the day after receiving a request for an extension from defendant to

"understand" the determination.  *Id.* at 1260-61.  Thus, prior to determining that conciliation had

failed, EEOC terminated the process, which the court deemed "smacks more of coercion than

conciliation." *Id.*  Accordingly, the court held that it was well within the discretion of the district court to award attorneys' fees.  *Id.*  (citing *EEOC v. Pierce Packing Co.*, 669 F.2d at 608).

Moreover, the Eleventh Circuit pointedly noted in upholding the fee award that "the Commission's haste may have been motivated, at least in part, by the fact that conciliation, *unlike litigation*, is not in the public domain." *Asplundh*, 340 F.3d at 1261, n.3 (emphasis in original).  The court further observed that "[i]n its haste to file the instant lawsuit, with lurid, perhaps newsworthy, allegations [the EEOC office had made public to *The New York Times* that the case involved the allegation of a noose incident involving a black plaintiff], the EEOC failed to fulfill its statutory duty to act in good faith to achieve conciliation, effect voluntary compliance, and to reserve judicial action as a last resort." *Id.* at 1261.  There, as here, EEOC had first launched its sensational claims in the media before even attempting to satisfy its statutorily mandated pre-suit obligations to investigate and offer conciliation.

In *EEOC v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009), an ADA employment discrimination case, the Fifth Circuit upheld a district court award of attorneys' fees and costs against EEOC, finding both that there was "no reason to proceed" after a deposition in which the plaintiff's testimony defeated his discrimination claims, and that EEOC did not respond reasonably to efforts of the employer to conciliate, instead pressing a take-it-or-leave-it demand for significant compensatory damages.  *Id.* at 472-73.  The court held that EEOC owes duties to employers as well as employees, including "a duty reasonably to investigate charges, a duty to conciliate in good faith, and a duty to cease enforcement attempts after learning that an action lacks merit.  In this case, the EEOC abandoned its duties and pursued a groundless action with exorbitant demands." *Id.*

In *EEOC v. Hendrix College*, 53 F.3d 209 (8th Cir. 1995), EEOC filed an enforcement action against a college alleging a violation of the ADEA's record-keeping requirements. *Id.* at 210. The evidence established that the defendant college had changed its record-keeping to meet statutory requirements and had notified EEOC accordingly before suit was filed. *Id.* Nevertheless, EEOC filed suit because the college refused to sign a conciliation form. *Id.* The Eighth Circuit affirmed the district court's award of attorneys' fees finding that EEOC initiated and litigated the action "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 211.

In *EEOC v. Jordan Graphics*, 769 F. Supp. 1357 (W.D.N.C. 1991), EEOC brought an action against an employer alleging a pattern and practice of failing to hire on grounds of race. The case proceeded to a bench trial, and the court ruled the evidence insufficient to find for EEOC. *Id.* at 1384. The court awarded defendant attorneys' fees and costs finding that EEOC's suit was "frivolous, unreasonable and without foundation," which it should have recognized at the close of discovery. *Id.* at 1385-86.

In *EEOC v. Bellemar Parts Industries, Inc.*, 868 F.2d 199 (6th Cir. 1989), EEOC charged a parent corporation and its subsidiary (Bellemar) with racial and sexual discrimination beginning in 1978 even though Bellemar did not commence operations until 1984. The court held that EEOC's action in filing the charge against Bellemar under those circumstances constituted a "blatant disregard of the statutory charging procedure in the face of actual knowledge that its charge was defective" and awarded attorneys' fees against EEOC for its "egregious" behavior. *Id.* at 200.

In *EEOC v. Pierce Packing Co.,* 669 F.2d 605, the Ninth Circuit affirmed an award of attorneys' fees and costs against EEOC on the ground that "[g]enuine investigation, reasonable

cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC which are conspicuously absent here." *Id.* at 608. In 1977, EEOC brought an action for sex discrimination based on a 1973 settlement agreement without current factual investigation, a reasonable cause determination, or an offer to conciliate. *Id.* at 609. Further, the court held that "[t]he Commission's functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII. It is difficult to believe that Congress directed the Commission to make a determination of reasonable cause on the merits of a charge and nevertheless contemplated that the Commission could institute such litigation before it makes such a determination." *Id.* at 608.

The foregoing cases awarding attorneys' fees against EEOC establish the fundamental principle, adopted by this Court in dismissing EEOC's case, that the Title VII statutory framework entitles an employer to the process required by Title VII before a charge is filed in court. (Doc. No. 263 at 36.) That process necessitates genuine investigation, a reasonable cause determination, and a good faith effort to conciliate prior to filing suit. EEOC may not end-run the statutorily mandated directive to reserve judicial action as a last resort in order to generate headlines and threaten the specter of an extraordinarily burdensome and expensive lawsuit to force a company to capitulate to EEOC's demands. In such circumstances, EEOC's failure to comply with Title VII's clearly articulated requirements justifies an award of attorneys' fees to defendant.[2]

---

[2] Further support for the determination that EEOC's conduct in ignoring Title VII's fundamental requirements, presumably well known to EEOC, may be found in 28 U.S.C. § 1927 decisions which interpret that statute's reference to proceedings "unreasonably and vexatiously" multiplied by a party's conduct to include institution of proceedings which never should have been brought nor persisted in, or which manifest either an intentional or reckless disregard of an attorney's duty to the court. *See, e.g., Tenkku v. Normany Bank*, 348 F.3d 737, 743-44 (8th Cir. 2003);

2.     **EEOC's conduct in this matter was unreasonable and vexatious because EEOC wholly abandoned its statutory duties to accomplish its litigation objectives.**

Tested by the standards discussed above, EEOC's course of proceeding in this litigation is a paradigmatic example of unreasonable and vexatious conduct. Here, EEOC elected to multiply the proceedings vexatiously by not only failing to investigate, failing to make findings, and failing to conciliate, but further by its invocation of both Sections 706 and 707, even though there was insufficient evidence to support claims under either theory. The case law establishes that failure to conduct a genuine investigation, failure to make a reasonable cause determination, and failure to conciliate -- all prior to filing suit -- constitute a dereliction of the duty imposed upon EEOC by the Title VII statutory scheme and a denial of the pre-suit process to which the accused employer is entitled under Title VII.

As a result of EEOC's abandonment of its statutory duties, its decision to sue first and ask questions later, and its efforts to coerce settlement by resort to the media, EEOC caused CRST, as well as the Court, to expend extraordinary resources to litigate claims that were wholly without the requisite statutory basis.

## II.  STANDARDS FOR ESTABLISHING THE AMOUNT OF AN ATTORNEYS' FEES AWARD.

In *Goss International Corporation v. Tokyo Kikai Seisakusho, Ltd.*, 2004 U.S. Lexis 10164 (N.D. Iowa June 2, 2004), this Court, citing to applicable Eighth Circuit authority, discussed in detail the legal standards for an award of attorneys' fees. The Court noted that the amount of attorneys' fees to which a party is entitled is formulated by computing the "lodestar" figure which in turn is obtained by multiplying the number of hours reasonably expended by

---

*Lewis v. Brown & Root, Inc.*, 711 F.2d 1287 (5th Cir. 1983); *Torres v. City of Orlando*, 264 F. Supp. 2d 1046 (M.D. Fl. 2003).

reasonable hourly rates. *Id.* at *4. The lodestar figure is presumed to be the reasonable fee to which counsel is entitled. *Id.* The most critical factor in determining the reasonableness of the rate is the degree of success obtained. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). A reasonable rate is generally the prevailing market rate in the community; however, in specialized areas of law the national market rate may provide a reasonable hourly rate. *Id.* at *5, 10 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In addition, reasonable out-of-pocket expenses incurred by an attorney which normally would be charged to a fee-paying client are includable in a statutory award of fees. *Id.* at *16-17 (citing *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996)).

Significantly, the best test of the reasonableness of the attorneys' fees is the amount a sophisticated client actually paid for the legal services. As the Seventh Circuit noted in *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), when the client has "an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review" of legal fees. *Id.* at 1076; *see also Kallman v. RadioShack Corp.*, 315 F.3d 731, 724 (7th Cir. 2002). The Seventh Circuit similarly observed in *Balcor Real Estate Holdings, Inc., v. Walentas-Phoenix Corporation*, 73 F.3d 150 (7th Cir. 1996): "[T]he best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it *is* market value. . . . [T]he best guarantee of reasonableness is willingness to pay." *Id.* at 153 (quoted with approval in *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005)). CRST had no reason to believe that it would shift its fees, and it has paid all fees that are due and payable. CRST's attorneys' fees are, therefore, presumptively reasonable.

### III.    CRST'S ATTORNEYS' FEES ARE REASONABLE. [3]

As discussed above, CRST is entitled to recover its attorneys' fees in defending this litigation.  All of the fees and expenses CRST seeks from EEOC in this petition were fully paid in a timely fashion by CRST (with the exception of certain private investigator work as described below) without any contemporaneous expectation of reimbursement.  The total of those fees billed to and timely paid by CRST from commencement of the suit in September 2007 through August 2009, when the case was dismissed, for which CRST seeks reimbursement is $7,121,569.25.

CRST has reduced the amount it seeks to account for the fact that EEOC had made a pre-suit determination of probable cause and offered to conciliate Remcey Peeples' claim.  CRST has also reduced the amount it seeks to account for work generated solely in response to filings by interveners' counsel.

Local Rule 54.1(a) requires that "[t]he claimed amount must be supported by an itemization that includes a detailed listing of the time claimed for each specific task and the hourly rate claimed."  Time records of Jenner & Block LLP ("Jenner & Block") and Simmons Perrine Moyer & Bergman, P.L.C ("the Simmons Firm"), which are appended hereto as Attachment 2, identify the time biller, the services rendered, the rate charged, and the time claimed for the tasks performed.[4]

---

[3] The Declaration of John H. Mathias, Jr. verifying the facts set out in this section is appended hereto as Attachment 1.

[4]    The materials submitted by Jenner & Block in Attachment 2 are a Microsoft Word version of Jenner invoices that were sent to CRST for payment and which were paid.  The Word version reflects removals for work not sought in this Petition as described above, as well as other removals that reflect work performed for CRST on matters related to the EEOC lawsuit but in the judgment of counsel is not sufficiently related to defense of the EEOC case to warrant inclusion in the fee petition.  These deletions have been stamped "Redacted."  Invoices have also been redacted to protect privileged communications with CRST and to continue to protect

11

The fee award should include all fees reasonably incurred by CRST in defending against the EEOC charges. CRST need not show it won every battle along the way to recover all its fees. In *Jenkins v. State of Missouri*, 127 F.3d 709, 716 (8th Cir. 1997), the court recognized that if a party has won excellent results, it is entitled to a full compensatory award, which will normally include time spent on related matters on which it did not win. *See also, e.g., Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1053 (9th Cir. 1991) ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war.").

**A.      The Hourly Rates Charged By CRST's Lead Counsel Are Reasonable.**

The rates charged by CRST's lead counsel, Jenner & Block, were the normal hourly rates charged for partner, counsel, associate, and paralegal time to Jenner & Block's clients during the relevant period, except that all partner rates (which ordinarily are subject to annual change on January 1) were held without increase during 2009 out of consideration for the enormous expense this case was imposing on CRST. Those rates are set forth in Attachment 3.

As this court recognized in *Goss*, 2004 U.S. Lexis 10164, at *10, national rates are appropriate in specialized areas of law. Jenner & Block is nationally recognized for its accomplishments in major complex litigation. Jenner & Block is a national law firm with approximately 470 attorneys and offices in Chicago, Los Angeles, New York, and Washington, DC. Founded in 1914, Jenner & Block's clients range from the top ranks of the Fortune 500, large privately-held corporations and financial services institutions to emerging companies, family-run businesses and individuals. In 2006, *The American Lawyer* selected Jenner & Block as having one of the top five litigation departments in the United States.

---

aspects of litigation strategy or attorney mental impressions that are protected by the attorney-work product doctrine. The privileged material has been manually blacked out. Counsel will, if requested, submit to the Court for *in camera* inspection un-redacted versions of any entries for which CRST seeks payment as to which EEOC objects.

12

This case raised novel and difficult questions requiring the highest level of skill and expertise from retained defense counsel, who would have been in demand by other clients at counsel's normal hourly rates if not working for CRST in the defense of EEOC's claims.  *See Goss*, 2004 U.S. Lexis 10164, at *7; *Johnson v. Ga. Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974).

John H. Mathias, Jr. has been lead counsel in the defense of CRST from the start.  Mr. Mathias is a veteran trial lawyer in both federal and state courts and has led or assisted with many dozens of litigated matters over his 35-year career.  The experience and qualifications of Mr. Mathias and other Jenner attorneys who worked extensively on the case are discussed in Mr. Mathias' Declaration, attached hereto as Attachment 1.

### B.      The Time Expended by CRST's Counsel Was Reasonable.

The hours expended are the result of the complexity of the issues and the extraordinary volume of documents and depositions in the case.  *See Fish*, 295 F.3d at 852 (reasonableness of hours is based on the complexity of the cases, and the level of success); *Hensley*, 461 U.S. at 436.  Over 180 depositions were taken.  More than 35 motions were filed. The Court issued 65 opinions and/or orders addressing the complex issues raised.

CRST's lead counsel worked to minimize the expense incurred by CRST by performing services using lawyers with experience appropriate to the task and also by sharing in the effort for certain tasks with the Simmons Firm, which has lower billing rates.  In accordance with LR 54.1(a), a summary of the total time spent performing each of the following major categories of work follows:

| **Category** | **Hours** |
|---|---|
| 1.   Drafting pleadings, motions and briefs: | 4,532.75 |
| 2.   Legal Research: | 1,471.55 |
| 3.   Investigation: | 7,120.25 |
| 4.   Interviewing: | 1,561.16 |
| 5.   Trial Preparation: | 4,889.15 |
| 6.   Trial | 0 |

In addition to the foregoing summary information, CRST has broken out the work performed in each category by its two law firms in a summary appended hereto as Attachment 4. Each category includes the following activities, among others:

**Category 1     Drafting pleadings, motions and briefs**

Throughout the history of this case, the parties filed over 100 pleadings, motions and/or briefs. The parties also filed numerous motions and briefs raised by discovery issues, such as motions to compel and motions for protective order. CRST filed two important motions to show cause concerning EEOC's litigation tactics -- one concerning the EEOC's identification of "class members" and a second relating to the EEOC's failure to conduct any investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial, let alone issue a reasonable cause determination or conciliate those allegations. CRST also filed extensive pretrial motions, including seven summary judgment motions and two dozen motions *in limine*.

**Category 2     Legal research**

The case required research into complex and novel issues relating to EEOC's pattern and practice allegations, the use of statistical evidence to rebut those claims, EEOC's obligation to investigate, make reasonable cause determinations, and conciliate prior to filing a complaint and

14

the scope of that duty, the relationship between 42 U.S.C. § 706 and § 707 charges, and various evidentiary issues.

### Category 3    Investigation

Investigating the case required counsel for CRST to travel to nine different states. CRST propounded and responded to written discovery, expert discovery, reviewed a large volume of documents on a challenging timeframe, collected and analyzed court records involving class members, and deposed over 160 witnesses in a period of about six months.

### Category 4    Interviewing

CRST interviewed scores of potential witnesses, including accused drivers, third parties who provided rebuttal to the contentions of various claimants, drivers who supported the company's positions regarding its sexual harassment practices and policies, and various other CRST employees.

### Category 5    Trial preparation

CRST's preparation for the trial scheduled in June 2009 included developing trial strategy, filing and responding to dozens of motions *in limine*, identifying over 3,043 trial exhibits and over 400 potential trial witnesses, reviewing and objecting to EEOC's exhibits, preparing comprehensive jury instructions and *voir dire* questions, objecting to EEOC's jury instructions, designating depositions excerpts for use at trial, editing deposition videos for presentation at trial, and conducting a two-day mock jury exercise.

In addition to lead counsel John Mathias, other Jenner & Block and Simmons Firm attorneys, led by Kevin Visser, were actively involved in all five of these areas of the litigation. Simmons Firm attorneys, CRST's long-time Iowa counsel, contributed heavily to each of the tasks described above at local market billing rates. Because of the enormous number of "class

members" identified by EEOC, the short time frame to complete discovery, the need to take and

defend depositions simultaneously (particularly given that EEOC identified the women it would

produce for deposition only five days in advance), the vast undertaking required to prepare for a

jury trial which EEOC contended would involve more than 200 individual claims, and the

extremely high stakes involved, the staffing by Jenner & Block and the Simmons Firm lawyers

was both fair and reasonable.

The number of hours expended by Jenner & Block attorneys and legal assistants, and the

fees claimed, are as follows:

### Summary of Attorneys and Legal Assistants

| Name | Hours | Avg. Rate | Amount Invoiced to CRST | Reductions | Total Amount Claimed |
|------|-------|-----------|-------------------------|------------|----------------------|
| John H. Mathias Partner | 625.25 | 825.00 | 529,043.75 | 49,493.75 | 479,550.00 |
| Daniel R. Murray Partner | 1.00 | 800.00 | 800.00 | 800.00 | 0.00 |
| Robert T. Markowski Partner | 1,591.00 | 666.67 | 1,071,906.25 | 133,212.50 | 938,513.75 |
| Terri L. Mascherin Partner | 39.00 | 675.00 | 26,325.00 | 6,918.75 | 19,406.25 |
| Barry Levenstam Partner | 5.00 | 650.00 | 3,250.00 | .00 | 3,250.00 |
| James T. Malysiak Partner | 1,185.25 | 600.00 | 711,150.00 | 122,550.00 | 588,600.00 |
| Carla J. Rozycki Partner | 181.50 | 525.00 | 94,275.00 | 23,812.50 | 70,462.50 |
| Richard P. Campbell Partner | 618.25 | 535.00 | 324,581.25 | 15,225.00 | 309,356.25 |
| Brian D. Hansen Partner | 133.00 | 525.00 | 69,825.00 | 5,118.75 | 64,706.25 |
| Sarah Hardgrove-Koleno Partner | 674.00 | 525.00 | 353,850.00 | 1,575.00 | 352,275.00 |
| Brent E. Kidwell Partner | .50 | 525.00 | 262.50 | .00 | 262.50 |
| Sally K. Sears Coder Partner | 1,409.25 | 525.00 | 739,856.25 | 92,662.50 | 647,193.75 |

| Name | Hours | Avg. Rate | Amount Invoiced to CRST | Reductions | Total Amount Claimed |
|---|---|---|---|---|---|
| John P. Wolfsmith Partner | 150.50 | 525.00 | 79,012.50 | 3,675.00 | 75,337.50 |
| Emma J. Sullivan Of Counsel | 1,360.50 | 495.00 | 668,272.50 | 12,498.75 | 655,773.75 |
| J. Andrew Hirth Associate | 1,512.75 | 361.67 | 586,637.50 | 23,250.00 | 563,387.50 |
| Spiridoula Mavrothalasitis Associate | 316.25 | 475.00 | 150,218.75 | 5,462.50 | 144,756.25 |
| Melissa M. Hinds Associate | 4.00 | 470.00 | 1,880.00 | .00 | 1,880.00 |
| Suzanne M. Courtheoux Associate | 108.00 | 445.00 | 48,060.00 | 2,892.50 | 45,167.50 |
| Sean C. Herring Associate | 78.00 | 410.00 | 31,980.00 | .00 | 31,980.00 |
| Rayna M. Matczak Associate | 156.25 | 410.00 | 64,062.50 | .00 | 64,062.50 |
| Anne C. Fitzpatrick Associate | 364.25 | 400.00 | 145,700.00 | .00 | 145,700.00 |
| Benjamin J. Wimmer Associate | 267.50 | 362.50 | 98,412.50 | 1,875.00 | 96,537.50 |
| Sapna G. Lalmalani Associate | 807.25 | 337.50 | 281,612.50 | 5,250.00 | 276,362.50 |
| Sofia E. Biller Associate | 10.75 | 325.00 | 3493.750 | .00 | 8,580.00 |
| Anne M. Gardner Associate | 88.50 | 325.00 | 28762.50 | .00 | 28,762.50 |
| Justin A. Maleson Associate | 216.75 | 325.00 | 70,443.75 | .00 | 70,443.75 |
| Sarah R. McNally Associate | 53.75 | 325.00 | 17,468.75 | .00 | 17,468.75 |
| Ashley Schumacher Associate | 734.00 | 325.00 | 238,550.00 | 4,062.50 | 234,487.50 |
| Michele L. Slachetka Associate | 1,028.00 | 325.00 | 334100.00 | 4,062.50 | 330,037.50 |
| Cheryl J. Kras Paralegal | 2,273.50 | 256.67 | 593,746.25 | 30,207.50 | 563,538.75 |
| Legal Assistants | 1961.00 | 151.67 | 324,137.50 | 4,335.00 | 298,202.50 |
| Other Billers (ATG, Library, etc.) | 51.25 | 238.00 | 9,920.00 | .00 | 11,926.25 |
| | 18,005.75 | | $7,624,815 | 548,940 | $7,137,968.75 |

As detailed in the Mathias Declaration, Jenner & Block reduced its invoices in total by over $1 million before sending them to CRST for payment in part because of the special demands of this case and because of the significant financial burden on CRST. (See Attachment 1 ¶ 16.) CRST also provides a summary of the fees billed by each of CRST's law firms during each month of the lawsuit, which is appended hereto as Attachment 5.

### C.   The Fees Charged And Expenses Incurred by CRST's Iowa Counsel Are Reasonable.[5]

Thomas Wolle, then of Moyer & Bergman, had at the outset assisted CRST with the EEOC investigation into what was originally an individual claim of discrimination filed by Monika Starke. Following EEOC's commencement of this "class action" and its immediate press release announcing its filing, and in light of EEOC's virtually unlimited financial and personnel resources, CRST called upon Chicago's Jenner & Block. CRST had previously worked with Jenner & Block, and with attorneys John Mathias and Robert Markowski in particular, on other major complex litigation matters.

Within six weeks after depositions began in the summer of 2008, the scope of the litigation brought by the EEOC expanded five-fold or more, thereby elevating the stakes dramatically and increasing the need for commitment of resources from CRST's Iowa counsel. By mid-October 2008, it had become clear that as many as 250 additional "allegedly aggrieved persons" might need to be deposed by January 15, 2009, the discovery cutoff date. This was confirmed by the Court's order of December 3, 2008, which left approximately 45 days (including major holiday periods) to complete the discovery. This period coincided with the

---

[5] The Affidavit of Kevin Visser verifying each of the facts set out in this section is appended hereto as Attachment 6.

merger of Moyer & Bergman into Simmons Perrine to become Simmons Perrine Moyer & Bergman on January 1, 2009.

Commencing December 1, experienced employment lawyers from the Simmons Firm deposed as many persons as the EEOC made available in places chosen by the EEOC, always with less than ten days' notice. The work typically involved receiving notice of the location of the depositions (pursuant to terms of a stipulated order dated November 26, 2008, and entered December 3, 2009 (Doc. No. 80)), with the names of deponents seven days in advance of the deposition; the receipt of pages (often thousands) pertaining to each of the five to six persons to be deposed per lawyer, usually on the Monday, Tuesday, or Wednesday preceding the depositions; and driving or flying to the place of the depositions on Wednesday, returning Friday; summarizing the testimony for purposes of those drafting the dispositive motions in this matter; and recommencing the process anew.

Beginning in the summer of 2008, it became necessary for Iowa counsel to be included closely with Chicago counsel in a coordinated and efficient defense effort. As discovery closed, Iowa counsel, who took individual claimants' depositions, contributed to the moving papers supporting CRST's multiple motions for summary judgment. Kevin Visser of the Simmons Firm had responsibility for assuring compliance by all counsel with local rules, practice, and custom in the preparation not only of the dispositive motions and briefing, but also trial and Final Pretrial Order preparation.

The Simmons Firm, and its predecessor, has served the varied legal interests of CRST from the time of its corporate formation some fifty years ago. Their knowledge of CRST's business enabled a more efficient rendition of services by all counsel.

19

Iris Muchmore and Kevin Visser are experienced trial attorneys who have collectively participated in over 200 federal litigation actions, almost always as lead counsel and frequently involving employment issues.  In addition, the remainder of the Simmons Firm team provided valuable experience and expertise to the litigation:  Thomas Wolle and Allison Heffern are experienced civil trial lawyers; Brian Fagan and Dawn Gibson are former federal law clerks; and Marcia Harris is a 15-year lawyer recruited on a project basis.

The hours spent by individual lawyers and legal assistants at the Simmons Firm in assisting Jenner & Block with its representation of CRST, and the customary rates, are as follows:

| ATTORNEY/LEGAL ASSISTANT | HOURS BILLED | HOURS CLAIMED | LODESTAR RATE | LODESTAR FEE |
|---|---|---|---|---|
| Kevin Visser | 1137.65 | 1106.75 | $295 | $326,491.25 |
| Thomas Wolle | 426.45 | 419.5 | $200 | $83,900 |
| Allison Heffern | 187.7 | 187.7 | $200 | $57,540 |
| Iris Muchmore | 161.8 | 161.8 | $240 | $38,832 |
| Dawn Gibson | 165.95 | 164.95 | $175 | $29,041.25 |
| Kelly Geerlings* | 149.6 | 149.6 | $110 | $16,456 |
| Marcia Harris | 118.6 | 118.6 | $165 | $19,569 |
| Brian Fagan | 112.8 | 112.8 | $185 | $20,868 |
| Deb Foege* | 39.7 | 39.7 | $95 | $37,715 |
| Robert Hatala | 5.9 | 5.9 | $200 | $1,180 |
| Webb Wassmer | .2 | .2 | $200 | $40 |
| Eric Lam | 1.31 | 1.31 | $200 | $262 |
| * denotes legal assistant | | | | |
| | | | | $611,894.50 |
| Less discount allowed to CRST | | | | ($61,189.45) |
| Adjustment to conform to rates invoiced in earlier years | | | | ($38,876.53) |
| **Total** | | | | $511,828.52 |

Due to the long relationship between CRST and the Simmons Firm, CRST is provided a discount of 10 percent on all legal services.  CRST seeks only the amount actually billed and paid.  CRST respectfully requests that it be awarded the sum of $511,828.52 for the fees of its Iowa counsel.

IV. **CRST'S EXPENSES, INCLUDING ITS EXPERT WITNESS EXPENSES, ARE RECOVERABLE AND REASONABLE.**

This Court held in *Goss*, 2004 U.S. Lexis 10164, at \*16-17, that reasonable out-of-pocket expenses incurred by an attorney which normally would be charged to a fee-paying client are includable in a statutory award of fees. *See also Pinham v. Camex, Inc.,* 84 F.3d 292, 294-95 (8th Cir. 1996). Each of the following expenses were charged to and paid by CRST. A summary of the costs that CRST seeks to recover is contained in Attachment 7 hereto. CRST further provides the back up for this summary as Attachments 7A to 7I.

A. **Long Distance Telephone Expenses.**

CRST incurred $176.17 in long distance telephone expenses. These expenses are direct costs, with no mark-up. Back-up for the long distance telephone expenses are found in Attachment 7A.

B. **Messenger and Overnight Express.**

CRST incurred $5,127.86 in messenger and overnight delivery expenses. These expenses are direct costs, with no mark-up. The back-up for messenger and overnight delivery expenses are found in Attachment 7B.

C. **Fees for Investigators.**

CRST is entitled to recovery for the fees expended in employing investigators necessary to the litigation in order to locate and interview witnesses. *See, e.g., Knutson v. Ag Processing, Inc.*, 273 F. Supp. 2d 961, 1021-22 (N.D. Iowa 2003) (investigator used by prevailing plaintiff's counsel in employment discrimination case to perform such tasks as interviewing witnesses, performing witness preparation, preparing documents, and assisting with trial preparation was reasonable and thus compensable cost), *rev. on other grounds*, 394 F.3d 1047 (8th Cir. 2005); *Kelley v. City of Albuquerque*, No. 03-507 JBACT, 2005 WL 3663515, at \*17 (D.N.M. Oct. 24,

2005) (same) (collecting cases); *Vitullo v. Borough of Yeadon*, No. 04-3929, 2006 WL 1789031, at \*6 (E.D. Pa. June 21, 2006) (equating private investigator's work to the work of experts). CRST has been billed $103,523.07 for private investigation work. CRST is disputing that amount, and believes that it should have been invoiced no more than $62,183.67. The dispute has not yet been resolved. Nonetheless, CRST has remitted a $12,500 retainer to the investigator, which the investigator will apply to his invoices. The back-up is found in Attachment 7C.

### D.      Expert Witness Fees

This case required a substantial use of expert witnesses. As detailed below, CRST retained two expert witnesses. This work was directed primarily at EEOC's pattern and practice claim. Such expert fees have been held recoverable. *See, e.g., Uniroyal v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) (affirming award of expert witnesses fees in RICO case on the ground that statutes allowing an award of a reasonable attorney's fee include the costs of expert witnesses). The invoices from each of CRST's two expert firms are found in Attachment 7D. These invoices describe the specific tasks performed by each person at the expert firms. In total, CRST seeks $242,212.22 in expert witness fees.

CRST retained expert Dr. Jone McFadden Papinchock, who has a Ph.D. in Industrial and Organizational Psychology. The fees CRST incurred in connection with Dr. Papinchock's work totaled $104,866.66. Dr. Papinchock's work includes research and analysis of the HR literature on sexual harassment and comparison of the literature to the policies, practices and procedures at CRST, consultation with CRST's counsel, preparation of an expert report pursuant to Rule 26(a)(2)(B), and deposition testimony.

CRST also retained Dr. Mary Dunn Baker, who has a Ph.D. in Economics and is a Director at ERS Group. The fees CRST incurred in connection with Dr. Baker's work totaled

$137,345.56.  Dr. Baker submitted an initial report dated December 1, 2008, and supplemental reports dated January 7, 2009, and February 5, 2009.  Dr. Baker's initial report included a statistical analysis of the gender composition of CRST's truck driver workforce comparing the number of women employed by CRST to the relevant external labor market.  Dr. Baker also prepared statistics to describe the incidence of allegations of sexual harassment at CRST to measure the amount of time women in general, and class members specifically, drove with the men who are accused of sexual harassment.  Her final supplemental report contained statistics to describe the incidence of allegations of sexual harassment at CRST that is limited to the 153 class members whose depositions were taken prior to January 15, 2009.  Dr. Baker also gave deposition testimony.

### E.    Mock Jury.

A prevailing party may recover expenses incurred in trial preparation exercises that are reasonably necessary to successful litigation.  *See e.g., Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *9 (6th Cir. Jan. 31, 2000) (affirming trial court award of expenses associated with mock trial); *see also, e.g., Turner v. Mukasey*, No. 01-CV-1407 (JMR/AJB), 2008 WL 62261, at *6 (D. Minn. Jan. 3, 2008) ("Moot courts and presentation of cases to test juries has become a relatively common litigation practice having usefulness in preparing for trial and in determining settlement posture.  These objectives have significant value to the court and to litigants.").

CRST seeks fees for the $74,640.23 expended on a mock jury exercise that was reasonably necessary to address the complex and complicated issues, significant strategic decisions, novel issues, and sheer volume of claims involved in this case, including the potential for a jury to hear arguments regarding claims of over 156 women, testimony of up to 405

witnesses, and presentation of up to 3,043 exhibits. *See Majestic Box Co. v. Reliance Ins. Co. of Ill.,* No. 96-8118, 1998 WL 720463, at *5 (E.D. Pa. Sept. 2, 1998) (complicated nature of defense justified use of mock trial); *see also Vitullo v. Borough of Yeadon*, 2006 WL 1789031, at *4 (courts must look to the nature and complexity of the case to determine if employment of a litigation focus group was reasonable).

CRST held its mock trial exercise in April 2009, before the Court ruled on its pending summary judgment motions and just four weeks before pretrial submissions were due. Although this litigation ultimately did not continue to trial, expenses related to this exercise were reasonably necessary to guide strategic decisions leading to the upcoming trial. The exercise provided significant value to CRST's litigation strategy, including its drafting of the Pretrial Order, witness and exhibit lists, and motions *in limine*. Back-up invoices for the billing of these expenses are found in Attachment 7E.

### F. Computer Legal Research.

CRST incurred $70,780.61 in computerized legal research expenses throughout this litigation. (See Attachment 7F.) These expenses were passed on to CRST as a pro rata share of a fixed monthly fee that is 65-85% lower than the normal retail rate for such computerized research. We recognize that in *Goss*, 2004 U.S. Lexis 10164, this Court cited *Standley v. Chilhowee R-IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir. 1993), and denied the prevailing party recovery for costs and fees associated with online legal research. CRST wishes to preserve the issue because it is the practice of all other Circuit courts to award recovery of such expenses.

### G. Postage

CRST incurred $49.84 for postage. The back-up documents are found in Attachment 7G.

### H.    Travel and Related Expenses

CRST incurred travel expenses for attorneys to travel from Chicago to Cedar Rapids to attend court, to attend depositions, and to review documents.  CRST also incurred travel expenses for its officers and employees to travel to Chicago where they were deposed by EEOC, and for its counsel to travel to out-of-state depositions.  Travel expenses include meals while out of the office.  CRST incurred $34,914.06 in such expenses. Back-up for these expenses is found in Attachment 7H.

### I.    Demonstratives for Trial

In preparation for the trial scheduled to commence in June 2009, CRST employed TrialGraphix to begin preparation of trial exhibits.  CRST incurred $78,023.24 in connection with trial exhibits.  The back-up is found in Attachment 7I.

### J.    Fees Incurred in Preparation of Fee Application

It is well established that a prevailing party is entitled to compensation for fees rendered in preparing and litigating the fee petition.  *See e.g., Jones v. MacMillan Bloedel Containers, Inc.,* 685 F.2d 236, 239 (8th Cir. 1982) ("[i]t would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee")*; see also, e.g., Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) (reversing district court denial of Title VII prevailing party's attorneys' fees for time incurred litigating fee petition); *Schwarz v. Secretary of Health & Human Servs*., 73 F.3d 895, 909 (9th Cir. 1995) (awarding attorneys' fees for fee petition to prevailing plaintiff); *Nanetti v. Univ. of Ill. at Chi.*, 944 F.2d 1416, 1420 (7th Cir. 1991) (same).   Under *Jones* and the other foregoing authority, CRST is entitled to recover compensation for fees incurred with its counsel's preparation of this fee application.

25

CRST will submit a supplemental filing detailing the total fees incurred with preparation of this petition once briefing is concluded.

## <u>CONCLUSION</u>

For all of the foregoing reasons, CRST respectfully requests that this Court enter an order awarding CRST (1) its attorneys' fees in the amount of $7,633,397.77 (plus an amount to be submitted separately for work on CRST's fee application), and (2) its expenses in the amount of $569,564.64.

Dated: October 30, 2009

Respectfully submitted,
**CRST VAN EXPEDITED, INC.**

By:   <u>s/John H. Mathias, Jr.</u>
      One of its attorneys

Kevin J. Visser                                John H. Mathias, Jr.
Thomas D. Wolle                                Robert T. Markowski
Simmons, Perrine, Moyer &                      Sally K. Sears Coder
   Bergman, P.L.C.                             Jenner & Block LLP
115 Third Street SE, Suite 1200                353 N. Clark Street
Cedar Rapids, IA 52401                         Chicago, Il 60654
319 366-7331                                   312 222-9350

*Counsel for Defendant*