# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

and

JANET BOOT, BARBARA GRANT,
CINDY MOFFETT, REMCEY
JEUNENNE PEEPLES, MONIKA
STARKE, LATESHA THOMAS and
NICOLE ANN CINQUEMANO

        Plaintiffs-Interveners,

vs.

CRST VAN EXPEDITED, INC.,

        Defendant

No. 07-CV-95-LRR

**ORDER**

---

## TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . *2*

     A.    *Underlying Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
     B.    *Fees and Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

III.  **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . *5*

IV.  **COSTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

     A.    *Legal Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
     B.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
          1.   *Stenographic vs. videotaped depositions* . . . . . . . . . . . . . . . *8*
          2.   *Necessity of the videotaped depositions* . . . . . . . . . . . . . *11*

V.    **ATTORNEYS' FEES & EXPENSES** . . . . . . . . . . . . . . . . . . . . . *12*

| | | |
|---|---|---|
| **A.** | ***Attorneys' Fees*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** |
| | *1.* | *Legal background: fees in Title VII cases* . . . . . . . . . . . . | *12* |
| | *2.* | *Attorneys' fees are warranted* . . . . . . . . . . . . . . . . . | *13* |
| | *3.* | *Legal background: amount of attorneys' fee award* . . . . . . . | *16* |
| | *4.* | *Lodestar* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *19* |
| | | *a.* | *Reasonable hourly rate* . . . . . . . . . . . . . . . | *19* |
| | | *b.* | *Reasonable hours spent* . . . . . . . . . . . . . . . | *24* |
| | | *c.* | *Lodestar amounts* . . . . . . . . . . . . . . . . . . | *26* |
| | *5.* | *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *29* |
| **B.** | ***Reasonable Out-of-Pocket Expenses*** . . . . . . . . . . . . . . . . . . | **30** |
| | *1.* | *Long distance telephone expenses* . . . . . . . . . . . . . . . | *31* |
| | *2.* | *Messenger and overnight express* . . . . . . . . . . . . . . . | *31* |
| | *3.* | *Investigator fees* . . . . . . . . . . . . . . . . . . . . . . . | *31* |
| | *4.* | *Expert witness fees* . . . . . . . . . . . . . . . . . . . . . . | *33* |
| | *5.* | *Mock jury fees* . . . . . . . . . . . . . . . . . . . . . . . . . | *33* |
| | *6.* | *Computer legal research* . . . . . . . . . . . . . . . . . . . . | *34* |
| | *7.* | *Postage* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *35* |
| | *8.* | *Travel and related expenses* . . . . . . . . . . . . . . . . . . | *35* |
| | *9.* | *Demonstratives exhibits for trial* . . . . . . . . . . . . . . . | *35* |
| | *10.* | *Videotaped depositions* . . . . . . . . . . . . . . . . . . . . | *36* |
| | *11.* | *Additional video-related expenses* . . . . . . . . . . . . . . . | *37* |
| | *12.* | *Exemplification and copies of papers* . . . . . . . . . . . . . | *37* |
| | *13.* | *Fees for preparation of fee application* . . . . . . . . . . . . | *38* |
| | *14.* | *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *38* |
| **VI.** | ***CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ***38*** |

## I. INTRODUCTION

The matters before the court are the "Motion for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 2000e-5(k)" ("Fees Motion") (docket no. 282) and the "Motion for Review of the Clerk's Taxation of Costs" ("Costs Motion") (docket no. 306) filed by Defendant CRST Van Expedited, Inc. ("CRST").

## II. RELEVANT PRIOR PROCEEDINGS

### A. Underlying Action

The Equal Employment Opportunity Commission ("EEOC") brought this case in its own name pursuant to Section 706, 42 U.S.C. § 2000e-5, of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII").  The EEOC filed suit on behalf of approximately 270 allegedly aggrieved women that it contended CRST subjected to sex discrimination in violation of Title VII.  Ultimately, the EEOC made approximately 150 of the 270 allegedly aggrieved women available for deposition.  Because the EEOC did not make the remaining women available to CRST for deposition, the court held that the EEOC could not seek relief for them.

In its complaint, the EEOC pled a violation of § 706.  The EEOC did not plead a violation of § 707—the traditional vehicle used to assert a "pattern or practice" claim.  As this case progressed, however, it became clear that the EEOC was asserting a "pattern or practice claim" against CRST.  On April 30, 2009, the court entered an Order ("Pattern or Practice Order") (docket no. 197) in which it assumed that either: "(1) § 706 permit[ted] the EEOC to pursue a pattern or practice claim . . . or (2) the EEOC ha[d] constructively amended its complaint to assert a § 707 claim against CRST in this lawsuit in addition to its § 706 claim."  Pattern or Practice Order at 26.  With this assumption in mind, the court dismissed the EEOC's purported pattern or practice claim against CRST. *See* Pattern or Practice Order at 67 ("To the extent that the EEOC asserts a 'pattern or practice claim' in this litigation against CRST, such claim is DISMISSED WITH PREJUDICE.").

In rulings on a series of summary judgment motions, the court considered the merits of most of the approximately 150 allegedly aggrieved persons' allegations.  Ultimately, the court held that CRST could not be held liable for the allegations of the majority of these women and barred the EEOC from seeking relief on their behalf at trial.  *See* Orders at docket nos. 197, 223, 225, 251, 256 and 258.  The court's disposition of these summary judgment motions left 67 allegedly aggrieved persons remaining in the EEOC's action.

On August 13, 2009, the court entered an Order ("Order on Motion to Show Cause") (docket no. 263) in which it dismissed the EEOC's Complaint because "the EEOC

wholly abandoned its statutory duties as to the remaining 67 allegedly aggrieved persons in this case." Order on Motion to Show Cause at 31. Specifically, the court found that "the EEOC did not conduct *any* investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial before filing the Complaint—let alone issue a reasonable cause determination as to those allegations or conciliate them." *Id.* (emphasis in original). The court concluded that "[t]he EEOC's failure to investigate the claims of the 67 allegedly aggrieved persons deprived CRST of a meaningful opportunity to engage in conciliation and foreclosed any possibility that the parties might settle all or some of this dispute without the expense of a federal lawsuit." *Id.* at 36. Consequently, the court barred the EEOC from seeking relief on behalf of the 67 allegedly aggrieved persons. In the Order, the court noted that CRST was a "prevailing party" and stated that "CRST may file an application for attorneys' fees from the EEOC[.]" *Id.* at 40. On October 1, 2009, the Clerk of Court entered Judgment (docket no. 279) in favor of CRST.

## B. Fees and Costs

On October 16, 2009, CRST filed a Bill of Costs (docket no. 280). In its Bill of Costs, CRST sought $355,142.22 in costs incurred in this lawsuit. This amount included fees of the Clerk of Court, court reporter fees, witness fees and exemplification and copy fees. On October 30, 2009, CRST filed the Fees Motion. In the Fees Motion, CRST requested $7,633,397.77 in attorneys' fees and $569,564.64 in expenses that are not recoverable as "costs" under 28 U.S.C. § 1920.

On November 4, 2009, the EEOC filed a "Resistance to Defendant CRST's Bill of Costs" ("Bill of Costs Resistance") (docket no. 286).[1] On November 13, 2009, CRST filed a "Reply to EEOC's Resistance to Defendant CRST's Bill of Costs" ("Bill of Costs

---

[1] The EEOC originally filed a Resistance to CRST's Bill of Costs on November 2, 2009 (docket no. 285). However, at the request of CRST's counsel, the EEOC filed an amended version to make a minor clarification.

Reply") (docket no. 294).

On November 16, 2009, the EEOC filed a Resistance to the Fees Motion ("Fees Resistance") (docket no. 295). On November 30, 2009, CRST filed a Reply in support of the Fees Motion ("Fees Reply") (docket no. 300). In the Fees Reply, CRST also slightly reduced the amount it seeks in attorneys' fees from $7,633,397.77 to $7,624,546.47.

On December 1, 2009, the Clerk of Court ("Clerk") entered a "Taxation of Costs" (docket no. 303). The Clerk taxed costs in CRST's favor in the amount of $92,842.21. The Clerk denied $262,300.01 of CRST's claimed costs.

On December 8, 2009, CRST filed the Costs Motion. In the Costs Motion, CRST seeks $70,855.52 in costs for videotaping depositions, which the Clerk denied in the Taxation of Costs. On December 14, 2009, the EEOC filed a Resistance to the Costs Motion ("Costs Resistance") (docket no. 310). On December 18, 2009, CRST filed a Reply in support of the Costs Motion ("Costs Reply") (docket no. 312).

On December 22, 2009, CRST filed a "Supplemental Statement in Support of its Motion for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 2000e-5(k)" ("Fees Supplement") (docket no. 315). In the Fees Supplement, CRST seeks to recover as part of its attorneys' fee award the remainder of its claimed expenses that the Clerk denied in the Taxation of Costs, in the amount of $176,444.79. CRST also seeks to recover $70,855.52 for videotaping depositions as part of the fee award, if the court declines to award this amount as a cost pursuant to the Costs Motion. In sum, CRST seeks $7,624,546.47 in attorneys' fees and $816,864.95 in expenses.

### III.  SUBJECT MATTER JURISDICTION

On November 30, 2009, the EEOC filed a Notice of Appeal ("Notice") (docket no. 298). The Notice "divests [the court] of jurisdiction over aspects of the case that are the subject of the appeal." *United States v. Queen*, 433 F.3d 1076, 1077 (8th Cir. 2007) (per

curiam).  The amount of attorneys' fees and costs to award Plaintiffs is not a subject of the Notice.  Accordingly, the court finds it has subject matter jurisdiction over the Motions. *See, e.g., Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259, 1260-61 (7th Cir. 1994) (Easterbrook, J.) ("[C]osts are appealable separately from the merits; a district court may award costs even while the substantive appeal is pending."); *Rothenberg v. Sec. Mgmt. Co.*, 677 F.2d 64, 64 (11th Cir. 1982) (same).

## IV. COSTS

On October 16, 2009, CRST filed a Bill of Costs in which it sought $355,142.22 in costs.  On December 1, 2009, the Clerk taxed costs against the EEOC and in favor of CRST's in the total amount of $92,842.21.  The Clerk refused to tax costs in CRST's favor for its attorneys' pro hac vice fees, the costs related to videotaped depositions and fees for printing and/or copying.

### A.  Legal Background

In deciding an issue relating to costs, the court must consult both Federal Rule of Civil Procedure 54(d), which gives the court the power to tax "costs" to a prevailing party and 28 U.S.C. § 1920, which defines "costs." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 440 (1987).  Federal Rule of Civil Procedure 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54 represents a codification of the presumption that the prevailing party is entitled to costs." *Martin v. Daimler Chrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001) (quotations omitted); *see also Ex Parte Petersen,* 253 U.S. 300, 315-17 (1920) (discussing common law of costs).  In other words, "[t]he losing party bears the burden of overcoming the presumption that the prevailing party is entitled to costs[.]" *168th & Dodge, L.P. v. Rave Reviews Cinemas, L.L.C.,* 501 F.3d 945, 958 (8th Cir. 2007).  Despite the presumption, exactly which costs will be awarded is a matter left to the discretion of the

district court.  *Poe v. John Deere Co.*, 695 F.2d 1103, 1108-09 (8th Cir. 1982).
However, "the district court must provide a rationale for denying the prevailing party's
claim for costs." *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006).

Title 28, United States Code, Section 1920 expressly identifies the expenses a court
may tax as costs against a losing party.  *Crawford Fitting*, 482 U.S. at 440.  In relevant
part, the statute provides:

> A judge . . . of any court of the United States may tax as costs
> the following:
>
> (1)  Fees of the clerk and marshal;
>
> (2)  Fees for printed or electronically recorded transcripts
>       necessarily obtained for use in the case;
>
> (3)  Fees and disbursements for printing and witnesses;
>
> (4)  Fees for exemplification and the costs of making copies
>       of any materials where the copies are necessarily
>       obtained for use in the case;
>
> (5)  Docket fees under [§] 1923 of this title;
>
> (6)  Compensation of court appointed experts[.]

28 U.S.C. § 1920.  "[T]he Supreme Court has held that '*absent explicit statutory* or
contractual *authorization* for the taxation of the expenses of a litigant's witness as costs,
federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.'"
*Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1031 (8th Cir. 2003) (quoting *Crawford
Fitting*, 482 U.S. at 445) (emphasis in *Neosho*).

### B. Analysis

In the Costs Motion, CRST asks the court to review only the Clerk's decision to
deny CRST "$70,855.52 in costs for videotaped depositions necessarily obtained for use

7

in this litigation."[2]   CRST Brief in Support of Costs Motion ("Costs Motion Brief") (docket no. 306-1), at 1.  The EEOC resists the Costs Motion in its entirety and asks the court to "affirm the Order of the Clerk of Court."   Costs Resistance at 1.  All of the depositions taken by CRST in this case were videotaped and stenographically transcribed. The Clerk taxed costs for reporting services and transcripts but concluded, in part based on this court's decision in *Rakes v. Life Investors Ins. Co. of Am.*, No. 06-CV-99-LRR, 2008 WL 4852932 (N.D. Iowa Nov. 7, 2008) (Reade, C.J.) *abrogated in part on other grounds by Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894 (8th Cir. 2009), that the costs associated with the videotaping of depositions were "not allowed as ordinary expenses."  Taxation of Costs at 2.

The EEOC argues that a "prevailing party may claim costs for stenographic deposition transcripts or videotaped depositions, but not both."  Costs Resistance at 3.  The EEOC also asserts that the videotaped depositions were not "necessary to preserve the testimony of unavailable witnesses or for any reason other than the preference of [CRST's] counsel."   *Id.* at 4.  CRST argues that costs for both stenographic transcripts and videotapes of the depositions are recoverable under 28 U.S.C. § 1920.  CRST also contends that the videotaped depositions were necessary in this case.

The court shall first consider whether, under the facts of this case, costs are recoverable for both stenographic transcripts and videotaped depositions.  Then, the court shall consider whether videotaped depositions were necessarily obtained for use in this case.

### 1.    *Stenographic vs. videotaped depositions*

In *Rakes*, this court allowed costs for stenographic deposition transcripts but declined to allow costs for video recording the same depositions.  2008 WL 4852932, at

---

[2]   As previously noted, CRST seeks the remainder of the unawarded costs as expenses in the Fees Motion.

*7.   In doing so, this court noted that the depositions were taken in "phase I of the discovery process where the issue was class certification and not the merits of the cause of action and thus the court [was] not convinced [the] depositions would have had use at trial." *Id.*   The court concluded that the "video record duplicates the stenographic record and it would not be fair to tax the costs for both, especially because there [was] no showing that any of the witnesses deposed were likely unavailable for hearing/trial or that videotaping the witnesses was the most economical way for the witness to testify." *Id.*

Subsequent to *Rakes*, the Eighth Circuit Court of Appeals held that "video depositions are included [as taxable costs] under § 1920." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009).   In *Craftsmen*, the Eighth Circuit Court of Appeals noted that § 1920 did not "specifically authorize video-deposition costs," but reasoned that such costs are taxable because the Federal Rules of Civil Procedure "authorize[] video depositions as an alternative to traditional stenographic depositions, which § 1920 does authorize." *Id.* at 897.   However, *Craftsmen* did not address the issue presented here, that is, whether costs may be taxed for *both* stenographic and video depositions.

Complicating matters further, Congress amended the language of § 1920(2) in 2008. In both *Rakes* and *Craftsmen*, the prior version of the statute was at issue, which provided that the court may tax as costs the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case[.]"  28 U.S.C. § 1920(2) (1978).   The current version, in contrast, specifically refers to video transcripts and states that the court may tax as costs the "[f]ees for *printed or electronically recorded transcripts* necessarily obtained for use in the case[.]"  28 U.S.C. § 1920(2) (emphasis added).

The EEOC argues that the "plain language" of the amended § 1920(2) provides that CRST cannot recover costs for both video transcripts and stenographic transcripts because the statute describes the recoverable item as "printed *or* electronically recorded

transcripts[.]" *Id.* In response, CRST relies on *Craftsmen* for the general proposition that video recording fees are recoverable costs.[3] CRST argues that § 1920, as amended, does not preclude recovery for both costs, and asserts that the following district court decisions support an award of both costs: *Avante Int'l Tech. Corp. v. Premier Election Solutions, Inc.*, No. 4:06cv0978 TCM, 2009 WL 3259613, at *3 (E.D. Mo. Oct. 7, 2009) (allowing costs for both transcripts and video depositions); *Advanced Software Design Corp. v. Firserv, Inc.*, No. 4:07CV185 CDP, 2009 WL 3429584, at *1 (E.D. Mo. Oct. 23, 2009) (same). The court disagrees. In both *Avante* and *Advanced Software*, the district court applied the *prior* version of § 1920(2). *Avante*, 2009 WL 3259613, at *3; *Advanced Software*, 2009 WL 3429584, at *1. Neither case mentions or discusses the 2008 amendment to the statute.

The court declines to award CRST the costs for videotaped depositions in addition to the costs for stenographic transcripts. The amended version of § 1920(2) permits costs for "[f]ees for printed *or* electronically recorded transcripts necessarily obtained for use in the case[.]"  28 U.S.C. § 1920(2) (emphasis added).  In light of the use of the disjunctive in the amended language, the court determines that costs are taxable for either

---

[3] CRST also notes that, in reaching its decision in *Craftsmen*, the Eighth Circuit Court of Appeals cited decisions of three Circuit Courts of Appeals that permitted recovery for both stenographic transcripts and video costs. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701-02 (7th Cir. 2008) (allowing costs for both transcription and videotaping of same depositions); *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1478 (10th Cir. 1997) (holding that district court did not abuse its discretion in taxing costs of both transcription and videotaping of seven depositions); *see also Morrison v. Reichhold Chem. Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996) (holding that "when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party . . . it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed"). The current version of § 1920 was not before the Courts of Appeals in these decisions and the issue presented here was not before the Eighth Circuit Court of Appeals in *Craftsmen*.

stenographic transcription *or* videotaped depositions—not both. *See United States v. Smith*, 35 F.3d 344, 346 (8th Cir. 1994) ("The ordinary usage of the word 'or' is disjunctive, indicating an alternative. Construing the word 'or' to mean 'and' is conjunctive, and is clearly in contravention of its ordinary usage."); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (stating that, in construing a statute, courts are obliged to give effect, if possible, to every word Congress used, including "or"). It would be contrary to the plain language of § 1920 to allow CRST to recover costs for both stenographic transcripts and video costs for the same depositions. Accordingly, the court shall deny the Costs Motion.

### 2. *Necessity of the videotaped depositions*

Even if the court found that costs were taxable for both stenographic transcripts and video recordings, the court would not allow costs for video depositions because they were not "necessarily obtained for use in this case." 28 U.S.C. § 1920(2). CRST argues that the video depositions were "necessarily obtained for use at trial due to the large number of allegedly aggrieved individuals, whom CRST might have called adversely by presenting their videotaped testimony or impeached at trial with their videotapes." Bill of Costs Reply at 6. However, as the EEOC observes, "CRST has not identified a single EEOC class member who indicated that she would be unable to travel to, or testify at the scheduled trial in Cedar Rapids, Iowa." Costs Resistance at 4. CRST fails to rebut this claim. CRST argues that the video recordings would be more convenient and better show the deponent's credibility and demeanor. On these facts, the court concludes that the video recordings of the depositions were not necessary in this case. CRST has not offered any persuasive explanation as to why the stenographic transcripts would be insufficient for the purposes it identifies, much less why *both* stenographic transcripts *and* video recordings of the depositions might be needed. Accordingly, the court shall deny the Costs Motion.

11

## V.  ATTORNEYS' FEES & EXPENSES

### A.  Attorneys' Fees

CRST seeks $7,624,546.47 in attorneys' fees.  The court first considers whether an award of attorneys' fees is warranted.  Then, the court shall consider the amount of any award.

### 1.      Legal background: fees in Title VII cases

Title VII provides that:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).  The court previously found that CRST is a "prevailing party" as to the EEOC.  Order on Motion to Show Cause at 40.  Accordingly, Title VII provides that the court may award CRST a "reasonable attorney's fee." *Id.*

In interpreting this provision, "the Supreme Court has distinguished between prevailing Title VII plaintiffs and prevailing Title VII defendants." *Marquart v. Lodge 837, Int'l Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842, 848 (8th Cir. 1994). A district court may award attorneys' fees to a prevailing plaintiff "'in all but very unusual circumstances[.]'" *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)).  However, an award of attorneys' fees to a prevailing defendant is appropriate in much more limited circumstances.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court outlined the principles that guide a district court's discretion when it decides whether to grant attorneys' fees to a prevailing defendant in a Title VII case.  The Court explained:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without

12

foundation, even though not brought in subjective bad faith.

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his [or her] action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Id.* at 421-22. The Eighth Circuit Court of Appeals has explained that this standard is designed "[t]o discourage the litigation of frivolous, unreasonable, groundless, or vexatious claims, but without discouraging the rigorous enforcement of federal rights under Title VII." *Marquart*, 26 F.3d at 849.

### 2.     *Attorneys' fees are warranted*

CRST contends that it is entitled to an award of attorneys' fees because the EEOC "engaged in an unreasonable and vexatious course of proceeding, heedless of the fundamental principles of Title VII." CRST's Petition in Support of the Motion ("CRST Fees Brief") (docket no. 282-22), at 5. Specifically, CRST argues that the EEOC's failure to investigate, make a reasonable cause determination and attempt to conciliate the specific allegations of the 67 allegedly aggrieved persons prior to filing the Complaint was unreasonable and vexatious.

The EEOC first argues that it "had a strong basis for alleging class-wide sex harassment was occurring at CRST." Fees Resistance at 3. The EEOC points out that several claims survived motions for summary judgment and that the court acknowledged in its Order that "dozens of potentially meritorious sexual harassment claims may now never see the inside of a courtroom" due to the EEOC's failure to investigate and conciliate those claims. *Id.* at 4-5 (citing Order at 38). The EEOC also asserts that "[t]he theory upon which the [c]ourt dismissed [the] EEOC's [C]omplaint is one that had never been used by any court contemplating an EEOC sex harassment case brought on behalf of

a group of women." *Id.* at 5.  Thus, the EEOC contends that it had "no reason to anticipate dismissal on the basis of a flawed conciliation." *Id.*

The court finds that an award of fees is warranted in this case under the *Christiansburg* standard.  The EEOC's failure to investigate and attempt to conciliate the individual claims constituted an unreasonable failure to satisfy Title VII's prerequisites to suit.  As the court observed in its Order on Motion to Show Cause:

- The EEOC did not investigate the specific allegations of any of the 67 allegedly aggrieved persons until after the Complaint was filed.  For example, the EEOC did not interview any witnesses or subpoena any documents to determine whether any of their allegations were true.

- The EEOC did not identify any of the 67 allegedly aggrieved persons as members of the Letter of Determination's "class" until after it filed the Complaint.  Indeed, prior to filing the Complaint, CRST enquired as to the size of the "class" and the EEOC responded that it did not know.

- The EEOC did not make a reasonable cause determination as to the specific allegations of any of the 67 allegedly aggrieved persons prior to filing Complaint.  Indeed, at the time the EEOC issued the Letter of Determination on July 12, 2007, 27 of the remaining 67 allegedly aggrieved persons *had not yet been sexually harassed*.  Indeed, most of these 27 women alleged they were sexually harassed *after the instant lawsuit was filed*.  Although 38 of the remaining 40 allegedly aggrieved persons allege they were sexually harassed before the EEOC issued the Letter of Determination on July 12, 2007, the EEOC admits that it was not even aware of their allegations until after the filing of the Complaint.  The EEOC used discovery in the instant lawsuit to find them.

- The EEOC did not attempt to conciliate the specific

14

> allegations of the allegedly aggrieved persons prior to
> filing the Complaint.

Order on Motion to Show Cause at 31-32. The court relies on these findings to conclude that the EEOC's failure to comply with Title VII's jurisdictional conditions precedent—investigation, reasonable cause determination and conciliation—made this lawsuit unreasonable.

The EEOC contends that this action was not unreasonable because the court's dismissal on such grounds was unexpected. This argument is faulty for at least two reasons. First, as outlined in the court's Order on Motion to Show Cause, the EEOC's duties prior to seeking relief on behalf of allegedly aggrieved persons in a § 706 lawsuit are well-established. *See Id.* at 25-26 (discussing procedure of § 706 lawsuits as outlined in *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359-360 (1977)). Several courts, when faced with analogous facts, have "resisted the EEOC's attempts to perfect an end-run around Title VII's statutory prerequisites to suit." *Id.* at 32 (citing *EEOC v. Target Corp.*, No. 02-C-146, 2007 WL 1461298 (E.D. Wis. May 16, 2007); *EEOC v. Outback Steakhouse of Fla., Inc.*, 520 F. Supp. 2d 1250, 1263-68 (D. Colo. 2007); *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 982-83 (S.D. Ind. 2003); *EEOC v. E. Hills Ford Sales, Inc.*, 445 F. Supp. 985, 987-89 (W.D. Pa. 1978)). Second, the fact that relatively few courts have relied on such grounds to dismiss suits brought by the EEOC does not excuse the EEOC's tactics in the instant action or somehow make its lawsuit reasonable.

The EEOC's focus on the potential merit of the claims of several allegedly aggrieved women is a red herring. The court did not dismiss the Complaint because the remaining 67 allegedly aggrieved persons' claims were without foundation. Rather, the court did so "[b]ecause the EEOC did not investigate, issue a reasonable cause determination or conciliate the claims of the 67 allegedly aggrieved persons[.]" Order on

Motion to Show Cause at 37 (citing *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) ("Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC[.]")).   The court noted that dismissal was a "severe but appropriate remedy" because to rule otherwise "would ratify a 'sue first, ask questions later' litigation strategy on the part of the EEOC, which would be anathema to Congressional intent."   Order on Motion to Show Cause at 38.

The court finds that an award of attorneys' fees is appropriate because the EEOC's actions in pursuing this lawsuit were unreasonable, contrary to the procedure outlined by Title VII and imposed an unnecessary burden upon CRST and the court.   An award of fees is necessary to guarantee that Title VII's procedures are observed in a manner that maximizes the potential for ending discriminatory practices without litigation in federal court.[4]

### 3.    Legal background: amount of attorneys' fees award

"'The starting point in determining [reasonable attorneys' fees] is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'"  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)).   The lodestar figure is presumed to be the reasonable fee to which counsel is entitled.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993).   "If the prevailing party did not achieve success on all claims, [the lodestar] may be reduced, taking into account the most critical factor, 'the degree of success

---

[4]    The court again makes no finding as to whether the trial attorneys for the EEOC acted in bad faith.  *But see* Order on Motion to Show Cause at 38 n. 25 (discussing press release and statements regarding this lawsuit made by one of the EEOC's "higher-level attorneys") (citing *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1261 (11th Cir. 2003) (opining that the EEOC may have avoided conciliation to make headlines and press its case against the employer in the media)).

obtained,' with discretion residing in the district court." *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).

The district court retains wide discretion in making a fee award. *See Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award."). "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* The district court must, however, "provide a concise but clear explanation of its reasons for the fee award." *Id.* "When an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

A reasonable hourly rate is generally the prevailing market rate in the locale, that is, the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id.*

The prevailing party must also proffer evidence of the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433.

> Inadequate documentation may warrant a reduced fee . . . .

> Incomplete or imprecise billing records preclude any
> meaningful review by the district court of the fee application
> for "excessive, redundant, or otherwise unnecessary" hours
> and may make it impossible to attribute a particular attorney's
> specific time to a distinct issue or claim.

*H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (quoting *Hensley*, 461 U.S. at 437).

"'[M]ost factors relevant to determining the amount of a fee are subsumed within the lodestar."' *Casey*, 12 F.3d at 805 (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991)); *see Hensley*, 461 U.S. at 434 n.9 (citing *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980) (en banc) ("[I]t should be noted that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.")). However, the court should consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988).

> *Johnson* called for consideration of twelve factors: (1) the time
> and labor required; (2) the novelty and difficulty of the
> question; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of other employment by the
> attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations
> imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience,
> reputation, and ability of the attorney; (10) the "undesirability"
> of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*McDonald*, 860 F.2d at 1459 n.4. "[T]he most critical factor" in determining the reasonableness of an attorneys' fee award in civil rights litigation is "the degree of success obtained." *Hensley*, 461 U.S. at 436.

When making the determination of a reasonable fee, a court should consider the "plaintiff's overall success; the necessity and usefulness of plaintiff's activity in the

particular matter for which fees are requested; and the efficiency with which plaintiff's attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997) (en banc). A district court need not address exhaustively every *Johnson* factor. *Emery*, 272 F.3d at 1048. The court should consider what factors, "in the context of the present case, deserve explicit consideration." *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997-98 (8th Cir. 1999). The district court should use its own knowledge, experience and expertise in determining the amount of the fee to be awarded. *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066-67 (8th Cir. 1989).

      **4.**    ***Lodestar***

          **a.**    ***Reasonable hourly rate***

     CRST requests the following hourly rates for the services of the attorneys of its lead counsel, Jenner & Block ("Jenner"):

| Attorney | Hourly Rate |
|---|---|
| John H. Mathias | $825 |
| Robert T. Markowski | $666.67 |
| Terri L. Mascherin | $675 |
| Barry Levenstam | $650 |
| James T. Malysiak | $600 |
| Carla J. Rozycki | $525 |
| Richard D. Campbell | $535 |
| Brian D. Hansen | $525 |
| Sarah Hardgrove-Koleno | $525 |
| Brent E. Kidwell | $525 |
| Sally K. Sears Coder | $525 |
| John P. Wolfsmith | $525 |

| | |
|---|---|
| Emma J. Sullivan | $495 |
| J. Andrew Hirth | $361.67 |
| Spiridoula Mavrothalasitis | $475 |
| Melissa M. Hinds | $470 |
| Suzzane M. Courtheoux | $445 |
| Sean C. Herring | $410 |
| Rayna M. Matczak | $410 |
| Anne C. Fitzpatrick | $400 |
| Benjamin J. Wimmer | $362.50 |
| Sapna G. Lalmalani | $337.50 |
| Sofia E. Biller | $325 |
| Anne M. Gardner | $325 |
| Justin A. Maleson | $325 |
| Sarah R. McNally | $325 |
| Ashley Schumacher | $325 |
| Michele L. Slachetka | $325 |
| Cheryl J. Kras (paralegal) | $256.67 |
| Legal Assistants | $151.67 |
| Other Billers (ATG, Library, etc.) | $238 |

CRST requests the following hourly rates for the services of the attorneys and support staff of its local counsel, Simmons Perrine Moyer & Bergman ("Simmons"):

| Attorney | Hourly Rate |
|---|---|
| Kevin Visser | $295 |
| Thomas Wolle | $200 |
| Allison Heffern | $200 |

| Iris Muchmore | $240 |
|---|---|
| Dawn Gibson | $175 |
| Kelly Geerlings (legal assistant) | $110 |
| Marcia Harris | $165 |
| Brian Fagan | $185 |
| Deb Foege (legal assistant) | $95 |
| Robert Hatala | $200 |
| Webb Wassmer | $200 |
| Eric Lam | $200 |

The reasonable hourly rate is generally the "ordinary rate for similar work in the community where the case has been litigated." *Moysis*, 278 F.3d at 828-29 (quoting *Emery*, 272 F.3d at 1047). In some circumstances, however, the relevant market for determining a reasonable hourly rate may "extend beyond the local geographic community." *Casey*, 12 F.3d at 805. For example, in specialized areas of the law, the national market may provide a reasonable hourly rate. *Id.* Similarly, if a party is unable to retain local counsel, hourly rates may not be limited to the prevailing local rate. *See Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir. 1982) (explaining that counsel may not be limited to lower local rates if the movant shows that it was unable to retain local counsel despite a diligent, good faith effort).

CRST asks the court to apply a "national rate" to assess the reasonableness of Jenner's hourly rates. The EEOC argues that a national rate is inappropriate and asks the court to "reduce the hourly rates of Jenner's lawyers to the hourly rates sought by lawyers [at Simmons] with comparable experience." Fees Resistance at 13. CRST does not argue that it was impossible to retain competent local counsel to handle this case. Rather, CRST contends that a "national rate" is appropriate in this case because Jenner is "nationally recognized for its accomplishments in major complex litigation." Fees Brief at 12.

21

Jenner's hourly rates are much higher than those charged by attorneys in this community. For example, Cheryl Kras, a Jenner paralegal, billed at a higher rate than all but one of the Simmons partners involved with this case. The lowest rate charged by Jenner associates, $325, was higher than any Simmons partner. John Mathias, the lead Jenner partner in this case, billed at an average of $825 per hour—approximately four times that charged by some Simmons partners involved with this case. In short, it is clear to the court that Jenner's hourly rates are not the "ordinary rate for similar work in the community where the case has been litigated." *Moysis*, 278 F.3d at 828-29. Having found that Jenner's hourly rates are unreasonable when judged against rates charged for similar work in the community, the court turns to consider whether a different standard should be applied.

The court finds that this case did not involve a specialized area of the law that prevented CRST from retaining local counsel. Thus, the court declines to apply a national rate on this basis. CRST offers only general information regarding Jenner's reputation in "major commercial litigation," the type of clients it typically represents or the backgrounds of its lawyers involved in this case. Fees Brief at 12. While the Jenner attorneys involved in this case, and the firm as a whole, certainly have extensive experience in "major commercial litigation," the court finds that such experience does not rise to the level of a "specialized" area of the law. *Cf. Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517 (8th Cir. 1995) (per curiam) (applying Chicago market rate because attorneys "[did] this kind of work routinely" and were "leaders in the field of reproductive-rights law").

In its Reply, CRST argues that a national rate is appropriate because several of the Jenner attorneys involved in this case are "affiliated" with the firm's "Labor & Employment" practice. Fees Reply at 7. The court finds that the participation of these attorneys does not warrant the application of a national hourly rate. Of the thirteen Jenner

partners that billed in this case, only two, Carla Rozycki and Richard Campbell, are affiliated with the "Labor & Employment" practice.  The hours billed by Rozycki and Campbell constitute approximately 12% of the total hours billed by Jenner partners in this case.  The court notes that several Jenner associates affiliated with the "Labor & Employment" practice also worked extensively on this case.  However, as CRST itself notes, the Jenner attorneys affiliated with that practice worked only "25% of the total time that [Jenner] spent defending CRST."  *Id.* at 8.  The court also notes that several Simmons attorneys involved in this case, including partners Kevin Visser and Thomas Wolle, have significant experience in employment litigation, as do many other lawyers in this community.  CRST has not shown that, despite a good faith effort to secure adequate local counsel, it was unable to do so.   Accordingly, the court declines the apply a national rate based on the unavailability of competent local counsel.

The court notes that several factors in this case warrant a large fee award.  Specifically, CRST's counsel successfully obtained a dismissal of the entire case.  The case involved hundreds of allegedly aggrieved individuals and potentially massive liability to CRST.  Jenner's attorneys have significant experience and outstanding reputations in large, high-stakes litigation.  However, the court finds that Jenner's hourly rates are unreasonable in light of the prevailing rates for similar work in the community.  CRST has failed to satisfy its burden to show that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum*, 465 U.S. at 895 n. 11.   The court also concludes that the circumstances do not warrant a departure from the general practice of computing a reasonable hourly rate based on the local community.  As the Eighth Circuit Court of Appeals has explained:

> We do not . . . compute fees mechanically and without
> question on the basis of the hourly fee that a lawyer regularly
> charges in fact.  It remains our duty to fix a fee that is

> reasonable and, as part of that process, to determine a reasonable hourly rate. Automatic acceptance of a lawyer's customary charge would be an abdication of our duty to supervise the conduct of the bar and do justice to the losing as well as to the winning side. This court does not accept the attorneys' usual billing rate as definitively fixing their billing rates for this litigation.

*Avalon Cinema Corp.*, 689 F.2d at 140 (citations and quotation marks omitted).

The court finds it is appropriate to reduce the rates charged by Jenner's attorneys and Jenner's personnel to levels comparable to that of the Simmons attorneys. Accordingly, the court shall reduce the hourly rates of Jenner partners to $295 and the hourly rates of Jenner associates to $175. The hourly rates of Jenner paralegals, legal assistants and other support staff are reduced to $110. These hourly rates shall be used to calculate the lodestar.

### b.   *Reasonable hours spent*

The EEOC argues that "CRST is not entitled to most of the fees it incurred because they could have been avoided." Fees Resistance at 8. Specifically, the EEOC contends that the theory on which CRST ultimately obtained dismissal of this suit—the EEOC's failure to investigate, make reasonable cause determinations and conduct conciliation efforts of specific allegations—could have been raised earlier. The EEOC argues that CRST could have avoided costly discovery and motion practice had this issue been raised earlier.

The court finds that this argument is without merit. CRST first raised these issues on November 6, 2008, when it filed its first "Motion Under Rule 16(f) for an Order to Show Cause Concerning the EEOC's Identification of Class Members" ("Motion to Show Cause") (docket no. 56). Specifically, CRST argued that "[t]he EEOC has effectively abdicated its responsibility to investigate potential claims before pursuing them and instead imposed a large, unfair burden to both CRST and the [c]ourt to sort things out." Brief in

Support of Motion to Show Cause (docket no. 56-1), at 9.  The court declined to strike any of the allegedly aggrieved persons identified by the EEOC at that time because the EEOC represented that "it had a good faith belief that each and every one of the approximately 270 [allegedly aggrieved persons] ha[d] an actionable claim for sex discrimination."  Order on Motion to Show Cause (docket no. 66), at 8.  On April 30, 2009, the court dismissed the EEOC's pattern or practice claim.  On May 8, 2009, CRST filed a "Motion for Leave to File Motion for Order to Show Cause Why [the EEOC's] Section 706 Claims on Behalf of Allegedly Aggrieved Persons Should Not Be Dismissed" (docket no. 217).  CRST argued that, in light of the dismissal of the EEOC's pattern or practice claim, the "EEOC cannot show that it has satisfied Title VII's preconditions for filing suit on behalf of any individuals other than plaintiffs/interveners Starke and Peeples."  *Id.* at 1.  The EEOC's argument that CRST should have raised this issue earlier to avoid fees overlooks that fact that CRST raised it as early as November, 6, 2008, and again raised it shortly after the court dismissed the EEOC's pattern or practice claim, which the EEOC had relied upon to bring the claims of many of the allegedly aggrieved persons.

The EEOC does not otherwise object to the amount of hours spent on this case by CRST's counsel.  CRST provided detailed documentation in support of these totals.  After reviewing this documentation, the court finds that the hours expended by CRST's counsel on this case were largely reasonable.  This case was exceptionally large and complex.  It required significant discovery—nearly 200 depositions—and dozens of motions.  The records also reveal that CRST's counsel efficiently utilized a range of attorneys, paralegals and legal assistants to perform work appropriate for their experience and expertise.

However, for the reasons set forth in Section V.B.5., *infra*, the court finds that the time expended by CRST's counsel to prepare for and participate in a mock jury exercise was unreasonable.  The court has reviewed Jenner's billing statements and has identified the time entries related to the mock jury exercise.  The billing records reveal that Jenner

attorneys billed $62,823.75 for work exclusively related to the mock jury exercise. This amount must be adjusted based on the reasonable hourly rates determined by the court in Section V.A.4.a.i., *supra*. After adjustment, the fees charged by Jenner for work exclusively related to the mock jury exercise total $25,687.50. The court shall exclude this amount from the award of attorneys' fees.

The billing records also reveal $171,553.75 of time entries that include, among other tasks, work related to preparation for the mock jury exercise. After adjusting this amount based on the previously determined hourly rates, this amount totals $74,048.75. However, because these entries also include one or more unrelated tasks, such as legal research and writing, it is impossible for the court to discern how much of this time was billed for work related to the mock jury exercise and how much was devoted to the other activities. Based on a review of these entries, the court concludes that it is appropriate to reduce this amount by half, or $37,024.38, to account for the time billed for work related to the mock jury exercise. In sum, the court declines to award $62,711.88 in attorneys' fees related to the mock jury exercise.

### c.    *Lodestar amounts*

Jenner attorneys and support staff billed a total of 18,005.75 hours on this case. CRST seeks a total of $7,121,569.25 for this work. As previously discussed, the court reduces the hourly rates of Jenner attorneys to the rates of Simmons attorneys and staff. The converted rates are set forth below.

| Attorney | Hours | Reasonable Rate | Reductions[5] | Award |
|---|---|---|---|---|
| John H. Mathias (partner) | 625.25 | $295 | $17,817.75 | $166,631.00 |
| Robert T. Markowski (partner) | 1,591.00 | $295 | $58,613.50 | $410,731.50 |
| Terri L. Mascherin (partner) | 39.00 | $295 | $3,044.25 | $8,460.75 |
| Barry Levenstam (partner) | 5.00 | $295 | $0 | $1,475.00 |
| James T. Malysiak (partner) | 1,185.25 | $295 | $60,049.50 | $289,599.25 |
| Carla J. Rozycki (partner) | 181.50 | $295 | $13,335.00 | $40,207.50 |
| Richard P. Campbell (partner) | 618.25 | $295 | $8,373.75 | $174,010.00 |
| Brian D. Hansen (partner) | 133.00 | $295 | $2,866.50 | $36,368.50 |
| Sarah Hardgrove-Koleno (partner) | 674.00 | $295 | $882.00 | $197,948.00 |
| Brent E. Kidwell (partner) | .50 | $295 | $0 | $147.50 |

---

[5] The "Reductions" column reflects fees that Jenner billed to CRST, but, for various reasons, does not seek to recover in the Fees Motion. The court re-calculated the "Reductions" by determining the recoverable percentage of a timekeeper's rate and reducing the Reduction to keep it consistent with the timekeeper's reduced rate. For example, the court determined Mr. Mathias's "Reduction" as follows: (1) the court determined that the reasonable hourly rate of $295 was 36% of Mr. Mathias's claimed hourly rate of $825; (2) the court re-calculated the "Reduction" by multiplying the original "Reduction" of $49,493.75 by 36%, which equals $17,817.75.

| | | | | |
|---|---|---|---|---|
| Sally K. Sears Coder (partner) | 1,409.25 | $295 | $51,891.00 | $363,837.75 |
| John P. Wolfsmith (partner) | 150.50 | $295 | $2,058 | $42,339.50 |
| Emma J. Sullivan (of counsel) | 1,360.50 | $295 | $7,499.25 | $393,848.25 |
| J. Andrew Hirth (associate) | 1,512.75 | $175 | $11,160 | $253,571.25 |
| Spiridoula Mavrothalasitis (associate) | 316.25 | $175 | $2,021.13 | $53,322.62 |
| Melissa M. Hinds (associate) | 4.00 | $175 | $0 | $700.00 |
| Suzanne M. Courtheoux (associate) | 108.00 | $175 | $1,128.08 | $17,771.92 |
| Sean C. Herring (associate) | 78.00 | $175 | $0 | $13,650 |
| Rayna M. Matczak (associate) | 156.25 | $175 | $0 | $27,343.75 |
| Anne C. Fitzpatrick (associate) | 364.25 | $175 | $0 | $63,743.75 |
| Benjamin J. Wimmer (associate) | 267.50 | $175 | $900.00 | $45,912.50 |
| Sapna G. Lalmalani (associate) | 807.25 | $175 | $2,730 | $138,538.75 |
| Sofia E. Biller (associate) | 10.75 | $175 | $0 | $1,881.25 |
| Anne M. Gardner (associate) | 88.50 | $175 | $0 | $15,487.50 |

| Justin A. Maleson (associate) | 216.75 | $175 | $0 | $37,931.25 |
|---|---|---|---|---|
| Sarah R. McNally (associate) | 53.75 | $175 | $0 | $9,406.25 |
| Ashley M. Schumacher (associate) | 734.00 | $175 | $2,193.75 | $126,256.25 |
| Michele L. Slachetka (associate) | 1,028.00 | $175 | $2,193.75 | $177,706.25 |
| Cheryl J. Kras (paralegal) | 2,273.50 | $110 | $12,989.23 | $237,095.77 |
| Legal Assistants | 1,961 | $110 | $3,164.55 | $212,545.45 |
| Other Billers (e.g., Library) | 51.25 | $110 | $0 | $5,637.50 |
| **Totals** | 18,005.75 | | | $3,564,106.51 |

The above hours, multiplied by the reasonable hourly rates, total $3,564,106.51 in attorneys' fees.  The court deducts $62,711.88 from this amount for fees billed by Jenner attorneys related to the mock jury exercise.   This yields a lodestar amount of $3,501,394.63 in attorneys' fees for the services of Jenner.

Simmons attorneys and support staff billed a total of 2,507.66 hours working on this case at rates ranging from $95 to $295.  CRST seeks a total of $502,977.02 for this work. The EEOC does not object to the hourly rates charged by the Simmons attorneys or staff. The court finds that the hourly rates and hours billed by Simmons are reasonable and consistent with the prevailing market rate for similar work in the community. Accordingly, the court shall award CRST $502,977.02 in attorneys' fees billed by Simmons.

### 5.    *Summary*

The court has calculated a lodestar amount of $3,501,394.63 for Jenner's services

and a lodestar amount of $502,977.02 for Simmons' services.   This yields a total of $4,004,371.65 in attorneys' fees.

### B. Reasonable out-of-pocket expenses

CRST asks the court to award it $816,864.95 for out-of-pocket expenses incurred by its attorneys.  These expenses are comprised of the following: long distance telephone expenses, messenger and overnight express, fees for investigators, expert witness fees, mock jury fees, computer legal research, postage, travel and related expenses, demonstrative aids for trial,  fees incurred in preparation of the Fees Motion, costs for videotaped depositions,[6] costs to convert depositions to DVD and costs for "exemplification and copies of papers[.]"[7]  Fees Supplement at 4.  "[R]easonable out-of-pocket expenses of the kind normally charged to clients by attorneys," but not recoverable as costs under 28 U.S.C. § 1920, may be "included as part of the reasonable attorney's fees awarded."  *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996); *see also Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35-LRR, 2004 WL 1234130, at *6 (N.D. Iowa June 2, 2004) (Reade, C.J.) ("Reasonable out-of-pocket expenses incurred by an attorney which normally would be charged to a fee-paying client ordinarily are includable in a statutory award of fees.").  The EEOC argues that certain expenses should be disallowed in their entirety while others should be disallowed due to documentation problems.  The court shall address each of these expenses, in turn.

---

[6] This amount includes $70,855.52 for expenses incurred to videotape depositions. As discussed in Section IV.B, *supra*, CRST also seeks this amount as costs under 28 U.S.C. § 1920.  In light of the court's conclusion that this expense is not recoverable under § 1920, CRST asks that this expense "be considered as attorneys' fees in the event the Court does not award them pursuant to § 1920."  Fees Supplement at 2.

[7] In the Fees Motion, CRST seeks $569,564.64 for expenses.  In the Fees Supplement, CRST asks the court to award an additional $247,300.31, because the Clerk declined to award these expenses as costs pursuant to 28 U.S.C. § 1920.

### 1.     Long distance telephone expenses

CRST seeks $176.17 in long distance telephone expenses.  The EEOC does not specifically object to this expense.  The court finds that these charges are adequately documented and reasonable.  Therefore, the court shall award CRST $176.17 for long distance telephone expenses as part of the attorneys' fee award.

### 2.     Messenger and overnight express

CRST seeks $5,127.86 in messenger and overnight delivery expenses.  The EEOC does not specifically object to this expense.  The court finds that these charges are adequately documented and reasonable.  Accordingly, the court shall award CRST $5,127.86 for messenger and overnight expenses as part of the attorneys' fee award.

### 3.     Investigator fees

CRST also seeks to recover fees it spent to employ investigators.  CRST argues that investigators were "necessary to the litigation in order to locate and interview witnesses." Fees Brief at 21.  CRST has been billed $103,523.07 for private investigation work. Apparently, CRST is "disputing that amount, and believes that it should have been invoiced for no more than $62,183.67." *Id.* at 22.  Accordingly, CRST asks the court to award it $62,183.67 for its private investigator fees.

The EEOC argues that the investigators were unnecessary.  Specifically, the EEOC contends that much of the investigative work took place after the close of discovery and involved "newly identified witnesses" that the EEOC argues could not have been used at trial. Fees Resistance at 15.  Alternatively, the EEOC argues that the investigator fees should be "substantially reduced" because the investigators billed excessive hours and charged "exorbitant" hourly rates.  *Id.* at 15-16.

Investigator fees are recoverable as out-of-pocket expenses that would ordinarily be passed onto the client. *See, e.g., Knutson v. Ag Processing, Inc.*, 273 F. Supp. 2d 961, 1021-22 (N.D. Iowa 2003) (awarding as reasonable out-of-pocket expenses fees to retain

a "legal investigator" who interviewed witnesses, performed witness preparation and prepared documents) *rev'd on other grounds*, 394 F.3d 1047 (8th Cir. 2005). CRST contends it used the investigators to locate the individuals accused of sexual harassment, as well as "other individuals who may have had knowledge of certain claims[.]" Fees Reply at 9. CRST claims that locating and interviewing these people was difficult because: (1) many of the allegedly aggrieved persons identified "new and additional harassers" during discovery; (2) many of the accused individuals no longer worked for CRST; (3) the witnesses were "dispersed across the country"; and (4) CRST had "a tight time frame" in which to conduct its investigation. *Id.*

The court finds that CRST's use of investigators was warranted and reasonable in this case. Due to the large number of allegedly aggrieved persons and alleged harassers, the geographic disparity of these individuals and the fact that more than one hundred of the alleged harassers no longer worked at CRST, the use of private investigators was appropriate.

The court also rejects the EEOC's argument that the investigator fees should be "substantially reduced" either because the number of hours billed by the investigators was excessive or because their hourly rates were "exorbitant." Fees Resistance at 15-16. Specifically, the EEOC argues that, "[g]iven the excessive time spent supervising rather than actually investigating, the number of investigator hours should be reduced by 50%." *Id.* at 16. The court disagrees that investigator fees associated with monitoring and assigning investigative work should be excluded or reduced. The employment of numerous investigators in various parts of the country undoubtedly required supervision and coordination. In fact, the supervision likely *improved* the efficiency of the investigators' work by preventing duplicative or needless effort. Finally, the court finds that the hourly rates paid to the investigators were reasonable. The hourly rates ranged from $105 to $300. These rates are reasonable for the tasks performed, which included

locating and interviewing witnesses and drafting memoranda to summarize the investigation. Further, CRST has elected to not seek more than $40,000 in investigative fees because it found certain hourly rates objectionable. Accordingly, the court shall award CRST $62,183.67 in out-of-pocket expenses for investigator fees as part of its attorneys' fees award.

### 4.    *Expert witness fees*

CRST seeks $242,212.22 in expert witness fees for the work of two expert witnesses CRST. This amount consists of $104,866.66 billed by Dr. Jone McFadden Papinchock, an expert in "Industrial and Organizational Psychology." Fees Brief at 22. Dr. Papinchock's work included research and analysis of CRST's sexual harassment policies and practices, consultation with CRST's counsel, preparation of an expert report and deposition testimony. The remaining $137,345.56 in expert fees are sought for the work of Dr. Mary Dunn Baker. Dr. Baker has a Ph.D. in Economics. Dr. Baker prepared an expert report and conducted statistical analyses of the gender composition of CRST's workforce and the frequency of sexual harassment at CRST. CRST submitted documentation of these expenses, including invoices and detailed billing reports.

The EEOC objects to the expert witness fees to the extent that they could have been avoided if CRST had moved for and obtained dismissal of this case at an earlier stage. For the reasons stated in Section V.A.4.b., *supra*, the court rejects this argument. The court has reviewed the documentation of these expenses and finds that the fees are reasonable. Accordingly, the court shall award CRST $242,212.22 as an out-of-pocket expense for expert witness fees.

### 5.    *Mock jury fees*

CRST seeks an award of $74,640.23 for fees expended on a mock jury exercise. CRST contends that the mock jury exercise was "reasonably necessary to address the complex and complicated issues, significant strategic decisions, novel issues, and sheer

volume of claims involved in this case, including the potential for a jury to hear arguments regarding claims of over 156 women, testimony of up to 405 witnesses, and presentation of up to 3,043 exhibits." *Id.* at 24. CRST states that it held the exercise before the court ruled on its dispositive motions and that, although this case did not ultimately go to trial, the exercise "provided significant value to CRST's litigation strategy, including its drafting of the Pretrial Order, witness and exhibit lists, and motions *in limine*." *Id.* CRST submitted documentation of this expense. The EEOC does not object to the propriety of an award for the mock jury exercise or to the specific amount sought.

Several courts have awarded expenses for the costs of a "mock jury" or similar exercise. *See Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, No. CV 00-1693-A, 2003 WL 23715982, at *8 (D. Or. Oct. 27, 2003) (collecting cases) *vacated on other grounds*, *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312 (2007). However, the court finds that CRST's decision to conduct a mock jury was not reasonably necessary to further the litigation in this case. *See Goss*, 2004 WL 1234130, at *7 (denying reimbursement for attorneys' fees or expenses incurred in connection with a mock jury exercise). Accordingly, the court denies CRST's request for $74,640.23 in expenses for the mock jury exercise.

### 6.    *Computer legal research*

CRST seeks an award of $70,780.61 in computerized legal research expenses. However, it is well-settled in the Eighth Circuit that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." *Standley v. Chilowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) (quoting *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 695 (8th Cir. 1983). "[C]omputer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award." *Id.* Accordingly, CRST is not entitled to any award for

computer-based legal research.

### 7.   *Postage*

CRST seeks $49.84 for postage expenses incurred by Jenner and billed to CRST. The EEOC does not object to this expense or the amount CRST requests. The court finds that this expense is reasonable. Accordingly, the court shall award CRST $49.84 in postage expenses as part of the attorneys' fee award.

### 8.   *Travel and related expenses*

CRST seeks $34,914.06 in compensation for travel expenses. This amount includes costs incurred to attend hearings, depositions and to review documents, as well as "meals while out of the office." Fees Brief at 25. The EEOC objects to $3,375.89 of this amount on the grounds that CRST did not provide supporting documentation for certain expenses. In reply, CRST offered additional documentation to support some the travel expenses to which the EEOC objects. *See* Fees Reply Ex. B-D (docket no. 300-2 through 300-4). However, CRST fails to provide the underlying invoices or copies of receipts for several claimed travel expenses totaling $778.12. As a result, the court is unable to assess the reasonableness of these expenses. The remaining amounts are supported by adequate documentation and are reasonable. CRST has reduced its request for travel expenses by excluding items the court would consider discretionary expenditures. Further, the court finds that such expenses are of the type normally passed on to a fee-paying client. Accordingly, the court shall award CRST $34,135.94 for the travel expenses of its counsel.

### 9.   *Demonstrative exhibits for trial*

CRST seeks $78,023.24 for expenditures on demonstrative exhibits for trial. However, the court has reviewed the documentation for these expenses and can identify only $77,125.25 in expenditures. This amount consists of $841 paid to "T&M Services, Inc." to "move furniture to storage." CRST Fee Application Attachment 7I (docket no.

282-21), at 3. The remaining $76,284.25 was paid to "TrialGraphix" to "begin preparation of trial exhibits." Fees Brief at 5. The EEOC objects to the entire amount on the grounds that the expenses are too vague and imprecise to allow the court to conclude if these expenses are reasonable.

The court finds that the documentation supporting this expense is insufficient and the court shall therefore deny this request in its entirety. The $841 invoice from T&M Services states only that the fee was paid to "COMPLETE MOVES, MOVE FURNITURE TO STORAGE." CRST Fee Application Attachment 7I at 3 (emphasis in original). Similarly, the TrialGraphix invoice states that CRST paid TrialGraphix $75,000 for "Processing/Stamping & Printing/Binding Project Special Pricing." *Id.* at 4. The court is unable to discern from the documentation what services were performed and how they relate to this lawsuit. Without this information, the court cannot meaningfully consider whether these expenses are reasonable. *See, e.g., H.J. Inc.*, 925 F.2d at 260-61 (discussing propriety of reducing fee award based on inadequate documentation). Accordingly, the court shall deny CRST's request for expenses related to demonstrative exhibits.

### 10. *Videotaped depositions*

As discussed in Section IV.B.1-2., *supra*, the court declines to award CRST $70,855.52 for videotaped depositions under § 1920. CRST argues that it is nonetheless entitled to this amount as part of the attorneys' fee award. For the reasons previously discussed, the court finds that this expense was unnecessary and unreasonable. *See Jadari v. Shiba Inv., Inc.*, No. 06-5012-RHB, 2008 WL 5100812, at *10 (D.S.D. Dec. 3, 2008) (awarding costs of court reporter but denying expenses for videotaped depositions as an "unreasonable" expense). CRST also obtained stenographic transcripts of the depositions and has not offered a persuasive reason for obtaining both stenographic transcripts and video recordings of every deposition. Even if this case had gone to trial, CRST has not

shown that any witnesses were likely to be unavailable or that video recordings of depositions would otherwise be useful.  Accordingly, the court shall deny this portion of CRST's fee request.

### 11.   Additional video-related expenses

CRST also seeks $57,259.24 for its "costs of conversion of depositions to DVD, ASCII, condensation, postage, and delivery[.]"  Fees Supplement at 4.  In light of the court's conclusion that the videotaping of depositions was an unreasonable expenditure, the court declines to award these additional video-related expenses.

### 12.   Exemplification and copies of papers

CRST requests "costs for exemplification and copies of papers in the amount of $119,185.55."  Id.  CRST originally sought this amount under 28 U.S.C. § 1920, which allows an award of such costs "where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The EEOC objected on the grounds that CRST's documentation was too vague and failed to identify what was printed and or/copied.  The EEOC contended that this made it impossible to evaluate whether these copies were necessarily obtained for use in the case.  The Clerk concluded that CRST's documentation was insufficient because it did not identify the purpose for the printing and copying and therefore refused to tax this amount as costs.  CRST now seeks this amount as reasonable out-of-pocket expenses as part of the attorneys' fee award.

The court finds that CRST is entitled to an award of the expenses incurred by its counsel for copying and printing.  CRST submitted extensive documentation of its printing and copying costs.[8]  This amount includes in-house printing by CRST's counsel, the rental of printing and/or copying machines and printing services by third parties.  The court finds

---

[8] Much of the documentation consists of printouts from Jenner's "nQueue" tracking software, which tracks printing and copying costs based on client matter numbers and then uploads the automated transactions to Jenner's billing system "in order to recover the costs associated with the print/copy work."  Bill of Costs Schedule D (docket no. 280-4), at 2.

the documentation sufficient and the amount sought is reasonable in light of the thousands of documents, extensive research and motion practice that this case required.   Although this expense may have been insufficiently documented to be taxed as costs, it is recoverable as part of the reasonable attorneys' fees.  *See, e.g., Emmenegger v. Bull Moos Tube Co.*, 33 F. Supp. 2d 1127, 1133-34 (E.D. Mo. 1998) (refusing to tax photocopying expenses as costs under § 1920 because plaintiffs failed to segregate the taxable costs but awarding full amount as part of attorneys' fee award).   Accordingly, the court shall award CRST $119,185.55 for its printing and copying expenses.

### 13.   *Fees for preparation of fee application*

CRST stated in its Brief in support of the Fees Motion that it sought an award of the fees incurred to prepare the Fees Motion and that it would "submit a supplemental filing detailing the total fees incurred with preparation of this petition once briefing is concluded."  Fees Brief at 26.   In the Supplement, however, CRST states that it "seeks only the nominal fees incurred in preparation of its Fee Petition that have already been submitted to the Court."  Supplement at 2.   The court interprets this to mean that CRST does not seek additional attorneys' fees for preparation of the Fees Motion other than the fees that the court has already considered.   Accordingly, the court does not award an additional amount for the preparation of the Fees Motion.

### 14.   *Summary*

Based on the foregoing, the court finds that CRST is entitled to an award of reasonable out-of-pocket expenses in the amount of $463,071.25.   This amount will be added to the $4,004,371.65 the court shall award for the services of CRST's counsel.   This yields a total attorneys' fee award of $4,467,442.90.

## VI.   CONCLUSION

In light of the foregoing, it is **HEREBY ORDERED THAT**:

(1)   The Costs Motion (docket no. 306) is **DENIED**;

(2)    The Fees Motion (docket no. 282) is **GRANTED IN PART AND DENIED IN PART** as follows:

    (a)    The EEOC is **ORDERED** to pay CRST **$4,004,371.65** in attorneys' fees; and

    (b)    The EEOC is **ORDERED** to pay CRST **$463,071.25** in expenses, for a total attorneys' fees award of **$4,467,442.90**;

(4)    The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of CRST in the amount of **$4,560,285.11**.  This figure includes attorneys' fees, expenses and the costs taxed in favor of CRST pursuant to 28 U.S.C. § 1920; and

(5)    The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**DATED** this 9th day of February, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA