**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | No. 07-CV-95-LRR |
| vs. | **ORDER** |
| CRST VAN EXPEDITED, INC., | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . **3**

III.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      A.    *Witnesses Not Identified in Disclosures, Including Frank Taylor* . . . . **6**
      B.    *Evidence Admissible Only Through an Expert* . . . . . . . . . . . . . . **6**
      C.    *Evidence of David Goodman's Harassment.*. . . . . . . . . . . . . . . . **7**
      D.    *Statutory Damages Cap.*. . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
      E.    *Monetary Damages on Behalf of Starke.*. . . . . . . . . . . . . . . . . . **8**
      F.    *Evidence or Argument Precluded by Prior Rulings.* . . . . . . . . . . . . **9**
            1.    *Pattern or practice evidence.* . . . . . . . . . . . . . . . . . . . . . **10**
            2.    *Lead Drivers as supervisors.* . . . . . . . . . . . . . . . . . . . . . **11**
            3.    *CRST's response to reported harassment.* . . . . . . . . . . . . . . **11**
      G.    *Insufficient, Inadequate or Deficient Sexual Harassment Policies.* . . . **12**
      H.    *Negligence in Assigning Smith as Starke's Lead Driver.*. . . . . . . . . **12**
      I.    *Other Female Drivers' Sexual Harassment Complaints and
            CRST's Responses.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
            1.    *Elements of the claim.* . . . . . . . . . . . . . . . . . . . . . . . . . **13**
            2.    *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
            3.    *Applicable law on admissibility.* . . . . . . . . . . . . . . . . . . . **14**
                  a.    *Credibility.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
                  b.    *Punitive damages.*. . . . . . . . . . . . . . . . . . . . . . . . . **15**
            4.    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
                  a.    *Barbara Wallace.* . . . . . . . . . . . . . . . . . . . . . . . . . **16**

|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 17 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 19 |
|   | *b.* | *Valerie Montoya.* | | 20 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 20 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 21 |
|   | *c.* | *Wanda Hasbell.* . . . . . . . . . . . . . . . . . . . . . | 21 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 22 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 22 |
|   | *d.* | *Angela Lesmeister.* . . . . . . . . . . . . . . . . . . . | 23 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 24 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 25 |
|   | *e.* | *Mary Bender.* . . . . . . . . . . . . . . . . . . . . . . | 25 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 25 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 26 |
|   | *f.* | *Joyce Toppin.* . . . . . . . . . . . . . . . . . . . . . . | 27 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 27 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 28 |
|   | *g.* | *Diana Chester.* . . . . . . . . . . . . . . . . . . . . . | 29 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 29 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 30 |
|   | *h.* | *Yvonne Fortner.* . . . . . . . . . . . . . . . . . . . . . | 30 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 31 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 32 |
|   | *i.* | *Keirston Alleva.* . . . . . . . . . . . . . . . . . . . . | 32 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 32 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 33 |
|   | *j.* | *Jammie Scott.* . . . . . . . . . . . . . . . . . . . . . . | 34 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 34 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 35 |
|   | *k.* | *Ramona Villarreal.* . . . . . . . . . . . . . . . . . . . | 35 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 36 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 37 |
|   | *l.* | *Cathy Shaw.* . . . . . . . . . . . . . . . . . . . . . . . | 37 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 37 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 38 |
|   | *m.* | *Tracye Traylor.* . . . . . . . . . . . . . . . . . . . . . | 39 |
|   |   | *i.* | *Credibility of Monika Starke.* . . . . . . . . . . . . . | 39 |
|   |   | *ii.* | *Punitive damages.* . . . . . . . . . . . . . . . . . . . | 40 |
|   | *n.* | *Doris Tiberio.* . . . . . . . . . . . . . . . . . . . . . | 40 |

     *i.*  *Credibility of Monika Starke.* . . . . . . . . . . . . . **41**
     *ii.*  *Punitive damages.* . . . . . . . . . . . . . . . . . . . . **42**
    *o.*  *Veronica Mora.* . . . . . . . . . . . . . . . . . . . . . . . . **42**
     *i.*  *Credibility of Monika Starke.* . . . . . . . . . . . . . **42**
     *ii.*  *Punitive damages.* . . . . . . . . . . . . . . . . . . . . **43**
   **5.**  **Evidence in relation to employer's motive.** . . . . . . . . . . . . . **44**
   **6.**  **Summary.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**
 **J.**  **Smith's Disciplinary and Safety Records.** . . . . . . . . . . . . . . . . . . . **45**
 **K.**  **CRST's Net Worth and Finances.** . . . . . . . . . . . . . . . . . . . . . . . **45**
 **L.**  **CRST's Failure to Call Witnesses.** . . . . . . . . . . . . . . . . . . . . . . . **45**
 **M.**  **Comparisons with Other EEOC Cases.** . . . . . . . . . . . . . . . . . . . . **46**
 **N.**  **Lie Detector Tests.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

**IV.** **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

## I.  INTRODUCTION

The matter before the court is Defendant CRST Van Expedited, Inc.'s ("CRST") "Motion in Limine" ("Motion") (docket no. 349).

## II.  RELEVANT PROCEDURAL HISTORY

On May 10, 2012, the Eighth Circuit Court of Appeals issued an Opinion ("Eighth Circuit Opinion") (docket no. 339), affirming in part and denying in part Plaintiff Equal Employment Opportunity Commission's ("EEOC") appeal of several summary judgment orders that had disposed of the instant action.[1]  *See EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012).  The Eighth Circuit remanded the case to the court for further proceedings regarding the EEOC's claims on behalf of Monika Starke and Tillie Jones.  *See id.*  The EEOC subsequently withdrew its claim on behalf of Tillie Jones.  *See* Notice (docket no. 360).  A jury trial was set to commence on October 16, 2012.  The issue for trial is whether or not a former CRST trainee truck driver, Monika Starke, was subjected to hostile work environment sexual harassment by Bobb Smith, a male Lead

---

[1] The Eighth Circuit Opinion includes a detailed procedural history and factual background of the case leading up to the EEOC's appeal.  *See* Eighth Circuit Opinion at 2-14.

Driver with whom she drove from July 8-15, 2005, in violation of Title VII of the Civil Rights Act of 1964.

On October 3, 2012, CRST filed the Motion. On October 9, 2012, the EEOC filed a Resistance (docket no. 356). On October 10, 2012, the undersigned held a Final Pretrial Conference ("FPTC"). *See* Hearing Minutes (docket no. 357). Attorneys Jean Kamp, Nicholas Pladson, Ann Henry and Jeanne Szromba represented the EEOC at the FPTC, and James Malysiak, John Mathias, Kevin Visser and Sally Coder represented CRST. At the FPTC, the parties presented oral argument regarding the Motion. At the conclusion of the hearing, the undersigned determined that further briefing was needed regarding the Motion, and the trial was continued, *see* October 10, 2012 Order (docket no. 359).

Pursuant to the court's October 18, 2012 Order (docket no. 362), the parties provided the court with supplemental briefs regarding the Motion. On October 26, 2012, the EEOC filed a "Supplemental Resistance" (docket no. 363). On November 12, 2012, CRST filed a "Supplemental Brief in Support" (docket no. 368). On November 20, 2012, the EEOC filed a "Reply in Support of its Supplemental Resistance" (docket no. 372). The matter is fully submitted and ready for decision.

### III.  ANALYSIS

In the Motion, CRST asks the court to: (1) bar the EEOC from presenting witnesses not identified in the EEOC's disclosures, including Frank Taylor; (2) bar the EEOC from presenting any evidence that would be admissible only through an expert because the EEOC has not identified any experts; (3) bar the EEOC from presenting damages evidence relating to alleged sexual harassment by any individual other than Bobb Smith; (4) determine that the EEOC's damages claim is subject to a statutory cap of $300,000; (5) bar the EEOC from seeking monetary damages on behalf of Starke based on the court's prior rulings; (6) bar the EEOC from introducing evidence or argument inconsistent with the court's prior orders and the Eighth Circuit Opinion, specifically evidence or argument

inconsistent with the court's ruling on the EEOC's pattern or practice claim, the court's ruling that Lead Drivers are not supervisors and the court's decisions regarding female drivers' failure to report alleged harassment and/or CRST's prompt and effective response to reported harassment; (7) bar the EEOC from arguing that CRST's sexual harassment policy and training program are insufficient, inadequate or deficient; (8) bar the EEOC from arguing that CRST was negligent in assigning Smith as Starke's Lead Driver; (9) bar the EEOC from introducing evidence or arguing about irrelevant allegations and claims, specifically evidence regarding reports of alleged sexual harassment by other female drivers and CRST's positive environment chart and making any reference to or argument about the chart; (10) bar the EEOC from introducing Smith's unrelated disciplinary and safety records; (11) exclude evidence of CRST's net worth and finances, at least until punitive damages are relevant; (12) bar the EEOC from referring to CRST's failure to call or produce witnesses not under CRST's control; (13) bar the EEOC from comparing this case to other cases brought by the EEOC; and (14) prohibit the EEOC from arguing or suggesting that CRST should have required Smith or Starke to take lie detector tests.

In its Resistance, the EEOC argues: (1) the court should permit the EEOC to call Frank Taylor; (2) CRST's request to deny expert evidence is overbroad and vague; (3) the parties reached an agreement regarding damages arising from the conduct of David Goodman; (4) the court should deny CRST's request because it is not a motion to limit evidence, although the EEOC agrees that the statutory cap applies to its claim; (5) the EEOC is not barred from seeking monetary damages on behalf of Starke because the EEOC can recover victim-specific damages; (6) the court's prior orders do not bar the EEOC from arguing that CRST had inadequate or deficient policies or practices in the instant action, the EEOC will not characterize CRST's Lead Drivers as supervisors and the court's prior orders do not bar the EEOC from introducing evidence that CRST did not provide a prompt and effective response to reported harassment; (7) the EEOC is not

barred from alleging that CRST's sexual harassment policies, training and practices are insufficient, inadequate or deficient; (8) CRST's request to bar the EEOC from arguing that CRST was negligent in assigning Smith as Starke's driver is premature and overbroad, and the EEOC states that it does not intend to assert a negligent hiring claim; (9) the EEOC is permitted to introduce evidence of other female drivers' sexual harassment complaints and CRST's inadequate responses because the evidence is relevant to the merits of the EEOC's claim and punitive damages; (10) the EEOC does not intend to offer Smith's disciplinary and safety records; (11) the EEOC agrees that it will not introduce evidence of CRST's net worth and finances until the court has determined that the EEOC has met its burden to submit the question to the jury; (12) the court should deny CRST's request to bar the EEOC from commenting on CRST's failure to call witnesses because it will depend on the circumstances; (13) the EEOC will not compare this case to other cases during the trial; and (14) the EEOC does not intend to argue or suggest that CRST should have subjected employees to polygraph tests.   The court will address each of CRST's numbered requests in turn.

### A.  Witnesses Not Identified in Disclosures, Including Frank Taylor

CRST argues that the court should bar the EEOC from calling Frank Taylor as a witness under Federal Rules of Civil Procedure 26 and 37 because the EEOC did not include Taylor in its initial disclosures.  The EEOC argues that the court should allow it to call Taylor because CRST was aware of Taylor and the case is different now than it was when the EEOC brought the action in 2007.  For the reasons stated at the FPTC, the court shall allow the EEOC to call Taylor as a witness.  Thus, the court shall deny the Motion as to Paragraph 1.  Additionally, CRST is permitted to take Taylor's deposition before he testifies at trial.

### B.  Evidence Admissible Only Through an Expert

CRST argues that the EEOC did not disclose any expert witnesses and, therefore,

the court should bar the EEOC from introducing any evidence that would be admissible only through an expert.  The EEOC argues that the court should deny CRST's request because it does not identify any specific documents or evidence that CRST wishes to exclude.  For the reasons stated at the FPTC, the court shall deny the Motion as to Paragraph 2.  If CRST wishes to object to any specific evidence, it may, of course, make the proper objection during trial.

### C.  Evidence of David Goodman's Harassment

CRST argues that the court should bar the EEOC from introducing evidence of damages resulting from David Goodman's harassment because the EEOC represented that it would drop all claims arising from Goodman's conduct.  The EEOC states that the parties have reached an agreement regarding evidence of damages arising from Goodman's conduct.  Among other things, the parties agree that CRST will present limited evidence that Starke drove with other drivers after Smith, including Goodman, and, if either party "opens the door to evidence of Goodman's conduct," the other party may do so as well. Exhibit G (docket no. 356) at 63-64.  Thus, the court shall deny the Motion as to Paragraph 3 as moot in light of the parties' agreement.

### D.  Statutory Damages Cap

CRST argues that the EEOC's claim is subject to a $300,000 statutory cap.  The EEOC first notes that CRST is not asking for a ruling on pretrial evidentiary matters.  The EEOC agrees that the cap applies but argues that the jury may award a higher amount than the statutory cap even though the recovery will be limited to the statutory amount.  At the FPTC, the parties agreed that the EEOC can argue for the jury to award a higher amount of damages than the statutory cap but the ultimate damages award will not exceed the statutory cap.  Thus, the court shall deny the Motion as to Paragraph 4 as moot in light of the parties' agreement.

### E.  Monetary Damages on Behalf of Starke

CRST argues that, because Starke is judicially estopped from bringing a sexual harassment claim as an individual, the EEOC cannot seek monetary damages on behalf of Starke.  The EEOC argues that the Eighth Circuit Opinion clearly states that the EEOC is allowed to seek victim-specific relief even though Starke cannot bring an individual claim and, furthermore, the EEOC argues that such victim-specific relief includes damages.

In *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Supreme Court of the United States held that the EEOC can seek victim-specific relief on behalf of an individual even where the individual cannot bring a claim on his or her own behalf.  In *Waffle House*, an employee signed an arbitration agreement with his employer that precluded him from bringing a wrongful discharge action as an individual. *Id.* at 282-83.  The Fourth Circuit Court of Appeals held that the EEOC could only pursue injunctive relief on behalf of the employee because the policies underlying the Federal Arbitration Act outweighed the EEOC's interest in pursuing victim-specific relief. *Id.* at 279.  The Supreme Court reversed, holding that the EEOC could pursue victim-specific relief, including damages, on behalf of the employee even though the employee could not bring an individual action. *Id.*  In so holding, the Supreme Court stated that "it is the [EEOC's] province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief," *id.* at 291-92, and that, "whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief," *id.* at 296.

Thus, "[u]nder *Waffle House* a court cannot judicially estop the EEOC from bringing suit in its own name to remedy employment discrimination simply because the

defendant-employer happened to discriminate against an employee who, herself, was properly judicially estopped." *CRST Van Expedited, Inc.*, 679 F.3d at 682; *see also EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) (holding that the EEOC could obtain monetary relief on behalf of individuals whose individual suits were time-barred because the EEOC's "enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole"). Thus, the EEOC may seek victim-specific relief, including damages, on behalf of Starke. CRST does not cite, and the court is not aware of, any case law stating that the EEOC cannot give any damages it receives to a judicially-estopped victim, and the cases CRST cites were either decided before *Waffle House* or are factually distinguishable from the instant action.

CRST points to the Supreme Court's statement in *Waffle House* that "[the victim's] conduct may have the effect of limiting the relief that the EEOC may obtain in court." *Waffle House*, 534 U.S. at 296. CRST argues that Starke's fraudulent conduct is the type of conduct that limits the EEOC's ability to obtain relief in the form of damages. However, the conduct the Supreme Court referenced includes defenses such as failure to mitigate damages or acceptance of a settlement that would reduce a damages amount under a specific claim. *See id.* There is no support for CRST's assertion that Starke's fraudulent conduct bars the EEOC from bringing a suit in its own name on behalf of Starke and seeking victim-specific relief, including damages. *Cf. Sidley Austin LLP*, 437 F.3d at 696 (rejecting the defendant's argument that failure to timely file an individual claim was the type of conduct that would limit the relief that the EEOC could obtain from the court). Thus, the court shall deny the Motion as to Paragraph 5.

### F. Evidence or Argument Precluded by Prior Rulings

CRST argues that the court should bar the EEOC from presenting evidence or making any argument that is inconsistent with prior rulings in this case, specifically: (1) evidence regarding the EEOC's pattern or practice claim; (2) evidence or argument that

Lead Drivers are not supervisors; and (3) evidence or argument relating to the consequence of a female driver's failure to report alleged harassment and/or CRST's prompt and effective response to reported harassment.

In response, the EEOC argues that: (1) prior rulings in this case do not bar the EEOC from arguing that CRST's policies or practices were deficient in this case; (2) it does not intend to characterize CRST's Lead Drivers as supervisors; and (3) prior rulings in this case do not bar the EEOC from introducing evidence regarding CRST's response to Starke's reported harassment.

### 1.    *Pattern or practice evidence*

CRST argues that the court should bar the EEOC from introducing evidence that is inconsistent with the court's April 30, 2009 Order (docket no. 197), in which the court dismissed the EEOC's pattern or practice claim against CRST.  April 30, 2009 Order at 67.  The EEOC argues that the court's April 30, 2009 Order does not prevent the EEOC from presenting evidence that CRST's response to Starke's harassment complaint was inadequate.  The EEOC further argues that the court's April 30, 2009 Order does not bar it from presenting evidence of CRST's response to other similarly situated women for the purpose of establishing that CRST's response to Starke's complaint was inadequate.

The court agrees with the EEOC that the court's April 30, 2009 Order does not prevent the EEOC from arguing that CRST's response to Starke's individual harassment complaint was inadequate or deficient.  As the court has noted, nothing in the April 30, 2009 Order "should be construed as a final ruling on the individual claims of sexual harassment" brought by the EEOC.  *Id.*  Thus, to the extent CRST wishes to exclude evidence that its response to Starke's complaint was inadequate or deficient, the court shall deny the Motion as to Paragraph 6(a).  The court will address the admissibility of the testimony of other similarly situated women in Section III(I).

10

###### 2.      Lead Drivers as supervisors

The EEOC states in its Resistance that it does not intend to argue that CRST Lead Drivers are supervisors.  Thus, the court shall grant the Motion as to Paragraph 6(b).

###### 3.      CRST's response to reported harassment

CRST argues that the court should bar the EEOC from introducing evidence or making any argument inconsistent with the court's June 18, 2009 Order (docket no. 251), in which the court held that, for an employer to be held liable for sexual harassment by a non-supervisory co-worker, a plaintiff must prove that "her employer knew or should have known of the harassment and failed to take prompt and effective remedial action." June 18, 2009 Order at 4 (quoting *Austin v. Minn. Mining & Mfg. Co.*, 193 F.3d 992, 993 (8th Cir. 1999)).  CRST argues that the "EEOC should be barred from introducing evidence or argument inconsistent with the [c]ourt's ruling that 'CRST may not be held liable for sexual harassment it could not stop and that had already ended by the time it was made aware of it.'"  Motion at 10 (quoting June 18, 2009 Order at 7).

The EEOC argues that CRST is essentially "seeking a directed verdict on its liability before the trial begins" by attempting to bar the EEOC's evidence regarding whether CRST knew of Starke's harassment and responded appropriately.  Resistance at 12.  The EEOC further acknowledges that it will have to prove at trial that CRST knew or should have known of Starke's harassment and failed to take prompt and effective remedial action.

The court agrees with the EEOC.  Nothing in the court's June 18, 2009 Order prevents the EEOC from presenting evidence regarding CRST's knowledge of Starke's harassment and response to that harassment.  The court's statement that CRST could not be held liable for harassment that it could not stop and that had already ended was in reference to the claims of eleven women.  The court dismissed those claims in the June 18, 2009 Order for lack of evidence that CRST knew or had reason to know of the alleged

sexual harassment. However, the court finds that the question of whether CRST knew or should have known about Starke's harassment and responded appropriately is for the jury to decide. Therefore, the EEOC is permitted to present evidence relating to CRST's knowledge of Starke's harassment and response to the harassment. Thus, the court shall deny the Motion as to Paragraph 6(c).

### G. Insufficient, Inadequate or Deficient Sexual Harassment Policies

CRST argues that the court should bar the EEOC from presenting evidence at trial that CRST's "policies, training, or practices are insufficient, inadequate or deficient," Motion at 10, because the court rejected the EEOC's pattern or practice claim in its April 30, 2009 Order. CRST further argues that "[e]vidence and argument should be limited to the individualized facts and legal issues relevant to [Starke's] claim." Motion at 11.

The EEOC argues that evidence that CRST did not act promptly after receiving Starke's complaint is admissible to prove that CRST failed to take prompt remedial action in Starke's individual case. The EEOC states that it intends to present testimony of other women who were subjected to offensive conduct and told by dispatchers to remain on their trucks.

The court finds that the EEOC may present evidence regarding CRST's response to Starke's harassment, but the EEOC may not present evidence or argument that is inconsistent with the court's finding that CRST did not have a pattern or practice of tolerating sexual harassment. Thus, to the extent CRST wishes to exclude evidence that its response to Starke's complaint was inadequate or deficient, the court shall deny the Motion as to Paragraph 7. The court will address the admissibility of the testimony of other similarly situated women in Section III(I).

### H. Negligence in Assigning Smith as Starke's Lead Driver

CRST argues that the court should not allow the EEOC to argue at trial that CRST was negligent in assigning Smith as Starke's Lead Driver because there is no evidence that

CRST had any reason to believe that Smith would harass female drivers. The EEOC argues that CRST's request is overbroad and does not specify what evidence it seeks to exclude. The EEOC states that it does not intend to assert a negligent hiring claim but will argue that CRST should have stopped Starke from riding with Smith.

The court agrees that CRST's request is overbroad. Thus, the court shall deny the Motion as to Paragraph 8. CRST may, of course, object at trial to any evidence it believes is inadmissible.

### I.  Other Female Drivers' Sexual Harassment Complaints and CRST's Responses

#### 1.  Elements of the claim

In order for the EEOC to prevail on its claim of hostile environment sexual harassment, the EEOC must prove the following elements by a preponderance of the evidence: (1) Monika Starke was subjected to sexually offensive conduct or conditions imposed by her male trainer at CRST, Bobb Smith; (2) such conduct was unwelcome; (3) Bobb Smith's conduct was based on Monika Starke's sex; (4) such conduct was sufficiently severe or pervasive that a reasonable person in Monika Starke's position would have found the work environment to be hostile or abusive; (5) at the time that such conduct occurred, and as a result of such conduct, Monika Starke subjectively believed her work environment to be hostile or abusive; (6) CRST knew or should have known of the offensive conduct; and (7) CRST failed, after receiving sufficient notice of possible sexual harassment, to take proper remedial or corrective action to end the hostile environment sexual harassment. *See Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010); *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). The defense is that Monika Starke did not call the dispatcher to report sexual harassment by Bobb Smith or that CRST did not fail to take proper remedial or corrective action after receiving Starke's sexual harassment claim. Supplemental Brief in Support at 1-3.

13

### 2.    Parties' arguments

The EEOC seeks to introduce testimony from fifteen other past or current female drivers concerning their sexual harassment by Lead Drivers and the reaction of their dispatchers to the same.  The EEOC argues that this evidence is relevant (1) to lend credibility to Monika Starke's claim that she reported the harassment to dispatchers and the dispatchers told her to stay on the truck; and (2) to the determination of punitive damages.

CRST argues that evidence from these fifteen other witnesses is not relevant to the merits of Starke's claim that she reported the harassment to her dispatcher and was told to stay on the truck or the issue of punitive damages because none of the fifteen witnesses were harassed by the same driver or spoke to the same dispatchers as Starke and several of the witnesses' harassment occurred long after Starke was allegedly harassed.  CRST further argues that such evidence would unfairly prejudice CRST, confuse the issues for the jury and result in extensive time spent on collateral issues regarding the truth of the witnesses' allegations.

### 3.    Applicable law on admissibility of evidence

In order to be admissible, evidence must be relevant.  The test for relevance is stated in Federal Rule of Evidence 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.*  Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

#### a.    Credibility

"Evidence of harassment of nonparties can be probative in a hostile work environment case, because it can bolster the plaintiff's credibility . . . ." *Bennett v. Nucor*

*Corp.*, 656 F.3d 802, 813 (8th Cir. 2011). "Whether this probative value is substantially outweighed by unfair prejudice is a fact-intensive question that must be answered by the district court . . . ." *Id.*

### b.     *Punitive damages*

"Evidence of harassment of nonparties can be probative in a hostile work environment case, because it can . . . assist the jury . . . as it determines the appropriateness of punitive damages." *Id.* "An incident that is recidivistic can be punished more harshly than an isolated incident." *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004). "The dominant consideration for assessing the constitutionality of a punitive damages award is the reprehensibility of the defendant's conduct." *Id.* at 796. "In assessing reprehensibility . . . it is crucial that a court focus on the conduct related to the plaintiff's claim rather than the conduct of the defendant in general." *Id.* at 797.

> If a jury fails to confine its deliberations with respect to punitive damages to the specific harm suffered by the plaintiff and instead focuses on the conduct of the defendant in general, it may award exemplary damages for conduct that could be the subject of an independent lawsuit, resulting in a duplicative punitive damages award.

*Id.* "'[E]vidence of other acts need not be identical to have relevance in the calculation of punitive damages,' but the conduct must be closely related." *Id.* (alteration in original) (internal citation omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003)).

### 4.     *Analysis*

Starke rode with her trainer, Bobb Smith, from July 8, 2005, until July 15, 2005. Starke alleges that Smith sexually harassed her by making sexually graphic comments. Starke further alleges that, on July 14, 2005, she called her dispatcher to complain about

the harassment and asked to be assigned to a different truck, and the dispatcher[2] told Starke to stay on the truck and deliver the load. Starke claims that, when she called dispatch again later that night, the dispatcher told her that it was too late for him to do anything about her situation and advised her to call back the next day. According to Starke, the following morning she again called dispatch and was removed from the truck.

As discussed in more detail below, the court finds that the proffered evidence of the fifteen other female drivers is not relevant on the issue of whether Monika Starke reported to her dispatcher sexual harassment by her Lead Driver, Bobb Smith, and was told to stay on the truck nor on the issue of punitive damages. The court shall discuss each witness's testimony in turn.

### a.   *Barbara Wallace*

Barbara Wallace drove with her trainer, Michael Conley, from April 7, 2005, to April 15, 2005. Wallace is expected to testify that Conley sexually harassed Wallace by brushing his body against hers. Wallace claims that she subsequently called a dispatcher and asked to be removed from the truck. The dispatcher allegedly told Wallace that CRST would get the truck to a terminal where Wallace could get away from Conley safely and that someone would get back to her during normal business hours. Wallace claims that she left a message for a supervisor the next day and subsequently called almost daily asking to speak to a supervisor but was never able to do so. The dispatcher allegedly also did not route Wallace to a terminal. Wallace claims that, when Conley further harassed her, a weekend dispatcher told her to wait until Monday to get off the truck and that if she left the truck that day it would be considered an abandoned load.

---

[2] Starke does not identify the names of the dispatchers that she spoke to on July 14, 2005. CRST states that it intends to call the dispatchers that were on duty during the time period that Starke claims she called dispatch as witnesses during trial. The dispatchers, also referred to as fleet managers, that CRST identifies in its witness list are Kiley Raychelle, Tony Morella and Chris Sullivan.

###### i.       *Credibility of Monika Starke*

The court finds that Wallace's testimony is irrelevant under Rule 401.  *See* Fed. R.
Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less
probable than it would be without the evidence; and (b) the fact is of consequence in
determining the action.").  Wallace rode with a different driver than Starke, was harassed
in a different manner than Starke and spoke to a different dispatcher than Starke.  The
court has previously noted that "CRST does not operate a unified workplace" and that
CRST "workplaces are largely the cabs of hundreds upon hundreds of semi-truck
tractors." *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 957 (N.D. Iowa
2009).  Thus, Wallace's experience with a different trainer on a different truck and
communication with different dispatchers bears no relevance to Starke's harassment claim.
*See Bennett*, 656 F.3d at 810 (assessing the admissibility of evidence of harassment of
nonparties by determining "whether it's the same place, the same time, the same decision
makers, or whether it's such that the people who are making the decisions reasonably
should have known about the hostile environment"); *McPheeters v. Black & Veatch Corp.*,
427 F.3d 1095, 1102 (8th Cir. 2005) (affirming a district court's exclusion of evidence of
other complaints of discrimination because the evidence did not indicate "what
decisionmakers or departments were involved in those complaints, and thus, the other
complaints were not shown to bear a connection to the employees allegedly involved in
discriminating against [the plaintiff]"); *Callanan*, 75 F.3d at 1298 (affirming a district
court's exclusion of evidence of other alleged acts of discrimination in part because the
witnesses' testimony did not involve the plaintiff's supervisors); *Estes*, 856 F.2d at 1104
(noting that the probative value of a company's treatment of customers to its treatment of
employees would likely be lower if the "employees allegedly responsible for the
discrimination against customers were unconnected with the employees who allegedly fired
[the plaintiff]").  Accordingly, the court finds that Wallace's testimony is inadmissible

under Federal Rule of Evidence 402.   Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Furthermore, the court finds that, even if Wallace's testimony is relevant, any probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues for the jury and undue delay under Rule 403.   *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").   The court has already dismissed the EEOC's pattern or practice claim against CRST.   *See* April 30, 2009 Order.   If the court were to admit Wallace's testimony, the jury might hold CRST responsible for Wallace's sexual harassment claim that is not in issue in the instant action.   *See Jones v. Ark. Game & Fish Comm'n*, 237 F. App'x 119, 122 (8th Cir. 2007) (affirming a district court's exclusion of evidence of a commission employee's racially discriminatory statements made outside of the plaintiff's region and statements within the general community because the vague, isolated incidents that occurred over an imprecise time frame and did not involve the plaintiff's workplace or any decisions regarding the plaintiff were of little probative value and any probative value was "substantially outweighed by the danger of unfair prejudice and confusion of the issues likely to result from the vagueness of the proffered evidence and the lack of its connection to [the plaintiff] or his supervisors").   Additionally, if the court were to admit Wallace's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Wallace's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.   *See Chism v. CNH Am. LLC*, 638 F.3d 637, 642 (8th Cir. 2011) ("The district court . . . may consider and choose to avoid a trial within a trial for each previous incident, because the parties may seek to establish the similarities or lack

18

of similarities and contest the culpability for each incident."); *EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009) (affirming a district court's decision to exclude evidence of another employee's pending allegations of discrimination because "the evidence consisted of little more than allegations with limited probative value and because it would have required extensive examination of wholly collateral issues regarding not only the specifics of [the nonparty] allegations, but also the truth and merits of those allegations").

### ii.    *Punitive damages*

Finally, the court finds that Wallace's testimony is not admissible to prove punitive damages. The court finds that the probative value of Wallace's testimony to the issue of punitive damages is low because Wallace's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based. As discussed above, Wallace was not driving with the same driver as Starke and did not speak to the same CRST dispatchers as Starke. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 424 (holding that the state court erred in admitting evidence relating to claims that were not similar to the plaintiff's claim and stating that "[t]he reprehensibility guidepost does not permit courts to expand the scope of the case so that a defendant may be punished for any malfeasance"); *cf. Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 575-76 (8th Cir. 1997) (affirming the district court's admission of evidence that the plaintiff's supervisor and store manager had harassed other women as relevant to determining punitive damages). Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Wallace that are not in issue in the instant action. *See Philip Morris USA v. Williams*, 549 U.S. 346, 357 (2007) (holding that a jury may not punish a defendant for harm caused to individuals other than the plaintiff and that courts must protect the defendant against any significant risk that a jury will punish the defendant for causing harm to nonparties as opposed to considering such evidence to determine

reprehensibility); *Stogsdill v. Healthmark Partners, LLC*, 377 F.3d 827, 834 (8th Cir. 2004) (finding that the jury may have based its punitive damages award on evidence that was not related to the conduct that harmed the plaintiff and reducing the punitive damages award).  Thus, the court shall exclude the testimony of Barbara Wallace.

### b.    *Valerie Montoya*

Valerie Montoya drove with her co-driver, Zai Adams, from about April 19, 2005, to April 25, 2005.  Montoya is expected to testify that Adams propositioned her for sex and physically assaulted her.  Montoya claims she called her dispatcher, Michael Wuestenberg, late on April 21 or early on April 22, 2005, to report Adams's behavior. According to Montoya, Wuestenberg told her to "hang in there."  EEOC's Supplemental Resistance at 3.  Allegedly, Adams then physically assaulted Montoya again on April 23, 2005, and the sheriff's department helped Montoya get off the truck.

### i.    *Credibility of Monika Starke*

The court finds that Montoya's testimony is irrelevant under Rule 401.  Montoya rode with a different driver, experienced different conduct and spoke to a different dispatcher than Starke.    Thus, Montoya's experiences have no relevance to the circumstances underlying Starke's claim.  *See Bennett*, 656 F.3d at 810;  *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Montoya's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Montoya's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Montoya's testimony, the jury might hold CRST responsible for Montoya's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122. The danger of unfair prejudice is particularly high given the severity of the conduct that Montoya allegedly experienced.   Additionally, if the court were to admit Montoya's

20

testimony, CRST would likely present witnesses and evidence to challenge the veracity of Montoya's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial. *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Montoya's testimony is not admissible to prove punitive damages. The court finds that the probative value of Montoya's testimony to the issue of punitive damages is low because Montoya's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based. As discussed above, Montoya was not driving with the same driver as Starke and did not speak to the same CRST dispatchers. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Montoya that are not in issue in the instant action. *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832. Thus, the court shall exclude the testimony of Valerie Montoya.

### c.    *Wanda Hasbell*

Wanda Hasbell drove with her trainer, Wesley Hess,[3] from May 7, 2005, until May 16, 2005. Hasbell is expected to testify that Hess made sexually explicit remarks to her and propositioned her for sex. Hasbell allegedly called CRST's 1-800 number to report Hess's behavior. According to Hasbell, the CRST representative that answered Hasbell's call told Hasbell that she needed to get back on the truck and that the only way the representative could get Hasbell home would be to take a load through Texas and then drop Hasbell off in Oklahoma. Hasbell claims that she refused to get back on the truck, although she told the CRST representative that she was not in any immediate danger, and

---

[3] Hasbell could not remember her trainer's name, but CRST records show it was Hess.

Hasbell's friend paid for Hasbell to take a bus home to Oklahoma.

### i.   Credibility of Monika Starke

The court finds that Hasbell's testimony is irrelevant under Rule 401. Hasbell rode with a different driver than Starke. Additionally, instead of contacting her dispatcher, Hasbell used CRST's 1-800 number to report Hess's conduct. Furthermore, the CRST representative did not simply tell Hasbell to stay on the truck but, rather, gave her a route home via her trucking route. Thus, Hasbell's experiences have no relevance to the circumstances underlying Starke's claim. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Hasbell's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Hasbell's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403. If the court were to admit Hasbell's testimony, the jury might hold CRST responsible for Hasbell's sexual harassment claim that is not in issue in the instant action. *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Hasbell's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Hasbell's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial. *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.   Punitive damages

The court finds that Hasbell's testimony is not admissible to prove punitive damages. The court finds that the probative value of Hasbell's testimony to the issue of punitive damages is low because Hasbell's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based. As discussed above, Hasbell was not driving with the same driver as Starke and did not speak to the same CRST employees or

report her harassment through the same channels.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Hasbell that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Wanda Hasbell.

### d.    Angela Lesmeister

Angela Lesmeister drove for CRST from October 20, 2005, to December 1, 2005, during which time she was allegedly harassed by two co-drivers, "Brad" and another co-driver that Hasbell does not remember but the EEOC asserts may be Richard Stansell or William Lopez.  Lesmeister is expected to testify that, after Brad asked to sleep with Lesmeister, Lesmeister sent a Qualcomm[4] message to her dispatcher, whose name she does not remember.  According to Lesmeister, she called her dispatcher the next morning, and the dispatcher said he was sorry that Brad harassed her but she would have to assume that such situations would happen as long as she worked at CRST because she is good-looking. The dispatcher allegedly asked Lesmeister if she had handled the situation and she told the dispatcher that she would give Brad another try.  Lesmeister claims that, when Brad tried to get into bed with her again, Lesmeister sent her dispatcher a message saying that she would not tolerate Brad's behavior.  According to Lesmeister, when her next co-driver also tried to get into bed with her, her dispatcher suggested that she may be the one with

---

[4]    A Qualcomm is a device on all trucks that allows drivers to communicate directly with fleet managers while the drivers are on the road.  Qualcomm messages are similar to emails but are not private; the other driver on the truck may be able to read them.  They are also prone to system shut-downs and other delays.

*EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 944 (N.D. Iowa 2009).

the problem since he had received no other complaints about the two drivers.  Lesmeister claims that she then quit CRST and had a friend pick her up in Arizona.

### i.   *Credibility of Monika Starke*

The court finds that Lesmeister's testimony is irrelevant under Rule 401. Lesmeister rode with different drivers than Starke and rode on a different truck than Starke.  Additionally, because Lesmeister could not recall her dispatcher's name, the court cannot conclude that Lesmeister communicated with the same dispatcher as Starke. Finally, Lesmeister does not allege that her dispatcher told her to stay on the truck. Responding to the dispatcher's question about Brad, Lesmeister said she would give him another try.  Regarding the second co-driver, the dispatcher questioned the cause of the complaint, but the description of Lesmeister's anticipated testimony does not allege that the dispatcher refused to help Lesmeister or ordered her to remain on the truck.  Thus, Lesmeister's experiences have no relevance to the circumstances underlying Starke's claim.  *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Lesmeister's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Lesmeister's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Lesmeister's testimony, the jury might hold CRST responsible for Lesmeister's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122.  Additionally, if the court were to admit Lesmeister's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Lesmeister's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

## ii.     Punitive damages

The court finds that Lesmeister's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Lesmeister's testimony to the issue of punitive damages is low because Lesmeister's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Lesmeister was not driving with the same driver or communicating with the same dispatcher as Starke and the dispatcher did not respond to the complaint in the same way as Starke's dispatchers.  *See State Farm Mut*. *Auto*. *Ins*. *Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Lesmeister that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Angela Lesmeister.

### e.     Mary Bender

Mary Bender drove with Richard Booze from April 2007 until July 26, 2007.  Booze was an owner-operator/independent contractor for CRST.  Bender is expected to testify that, after Booze repeatedly touched her, she called the CRST Safety Department.  The Safety Department allegedly told Bender that, if she felt threatened, she should call 911, otherwise she should "just deal with it."  EEOC's Supplemental Resistance at 6.  According to Bender, a few days later she reported Booze to her terminal manager, Alvin Hoggard, who spoke to Lisa Laveck in Human Resources.  Bender claims that Laveck spoke with Bender and told her to speak with her dispatcher, Travis Butler, who would help her get home.  Butler allegedly told Bender that the best way to get Bender home safely and to make sure Booze paid her would be for Bender to take a load to North Carolina with Booze.

### i.     Credibility of Monika Starke

The court finds that Bender's testimony is irrelevant under Rule 401.  Bender rode

25

with a different driver than Starke and rode on a different truck than Starke.  Additionally, the events about which Bender would testify happened approximately two years after the events giving rise to Starke's claim.  Furthermore, Bender called the CRST Safety Department instead of her dispatcher.  When she eventually spoke to Butler, he did not order her to stay on the truck and deliver the load.  Instead, Butler offered Bender a way to get home and receive her pay from Booze, who was an independent contractor.  Thus, Bender's experiences have no relevance to Starke's claims.  *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Bender's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Bender's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Bender's testimony, the jury might hold CRST responsible for Bender's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Bender's testimony, CRST would likely present witnesses or evidence to challenge the veracity of Bender's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Bender's testimony is not admissible to prove punitive damages. The court finds that the probative value of Bender's testimony to the issue of punitive damages is low because Bender's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Bender was not driving with the same driver as Starke and did not initially report Booze's conduct through her dispatcher. Additionally, Bender's dispatcher did not respond to the complaint in the same way as

Starke's dispatchers and her harassment occurred approximately two years after Starke's harassment. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Bender that are not in issue in the instant action. *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832. Thus, the court shall exclude the testimony of Mary Bender.

### f.  Joyce Toppin

Joyce Toppin drove with Earnest Wade from approximately April 19, 2007 until May 1, 2007. Toppin is expected to testify that, around April 23 or 24, 2007, Wade touched Toppin and asked her to shower with him. According to Toppin, she then reported the harassment to her dispatcher, Michael Wuestenberg. Toppin claims that, when she told Wuestenberg that she needed to get off the truck, Wuestenberg "told Toppin to work something out and try to deliver the load." EEOC's Supplemental Resistance at 6. Wade allegedly continued to touch Toppin and make sexually explicit comments to her, and Toppin again reported Wade to Wuestenberg. Toppin claims that she also spoke to Andrew, Jeff and Tom, who she believes are dispatchers, and Lisa Laveck in Human Resources. One of the dispatchers allegedly told Toppin that she could take a bus from New York to the CRST terminal in Carlisle, Pennsylvania, or that CRST might pay for her gas if she arranged for someone to pick her up and take her home. Laveck allegedly suggested that Toppin get a recorder so that she would have proof of the harassment. According to Toppin, CRST then paid for her to stay in a hotel where her friends later picked her up.

### i.  Credibility of Monika Starke

The court finds that Toppin's testimony is irrelevant under Rule 401. Toppin rode with a different driver than Starke, rode on a different truck than Starke and communicated

with different dispatchers than Starke.  Additionally, the events about which Toppin would testify happened nearly two years after the events giving rise to Starke's claim.  Thus, Toppin's experiences have no relevance to Starke's claims.  *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Toppin's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Toppin's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Toppin's testimony, the jury might hold CRST responsible for Toppin's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122.  Additionally, if the court were to admit Toppin's testimony, CRST would likely present witnesses or evidence to challenge the veracity of Toppin's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

## ii.    Punitive damages

The court finds that Toppin's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Toppin's testimony to the issue of punitive damages is low because Toppin's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Toppin was not driving with the same driver as Starke, did not communicate with the same dispatcher as Starke and Toppin's harassment occurred nearly two years after Starke's harassment.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Toppin that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus,

28

the court shall exclude the testimony of Joyce Toppin.

### g.   *Diana Chester*

Diana Chester trained with William Eldridge from May 13, 2007, through May 20, 2007.  Chester is expected to testify that, after Eldridge made sexually explicit comments to her, she called her husband, another CRST driver, on either May 15 or May 16, 2007.  Chester's husband allegedly called his dispatcher, Sue Yorgensen, to report the sexual harassment.  According to Chester, Yorgensen then called her and told her that she would talk to Chester's dispatcher, Tony Bivens, and report the harassment to him.  Chester allegedly continued to speak to Yorgensen over the coming days, and Yorgensen told Chester that Yorgensen would get Chester off the truck.  Chester allegedly said that she wanted to get off the truck right away, but Yorgensen told Chester that if she left the truck immediately she would have no way to get home.  Chester claims that she got off the truck on May 20, 2007.

### i.   *Credibility of Monika Starke*

The court finds that Chester's testimony is irrelevant under Rule 401.  Chester rode with a different driver than Starke, rode on a different truck than Starke and communicated with different dispatchers than Starke.  Additionally, the events about which Chester would testify happened approximately two years after the events giving rise to Starke's claim.  Furthermore, Chester does not assert that either Yorgensen or Bivens ordered her to stay on the truck and deliver a load.  Instead, Yorgensen told Chester that she would remove Chester from the truck and asked her if she could wait to get off the truck until the truck arrived in Kansas City.  Thus, Chester's experiences have no relevance to Starke's claims.  *See Bennett*, 656 F.3d at 810;  *McPheeters*, 427 F.3d at 1102;  *Callanan*, 75 F.3d at 1298;  *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Chester's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Chester's testimony is relevant, the

probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Chester's testimony, the jury might hold CRST responsible for Chester's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Chester's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Chester's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Chester's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Chester's testimony to the issue of punitive damages is low because Chester's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Chester was not driving with the same driver as Starke and did not communicate with the same dispatchers as Starke.  Additionally, Chester's dispatchers responded differently to her harassment claims than Starke's dispatchers and her harassment occurred approximately two years after Starke's harassment.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Chester that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Diana Chester.

### h.    *Yvonne Fortner*

Yvonne Fortner trained with Matt Allen from June 12, 2007, until June 23, 2007. Fortner is expected to testify that Allen began harassing her on the first day she started

riding with him, and Fortner left a message for her dispatcher, Betty Naplin, reporting the harassment.  Naplin allegedly never responded to this initial complaint, and it took several days for Fortner to speak to Naplin.  According to Fortner, Naplin told her that, to get another driver, Fortner would have to go home and it would take time to find another driver.  Naplin allegedly suggested that Fortner simply put up with the situation. According to Fortner, she then complained to Naplin's supervisor.  Fortner claims that, before the supervisor took any action, Allen threw Fortner off the truck in Oklahoma.

### i.     *Credibility of Monika Starke*

The court finds that Fortner's testimony is irrelevant under Rule 401.  Fortner rode with a different driver than Starke, rode on a different truck than Starke and communicated with a different dispatcher than Starke.  Additionally, the events about which Fortner would testify happened approximately two years after the events giving rise to Starke's claim.  Furthermore, Fortner does not assert that Naplin ordered her to stay on the truck and deliver a load.  Instead, Naplin told Fortner that Fortner would have to go home to wait for another driver and suggested that Fortner put up with the situation.  Thus, Fortner's experiences have no relevance to Starke's claims.  *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Fortner's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Fortner's testimony is admissible, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Fortner's testimony, the jury might hold CRST responsible for Fortner's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Fortner's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Fortner's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and

resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Fortner's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Fortner's testimony to the issue of punitive damages is low because Fortner's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Fortner was not driving with the same driver as Starke and did not communicate with the same dispatchers as Starke.  Additionally, Fortner's dispatcher responded differently to her harassment claim than Starke's dispatchers and her harassment occurred approximately two years after Starke's harassment.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Fortner that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Yvonne Fortner.

### i.    *Keirston Alleva*

Keirston Alleva trained with Arthur Miles from August 20, 2007, through September 18, 2007.  Alleva is expected to testify that, after approximately one week of Miles harassing her, Alleva called her dispatcher, Sue Yorgensen, to report the harassment.  Yorgensen allegedly told Alleva that she could not get another trainer for Alleva and, since Alleva only had two and a half weeks of training left, Yorgensen advised that Alleva "just stick it out."  EEOC's Supplemental Resistance at 9.

### i.    *Credibility of Monika Starke*

The court finds that Alleva's testimony is irrelevant under Rule 401.  Alleva rode with a different driver than Starke, rode on a different truck than Starke and communicated

with a different dispatcher than Starke.  Additionally, the events about which Alleva would testify happened over two years after the events giving rise to Starke's claim. Furthermore, Alleva does not assert that Yorgensen ordered her to stay on the truck and deliver a load.  Instead, Yorgensen told Alleva that she could not get another trainer to Alleva's location and suggested that Alleva stick it out for the remaining two and a half weeks of her training.  Thus, Alleva's experiences have no relevance to Starke's claims. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Alleva's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Alleva's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Alleva's testimony, the jury might hold CRST responsible for Alleva's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Alleva's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Alleva's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Alleva's testimony is not admissible to prove punitive damages. The court finds that the probative value of Alleva's testimony to the issue of punitive damages is low because Alleva's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Alleva was not driving with the same driver as Starke and did not communicate with the same dispatchers as Starke. Additionally, Alleva's dispatcher responded differently to her harassment claim than

Starke's dispatchers and her harassment occurred over two years after Starke's harassment. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Alleva that are not in issue in the instant action. *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832. Thus, the court shall exclude the testimony of Keirston Alleva.

### j.    Jammie Scott

Jammie Scott rode with Mike Robertson from May 2005 through June 2005. Scott is expected to testify that Robertson subjected her to unwanted touching, comments and propositions. According to Scott, in early May 2005, she reported the harassment to her dispatcher.[5]  The dispatcher allegedly told Scott that he would "handle it," EEOC's Supplemental Resistance at 10, when they drove through Cedar Rapids, Iowa, and warned her that quitting would result in a charge of stealing the truck. Scott claims that, at the time, she was not near Cedar Rapids.

### i.    Credibility of Monika Starke

The court finds that Scott's testimony is irrelevant under Rule 401. Scott rode with a different driver than Starke, rode on a different truck than Starke and communicated with a different dispatcher than Starke. Additionally, Scott does not assert that her dispatcher ordered her to stay on the truck and deliver a load. Instead, Scott's dispatcher told her that he would handle the situation when she got back to Cedar Rapids. Thus, Scott's experiences have no relevance to Starke's claims. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Scott's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Scott's testimony is relevant, the probative

---

[5] Scott could not recall her dispatcher's name, but CRST's records show that Scott Nelson was Scott's dispatcher.

value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Scott's testimony, the jury might hold CRST responsible for Scott's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122.  Additionally, if the court were to admit Scott's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Scott's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    *Punitive damages*

The court finds that Scott's testimony is not admissible to prove punitive damages. The court finds that the probative value of Scott's testimony to the issue of punitive damages is low because Scott's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Scott was not driving with the same driver as Starke, did not communicate with the same dispatcher as Starke and  Scott's dispatcher responded differently to her harassment claim than Starke's dispatchers.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Scott that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Jammie Scott.

### k.    *Ramona Villarreal*

Ramona Villarreal drove with John DeJong from August 5, 2005, through August 25, 2005.  Villarreal is expected to testify that DeJong made sexually explicit comments to her and physically assaulted her.  According to Villarreal, when she called her dispatcher, Pat, to report DeJong's actions and asked to be removed from the truck, the dispatcher stated that CRST would route her with someone else when she made it back to

the terminal.  Villarreal claims that, after she was not routed to the terminal, Villarreal called another dispatcher, Brian, who also told her to wait until she got back to the terminal to be re-routed.  DeJong then allegedly physically assaulted Villarreal.  According to Villarreal, CRST routed her to Puyallup, Washington, after she reported the physical assault to another dispatcher.

### i.    Credibility of Monika Starke

The court finds that Villarreal's testimony is irrelevant under Rule 401.  Villarreal rode with a different driver than Starke, rode on a different truck than Starke and communicated with different dispatchers than Starke.  Additionally, Villarreal does not assert that her dispatchers ordered her to stay on the truck and deliver the load.  Instead, Villarreal's dispatchers told her that she would be re-routed with a different driver when she returned to the terminal.  Thus, Villarreal's experiences have no relevance to Starke's claims. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Villarreal's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Villarreal's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Villarreal's testimony, the jury might hold CRST responsible for Villarreal's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122.  The danger of prejudice is heightened because of the severity of the harassment Villarreal experienced.  Additionally, if the court were to admit Villarreal's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Villarreal's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.    Punitive damages

Finally, the court finds that Villarreal's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Villarreal's testimony to the issue of punitive damages is low because Villarreal's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Villarreal was not driving with the same driver as Starke, did not communicate with the same dispatcher as Starke and Villarreal's dispatchers responded differently to her harassment claim than Starke's dispatchers.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Villarreal that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Ramona Villarreal.

### l.    Cathy Shaw

Cathy Shaw drove with her trainer, Larry Patterson, from February 17, 2006, until March 2, 2006.  Shaw is expected to testify that Patterson sexually harassed her during her first night on the truck.  She allegedly reported the harassment to her dispatcher, James Hoover, who said he would take action to help Shaw but never did.  According to Shaw, after several follow-up attempts to contact Hoover, Hoover informed Shaw that she was being assigned to a new dispatcher, Brian Brejcha.  Shaw allegedly complained to Brejcha on several occasions, but he did not take action to get Shaw off the truck.  Shaw claims that she eventually got off the truck when Patterson went on home time.

### i.    Credibility of Monika Starke

The court finds that Shaw's testimony is irrelevant under Rule 401.  Shaw rode with a different driver than Starke, rode on a different truck than Starke and communicated with different dispatchers than Starke.  Additionally, Shaw does not assert that her dispatchers

37

ordered her to stay on the truck and deliver the load. Instead, Shaw's dispatchers told her that they would assist her and subsequently failed to act. Thus, Shaw's experiences have no relevance to Starke's claims. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Shaw's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Shaw's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403. If the court were to admit Shaw's testimony, the jury might hold CRST responsible for Shaw's sexual harassment claim that is not in issue in the instant action. *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Shaw's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Shaw's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial. *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.   Punitive damages

The court finds that Shaw's testimony is not admissible to prove punitive damages. The court finds that the probative value of Shaw's testimony to the issue of punitive damages is low because Shaw's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based. As discussed above, Shaw was not driving with the same driver as Starke, did not communicate with the same dispatcher as Starke and Shaw's dispatchers responded differently to her harassment claim than Starke's dispatchers. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Shaw that are not in issue in the instant action. *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d

at 832.  Thus, the court shall exclude the testimony of Cathy Shaw.

### m.     *Tracye Traylor*

Tracye Traylor rode with Robert Yipe from August 3, 2006, through August 6, 2006.  Traylor is expected to testify that Yipe showed her sexually explicit pictures and exposed himself to her.  According to Traylor, when she called her dispatcher, whose name she could not remember, to report the harassment, the dispatcher told Traylor he would get her off the truck, but he did not remove her from the truck on the day of the report or the next day.  Traylor claims that she also called CRST's 1-800 number and reported that dispatch had not taken her off the truck.  Traylor was allegedly taken off the truck three days after her initial complaint.

### i.     *Credibility of Monika Starke*

The court finds that Traylor's testimony is irrelevant under Rule 401.  Traylor rode with a different driver than Starke, rode on a different truck than Starke and communicated with a different dispatcher than Starke.  Additionally, Traylor's harassment took place over one year after the events giving rise to Starke's harassment claim.  Furthermore, Traylor does not assert that her dispatcher ordered her to stay on the truck and deliver the load. Instead, Traylor's dispatcher told her that he would assist her and got her off the truck three days later.  Thus, Traylor's experiences have no relevance to Starke's claims.  *See Bennett*, 656 F.3d at 810;  *McPheeters*, 427 F.3d at 1102;  *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.  Accordingly, the court finds that Traylor's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Traylor's testimony is admissible, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.  If the court were to admit Traylor's testimony, the jury might hold CRST responsible for Traylor's sexual harassment claim that is not in issue in the instant action.  *See Jones*, 237 F. App'x at 122.

Additionally, if the court were to admit Traylor's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Traylor's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.  *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii.     *Punitive damages*

The court finds that Traylor's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Traylor's testimony to the issue of punitive damages is low because Traylor's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Traylor was not driving with the same driver as Starke and did not communicate with the same dispatcher as Starke.  Additionally, Traylor's dispatcher responded differently to her harassment claim than Starke's dispatchers and she was harassed over one year after Starke was harassed.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Traylor that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Tracye Traylor.

### n.     *Doris Tiberio*

Doris Tiberio rode with Brian Heeney from May 11, 2007, through June 7, 2007.  Tiberio is expected to testify that, on approximately May 18, 2007, Heeney sexually assaulted her.  Tiberio allegedly reported the assault to her dispatcher, Lisa Seipel.  Seipel allegedly told Tiberio she would take care of the situation, but Seipel did not speak to Tiberio again.  Tiberio claims that she also reported the assault to the CRST safety manager, but the safety manager subsequently forgot about the report.  According to Tiberio, she then drove with another driver, Daniel Kostner, who harassed her.  Tiberio

allegedly called Heeney's dispatcher, Bill McGuire, to report the harassment, and McGuire said he would take care of it.   McGuire allegedly did not take action in response to Tiberio's complaint.

### i.      *Credibility of Monika Starke*

The court finds that Tiberio's testimony has is irrelevant under Rule 401.   Tiberio rode with different drivers than Starke, rode on a different truck than Starke and communicated with different dispatchers than Starke.   Additionally, Tiberio's sexual assault took place approximately two years after the events giving rise to Starke's harassment claim.   Furthermore, Tiberio does not assert that her dispatchers ordered her to stay on the truck and deliver the load.   Instead, Tiberio's dispatchers told her that they would assist her and failed to take action.   Thus, Tiberio's experiences have no relevance to Starke's claims.   *See Bennett*, 656 F.3d at 810;   *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104.   Accordingly, the court finds that Tiberio's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Tiberio's testimony is relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403.   If the court were to admit Tiberio's testimony, the jury might hold CRST responsible for Tiberio's sexual harassment claim that is not in issue in the instant action.   *See Jones*, 237 F. App'x at 122. The risk of unfair prejudice is heightened because of the severity of the conduct Tiberio experienced.   Additionally, if the court were to admit Tiberio's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Tiberio's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial.   *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

41

### ii.      Punitive damages

The court finds that Tiberio's testimony is not admissible to prove punitive damages.  The court finds that the probative value of Tiberio's testimony to the issue of punitive damages is low because Tiberio's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based.  As discussed above, Tiberio was not driving with the same driver as Starke and did not communicate with the same dispatchers as Starke.  Additionally, Tiberio's dispatchers responded differently to her harassment claim than Starke's dispatchers and she was harassed approximately two years after Starke was harassed.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76.  Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Tiberio that are not in issue in the instant action.  *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d at 832.  Thus, the court shall exclude the testimony of Doris Tiberio.

### o.      Veronica Mora

Veronica Mora trained with Gerard Blue from August 6, 2008, until August 23, 2008.  Mora is expected to testify that, after Blue made sexually explicit comments to Mora, she reported the harassment to her dispatcher, Lance Riley, sometime during the week of August 8, 2008.  Riley allegedly told Mora that there was nothing he could do about Blue's behavior and that it would take too long for him to get another trainer.

### i.      Credibility of Monika Starke

The court finds that Mora's testimony is irrelevant under Rule 401.  Mora rode with a different driver than Starke, rode on a different truck than Starke and communicated with a different dispatcher than Starke.  Additionally, Mora's sexual harassment took place over three years after the events giving rise to Starke's harassment claim.  Furthermore, Mora does not assert that Riley ordered her to stay on the truck and deliver a load.  Instead,

42

Riley told her that there was nothing he could do about Blue's behavior and told her that it would take a long time to get another trainer. Thus, Mora's experiences have no relevance to Starke's claims. *See Bennett*, 656 F.3d at 810; *McPheeters*, 427 F.3d at 1102; *Callanan*, 75 F.3d at 1298; *Estes*, 856 F.2d at 1104. Accordingly, the court finds that Mora's testimony is inadmissible under Rule 402.

Furthermore, the court finds that, even if Mora's testimony is relevant, the probative value of the testimony is outweighed by the danger of unfair prejudice and confusion of the issues for the jury under Rule 403. If the court were to admit Mora's testimony, the jury might hold CRST responsible for Mora's sexual harassment claim that is not in issue in the instant action. *See Jones*, 237 F. App'x at 122. Additionally, if the court were to admit Mora's testimony, CRST would likely present witnesses and evidence to challenge the veracity of Mora's testimony, which would pose a significant danger of confusing the issues for the jury, prolonging the instant trial and resulting in a separate trial within a trial. *See Chism*, 638 F.3d at 642; *UMB Bank Fin. Corp.*, 558 F.3d at 794.

### ii. *Punitive damages*

The court finds that Mora's testimony is not admissible to prove punitive damages. The court finds that the probative value of Mora's testimony to the issue of punitive damages is low because Mora's testimony is not sufficiently similar to the conduct upon which Starke's complaint is based. As discussed above, Mora was not driving with the same driver as Starke and did not communicate with the same dispatcher as Starke. Additionally, Mora's dispatcher responded differently to her harassment claim than Starke's dispatchers and she was harassed over three years after Starke was harassed. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 432; *cf. Kimzey*, 107 F.3d at 575-76. Furthermore, any probative value of the evidence is outweighed by the potential for unfair prejudice because the jury may be inclined to punish CRST for harms to Mora that are not in issue in the instant action. *See Philip Morris USA*, 549 U.S. at 357; *Stogsdill*, 377 F.3d

43

at 832.  Thus, the court shall exclude the testimony of Veronica Mora.

### 5.    *Evidence in relation to employer's motive*

The EEOC argues that the fifteen witnesses' testimony is admissible to bolster the credibility of Starke's testimony that her dispatchers told her to stay on the truck by showing that CRST dispatchers told other women to stay on their trucks and deliver loads. The EEOC relies on *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir. 1988), *overruled in part on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153 (8th Cir. 1990), in support of its argument that evidence of an employer's conduct toward similarly situated employees is particularly relevant to discrimination cases because discriminatory intent is difficult to prove without such evidence.

The instant action is distinguishable from *Estes* and *Hawkins* because the issue in *Estes* and *Hawkins* was whether the employer had an improper motive.  In this case, the EEOC must prove that "CRST knew or should have known of the harassment, and that CRST failed to take proper remedial action."  EEOC's Supplemental Resistance at 15 (citing *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007)).  CRST's motive is not in issue in the instant action.  The fact the EEOC is attempting to establish with the fifteen witnesses' testimony is whether CRST dispatchers did, in fact, tell Starke to stay on the truck and deliver her load, not whether the CRST dispatcher was acting with a discriminatory or unlawful motive.  *See Berry v. Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998) ("The issue in [discrimination] cases . . . is motive . . . .  The present case is different.  The primary question is whether [the defendant] did what [the plaintiff] claims . . . , not his motive in doing so.").  Thus, the court finds that the circumstances supporting admissibility in employment discrimination cases as outlined in *Estes* and *Hawkins* are not present in the instant action case.

**6.      Summary**

After thoroughly reviewing the testimony of each of the EEOC's proposed witnesses, determining whether each witness's testimony is relevant and balancing the probative value of each witness's testimony with the danger of unfair prejudice and confusion of the issues, the court finds that the EEOC may not introduce the testimony of its fifteen proposed witnesses at trial.   Thus, the court shall grant the Motion as to Paragraph 9.

### J.  Smith's Disciplinary and Safety Records

CRST argues that the court should bar evidence of Smith's unrelated disciplinary investigations and safety records because they are irrelevant and unfairly prejudicial.   In response, the EEOC states that it does not object to CRST's request because it does not intend to offer evidence of Smith's unrelated disciplinary or safety records unless they become relevant for impeachment purposes or CRST opens the door.  Thus, the court shall grant the Motion as to Paragraph 10.

### K.  CRST's Net Worth and Finances

CRST argues that the court should exclude evidence of CRST's net worth and finances unless and until the EEOC establishes liability and presents sufficient evidence to warrant a punitive damages instruction.   In its response, the EEOC agrees that it will not introduce evidence of CRST's net worth and finances until the court determines that the EEOC has met its burden to produce sufficient evidence to warrant submitting the question of punitive damages to the jury.   At the FPTC, the court and the parties discussed trial management and court procedures regarding evidence relating to punitive damages.   Thus, the court shall grant the Motion as to Paragraph 11.

### L.  CRST's Failure to Call Witnesses

CRST argues that the court should bar the EEOC from referring to CRST's failure to produce witnesses that are not within the court's subpoena power or under CRST's

control, specifically Bobb Smith, because any adverse inference drawn from such failure to call a witness would not be relevant, would be unfairly prejudicial to CRST and would confuse or mislead the jury. The EEOC argues that it does not intend to comment to the jury about CRST's failure to call witnesses outside of its control. The EEOC argues, however, that former employees that CRST has asserted to the EEOC that it represents and has restricted the EEOC's access to are under CRST's control. As discussed at the FPTC, because the EEOC agrees that it will not comment to the jury about CRST's failure to call witnesses outside of its control, the court shall grant the Motion as to Paragraph 12. If a dispute arises as to whether specific witnesses are under CRST's control, the parties may object during trial.

### M. Comparisons with Other EEOC Cases

CRST argues that the court should bar the EEOC from making statements that compare the instant case to previous cases the EEOC has been involved in. In response, the EEOC states that it does not intend to compare the instant case to other EEOC cases. Thus, the court shall grant the Motion as to Paragraph 13.

### N. Lie Detector Tests

CRST argues that the court should bar the EEOC from suggesting that CRST should have required Starke and Smith to take lie detector tests because it is prohibited from requiring, requesting, suggesting or causing any employee to take a lie detector test under the Employee Polygraph Protection Act of 1988. In response, the EEOC states that it does not intend to argue or suggest that CRST should have required Starke and Smith to take lie detector tests. Thus, the court shall grant the Motion as to Paragraph 14.

### IV. CONCLUSION

In light of the foregoing, CRST's Motion in Limine (docket no. 349) is **GRANTED IN PART**, **DENIED AS MOOT IN PART** and **DENIED IN PART**. The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited

subjects.  Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.  If during the presentation of evidence a party believes that a prohibited subject has become admissible, the party may request an opportunity to argue admissibility outside the presence of the jury.

**IT IS SO ORDERED**.

**DATED** this 28th day of January, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA