**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

vs.

CRST VAN EXPEDITED, INC.,

Defendant.

No. 07-CV-95-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . **2**

    A.    *Underlying Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
        1.    *Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
        2.    *The "moving target"* . . . . . . . . . . . . . . . . . . . . . . . **4**
        3.    *Summary judgment rulings* . . . . . . . . . . . . . . . . . . . . **7**
        4.    *Original cost and fee determination* . . . . . . . . . . . . . . **11**
    B.    *Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
    C.    *History on Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
    D.    *Bill of Costs and Motion for Attorneys' Fees* . . . . . . . . . . . . . . . **13**

III.   **MOTION FOR ATTORNEYS' FEES** . . . . . . . . . . . . . . . . . . . . . . . . . **13**

    A.    *Prevailing Party* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
        1.    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . **14**
        2.    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        3.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
            a.    *Single claim versus multiple claims* . . . . . . . . . . . . **17**
            b.    *Judicial determination on the merits* . . . . . . . . . . **19**
            c.    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
    B.    **Christiansburg** *Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
        1.    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . **22**
        2.    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
        3.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

    **C.**    **Reasonable Fees and Out-of-Pocket Expenses** . . . . . . . . . . . . . . **27**
          **1.**    **Parties' arguments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
          **2.**    **Applicable law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**
          **3.**    **Discussion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**
               **a.**    **Attorneys' fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**
                    **i.**    **Prior to appeal** . . . . . . . . . . . . . . . . . . . . . . **31**
                    **ii.**    **Appeal** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**
               **b.**    **Out-of-pocket expenses** . . . . . . . . . . . . . . . . . . . . **36**
               **c.**    **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **37**

**IV.**    **BILL OF COSTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **37**

**V.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **39**

## I. INTRODUCTION

The matters before the court are Defendant CRST Van Expedited, Inc.'s ("CRST") "Bill of Costs" (docket no. 384) and "Motion for an Award of Its Reasonable Attorney[s'] Fees and Out-of-Pocket Expenses Pursuant to 42 U.S.C. § 2000e-5(k)" ("Motion for Attorneys' Fees") (docket no. 386).

## II. RELEVANT PROCEDURAL HISTORY[1]

### A. Underlying Action

**1.**    **Complaint**

On September 27, 2007, the EEOC filed the instant lawsuit on behalf of Monika Starke "and a class of similarly situated female employees of [CRST]." Original Complaint at 1. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC brought suit in its own name "to correct [CRST's] unlawful employment practices on the basis of sex, and to provide appropriate relief to [Starke] and a class of similarly situated

---

[1] For purposes of the instant Order, the court finds it appropriate to provide only an abbreviated history of the case, beginning with the Equal Employment Opportunity Commission's ("EEOC") Original Complaint (docket no. 2) filed on September 27, 2007. A history of the administrative proceedings preceding the Original Complaint is included in the court's August 13, 2009 Order (docket no. 263) at 2-15. A more detailed procedural history and factual background is set forth in *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 665-71 (8th Cir. 2012).

female employees of [CRST] who were adversely affected by such practices." First Amended Complaint ("Complaint") (docket no. 8) at 1.[2] The EEOC generally alleged that Starke and the other similarly situated women "were adversely affected . . . when their lead drivers or team drivers subjected them to sexual harassment and to a sexually hostile working environment based on their gender, and CRST failed to prevent, correct, and protect them." *Id.*

The heart of the Complaint contains the following specific allegations against CRST:

> 7. Since at least July 2005, CRST engaged in unlawful employment practices in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3. Among other things, two of its lead drivers subjected Starke to sexual harassment during their supervision of [her] (including, but not limited to, unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments), which further created a sexually hostile and offensive work environment. CRST is liable for the harm caused by the harassment and the hostile and offensive work environment because of the actions of its lead drivers and because of its failure and refusal to take prompt and appropriate action to prevent, correct, and protect Starke from the harassment and the hostile work environment, culminating in her discharge from employment with CRST.
>
> 8. Other similarly situated female employees of CRST were also subjected to sexual harassment and a sexually hostile and offensive work environment while working for CRST, including among other things, unwelcome sexual conduct, other unwelcome physical touching, propositions for sex, and sexual comments from their lead drivers or team drivers. CRST is liable for harm caused by the harassment and the hostile and offensive work environment because of the actions of its lead drivers or team drivers and because of its failure and refusal to take prompt and appropriate action to prevent,

---

[2] The Complaint, filed on November 16, 2007, corrected a typographical error in the Original Complaint filed on September 27, 2007. *See* April 7, 2008 Order (docket no. 31) at 1 n.1.

correct, and protect its female employees from the harassment and the hostile environment.

9.     The effect of the practices complained of in Paragraphs 7 and 8 above has been to deprive Starke and a class of similarly situated female employees of equal employment opportunities, and to otherwise adversely affect their status as employees, because of sex.

*Id.* at 2-3. The EEOC further alleged that CRST's actions "were intentional" and "done with malice or with reckless indifference to the federally protected rights of Starke and the class of similarly situated female employees." *Id.* at 3.

In the Complaint, the EEOC asked the court for "a permanent injunction enjoining CRST and its officers, successors, and assigns, and all persons in active concert or participation with them, from engaging in sexual harassment [and] any other employment practice which discriminates on the basis of sex." *Id.* at 4. The EEOC further asked the court to "[o]rder CRST to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices." *Id.* Finally, the EEOC asked the court to order CRST to pay Starke and the similarly situated female employees compensatory damages, punitive damages and ordinary costs. *Id.*

On November 30, 2007, CRST filed an Answer (docket no. 11), which denied the allegations in the Complaint and asserted affirmative defenses. On May 1, 2008, CRST filed an Amended Answer (docket no. 36).

### 2.    *The "moving target"*

On February 8, 2008, the court entered a Scheduling Order and Discovery Plan (docket no. 21), setting forth discovery deadlines and establishing a trial ready date of May 15, 2009. By August 2008, the EEOC had still not identified the total number of individuals included in the "class of similarly situated female employees," Complaint at 1, on behalf of whom it sought relief. On August 7, 2008, the EEOC requested that the court modify the Scheduling Order and Discovery Plan to extend the deadline for

identifying medical or psychological expert witnesses. EEOC's Motion to Modify Scheduling Order (docket no. 37). The following day, CRST responded to the EEOC's request, expressing concern that the EEOC had "proposed [no] end date for its identification of class members" and requesting that the court establish a deadline. CRST's Response to EEOC's Motion to Modify Scheduling Order (docket no. 38) at 3. On August 18, 2008, the EEOC replied with a proposed deadline of December 7, 2008, noting that "[t]his is an EEOC pattern-or-practice class action," that it had so far identified "49 class members" and that it expected "that the total class [would] reach between 100 and 150 individuals." EEOC's Response to CRST's Request for Class Member Identification Deadline (docket no. 42) at 1-2. On August 20, 2008, the court established a deadline of October 15, 2008, for the EEOC to disclose the individuals included in the "class." August 20, 2008 Order (docket no. 44) at 3.

On or before October 15, 2008, the EEOC identified approximately 270 allegedly aggrieved individuals.[3] On November 6, 2008, CRST filed the Motion for an Order to Show Cause, in which CRST opined that the EEOC's disclosures included individuals who

---

[3] The number of allegedly aggrieved individuals varied considerably between October 15, 2008, and May 12, 2009. *See* CRST's Motion Under Rule 16(f) for an Order to Show Cause Concerning the EEOC's Identification of Class Members ("Motion for an Order to Show Cause") (docket no. 56) at 2 n.1 (noting that the EEOC's disclosures contained a total of 293 names but that communications with the EEOC's counsel indicated there were 275 allegedly aggrieved individuals); EEOC's November 21, 2008 Corrected List of Class Members (docket no. 68) (listing 274 allegedly aggrieved individuals); EEOC's December 11, 2008 Updated List of Class Members (docket no. 85) (listing 270 allegedly aggrieved individuals); EEOC's January 13, 2009 Updated List of Class Members (docket no. 111) (listing 263 allegedly aggrieved individuals); EEOC's January 22, 2009 Updated List of Class Members (docket no. 121) (listing 253 allegedly aggrieved individuals); EEOC's March 11, 2009 Updated List of Class Members (docket no. 159) (listing 254 allegedly aggrieved individuals, 156 of whom the EEOC was still pursuing relief on behalf of); EEOC's May 12, 2009 Updated List of Class Members (docket no. 224) (listing 255 allegedly aggrieved individuals, 146 of whom the EEOC was still pursuing relief on behalf of). The EEOC's filings subsequent to May 12, 2009, consistently refer to 255 allegedly aggrieved individuals.

had not affirmatively agreed to participate in the lawsuit and individuals the EEOC did not have a good-faith reason to believe were victims of actionable sex discrimination. Thus, CRST requested that the court strike those categories of allegedly aggrieved individuals.

On November 19, 2008, the court denied CRST's Motion for an Order to Show Cause. November 19, 2008 Order (docket no. 66) at 7-8. Specifically, the court accepted the EEOC's representation that "it had a good-faith belief that each and every one of the approximately 270 women disclosed to CRST [had] an actionable claim for sex discrimination." *Id*. at 8. The court, however, warned the EEOC that, "[i]f during the course of discovery CRST discover[ed] evidence that shed[] doubt on the EEOC's representations to the court, CRST [could] file an appropriate motion." *Id*. The court also expressed concern that "CRST might unfairly face a 'moving target' of prospective plaintiffs" and, consequently, the court ordered the EEOC to: (1) immediately file with the court a corrected list of the approximately 270 individuals it disclosed as of October 15, 2008; (2) make all individuals on such list available to CRST for a deposition before the conclusion of discovery on January 15, 2009; and (3) update the allegedly aggrieved individual list as necessary. *Id*. at 8-9.

Although the EEOC complied with the court's directive and filed updated and corrected lists of allegedly aggrieved individuals, it failed to make all of the identified individuals available for deposition before January 15, 2009. Accordingly, on February 19, 2009, consistent with its November 19, 2008 Order, the court barred the EEOC from pursuing relief for any individual not made available for deposition before the deadline. February 19, 2009 Order (docket no. 153). On March 11, 2009, the EEOC filed an Updated List of Class Members, which listed 155 allegedly aggrieved individuals for whom the EEOC was still pursuing relief and 99 individuals who the EEOC alleged were sexually harassed but for whom the EEOC was not pursuing relief based on the court's

February 19, 2009 Order.[4]  On April 16, 2009, the court entered an Order (docket no. 193), which further precluded the EEOC from offering evidence related to the 99 individuals who the EEOC had not produced for deposition.

### 3.      *Summary judgment rulings*

Between April 30, 2009, and August 13, 2009, the court ruled on CRST's various motions for summary judgment.  First, on April 30, 2009, the court granted CRST's "Motion for Summary Judgment on [the] EEOC's Pattern and Practice Claim" (docket no. 150).  April 30, 2009 Order (docket no. 197) at 67.  Specifically, the court held that, to the extent the EEOC asserted a pattern or practice claim, such claim was dismissed with prejudice and, consequently, CRST was liable only to the extent the EEOC could prove individual claims of sexual harassment.  *Id.*

Second, on May 11, 2009, the court granted in part and denied in part CRST's "Motion for Summary Judgment Based on Statute of Limitations and Other Grounds" (docket no. 147).  May 11, 2009 Order (docket no. 223) at 25.  In the May 11, 2009 Order, the court found that the applicable statute of limitations barred the EEOC from seeking relief on behalf of 9 individuals and barred, in part, the EEOC from seeking relief on behalf of another 3 individuals.  *Id.* at 25-26.

Third, on May 13, 2009, the court granted CRST's "Motion for Summary Judgment Based on Judicial Estoppel" (docket no. 144).  May 13, 2009 Order (docket no. 225) at

---

[4] The March 11, 2009 Updated List of Class Members actually listed 156 individuals for whom the EEOC was still pursuing relief and 98 individuals for whom the EEOC was no longer pursuing relief.  The EEOC later noted that the list erroneously included Karen Shank as an individual for whom the EEOC sought individual relief despite the fact that Shank was not offered for deposition.  *See* EEOC's Response to CRST's Motion to Strike (docket no. 187) at 2 n.2.  Accordingly, as of March 11, 2009, there were in fact 99 individuals on the list that CRST had not offered for deposition.  However, as the court explains in note 6, *infra*, the EEOC removed one of those individuals, Lori Essig, from its subsequent Updated Lists of Class Members.  Thus, out of the final 255 claims, 98 were dismissed as a discovery sanction.

14. Specifically, the court found that 3 individuals, including Starke, were judicially estopped from seeking relief from CRST and, furthermore, the EEOC was also barred from seeking relief on their behalf. *Id.*

Fourth, on June 2, 2009, the court granted in part and denied in part CRST's "Motion for Summary Judgment Against the Claims of Certain of the Interveners" (docket no. 145). June 2, 2009 Order (docket no. 249) at 38-39.[5] Specifically, the court concluded that Janet Boot's claims were "frivolous," finding that her claims were barred by the court's previous rulings and, even if they were not, she failed to generate a genuine issue of material fact as to CRST's knowledge of the alleged harassment and failure to take proper remedial action. *Id.* at 17-18. The court also dismissed Remcey Jeunenne Peeples's claims and Nicole Cinquemano's sexual harassment claims, finding that CRST did not have actual or constructive knowledge of the alleged harassment. *Id.* at 23-24, 29. The court further held that the EEOC was barred from seeking relief at trial to the same extent these Plaintiffs-Interveners were barred. *Id.* at 39.

Fifth, on June 18, 2009, the court granted in part and denied in part CRST's "Motion for Summary Judgment Based on Class Members' Failure to Report the Alleged Harassment and/or CRST's Prompt and Effective Response to Reported Harassment" (docket no. 146). June 18, 2009 Order (docket no. 251) at 13. In its June 18, 2009 Order, the court found that the EEOC was barred from seeking relief on behalf of 11 individuals because CRST did not know or have reason to know that they were sexually harassed and 4 individuals because CRST adequately addressed the sexual harassment.

Sixth, on July 6, 2009, the court granted in part and denied in part CRST's "Motion for Summary Judgment Against Class Members Who Did Not Experience Severe or

---

[5] On September 26, 2008, the court granted Janet Boot, Barbara Grant, Cindy Moffett, Remcey Jeunenne Peeples, Starke and Latetsha Thomas's request to intervene. September 26, 2008 Order (docket no. 48) at 7. Because CRST does not request fees or costs from any of these individuals, the court omits the procedural history relating to these Plaintiffs-Interveners.

Pervasive Sexual Harassment" (docket no. 148). July 6, 2009 Order (docket no. 256) at 14. Specifically, in its July 6, 2009 Order, the court found that the EEOC had failed to generate a genuine issue of material fact as to whether 11 individuals had experienced severe or pervasive sexual harassment and, consequently, held that the EEOC was barred from seeking relief on their behalf.

Seventh, on July 9, 2009, the court granted in part and denied in part CRST's "Motion for Summary Judgment Against Class Members Whose Claims Fail on Two or More Grounds" (docket no. 149). July 9, 2009 Order (docket no. 258) at 7. In the July 9, 2009 Order, the court barred the EEOC from seeking relief on behalf of 46 individuals. Specifically, the EEOC conceded that, in light of the court's April 30, 2009 Order dismissing any pattern or practice claim, 4 individuals did not suffer actionable sexual harassment and, accordingly, the court barred the EEOC from seeking relief on behalf of those individuals. The court further found that a reasonable jury could not find 42 individuals suffered from actionable sexual harassment because they did not suffer severe or pervasive sexual harassment and/or there was insufficient evidence to show that CRST knew or should have known that the individuals suffered sexual harassment yet failed to take proper remedial action.

Finally, on August 13, 2009, the court found that the EEOC was barred from seeking relief on behalf of the remaining 67 allegedly aggrieved individuals. August 13, 2009 Order at 39-40. Specifically, the court found that the EEOC "wholly abandoned its statutory duties" as to the remaining 67 allegedly aggrieved individuals because it: (1) failed to investigate such individuals' claims until after the EEOC filed the Complaint; (2) failed to include those individuals as members in the Letter of Determination's "class" until after the EEOC filed the Complaint; (3) failed to make a reasonable cause determination as to the specific allegations of any of the 67 allegedly aggrieved individuals; and (4) did not attempt to conciliate the specific allegations of the 67 allegedly aggrieved

individuals prior to filing the Complaint. *Id.* at 31-32. The court concluded that "dismissal [was] a severe but appropriate remedy." *Id.* at 38.

Thus, in light of the court's findings in its August 13, 2009 Order and in its prior orders, the EEOC was barred from pursuing relief on behalf of all 255 allegedly aggrieved individuals the EEOC had identified and, consequently, the court dismissed the Complaint in its entirety.[6] *Id.* at 40. The court further ordered the EEOC to pay CRST's ordinary

---

[6] Following the court's August 13, 2009 Order, the EEOC was barred from pursuing relief on behalf of: (1) 98 individuals as a discovery sanction, *see* February 19, 2009 Order and April 16, 2009 Order; (2) 9 individuals because of the applicable statute of limitations, *see* May 11, 2009 Order; (3) 3 individuals because of the doctrine of judicial estoppel, *see* May 13, 2009 Order; (4) 3 individuals because their claims were barred by the court's prior rulings or because the EEOC failed to generate a genuine issue of material fact as to CRST's knowledge of the alleged harassment and failure to take proper remedial action, *see* June 2, 2009 Order; (5) 15 individuals because they failed to report the alleged harassment and/or CRST promptly and effectively responded to the reported harassment, *see* June 18, 2009 Order; (6) 11 individuals because the EEOC failed to generate a genuine issue of material fact as to whether such individuals experienced severe or pervasive sexual harassment, *see* July 6, 2009 Order; (7) 46 individuals because they did not suffer severe or pervasive sexual harassment and/or there was insufficient evidence to show that CRST knew or should have known that the individuals suffered sexual harassment yet failed to take proper remedial action, *see* July 9, 2009 Order; and (8) 67 individuals because the EEOC failed to investigate, issue a reasonable cause determination and conciliate their claims, *see* August 13, 2009 Order. Furthermore, the EEOC withdrew its claim on behalf of one individual, Gwen Allen. *See* EEOC's May 22, 2009 Updated List of Class Members (docket no. 237) at 1 n.1 (noting that the EEOC "removed Gwen Allen from the list of class members for whom it seeks relief" because "she requested that [the] EEOC no longer seek relief on her behalf"). Finally, two other individuals, Susan Guy and Sarah Ragland, inexplicably appeared on the EEOC's May 12, 2009 Updated List of Class Members as allegedly aggrieved individuals for whom the EEOC was not seeking relief, although these two individuals did not appear on the EEOC's March 11, 2009 Updated List of Class Members.

The court further notes that, although the court referenced 99 individuals in its April 16, 2009 Order barring the EEOC from pursuing relief on behalf of those individuals it failed to produce for deposition, the EEOC removed one of those individuals, Lori Essig, from its subsequent Updated Lists of Class Members.

Thus, by August 13, 2009, the claims of all 255 allegedly aggrieved individuals for

(continued...)

costs, which CRST could request 10 days after disposition of the entire case. *Id.* Finally, the court determined that CRST was a "prevailing party" as to the EEOC and, pursuant to 42 U.S.C. § 2000e-5(k), CRST could seek attorneys' fees from the EEOC within 20 days after disposition of the entire case. *Id.*

In accordance with the court's August 13, 2009 Order, the Clerk of Court entered a Judgment (docket no. 279) on October 1, 2009, finding the EEOC "takes nothing and this action is dismissed." October 1, 2009 Judgment at 1.

### 4. *Original cost and fee determination*

On October 16, 2009, CRST filed a Bill of Costs (docket no. 280) pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, and, on October 30, 2009, CRST filed a "Motion for Attorneys' Fees and Costs" (docket no. 282) pursuant to 42 U.S.C. § 2000e-5(k). After receiving extensive briefing on the issues, the court awarded CRST $92,842.21 in costs, $4,004,371.65 in attorneys' fees and $463,071.25 in out-of-pocket expenses, for a total of $4,560,285.11. February 9, 2010 Order (docket no. 320) at 39; *see also* February 9, 2010 Judgment (docket no. 321).

## B. *Appeal*

The EEOC appealed the court's dismissal of 107 of its individual claims, and, on May 8, 2012, the Eighth Circuit Court of Appeals affirmed in part, reversed in part and remanded the case to this court for further proceedings. *See CRST*, 679 F.3d at 695. Specifically, the Eighth Circuit Court of Appeals reversed the court's grant of summary judgment on the EEOC's claim on behalf of Starke, finding that the EEOC was not judicially estopped from pursuing relief on behalf of Starke. *Id.* at 682, 695. Furthermore, the Eighth Circuit Court of Appeals reversed the court's grant of summary judgment on the EEOC's claim on behalf of Tillie Jones, finding that the EEOC produced sufficient evidence to create a genuine issue of material fact as to the severity or

---

[6](...continued)
whom the EEOC sought relief had either been dismissed by the court or withdrawn by the EEOC.

pervasiveness of the harassment that Jones allegedly suffered. *Id.* at 687-88, 695. The Eighth Circuit Court of Appeals further vacated, without prejudice, the court's award of attorneys' fees because, "in light of [its] rulings, CRST [was] no longer a 'prevailing' defendant" under 42 U.S.C. § 2000e-5(k). *Id.* at 694-95. Judge Murphy concurred in part and dissented in part. *Id.* at 695-98.

## C. History on Remand

On September 17, 2012, the formal Mandate (docket no. 345) issued and the case returned to this court for further proceedings on the EEOC's claims on behalf of Starke and Jones. On October 11, 2012, the EEOC withdrew its claim on behalf of Jones, explaining that the "law of the case" precluded the EEOC from seeking relief on her behalf because it had not exhausted Title VII's administrative prerequisites as to her claim. Notice of Withdrawal of Claim for Tillie Jones (docket no. 360) at 1.

On February 8, 2013, CRST and the EEOC filed a joint "Motion for Entry of Order of Dismissal" (docket no. 379), in which the parties stated:

> Dismissal is required by (a) the Eighth Circuit [Court of Appeals'] affirmance, with the exception of [the] EEOC's claims on behalf of . . . Jones and . . . Starke, of this [c]ourt's October 1, 2009 Judgment; (b) [the] EEOC's withdrawal on October 11, 2012, of its claim on behalf of . . . Jones on the ground that it was barred by this [c]ourt's Order of August 13, 2009; and (c) [the] EEOC's and CRST's settlement of [the] EEOC's claim on behalf of . . . Starke pursuant to the Settlement Agreement attached to this motion as Exhibit 1. Therefore, all of [the] EEOC's claims have now been resolved.

Motion for Entry of Order of Dismissal at 1 (citation omitted). In the attached Settlement Agreement (docket no. 379-1), CRST agreed to pay $50,000 in settlement of the EEOC's claim on behalf of Starke. The Settlement Agreement further provided:

> 4.     This Agreement does not preclude CRST from pursuing attorney[s'] fees and costs pursuant to the Order of the Eighth Circuit [Court of Appeals] dated May 8, 2012.

> 5.    Further, this Agreement does not preclude either [the] EEOC or CRST from making any arguments relating to CRST's pursuit of attorney[s'] fees and costs, including arguments relating to whether [the] EEOC or CRST is the prevailing party.

Settlement Agreement at 2. On February 8, 2013, the court dismissed the case with prejudice. February 8, 2013 Order (docket no. 380). That same date, the Clerk of Court entered a Judgment (docket no. 381) in accordance with the court's February 8, 2013 Order.

### D. Bill of Costs and Motion for Attorneys' Fees

On March 18, 2013, CRST filed the Bill of Costs and the Motion for Attorneys' Fees. On April 15, 2013, the EEOC filed a Resistance to CRST's Bill of Costs ("Resistance to the Bill of Costs") (docket no. 388), and, on April 16, 2013, the EEOC filed a Resistance to CRST's Motion for Attorneys' Fees ("Resistance to the Motion for Attorneys' Fees") (docket no. 391). On April 30, 2013, CRST filed a Reply to the EEOC's Resistance to the Bill of Costs and Resistance to the Motion for Attorneys' Fees ("CRST's Reply") (docket no. 394). On May 7, 2013, the EEOC filed a Sur-Reply ("EEOC's Sur-Reply") (docket no. 397). Finally, on July 11, 2013, the parties jointly filed a Supplemental Authority (docket no. 398), which attached the United States Supreme Court's recent decision in *Vance v. Ball State University*, 131 S. Ct. 2434 (2013).

Neither party requests oral argument on the Bill of Costs or the Motion for Attorneys' Fees, and the court finds that a hearing is unnecessary. The Bill of Costs and the Motion for Attorneys' Fees are fully submitted and ready for decision.

### III. MOTION FOR ATTORNEYS' FEES

Title 42, United States Code, Section § 2000e-5(k) provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the

Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k). Thus, under the statute, only a "prevailing party" may request attorneys' fees and out-of-pocket expenses. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the United States Supreme Court set forth an additional requirement for prevailing defendants—that is, a prevailing defendant is only entitled to attorneys' fees and out-of-pocket expenses when "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421. If this standard is satisfied, a court may award a prevailing defendant reasonable attorneys' fees and out-of-pocket expenses.

The court shall begin by determining whether CRST is a "prevailing party" within the meaning of 42 U.S.C. § 2000e-5(k). Because the court concludes that it is, the court then turns to consider whether the EEOC's action was frivolous, unreasonable or without foundation under *Christiansburg*. Finally, because the court concludes that the *Christiansburg* standard is met, the court shall turn to consider whether CRST's requested attorneys' fees and out-of-pocket expenses are reasonable.

### A. Prevailing Party

#### 1. Parties' arguments

In the Brief in Support of the Motion for Attorneys' Fees, CRST notes that the court previously determined that CRST was a prevailing party and awarded CRST its reasonable attorneys' fees and expenses. CRST contends that, following the Eighth Circuit Court of Appeals' decision and the remanded proceedings, it is still "the prevailing party as to all [of the] EEOC['s] claims except one claim on behalf of . . . Starke." Brief in Support of the Motion for Attorneys' Fees (docket no. 386-1) at 12. CRST argues that, under *Fox v. Vice*, ___ U.S. ___, 131 S. Ct. 2205 (2011), a defendant need not prevail on all claims in order to qualify as a prevailing party. Rather, "[a] defendant is entitled to an award of its reasonable fees as to all claims on which it prevailed provided those claims were not closely related to the claim or claims on which it did not prevail." Brief in Support of the

14

Motion for Attorneys' Fees at 12. In this case, CRST contends that it prevailed on the EEOC's pattern-or-practice claim and prevailed on all of the EEOC's individual claims other than its claim on behalf of Starke. Accordingly, CRST maintains that, assuming it is able to satisfy the *Christiansburg* standard, it is entitled to an award of its attorneys' fees incurred in defending against all claims except the claim on behalf of Starke.

In its Resistance to the Motion for Attorneys' Fees, the EEOC contends that its success on Starke's claim makes it the prevailing party and, consequently, CRST is not entitled to any attorneys' fees. The EEOC points to the fact that the Eighth Circuit Court of Appeals "reversed the original fee award because, after the Eighth Circuit [Court of Appeals] ruled that [the] EEOC could proceed on behalf of . . . Starke, CRST was no longer the prevailing party." Resistance to the Motion for Attorneys' Fees at 5. The EEOC maintains that, because the EEOC succeeded on its claim on behalf of Starke after the Eighth Circuit Court of Appeals remanded the case, CRST cannot be the prevailing party. Moreover, the EEOC notes that, under *Marquart v. Lodge 837, International Association of Machinists & Aerospace Workers*, 26 F.3d 842, 852 (8th Cir. 1994), a defendant is only a prevailing party when there has been a judicial determination that the plaintiff's claim lacks merit. In this case, the EEOC contends that the court's dismissal of individual claims as a discovery sanction or due to the EEOC's failure to satisfy Title VII's administrative prerequisites for suit is not a judicial determination on the merits. Thus, the EEOC urges the court to find that CRST is not the prevailing party and, therefore, not entitled to its attorneys' fees and expenses.

## 2.     *Applicable law*

In *Marquart*, the Eighth Circuit Court of Appeals articulated a standard for determining when a defendant is a prevailing party. *Marquart*, 26 F.3d 842. The Eighth Circuit Court of Appeals began by looking at the Supreme Court's analysis in *Christiansburg* and the "dual policy considerations underlying" 42 U.S.C. § 2000e-5(k)—that is, "[t]o discourage the litigation of frivolous, unreasonable, groundless, or

vexatious claims, but without discouraging the rigorous enforcement of federal rights under Title VII." *Id.* at 849. In light of the United States Supreme Court's holding in *Christiansburg* that a prevailing defendant is entitled to attorneys' fees only when the plaintiff's claim is frivolous, unreasonable or groundless, the Eighth Circuit Court of Appeals concluded that a defendant is a prevailing party within the meaning of 42 U.S.C. § 2000e-5(k) only when there has been "a judicial determination of the plaintiff's case on the merits," such as an order granting a defendant's motion for summary judgment on the merits. *Id.* at 852.

Thus, a court may "grant prevailing party status to a Title VII defendant only in very narrow circumstances." *Id.* A plaintiff's voluntary dismissal of a case, for example, is generally not a judicial determination on the merits of the plaintiff's case. *Id.* (finding that a voluntary dismissal is ordinarily not a judicial determination on the merits but suggesting that when a plaintiff voluntarily dismisses a complaint "to escape a disfavorable judicial determination on the merits," an award of attorneys' fees to the defendant may be warranted). Furthermore, the court's dismissal of a complaint for lack of subject matter jurisdiction is not a judicial determination on the merits of the plaintiff's case. *See Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990) ("Where a complaint has been dismissed for lack of subject matter jurisdiction, the '[d]efendant has not "prevailed" over the plaintiff on any issue central to the merits of the litigation.'" (alteration in original) (quoting *Sellers v. Local 1598*, 614 F. Supp. 141, 144 (E.D. Pa.1985), *aff'd*, 810 F.2d 1164 (3d Cir. 1987))).

A defendant need not prevail on every claim in order to be entitled to attorneys' fees under 42 U.S.C. § 2000e-5(k). *See Fox*, 131 S. Ct. at 2214 ("Fee-shifting to recompense a defendant (as to recompense a plaintiff) is not all-or-nothing: A defendant need not show that every claim in a complaint is frivolous to qualify for fees."). Rather, the United States Supreme Court has recognized that, in some situations, "a court could properly award fees to both parties—to the plaintiff, to reflect the fees he incurred in bringing the

meritorious claim; and to the defendant, to compensate for the fees he paid in defending against the frivolous one." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.10 (1983)). However, when a defendant is a prevailing party as to only some of the plaintiff's claims, the defendant may "receive only the portion of his [attorneys'] fees that he would not have paid but for the frivolous claim[s]." *Id.* at 2215.

### 3. Discussion

In this case, the court previously determined that CRST was a prevailing party. *See* August 13, 2009 Order at 40 ("Now that CRST is a 'prevailing party' as to the EEOC, 42 U.S.C. § 2000e-5(k), CRST may file an application for attorneys' fees from the EEOC . . . ."); February 9, 2010 Order at 12 (noting that the "court previously found that CRST is a 'prevailing party' as to the EEOC" and citing the August 13, 2009 Order). The question the court must now consider is whether the result of the proceedings on appeal and on remand changes the court's earlier conclusion.

### a. Single claim versus multiple claims

The EEOC contends that this case was comprised of a single claim and that it won that claim. The court finds that this argument is without merit. It is difficult discern how a Complaint requesting relief on behalf of "Starke and a class of similarly situated female employees," Complaint at 1, under § 706 of Title VII contains only *one* claim. "[I]t is axiomatic that [under § 706] the EEOC stands in the shoes of . . . aggrieved persons in the sense that it must prove all of the elements of their sexual harassment claims to obtain relief for them." April 30, 2009 Order at 18. Thus, the EEOC was required to prove the elements of a sexual harassment claim as to each individual to obtain relief on behalf of that individual. Given the way the EEOC drafted its Complaint, CRST—and the court, for that matter—did not know how many individuals the EEOC was pursuing relief on behalf of until the litigation was well under way. But, on the face of the Complaint, it is clear that the EEOC sought relief on behalf of at least two individuals and, thus, there were at least two claims. By October 15, 2008, it became clear that the EEOC was asserting

approximately 270 claims, although that number dropped to 255 by May 12, 2009. Thus, it is clear that this case contained multiple and distinct claims for relief.

Incidentally, the court notes that the EEOC's contention that this case had only one claim could lead to truly absurd results. As the court noted above, the first step in determining whether a party is entitled to attorneys' fees under 42 U.S.C. § 2000e-5(k) is to determine whether the party is a "prevailing party"—that is, the court does not reach the *Christiansburg* test unless it first finds that a defendant qualifies as a prevailing party. The EEOC, in essence, argues that, as long as it names one individual in a complaint and succeeds as to that individual, it can include as many frivolous allegations as it wishes in a complaint using the vague language "and a class of similarly situated individuals" without ever being liable for a defendant's attorneys' fees. Such a result clearly contravenes the congressional policy embodied in 42 U.S.C. § 2000e-5(k), as interpreted in *Christiansburg*. *See Christiansburg*, 434 U.S. at 420 (explaining that Congress enacted 42 U.S.C. § 2000e-5(k) "to clear the way for suits to be brought under [Title VII], [but] also . . . to protect defendants from burdensome litigation having no legal or factual basis"). The EEOC cannot avoid liability for attorneys' fees simply by artfully crafting a complaint using vague language to hide frivolous allegations.

Thus, the court concludes that the EEOC asserted multiple and distinct claims against CRST. The EEOC is correct that CRST did not prevail on one such claim.[7] However, under *Fox*, CRST need not prevail on every claim to be entitled to an award of

---

[7] The parties argue at great length as to whether the EEOC is the prevailing party on the claim on behalf of Starke. *See* Resistance to the Motion for Attorneys' Fees at 13; CRST's Reply at 5-6; EEOC's Sur-Reply at 1-2. The court finds that it is unnecessary to address the parties' arguments on this issue. As the EEOC acknowledges in its Resistance to the Motion for Attorneys' Fees, it is not entitled to a fee award under 42 U.S.C. § 2000e-5(k). *See* Resistance to the Motion for Attorneys' Fees at 7 n.5 ("[The] EEOC does not, of course, seek fees for itself since § 2000e-5(k) allows for fees to prevailing parties 'other than the Commission or the United States.'" (quoting 42 U.S.C. § 2000e-5(k))). Thus, it is of no consequence whether the EEOC qualifies as a prevailing party.

attorneys' fees. Accordingly, the court next turns to consider whether there was a judicial determination on the merits in favor of CRST on each claim other than the claim on behalf of Starke.

### b. *Judicial determination on the merits*

The EEOC argues that, "even if [it] were not the prevailing party for fee purposes, CRST would still not be a prevailing defendant, where a large portion of the claim was not determined on the merits." EEOC's Sur-Reply at 3. Specifically, while the EEOC acknowledges that "CRST defeated the claim on the merits for 83 women for whom it was granted summary judgment," the EEOC argues that "CRST won on reasons other than the merits as to [98] of the women who were never deposed, and as to 67 women for whom . . . [the] EEOC failed to meet the statutory prerequisites for suit." *Id.* The EEOC's argument fails. As discussed above, the EEOC's characterization of this suit as a single claim is incorrect. Rather, the court must examine each claim to determine whether CRST received a judicial determination on the merits.

The court begins by looking at its April 30, 2009 Order dismissing with prejudice the EEOC's pattern-or-practice claim. The EEOC now contends that it never asserted a pattern-or-practice claim but, rather, intended to use a pattern-or-practice method of proof. For the reasons set forth in the court's April 30, 2009 Order, the court finds that CRST justifiably filed a motion for summary judgment on the pattern-or-practice claim given the confusion the EEOC created as to whether it was pursuing such a claim. *See* April 30, 2009 Order at 24-26. The court granted CRST's motion for summary judgment, finding "that the EEOC . . . presented insufficient evidence to show that CRST . . . engaged in a pattern or practice of tolerating sexual harassment of its female drivers." *Id.* at 57. This is a judicial determination on the merits in favor of CRST and, consequently, CRST is the prevailing party as to the EEOC's pattern-or-practice claim.

Following the court's dismissal of the EEOC's pattern-or-practice claim, the EEOC was required to prove each individual claim of sexual harassment. At that stage in the

litigation, there were 154 allegedly aggrieved individuals remaining and, thus, CRST was required to defend against 154 sexual harassment claims.[8] The court granted summary judgment in favor of CRST on each of the remaining 154 claims, and the Eighth Circuit Court of Appeals affirmed the court's grant of summary judgment as to each claim that the EEOC appealed, other than the claims on behalf of Starke and Jones.

While the EEOC acknowledges that the court granted summary judgment on the merits on some of those 154 claims, the EEOC contends that the court's dismissal of claims due to the EEOC's failure to satisfy the Title VII administrative prerequisites is not a judicial determination on the merits. The court disagrees. When it is the EEOC, as opposed to an individual, bringing suit, Title VII imposes an additional element of a claim to relief. That is, in addition to proving the usual elements of a sexual harassment claim, the EEOC must also establish that it pursued an administrative resolution. This is not a jurisdictional prerequisite; rather, it is an ingredient of the EEOC's claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (holding that Title VII's employee-numerosity requirement "is an element of a plaintiff's claim for relief, not a jurisdictional issue"); *EEOC v. Argo Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009) ("[T]he EEOC's conciliation requirement is a precondition to suit but not a jurisdictional prerequisite.").

---

[8] As the court previously noted, the EEOC initially identified approximately 270 individuals. That number varied considerably over the months until May 12, 2009, when the EEOC began to consistently refer to 255 allegedly aggrieved individuals. *See* May 12, 2009 Updated List of Class Members. Of those 255 individuals, the EEOC was barred from seeking relief on behalf of 98 as a discovery sanction. The EEOC, apparently, voluntarily withdrew its claims on behalf of 3 of the remaining individuals. *See supra* note 6 (noting that the EEOC voluntarily removed Gwen Allen's name from the list of individuals it was still seeking relief on behalf of and further noting that two other individuals, Susan Guy and Sarah Ragland, inexplicably appeared on the list of allegedly aggrieved individuals for whom the EEOC was no longer seeking relief). Thus, there was no judicial determination on the merits as to those 101 claims. CRST's various motions for summary judgment addressed the remaining 154 individuals.

Thus, the court's dismissal of claims due to the EEOC's failure to satisfy its pre-suit obligations is a dismissal on the merits of the EEOC's claims.

Finally, although the EEOC did not raise the issue, the court finds it appropriate to discuss whether CRST is a prevailing party as to Jones's claim. The Eighth Circuit Court of Appeals reversed the court's finding that Jones was not subjected to severe or pervasive sexual harassment and, consequently, remanded the EEOC's claim on her behalf. On remand, the EEOC voluntarily withdrew its claim on behalf of Jones in accordance with the "law of the case"—that is, the EEOC acknowledged that it had not satisfied the Title VII administrative prerequisites as to that claim. *See* Notice of Withdrawal of Claim for Tillie Jones at 1 (noting that "the law of the case, specifically this [c]ourt's order of August 13, 2009 . . . , bars its claim on behalf of . . . Jones"). While *Marquart* held that a plaintiff's voluntary dismissal is generally not a judicial determination on the merits, the Eighth Circuit Court of Appeals suggested that a defendant may be considered a prevailing party when a plaintiff voluntarily dismisses a claim to avoid an adverse judicial determination. *See Marquart*, 26 F.3d at 852. Here, had the EEOC not withdrawn its claim on behalf of Jones, the court would have dismissed it pursuant to its August 13, 2009 Order. Thus, the court concludes that CRST is a prevailing party as to the EEOC's claim on behalf of Jones.

### c. Summary

In light of the foregoing, the court finds that CRST is the prevailing party on the EEOC's pattern-or-practice claim and 153 of the EEOC's individual claims. CRST is not the prevailing party on the EEOC's claim on behalf of Starke, the 98 claims the court dismissed as a discovery sanction or 3 of the claims the EEOC withdrew. Pursuant to *Christiansburg*, the court shall now turn to consider whether those claims on which CRST prevailed are frivolous, unreasonable or groundless.

## B. Christiansburg *Standard*

### 1. *Parties' arguments*

In the Brief in Support of the Motion for Attorneys' Fees, CRST notes that the court previously found the *Christiansburg* standard was satisfied due to the EEOC's unreasonable failure to comply with Title VII's pre-suit obligations. CRST further notes that the Eighth Circuit Court of Appeals "affirmed without qualification" the court's dismissal of such claims. Brief in Support of the Motion for Attorneys' Fees at 14. Accordingly, CRST contends that the court's prior ruling still applies. CRST also contends that the *Christiansburg* standard is satisfied as to the EEOC's other claims because, in the course of the underlying litigation, CRST "demonstrated that [the] EEOC did not have a prima facie basis for its pattern-or-practice claim or 75% of its individual claims." *Id.* at 15.

In its Resistance to the Motion for Attorneys' Fees, the EEOC argues that the "landscape . . . has changed considerably" since the court's original fee award. Resistance to the Motion for Attorneys' Fees at 9. Specifically, the EEOC contends that its position with regard to its pre-suit obligations cannot be considered "unreasonable" because Judge Murphy accepted the EEOC's position in her dissent. The EEOC maintains that, "[w]hen a dissent accepts a party's position on such a critical element of the case, the action cannot be considered unreasonable." *Id.* Moreover, the EEOC alleges that the Eighth Circuit Court of Appeals created a new rule when it held that the EEOC must investigate and attempt to conciliate "individual victims of a class claim." *Id.* at 10. The EEOC argues that, at the time it filed the lawsuit in this case, there was "long standing and consistent precedent" supporting its position that it need not investigate and attempt to conciliate each individual claim. *Id.* Even if the court were to find the EEOC's failure to satisfy its pre-suit obligations was unreasonable, the EEOC contends that CRST is only entitled to attorneys' fees incurred in defending against frivolous claims and, because this case is a "single claim of a hostile work environment [that cannot] be broken into separate

'claims,'" CRST is not entitled to any fees.  *Id.* at 15.  Finally, the EEOC maintains that it never asserted a pattern-or-practice claim and the individual claims that it did assert had a "valid evidentiary basis."  *Id.* at 17.

### 2. *Applicable law*

In interpreting 42 U.S.C. § 2000e-5(k), "the [United States] Supreme Court has distinguished between prevailing Title VII plaintiffs and prevailing Title VII defendants." *Marquart*, 26 F.3d at 848.  A district court may award attorneys' fees to a prevailing plaintiff "'in all but very unusual circumstances.'"  *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)).  However, an award of attorneys' fees to a prevailing defendant is appropriate in much more limited circumstances.

In *Christiansburg*, the United States Supreme Court outlined the principles that guide a district court's discretion when it decides whether to grant attorneys' fees to a prevailing defendant in a Title VII case.  *Christiansburg*, 434 U.S. 412.  The Court explained:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his [or her] action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Id.* at 421-22; *see also Marquart*, 26 F.3d at 848 ("[A] court may not award attorneys' fees to a prevailing Title VII defendant unless the 'court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.'" (second alteration in original) (quoting *Christiansburg*, 434 U.S. at 422)).  The Eighth Circuit Court of Appeals has explained that this standard is designed

"[t]o discourage the litigation of frivolous, unreasonable, groundless, or vexatious claims, but without discouraging the rigorous enforcement of federal rights under Title VII." *Marquart*, 26 F.3d at 849. The burden is on a prevailing defendant to prove that the plaintiff's claim was frivolous, unreasonable or groundless. *Id.* at 851-52 (citing cases).

As suggested above, a defendant need not prove that each of the plaintiff's claims was frivolous, unreasonable or groundless. *See Fox*, 131 S. Ct. at 2214. As the United States Supreme Court explained in *Fox*:

> [Section 2000e-5(k)] serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary. That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous charges. But the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed.

*Id.* (citations omitted). Where a plaintiff brings both frivolous and non-frivolous claims, the defendant is entitled to attorneys' fees that would not have been incurred but for the frivolous claims. *Id.* at 2216 ("[T]he dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation.").

### 3. *Discussion*

The court previously determined that the EEOC's claims were unreasonable, and, after reviewing the record and the parties' arguments, the court essentially stands by such determination. First, the court affirms its earlier conclusion that the EEOC's failure to exhaust Title VII's administrative prerequisites was unreasonable. *See* February 9, 2010 Order at 13-16. As CRST notes, the Eighth Circuit Court of Appeals "affirmed without qualification," Brief in Support of the Motion for Attorneys' Fees at 14, the court's August 19, 2009 Order dismissing 67 claims that the EEOC had not investigated and attempted to

conciliate. *See CRST*, 679 F.3d at 672-77 (affirming the court's finding that "the EEOC wholly failed to satisfy its statutory pre-suit obligations"). Accordingly, the court stands by its earlier determination that "the EEOC's actions in pursuing this lawsuit were unreasonable, contrary to the procedure outlined by Title VII and imposed an unnecessary burden upon CRST and the court." February 9, 2010 Order at 16; *see Argo Distrib., LLC*, 555 F.3d at 469 ("The EEOC acts unreasonably in disregarding procedural requirements for suit, and attorneys' fees may be awarded."); *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982) (upholding the district court's award of attorneys' fees under 42 U.S.C. § 2000e-5(k), citing the district court's finding that the "procedural and regulatory defects committed by the EEOC were clearly cognizable at an early stage in this litigation's history . . . [and] [t]he EEOC's obvious disregard for such promulgated regulations is the apex of unreasonableness" (internal quotation mark omitted)); *cf. EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006) (noting that, although it was "troubled by the EEOC's failure to adhere to its own deadline of June 20 before declaring that conciliation had failed," such failure was not unreasonable where "the parties agreed throughout negotiations that they were far apart on the terms of a settlement, and it [did] not appear that there was a reasonable prospect of settlement when the EEOC declared that conciliation efforts were unsuccessful").

Second, the court finds that the EEOC's pattern-or-practice claim was unreasonable. *See* April 30, 2009 Order at 57-67 (noting that the EEOC presented only anecdotal evidence in support of its pattern-or-practice claim, it did not present "any expert evidence, statistics or legal authority to support its argument that there is so much sexual harassment of CRST's female drivers that CRST must tolerate sexual harassment" and its "argument boils down to little more than . . . bald assertions"). The remaining claims that the court dismissed on summary judgment were likewise unreasonable or groundless.[9] In

_____

[9] The court notes that the August 13, 2009 Order finding that the EEOC failed to exhaust Title VII's administrative requirements only addressed the remaining 67

(continued...)

its Resistance to the Motion for Attorneys' Fees, the EEOC suggests that its position that Lead Drivers were supervisors was "sufficiently non-frivolous" that the United States Supreme Court granted certiorari on the issue of what constitutes a "supervisor." Resistance to the Motion for Attorneys' Fees at 18. The court disagrees. The law in the Eighth Circuit Court of Appeals was well-settled before the EEOC brought the instant action. *See CRST*, 679 F.3d at 684 ("Applying our precedent, we agree with the district court that CRST's Lead Driver is not a supervisory employee."); *see also* June 2, 2009 Order at 17 n.9 (noting that "[o]ther courts have uniformly held that truck driver trainers are coworkers and not supervisors"). Thus, given that the EEOC should have known that it would be required to prove that CRST had actual or constructive knowledge of the sexual harassment, many of its claims were groundless. For instance, the court summarily dismissed 6 individual claims because the individuals had "*never* informed CRST of the sexual harassment while they were working for CRST." June 18, 2009 Order at 7; *cf. EEOC v. Kenneth Balk & Assocs., Inc.*, 813 F.2d 197, 198 (8th Cir. 1987) (finding that

---

[9] (...continued)

individuals in the suit. The court did not make a finding as to whether the EEOC reasonably investigated and attempted to conciliate the individual claims the court had already dismissed on summary judgment. On appeal, the Eighth Circuit Court of Appeals found that "the EEOC failed, as a matter of law, to investigate and/or conciliate its claims on behalf of" 4 additional individuals. *CRST*, 679 F.3d at 689. Thus, the court finds that these 71 claims were unreasonable.

In its Brief in Support of the Motion for Attorneys' Fees, CRST contends that the EEOC failed to satisfy its pre-suit obligations as to all of the claims other than the claims on behalf of Starke and Peeples. *See* Brief in Support of the Motion for Attorneys' Fees at 14 & n.7 (noting that CRST does not request fees incurred in defeating Peeples's claim). The EEOC does not respond to this contention in its Resistance to the Motion for Attorneys' Fees and, in earlier filings, it appears to concede that it did not investigate or attempt to conciliate claims other than those on behalf of Starke and Peeples. *See, e.g.*, Resistance to the Motion for an Order to Show Cause (docket no. 229) at 7 (noting that, at the time the EEOC attempted to conciliate, the only named aggrieved individuals were Starke and Peeples). To the extent the EEOC failed to reasonably investigate and conciliate any claims in addition to those identified by the court and the Eighth Circuit Court of Appeals, the court finds that such claims were unreasonable.

the plaintiff's claim was not baseless given that the defendant had sought neither a pretrial dismissal nor summary judgment, had not moved for a directed verdict during the trial and "the district court directed the parties to submit post-trial briefs as well as proposed findings of fact and conclusions of law before taking the case under submission").

In sum, the court finds that the EEOC's pattern-or-practice claim and 153 of its individual claims were unreasonable or groundless and, consequently, the *Christiansburg* standard is satisfied as to these claims. Accordingly, the court shall turn to consider whether CRST's requested fees and expenses are reasonable.

## C. Reasonable Fees and Out-of-Pocket Expenses

### 1.    Parties' arguments

In its Brief in Support of the Motion for Attorneys' Fees, CRST argues that it is entitled to fees it incurred prior to the appeal and the fees incurred during the appeal. With regard to the fees incurred prior to the appeal, CRST contends that the court's earlier fee award remains reasonable after deducting fees incurred defending against the EEOC's claim on behalf of Starke. *See* Attachment J to the Motion for Attorneys' Fees (docket no. 386-15) (showing hours Jenner & Block ("Jenner") spent on the claim on behalf of Starke); Attachment L to the Motion for Attorneys' Fees (docket no. 386-17) (showing hours Simmons Perrine Moyer & Bergman ("Simmons")[10] spent on the claim on behalf of Starke). With regard to the fees incurred on appeal, CRST requests $1,072,014.67 if Jenner's hourly rates are used or $491,076.61 if local hourly rates are used. These figures reflect a 5% reduction for work spent on the claim on behalf of Starke. Finally, CRST requests the same out-of-pocket expenses that the court previously awarded CRST, "less the amount awarded by [the] [c]ourt for investigator fees in excess of the retainer payment made by CRST." Brief in Support of the Motion for Attorneys' Fees at 34.

---

[10] As CRST notes in the Brief in Support of the Motion for Attorneys' Fees, "Moyer & Bergman merged with Simmons Perrine to become Simmons Perrine Moyer Bergman on January 1, 2009." Brief in Support of the Motion for Attorneys' Fees at 27 n.17.

In its Resistance to the Motion for Attorneys' Fees, the EEOC advances five arguments regarding CRST's particular fee and expense requests. First, the EEOC contends that CRST is not a prevailing party as to the appeal and, even if it were, CRST has not shown that the *Christiansburg* standard is satisfied. Accordingly, the EEOC maintains that CRST is not entitled to any appellate fees. Second, the EEOC argues that CRST did not deduct all fees that relate to Starke's claim; specifically, the EEOC contends that CRST has not deducted "fees incurred in conducting legal research, writing and editing CRST's judicial estoppel summary judgment motion." Resistance to the Motion for Attorneys' Fees at 21. Third, the EEOC argues that CRST did not deduct "fees related to work on four intervening claims on which it did not prevail." *Id.* Fourth, the EEOC argues that CRST is entitled only to fees that it incurred defending against frivolous claims and "CRST's request for fees should be denied because it fails to distinguish for work that does not meet the *Christiansburg* standard." *Id.* at 22. Finally, the EEOC argues that CRST's documentation is insufficient; specifically, the EEOC alleges that CRST's invoices reflect "block billing," which "mak[es] it impossible to differentiate between the work CRST's attorneys performed on their losing motion, and work on other motions where CRST was successful." *Id.*

### 2. *Applicable law*

"'The starting point in determining [reasonable attorneys' fees] is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)). The lodestar figure is presumed to be the reasonable fee to which counsel is entitled. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). "If the prevailing party did not achieve success on all claims, [the lodestar] may be reduced, taking into account the most critical factor, 'the degree of success

obtained,' with discretion residing in the district court." *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (quoting *Hensley*, 461 U.S. at 436-37).

The district court retains wide discretion in making a fee award. *See Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award."). "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* The district court must, however, "provide a concise but clear explanation of its reasons for the fee award." *Id.* "When an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the [prevailing party], the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

A reasonable hourly rate is generally the prevailing market rate in the locale—that is, the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)) (internal quotation mark omitted).

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id.*

The prevailing party must also proffer evidence of the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433.

> Inadequate documentation may warrant a reduced fee. . . . Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours

> and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim.

*H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 437).

"'[M]ost factors relevant to determining the amount of a fee are subsumed within the lodestar.'" *Casey*, 12 F.3d at 805 (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991)); *see Hensley*, 461 U.S. at 434 n.9 ("[I]t should [be] noted that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." (citing *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980) (en banc))).  However, the court should consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *See McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988).

> *Johnson* called for consideration of twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1459 n.4.  "[T]he most critical factor" in determining the reasonableness of an attorneys' fee award in civil rights litigation is "the degree of success obtained." *Hensley*, 461 U.S. at 436.

When making the determination of a reasonable fee, a court should consider the party's "overall success; the necessity and usefulness of [the party's] activity in the particular matter for which fees are requested; and the efficiency with which [the party's] attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997) (en banc).  A district court need not address exhaustively every *Johnson* factor.  *Emery*,

272 F.3d at 1048. The court should consider what factors, "in the context of the present case, deserve explicit consideration." *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999). The district court should use its own knowledge, experience and expertise in determining the amount of the fee to be awarded. *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066-67 (8th Cir. 1989).

The United States Supreme Court has cautioned that "[t]he determination of fees 'should not result in a second major litigation.'" *Fox*, 131 S. Ct. at 2216 (quoting *Hensley*, 461 U.S. at 437). Thus, while district courts must apply the correct standards, they

> need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Id.*; *see also Kline v. City of Kan. City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001) (upholding the district court's "reasonable estimate" of the plaintiff's attorneys' fees).

### 3. Discussion

The court shall first determine whether CRST's requested attorneys' fees are reasonable and shall then turn to consider whether CRST is entitled to its requested out-of-pocket expenses.

#### a. Attorneys' fees

##### i. Prior to appeal

In its February 9, 2010 Order, the court calculated a lodestar amount of $3,501,394.63 for Jenner's services and a lodestar amount of $502,977.02 for Simmons's services, yielding a total of $4,004,371.65 in attorneys' fees. February 9, 2010 Order at 19-30. The court finds that this prior fee award is a useful starting point. Pursuant to *Fox*, CRST is entitled only to those fees it would not have incurred but for the frivolous,

unreasonable or groundless claims. *See Fox*, 131 S. Ct. at 2215. As outlined above, the court finds that the EEOC's pattern-or-practice claim and 153 of its individual claims were unreasonable or groundless. After a review of the record and for the reasons set forth below, the court concludes that $3,724,065.63 is a reasonable estimate of the attorneys' fees incurred solely as a result of those claims.

First, the court reaches this figure by deducting 7% of the original fee award, or $280,306.02. In other words, the court estimates that, had the EEOC not asserted the unreasonable or groundless claims, CRST would still have incurred $280,306.02 in attorneys' fees in defending against the Starke claim and the 101 claims on which CRST did not obtain a judicial determination on the merits.[11] The court finds that this is a more accurate estimate than the $35,799.73 CRST proposes. *See* Brief in Support of the Motion for Attorneys' Fees at 25, 28 (alleging that Jenner and Simmons spent a combined 147 hours on Starke's claim, for a total of $30,799.73); CRST's Reply at 20 (suggesting that the court deduct an additional $5,000 to reflect time spent researching and drafting the judicial estoppel summary judgment brief). Specifically, the court finds that CRST's proposal fails to take into account the work that Jenner and Simmons would have had to do absent the unreasonable or groundless claims—for example, the time spent drafting an answer and on general case management. *See Fox*, 131 S. Ct. at 2215. The court need not comb through the record to itemize the fees CRST would have incurred absent the unreasonable or groundless claims; rather, the court finds that, in light of its familiarity with the case, 7% is a reasonable estimate. *See id.* at 2216 ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *see also*

---

[11] The 101 claims on which CRST did not obtain a judicial determination on the merits include the 98 claims dismissed as a discovery sanction and 3 of the claims that the EEOC voluntarily withdrew. *See supra* note 6. The court estimates that 5% of the original fee award was incurred in defending against the EEOC's claim on behalf of Starke and 2% of the original fee award was incurred in defending against the 101 claims on which CRST did not obtain a judicial determination on the merits.

*Kline*, 245 F.3d at 709 (upholding the district court's estimate, which included a 15% deduction for "overlawerying" and a 40% reduction to reflect the plaintiffs' "limited degree of success").

Second, the court finds that $3,724,065.63 is reasonable in light of the *Johnson* factors. This was a large and complicated case that involved voluminous discovery and multiple motions for summary judgment. The EEOC further complicated the case by creating confusion as to whether it asserted a pattern-or-practice claim, requiring CRST to not only defend against the individual claims but also a perceived pattern-or-practice claim. Moreover, CRST was largely successful in its efforts. Accordingly, after considering the *Johnson* factors, the court finds that $3,724,065.63 is a reasonable award for the fees CRST incurred pre-appeal.

Finally, the court rejects the EEOC's arguments that CRST's request includes fees incurred in defending against interveners' claims and "fees for work that does not meet the *Christiansburg* standard," Resistance to the Motion for Attorneys' Fees at 22, and that CRST did not provide sufficient documentation. The EEOC does not identify any specific billing entry that it contests, its suggestion that CRST included fees incurred in defending against interveners' claims is unsupported and the court finds that CRST's documentation is sufficient.

Thus, in light of the foregoing, the court concludes that CRST is entitled to $3,724,065.63 in attorneys' fees incurred pre-appeal.

## ii. *Appeal*

The court must now consider the reasonable amount of attorneys' fees incurred during the appeal proceedings. The court begins by calculating the lodestar amount—that is, the reasonable hourly rate multiplied by the reasonable hours spent. First, with regard to the reasonable hourly rate, the court finds that, for the reasons set forth in its February 9, 2010 Order, it is appropriate to reduce the rates charged by Jenner's attorneys and personnel to levels comparable to that of the Simmons attorneys. *See* February 9, 2010

Order at 21-24 (finding Jenner's hourly rates unreasonable in light of the prevailing rates for similar work in the community). Although CRST contends that the court should apply Jenner's hourly rates for the work performed on appeal in light of the "EEOC's all-out effort to reverse this [c]ourt's decisions, . . . [the] EEOC's use of its appellate specialists to prepare its briefs and argue its case . . . [and] the invaluable appellate skill and experience" that Jenner's attorneys contributed, Brief in Support of the Motion for Attorneys' Fees at 31, the court is not persuaded that CRST has satisfied its burden of demonstrating that the circumstances warrant a departure from the general practice of computing a reasonable hourly rate based on the local community. *See Blum*, 465 U.S. at 895 n.11.

Second, with regard to the reasonable hours spent, the court finds that CRST's requested hours, as set forth in the table below, are largely reasonable and supported by sufficient documentation. Significantly, the EEOC does not object to the specific number of hours spent on this case by CRST's counsel. Moreover, the court notes that this case, even at the appellate stage, was exceptionally large and complex. The EEOC appealed 107 claims, 106 of which the court has found were unreasonable.

The court, however, rejects CRST's proposal of deducting 5% of the total claimed appellate fees to reflect hours spent on the EEOC's claim on behalf of Starke. Pursuant to *Fox*, CRST is entitled only to those fees it would not have incurred but for the frivolous, unreasonable or groundless claims. *See Fox*, 131 S. Ct. at 2215. The court finds that a conservative estimate of $51,692.28, or 10% of the total claimed appellate fees, reasonably reflects the attorneys' fees that CRST would have incurred absent the unreasonable or groundless claims. *See id.* at 2216 ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *see also Kline*, 245 F.3d at 709 (upholding the district court's estimate, which included a 15% deduction for "overlawyering" and a 40% reduction to reflect the plaintiffs' "limited degree of success")

Thus, the court calculates the lodestar amount, and the amount the court finds reasonable under the *Johnson* factors, as $465,230.47, as set forth in the following table:

| Attorney | Hours | Reasonable Rate | Award |
|---|---|---|---|
| John H. Mathias (partner) | 247.50 | $315 | $77,962.50 |
| Barry Levenstam (partner) | 1.75 | $315 | $551.25 |
| Robert T. Markowski (partner) | 163.25 | $315 | $51,423.75 |
| James T. Malysiak (partner) | 548.00 | $315 | $172,620.00 |
| Sally K. Sears Coder (partner) | 34.75 | $315 | $10,946.25 |
| Richard P. Campbell (of counsel) | 11.50 | $315 | $3,622.50 |
| Emma J. Sullivan (of counsel) | 106.25 | $185 | $19,656.25 |
| J. Andrew Hirth (associate) | 42.00 | $185 | $7,770.00 |
| Ashley M. Schumacher (associate) | 304.50 | $185 | $56,332.50 |
| Michele L. Slachetka (associate) | 278.00 | $185 | $51,430.00 |
| David P. Saunders (associate) | 23.50 | $185 | $4,347.50 |
| Eric J. Schwab (associate) | 14.25 | $185 | $2,636.25 |
| Benjamin J. Wimmer (associate) | 24.00 | $185 | $4,440.00 |
| Sapna G. Lalmalani (associate) | 38.50 | $185 | $7,122.50 |
| Christine M. Bowman (associate) | 8.00 | $185 | $1,480.00 |
| Cheryl J. Kras (paralegal) | 105.75 | $125 | $13,218.75 |
| Legal assistants | 50.00 | $125 | $6,250.00 |
| Kevin J. Visser | 83.20 | 2009—$301.52<br>2010—$315 | $25,112.75 |

| | | 2011—$325 | |
|---|---|---|---|
| | | 2012—$335 | |
| **SUBTOTAL** | 2,084.70 | | $516,922.75 |
| Minus the 10% reduction for attorneys' fees spent on the EEOC's claim on behalf of Starke | | | -$51,692.28 |
| **TOTAL** | | | $465,230.47 |

Finally, the court rejects the EEOC's arguments regarding CRST's requested appellate fees. Specifically, the court has already found that CRST is the prevailing party and that the *Christiansburg* standard is satisfied as to all of the claims that the EEOC appealed, other than the claim on behalf of Starke. Moreover, the court finds that CRST provided sufficient documentation and, as discussed above, the court finds that $465,230.47 reflects the total appellate fees that CRST would not have incurred but for the EEOC's unreasonable or groundless claims.

Thus, in light of the foregoing, the court concludes that CRST is entitled to $465,230.47 in attorneys' fees incurred on appeal.

### b. *Out-of-pocket expenses*

In its February 9, 2010 Order, the court found that CRST was entitled to $463,071.25 in out-of-pocket expenses. *See* February 9, 2010 Order at 30-38. In its Brief in Support of the Motion for Attorneys' Fees, CRST "requests that the [c]ourt again award these expenses less the amount awarded by [the] [c]ourt for investigator fees in excess of the retainer payment made by CRST." Brief in Support of the Motion for Attorneys' Fees at 34. The EEOC does not dispute any specific expense. Accordingly, after reviewing the record and for the reasons set forth in its February 9, 2010 Order, the court finds that CRST is entitled to the following:

| Expense | Amount awarded |
|---|---|
| Long distance telephone expenses | $176.17 |
| Messenger and overnight delivery expenses | $5,127.86 |
| Fees for investigators | $12,500.00 |
| Expert witness fees | $242,212.22 |
| Postage | $49.84 |
| Travel and related expenses | $34,135.94 |
| Printing and copying costs | $119,185.55 |
| **TOTAL** | $413,387.58 |

### c.    Summary

Thus, consistent with the foregoing, the court finds that CRST is entitled to $3,724,065.63 in attorneys' fees incurred pre-appeal, $465,230.47 for attorneys' fees incurred as a result of the appeal and $413,387.58 in out-of-pocket expenses, for a total of $4,602,683.68.

## IV.  BILL OF COSTS

In its Bill of Costs filed pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, CRST requests that the court tax costs in its favor in the amount of $91,758.46.  Specifically, "CRST seeks to recover the same taxable costs that were allowed by the Clerk [of Court] on CRST's first bill of costs minus the costs incurred for . . . Starke and Rolf Starke's depositions."  Brief in Support of the Motion for Attorneys' Fees at 33.  The EEOC does not contest any specific cost; rather, the EEOC argues that CRST is not entitled to costs because it is not the "prevailing party" within the meaning of Rule 54(d).  The EEOC contends that the February 11, 2013 Judgment does not indicate that CRST prevailed, and, to the contrary, the EEOC contends that it is now the prevailing party.

Rule 54(d) gives district courts the power to tax "costs" to a prevailing party and 28 U.S.C. § 1920 defines "costs." *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440-42 (1987). In the context of awarding costs under Rule 54(d), the Eighth Circuit Court of Appeals has held that a "prevailing party" is the party "in whose favor a judgment is rendered." *Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 905 (8th Cir. 2000) (quoting Black's Law Dictionary 1145 (7th ed. 1999)) (internal quotation mark omitted). A party need not, however, have succeeded on every claim to qualify as a prevailing party. *See Hillside Enters. v. Carlisle Corp.*, 69 F.3d 1410, 1416 (8th Cir. 1995) (upholding the district court's award of costs to a party because the party had "won a larger judgment" and, therefore, could "logically be considered the prevailing party" under Rule 54(d)); *Shum v. Intel Corp.*, 629 F.3d 1360, 1367-68 (Fed. Cir. 2010) ("A party is not required . . . to prevail on all claims in order to qualify as a prevailing party under Rule 54."); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005) ("A party is the prevailing party under Rule 54(d) even when it is only partially successful."); *Roberts v. Madigan*, 921 F.2d 1047, 1058 (10th Cir. 1990) (noting that the case presented "a situation where both parties . . . 'prevailed' on at least one claim" but finding that the district court did not abuse its discretion in awarding costs to the party "that prevailed on the vast majority of issues"). In the case of a mixed judgment, the district court may, in its discretion, award costs to the party that had the relatively greater success. *Hillside Enters.*, 69 F.3d at 1416.

In this case, the court has already rejected the EEOC's suggestion that this case is comprised of a single claim and the court has already determined that, for purposes of 42 U.S.C. § 2000e-5(k), CRST is the prevailing party as to the EEOC's pattern-or-practice claim and 153 of the EEOC's individual claims. The court finds that CRST is also the prevailing party for purposes of taxing costs under Rule 54(d) and 28 U.S.C. § 1920. The October 1, 2009 Judgment was undoubtedly in CRST's favor. *See* October 1, 2009 Judgment at 1 (stating that the EEOC "takes nothing"). On appeal, the Eighth Circuit

Court of Appeals largely affirmed the October 1, 2009 Judgment, remanding only as to the claims on behalf of Starke and Jones. *See CRST*, 679 F.3d at 695. Thus, because CRST "prevailed on the vast majority of issues," *Roberts*, 921 F.2d at 1058, the court concludes that CRST is the prevailing party for purposes of taxing costs. Moreover, the court notes that CRST has modified its original bill of costs to reflect that it did not prevail on the EEOC's claim on behalf of Starke. With regard to the claim on behalf of Jones, the court finds no reason to reduce CRST's costs in light of the fact that the EEOC withdrew the claim on behalf of Jones under "the law of the case." Notice of Withdrawal of Claim for Tillie Jones at 1; *see also Sequa Corp. v. Cooper*, 245 F.3d 1036, 1037-38 (8th Cir. 2001) ("We do not read Rule 54(d)(1) as impairing the inherent authority of a trial court to award costs incurred in defending an action prior to its voluntary dismissal by the plaintiff, even though a voluntary dismissal without prejudice means that neither party can be said to have prevailed.").

Thus, the court finds it appropriate to tax CRST's requested costs in its favor. The EEOC does not dispute any specific cost and the court has previously found such costs to be reasonable and authorized under 28 U.S.C. § 1920. *See* Taxation of Costs Memorandum (docket no. 303); February 9, 2010 Order at 6-12. Accordingly, costs shall be taxed in the amount of $87,323.95 for transcript fees and $4,434.51 for fees for witnesses, for a total of $91,758.46.

## V. CONCLUSION

In light of the foregoing, it is **HEREBY ORDERED THAT**:

(1)     Costs in the amount of **$91,758.46** are taxed in favor of CRST, pursuant to 28 U.S.C. § 1920;

(2)     CRST's Motion for Attorneys' Fees (docket no. 386) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a)     The EEOC is **ORDERED** to pay CRST **$4,189,296.10** in attorneys' fees; and

> (b)     The EEOC is **ORDERED** to pay CRST **$413,387.58** in out-of-pocket expenses;

(3)     The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of CRST in the amount of **$4,694,442.14**.  This figure includes attorneys' fees, expenses and the costs taxed in favor of CRST pursuant to 28 U.S.C. § 1920; and

(4)     The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 1st day of August, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA