**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

vs.

CRST VAN EXPEDITED, INC.,

        Defendant.

No. 07-CV-95-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL HISTORY AND FACTUAL
       BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    A.    *Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    B.    *Is Preclusion Required?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
    C.    *Judicially Sanctioned Material Alteration* . . . . . . . . . . . . . . . . . **20**
    D.    *Findings on Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
        1.    *Legal standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
        2.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**
            a.    *Statute of limitations* . . . . . . . . . . . . . . . . . . . . . . **30**
            b.    *Concession that the claimant suffered no
                   severe or pervasive harassment* . . . . . . . . . . . . . . . . **33**
            c.    *No notice or opportunity to remedy* . . . . . . . . . . . . **34**
            d.    *Complaint properly remedied* . . . . . . . . . . . . . . . . **47**
            e.    *Not severe or pervasive* . . . . . . . . . . . . . . . . . . . . **59**
        3.    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **72**
    E.    *Reasonable Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **73**
        1.    *Pattern-or-practice fees* . . . . . . . . . . . . . . . . . . . . . **78**
        2.    *Appellate fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **80**
        3.    *General fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **80**

IV.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **82**

## I. INTRODUCTION

The matter before the court is the Eighth Circuit Court of Appeals's Mandate ("Mandate") (docket no. 452).

## II. RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The factual underpinnings of the sexual harassment and retaliation allegations underlying this litigation have been well-documented by the court and the appellate courts. *See, e.g.*, *CRST Van Expedited, Inc. v. E.E.O.C.*, ___ U.S. ___, 136 S. Ct. 1642 (2016); *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012). At issue here is this court's award of attorneys' fees and costs in the amount of $4,694,442.14, which the court awarded on August 1, 2013. *See* August 1, 2013 Order (docket no. 400) at 40. Included in that amount were fees associated with sixty-seven claims which the court dismissed due to the Plaintiff Equal Employment Opportunity Commission's ("EEOC") failure to comply with presuit requirements—namely, failure to investigate and attempt to conciliate. *See id.* at 24-25.

In the August 1, 2013 Order, this court specifically considered the EEOC's argument that Defendant CRST Van Expedited, Inc. ("CRST") was incapable of being awarded attorneys' fees under Title VII of the Civil Rights Act of 1984 because CRST was not a prevailing party. *Id.* at 20. The EEOC argued that "the court's dismissal of [the sixty-seven] claims due to the EEOC's failure to satisfy the Title VII administrative prerequisites [was] not a judicial determination on the merits." *Id.* at 20. The court disagreed and ruled that the EEOC's failure to satisfy presuit requirements constituted a failure to prove "an ingredient" of its claim, and found that its dismissal of the sixty-seven claims was a merits decision. *Id.* at 20-21. Under Eighth Circuit precedent at the time this court issued the August 1, 2013 Order, a favorable ruling on the merits was essential to a party's status as a prevailing party under Title VII. *See id.* at 15-16 (citing *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842 (8th Cir.

1994)).  This court further found that the EEOC's abdication of its statutory duties was "unreasonable, contrary to the procedure outlined by Title VII and imposed an unnecessary burden upon CRST and the court" such to satisfy the standard for awarding attorneys' fees under *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978).  *Id.* at 25 (quoting February 9, 2010 Order (docket no. 320) at 16).

The EEOC appealed the fee award and, before the Eighth Circuit, argued that "its Title VII presuit obligations are nonjurisidictional preconditions," while CRST argued that "such requirements are elements of the EEOC's cause of action."  *E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d 1169, 1181 (8th Cir. 2014).  The Eighth Circuit agreed with the EEOC and reversed this court's award of attorneys' fees, in part, because it determined that the "court's dismissal of [sixty-seven] claims for the EEOC's failure to satisfy Title VII's presuit obligations d[id] not constitute a ruling on the merits."  *Id.*  The Eighth Circuit also reversed this court's fee award because the court failed to make individualized findings with respect to the seventy-eight women this court dismissed on the merits at summary judgment.  *Id.* at 1183.  It also reversed this court's award of fees for the EEOC's 2012 appeal of the merits of the summary judgments orders and dismissal for failure to comply with presuit requirements because the court failed to specifically find whether the appeal was frivolous, unreasonable or groundless.  *Id.* at 1183-84.  Additionally, the Eighth Circuit reversed this court's fee award as it pertained to fees associated with defense of a purported pattern-or-practice claim because "the EEOC did not allege that CRST was engaged in 'a pattern or practice' of illegal sex-based discrimination or otherwise plead a violation of Section 707 of Title VII" in its complaint.  *Id.* at 1179 (internal quotation marks omitted) (quoting *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d at 676 n.13).  Accordingly, the Eighth Circuit remanded the case for further proceedings and barred this court from awarding fees based on the sixty-seven claims dismissed for failure to comply with presuit requirements and the pattern-or-practice

claim. *Id*. at 1185. On remand, this court was directed to make individualized findings as to the frivolousness, unreasonableness or groundlessness of the claims dismissed on summary judgment, and as to whether the EEOC's initial appeal fulfilled the *Christiansburg* standard. *Id*.

CRST sought certiorari on the Eighth Circuit's ruling with respect to the sixty-seven claims dismissed for the EEOC's failure to comply with presuit obligations and the Supreme Court granted certiorari on December 4, 2015. *See* Writ of Certiorari (docket no. 438). On December 11, 2015, CRST filed a brief with this court outlining the issues that the Supreme Court would face on appeal from the Eighth Circuit. *See* CRST Supplemental Brief (docket no. 440) at 1. CRST clarified that the Supreme Court had granted certiorari on the issue of whether the Eighth Circuit erred in holding that CRST is not entitled to an award of attorneys' fees with respect to the claims dismissed for failure to satisfy presuit requirements. *Id*. On December 16, 2015, the EEOC filed a supplemental brief further clarifying the issues faced by the Supreme Court on appeal. *See* EEOC Supplemental Brief (docket no. 444). The EEOC noted that, even if the Supreme Court found that the Eighth Circuit erred in holding that dismissal for failure to satisfy presuit requirements could support an award of attorneys' fees, the Eighth Circuit had not reached the issue of whether *Christiansburg* had been satisfied for those claims and, thus, CRST was not automatically entitled to attorney's fees on any claim. *Id*. at 2.

On remand from the Eighth Circuit and prior to the grant of certiorari, this court directed the parties to submit briefs providing: "(1) a detailed breakdown of each individual claims for which CRST requests attorneys' fees and costs; (2) an analysis of how each individual claim constitutes a 'frivolous, unreasonable, or groundless' claim; (3) an analysis of whether the requested attorneys' fees and costs were expended solely due to the alleged frivolous claims; and (4) any additional argument related to attorneys' fees and costs for each claim." May 19, 2015 Order (docket no. 410) at 1-2. The court also

directed CRST to brief why the EEOC's merits appeal satisfied *Christiansburg* and reiterated that fees were not available for claims "based on the EEOC's failure to satisfy its presuit obligations," nor could "it recover on the pattern-or-practice claim." *Id.* at 2. On July 31, 2015 CRST filed its "Brief Supporting Its Request for an Award of Attorneys' Fees Out-of-Pocket Expenses, and Taxable Costs" ("CRST Remand Brief") (docket no. 416) in compliance with the May 19, 2015 Order. On September 15, 2015, the EEOC filed a "Memorandum in Resistance to Defendant CRST Van Expedited, Inc.'s Request for an Award of Attorneys' Fees, Out-of-Pocket Expenses, and Taxable Costs" ("EEOC Remand Brief") (docket no. 423). On September 29, 2015, CRST filed a "Reply Brief Supporting its Request for an Award of Attorneys' Fees Out-of-Pocket Expenses, and Taxable Costs" ("CRST Remand Reply") (docket no. 428). On December 11, 2015, CRST filed a supplemental brief ("CRST Supplemental Brief") (docket no. 440), addressing the impact it predicted a favorable outcome at the Supreme Court would have on the instant action. On December 16, 2015, the EEOC filed a supplemental brief in response ("EEOC Supplemental Brief") (docket no. 444).

Before the Supreme Court, the EEOC "abandoned its defense of the [Eighth Circuit's] reasoning" and instead urged the Supreme Court to adopt a rule "that a defendant must obtain a preclusive judgment in order to prevail" for purposes of attorneys' fees. *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. at 1653. Nevertheless, the Supreme Court reversed the Eighth Circuit's holding that a party must obtain a favorable judicial determination on the merits to be a "prevailing party" under Title VII. *Id.* at 1646. The Supreme Court reasoned that "[t]here is no indication that Congress intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits." *Id.* at 1651-52. Instead, the Supreme Court relied on its own precedent to elucidate the standard, stating that "the 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'" *Id.* at 1646

(quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). "This change must be marked by 'judicial imprimatur.'" *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). The Supreme Court focused on the congressional policy underlying the fee-shifting provision at issue—"to deter the bringing of lawsuits without foundation." *Id.* at 1652 (quoting *Christiansburg*, 434 U.S. at 420). The Supreme Court further reasoned that "[i]t would make little sense if Congress'[s] policy of 'sparing defendants from the costs of frivolous litigation' depended on the distinction between merits-based and non-merits-based frivolity." *Id.* (emphasis omitted) (quoting *Fox v. Vice*, 563 U.S. 826, 840 (2011)). The Supreme Court expressed doubt as to the availability of the EEOC's preclusion argument, noting that the EEOC "may have forfeited the preclusion argument by not raising it earlier." *Id.* at 1653. Finally, the Supreme Court declined to address whether the court's dismissal of the sixty-seven claims had a preclusive effect. *Id.* "The [Supreme] Court le[ft] these legal and factual issues for the [Eighth Circuit] to consider in the first instance." *Id.*

The Supreme Court remanded the case to the Eighth Circuit, who in turn remanded it to the court "for further proceedings consistent with the Supreme Court's opinion." June 28, 2016 Judgment (docket no. 451) at 1. On October 13, 2016, the court entered an Order (docket no. 453), directing the parties to brief three issues:

> (1) whether a defendant must obtain a preclusive judgment in order to qualify as a "prevailing party" under Title VII; (2) whether the dismissal of claims pursuant to the EEOC's failure to fulfill presuit requirements constituted a "preclusive judgment"; and (3) whether the EEOC waived this argument by failing to raise it until the case reached the Supreme Court.

October 13, 2016 Order at 3. On November 11, 2016, CRST filed its brief ("CRST Brief") (docket no. 454) addressing those three issues. On December 9, 2016, the EEOC

filed its brief ("EEOC Brief") (docket no. 458). On December 16, 2016, CRST filed a Reply (docket no. 459). The remand is fully submitted and ready for decision.

### III. ANALYSIS

CRST argues that the EEOC waived its argument that a party must have obtained a preclusive judgment in order to be considered a prevailing party for purposes of attorneys' fees by failing to raise the argument until the case reached the Supreme Court. *See* CRST Brief at 9-12. CRST further argues that a preclusive judgment is unnecessary to be deemed a prevailing party and that, even if the court were to determine that a preclusive judgment is required, the dismissal of the sixty-seven claims at issue had a preclusive effect. *See id.* at 1-9. The EEOC argues that it did not waive its preclusion argument by failing to explicitly raise it until presenting argument before the Supreme Court. *See* EEOC Brief at 10-13. The EEOC also argues that a preclusive judgment is necessary for a party to be considered a prevailing party and that, when the court dismissed the sixty-seven claims at issue, such decision bore no preclusive effect. *See id.* at 3-10.

The court will first consider whether the EEOC waived its preclusion argument. If the court determines that consideration of the preclusion argument is proper, it will then consider whether a party must enjoy a preclusive judgment in its favor to be a prevailing party and, if so, whether the dismissal of the sixty-seven claims had a preclusive effect. In any event, the ultimate question facing the court is whether CRST was a prevailing party after the court dismissed the sixty-seven claims for the EEOC's failure to comply with presuit requirements under the standard reiterated by the Supreme Court in *CRST Van Expedited, Inc. v. E.E.O.C.* The questions surrounding the EEOC's preclusion argument are probative of whether the proper test for determining whether the Supreme Court's standard has been met necessarily involves an element of preclusion.

Though the court has determined that the Mandate solely contemplates resolution of the issues above, out of an abundance of caution and in the alternative, the court shall abide by the Eighth Circuit's admonitions in its 2014 opinion. *See E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d at 1186. The court foresees no reason that the Eighth Circuit, if this Order were to be appealed, would abandon its requirement that the court make individualized findings as to the seventy-eight plaintiffs for which the court granted summary judgment, or as to whether fees relating to the 2012 appeal were appropriate. *Id.* Thus, because the Supreme Court admonished, in *CRST Van Expedited v. E.E.O.C.* that the court should "resolve the outstanding issues without unnecessary delay," the court shall proceed to make individualized findings and consider the briefs that CRST and the EEOC filed on remand from the Eighth Circuit's 2014 opinion. 136 S. Ct. at 1653.

### A. Waiver

CRST argues that the EEOC waived its preclusion argument because it failed to raise such argument either before the court when the court initially considered attorneys' fees or in the EEOC's two appeals to the Eighth Circuit. *See* CRST Brief at 9-11. CRST further asserts that, on appeal to the Eighth Circuit, "the EEOC did not dispute CRST's express statement that the claims dismissed for [the] EEOC's [presuit] failures had been dismissed with prejudice." *Id.* at 11 (emphasis omitted). The EEOC did not respond to that statement in its reply brief at the Eighth Circuit and did not contend "that CRST's argument was erroneous because the dismissal was without prejudice and that a dismissal with prejudice is required for a fee award." *Id.* CRST also highlights the fact that the EEOC failed to assert its preclusion argument in its brief opposing CRST's petition for a writ of certiorari. *Id.* Thus, CRST argues, the EEOC failed to preserve any error with respect to its preclusion argument, and the law of the case doctrine bars the court from considering in the second instance what it should have considered in the first. *Id.* at 10, 12.

The "EEOC does not dispute that it did not argue prior to the Eighth Circuit['s] decision in 2014 that a preclusive, as opposed to a merits, judgment was necessary in order for a defendant to be a prevailing party under *Christiansburg*." EEOC Brief at 10-11. The EEOC argues that it was not required to make its preclusion argument prior to when it did because it was entitled to rely on *Marquart* as binding precedent and was not "obligated to anticipate a future Supreme Court reversal on a clear and long-standing circuit standard." *Id.* at 11. The EEOC further asserts that its arguments before the Eighth Circuit that CRST did not obtain a ruling on the merits as to the sixty-seven claims, "by implication," encompassed an argument that CRST did not obtain a preclusive judgment. *Id.* The EEOC asserts that it has "consistently argued that CRST is not entitled to fees under *Christiansburg*, in part because it did not receive a judgment which was on the merits, or with prejudice, or preclusive." *Id.* at 12.

The Eighth Circuit has consistently refused to consider arguments on successive appeals that could have been raised in prior appeals. *See, e.g.*, *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 737 F.3d 1188, 1194 (8th Cir. 2013) ("For over one hundred years, our court has repeatedly barred parties from litigating issues in a second appeal following remand that could have been presented in the first appeal."). "The general rule is that 'where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.'" *Kessler v. Nat'l Enters., Inc.*, 203 F.3d 1058, 1059 (8th Cir. 2000) (quoting *Nw. Ind. Tel. Co. v. F.C.C.*, 872 F.3d 465, 470 (D.C. Cir. 1989)). "The underlying intent of [this] doctrine is to prevent the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency." *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007) (alterations and internal quotation marks omitted). This doctrine applies to both appellate courts and to district courts to which an action has been remanded. *See Little*

*Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986).

Thus, if the EEOC "could have" raised its preclusion argument in a prior appeal, Eighth Circuit precedent is clear that the court need not consider the EEOC's preclusion argument at this time. "Absent exceptional circumstances . . . [the Eighth Circuit] cannot consider issues not raised in the district court" for the first time on appeal. *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 608 n.5 (8th Cir. 2011) (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 601 (8th Cir. 2005)).[1] It is insufficient to merely make an overarching or general argument conceivably encompassing the specific argument urged for on appeal. Rather the court must have had the opportunity to specifically pass on issues which the parties expressly raise. *See Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir. 1986) ("The district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised."). "The trial judge should not have to assume the role of an advocate on behalf of a litigant whose counsel has failed to assert a legal theory that might be helpful to the litigant's case." *Id.* The purpose of such a rule is to "inform promptly the trial judge of possible errors so that [s]he may have an

---

[1] The Eighth Circuit has stated that it "has 'the discretion to consider an issue for the first time on appeal where the proper resolution is beyond any doubt . . . or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case.'" *Gap, Inc. v. GK Dev., Inc.*, 843 F.3d 744, 748-49 (8th Cir. 2016) (quoting *Weitz Co v. Lloyd's of London*, 574 F.3d 885, 891 (8th Cir. 2009)). The court declines to speculate as to whether the Eighth Circuit might have considered the EEOC's preclusion argument, instead applying the default rule that issues not raised before the district court will not be considered by the Eighth Circuit. However, the court does observe that the resolution of the EEOC's preclusion argument is not beyond any doubt and, though it presents a legal issue, would have benefitted from further factual development before the court, as the court could have explicitly accepted or rejected such an argument, and could have made explicit and contemporaneous rulings as to the preclusive effect of its dismissal of the sixty-seven claims in question.

opportunity to reconsider [her] ruling and make any changes deemed desirable." *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976); *See also Stafford*, 790 F.2d at 706 (noting that the rule's rationale is twofold because, without consideration by the district court, the record for appellate review would be insufficient and because "there is an inherent injustice in allowing an appellant to raise an issue for the first time on appeal").

The court finds that the EEOC waived its preclusion argument by failing, not only to raise it before this court, but also by failing to raise it before the Eighth Circuit in any of its appeals of the court's fee award. *See generally* CRST Brief Exhibit 3 (docket no. 454-3) (the EEOC's Eighth Circuit brief arguing that CRST is not a prevailing party, in part, because failure to comply with presuit requirements was not a merits decision); CRST Brief Exhibit 4 (docket no. 454-4) (the EEOC's brief in opposition to CRST's petition for a writ of certiorari before the Supreme Court stating that the Eighth Circuit's merits-based determination of CRST's prevailing party status was correct). The Supreme Court's concern that the EEOC had waived the preclusion argument mirrors the Eighth Circuit's rationale for its routine refusal to consider arguments raised for the first time on appeal. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. at 1653 ("The [EEOC] changed its argument between the certiorari and merits stages. As a result, the [EEOC] may have forfeited the preclusion argument by not raising it earlier. The [EEOC's] failure to articulate its preclusion theory before the eleventh hour has resulted in inadequate briefing on the issue."). At no time prior to its assertion at the Supreme Court did the EEOC explicitly argue that a decision must have a preclusive effect to grant a party prevailing party status. Thus, the EEOC cannot raise this argument on remand because it could have done so during its first, or even subsequent, appeal.

The EEOC argues that it should not be required to have raised the preclusion argument on the first appeal because it was "entirely within its rights to accept clear,

longstanding circuit precedent as circuit law." EEOC Brief at 11. However, the EEOC cites no legal authority to support its statement and, furthermore, the court does not view *Marquart* as having foreclosed the EEOC from making the preclusion argument. *Marquart* held that, in order to be a prevailing defendant in a Title VII claim, a party must obtain "a judicial determination of the plaintiff's case on the merits." *Marquart*, 26 F.3d at 852. *Marquart* did not touch on whether dismissal must have a preclusive effect to grant a party prevailing party status. The EEOC is not incorrect that it was entitled to rely on *Marquart* in formulating its arguments before the court and the Eighth Circuit. However, reliance on *Marquart* did not in any way prevent the EEOC from making its preclusion argument at an earlier time; and arguing that a dismissal on the merits is required for a party to prevail under Title VII is not inconsistent with an argument that such dismissal must have a preclusive effect. For example, a defendant could move for dismissal on the grounds that the statute of limitations had passed on the plaintiff's claim. If the court were to grant the dismissal on those grounds, the dismissal would have a preclusive effect but would not be a merits-based decision. At no point did the EEOC intimate that *Marquart* controlled, or would have controlled, such a situation. Thus, its failure to raise the preclusion argument prior to the Supreme Court cannot be blamed on its mere reliance on controlling circuit precedent.

The EEOC's assertion that its preclusion argument was necessarily bound up in, or implied by, its argument that CRST had not obtained a ruling on the merits as to the sixty-seven claims similarly fails. As the above example demonstrates, not every preclusive judgment will be based on the merits of a given case. Furthermore, the EEOC's argument that the preclusion argument was implied in its broader argument about whether the court's dismissal of the claims was a merits or nonmerits decision is unpersuasive, primarily, because the law is clear that a party must expressly raise an argument to preserve it for appeal, rather than relying on more generalized arguments that may arguably encompass

the more specific argument. *See Stafford*, 790 F.2d at 706. The EEOC's statement that it "has consistently argued that CRST is not entitled to fees under *Christiansburg*, in part because it did not receive a judgment which was on the merits, or with prejudice, or preclusive" is overly broad and unsupported by the record. EEOC Brief at 12. As the court noted above, the EEOC never explicitly raised the preclusion argument until the case reached the Supreme Court, the court does not view the preclusion argument as "implied" by the EEOC's argument that the dismissal of the claims was not on the merits and, in any event, such a broad argument is plainly insufficient for purposes of error preservation. Accordingly, the court finds that the EEOC may not raise its preclusion argument at this time. However, out of an abundance of caution, the court shall consider the merits of the EEOC's preclusion argument.

### B. Is Preclusion Required?

CRST argues that it is not required to obtain a preclusive judgment to be considered a prevailing party for purposes of attorneys' fees. Instead, CRST argues that the proper standard is "the material alteration of the legal relationship of the parties and not whether the judgment is preclusive." CRST Brief at 2. The EEOC argues that preclusive judgment is necessary to confer prevailing party status because, in its view, a preclusive judgment is a necessary ingredient in any material alteration of the legal relationship of the parties. *See* EEOC Brief at 4. The EEOC reasons that, without a preclusive judgment, the fact that a plaintiff may sue again prevents any finding that there was an alteration in the legal relationship of the parties, and, thus, the defendant may not be said to have prevailed. *Id.* at 7.

As the court noted above, in *CRST Van Expedited, Inc. v. E.E.O.C.*, the Supreme Court clarified "that the 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties'" that has been "marked by 'judicial imprimatur.'" 136 S. Ct. at 1646 (citations omitted). The Supreme Court further noted

that "[c]ommon sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits" based, in part, on the differing goals of plaintiffs and defendants in litigation. *Id.* at 1651. While a plaintiff seeks an alteration of the legal relationship of the parties, "[t]he defendant has . . . fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id.*

The parties rely on two cases handed down by the Eighth Circuit in the wake of the *CRST Van Expedited, Inc. v. E.E.O.C.* ruling to argue that their respective positions with regard to this issue are correct. *See* CRST Brief at 2-3; EEOC Brief at 5-7; Reply at 3. In *United States v. $32,820.56*, 838 F.3d 930, 936-37 (8th Cir. 2016), the Eighth Circuit held that, where a plaintiff voluntarily dismisses a claim without prejudice, that does not make the defendant a prevailing party. *United States v. $32,820.56* involved a claim for attorney fees under the Civil Asset Forfeiture Reform Act ("CAFRA") in which the government voluntarily moved to dismiss the action without prejudice, which the court granted. *See id.* at 933. The Eighth Circuit stated that the defendant was not a prevailing party in that instance because "[t]here ha[d] been no alteration of the relationship between [the plaintiff] and the government, because the court's order dismissing the case without prejudice does not preclude the government from refiling an action" based on the allegedly improper conduct. *Id.* at 934. The Eighth Circuit cited *Buckhannon*, noting that "a voluntary change on the part of a defendant, even if it resulted in the outcome sought by the plaintiff, 'lack[ed] the necessary judicial imprimatur' to authorize a fee award." *Id.* (quoting *Buckhannon*, 532 U.S. at 605). The Eighth Circuit noted that district courts have the ability to guard against procedural maneuvering on the part of a party seeking to rob the other litigant of prevailing party status by declining to render judgment without prejudice and dismissing with prejudice in appropriate cases. *Id.* at 936.

In *East Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 902 (8th Cir. 2016), the Eighth Circuit considered a trademark suit wherein the defendant filed counterclaims asking for substantially similar relief to that sought by the plaintiff—trademark infringement and unfair competition.   Before trial, the defendant dismissed its counterclaims with prejudice and, at trial, prevailed on its motion for judgment as a matter of law, defeating the plaintiff's claims. *Id.* at 902. The Eighth Circuit reversed the district court's fee award to the plaintiff on the basis that it was not the prevailing party on the defendant's dismissal of its counterclaims with prejudice. *Id.* at 906. In particular, the Eighth Circuit noted that, because both parties obtained favorable relief on their claims, they both could "with equal justice claim to be the prevailing party." *Id.* The Eighth Circuit stated that there was no material alteration of the legal relationship between the parties when "the district court essentially restored the status quo *ante*" and observed that the parties had "achieve[d] a dead heat." *Id.* at 907.

CRST argues that *United States v. $32,820.56* supports its position that no preclusive judgment is necessary to confer prevailing party status to a defendant. *See* CRST Brief at 2. CRST highlights the fact that the plaintiff dismissed the case voluntarily, albeit without prejudice, and the lack of "an adverse court order" is key to the Eighth Circuit's reasoning that the defendant in that case was not a prevailing party. *Id.* Here, CRST argues that the court dismissed the sixty-seven claims involuntarily and the dismissal "was imposed on the EEOC," rather than as a result of "a voluntary change" on the part of the parties. *Id.* at 2-3. On the other hand, the EEOC offers two reasons that *United States v. $32,820.56* supports its position that a party must obtain a preclusive judgment to have prevailed: (1) the dismissal was without prejudice; and (2) "there was no judicially sanctioned change in the relationship between the parties" because "the plaintiff [was] not precluded from bringing the suit again." EEOC Brief at 6, 6 n.1. The EEOC contends

that whether claims are dismissed voluntarily or involuntarily is of no import—the true question is whether the plaintiff is free to bring its claim again. *Id.* at 6 n.1.

Similarly, the EEOC argues that East Iowa Plastics supports its position because, in that case, the "counter-defendant . . . successfully rebuffed the counter plaintiff's . . . claims by obtaining their dismissal, but the [Eighth Circuit] did not allow fees." *Id.* at 6. Thus, the EEOC maintains that attorneys' fees are unavailable if a defendant merely rebuffs the plaintiff's claims. *Id.* at 6-7. CRST disagrees and argues that the plaintiff in *East Iowa Plastics* was not awarded attorneys' fees because the dismissal it obtained of the counterclaims placed it in materially the same position as the defendant after the defendant prevailed on its motion for judgment as a matter of law—essentially obtaining a "dead heat." Reply at 3 (quoting *E. Iowa Plastics*, 832 F.3d at 907). CRST argues that there was no "dead heat" in this case because CRST unequivocally prevailed in seeking dismissal of the sixty-seven claims at issue. *Id.*

This court finds that a preclusive judgment is not necessary to confer prevailing party status. Instead, the court views a preclusive judgment as a sufficient, but unnecessary prerequisite to satisfying the standard reiterated by the Supreme Court in *CRST Van Expedited, Inc. v. E.E.O.C.* The court disagrees with the EEOC's contention that it matters not whether a claim is dismissed voluntarily or involuntarily for purposes of prevailing party status. A voluntary dismissal, either with or without prejudice, lacks the judicial imprimatur required under the Supreme Court's standard. *See United States v. $32,820.56*, 838 F.3d at 934. The Eighth Circuit's discussion of the possibility of procedural maneuvering and the court's ability to guard against such actions by issuing dismissals with prejudice, rather than without, is instructive. However, the court does not view such discussion as dictating that whether a judgment is preclusive or not is dispositive of the inquiry. Such an outcome is betrayed by the Eighth Circuit's decision in *East Iowa Plastics*, where the plaintiff obtained preclusive relief when the defendant dismissed its

counterclaims with prejudice.  *See E. Iowa Plastics*, 832 F.3d at 907.  Notably, in *East Iowa Plastics*, the Eighth Circuit did not rely on the fact that dismissal of either the plaintiff's claims after a motion for a judgment as a matter of law or the defendant's counterclaims voluntarily had any sort of preclusive effect.  The Eighth Circuit's reasoning was entirely couched in terms of whether the dismissal and judgment as a matter of law materially altered the legal relationship between the parties and quoted *CRST Van Expedited, Inc. v. E.E.O.C.  See id.* at 906-07.  If, as the EEOC argues, the dispositive issue was whether a claim was dismissed with or without prejudice, the Eighth Circuit would have relied on that reasoning in disposing of that case.  The fact that, in both *United States v. $32,820.56* and *East Iowa Plastics*, the Eighth Circuit refused to uphold the award of attorneys' fees, despite the fact that in the former case the claims were dismissed without prejudice and in the latter case the claims were dismissed with prejudice, cautions against relying on this singular factor in determining whether a party has prevailed for purposes of attorneys' fees.

The court is further unpersuaded by the EEOC's position that there can be no material alteration of the legal relationship of the parties without a preclusive judgment. A party can still enjoy a material alteration in the legal relationship between itself and its opponent even without obtaining a preclusive judgment.  The recent case of *Wood v. Burwell*, 837 F.3d 969 (9th Cir. 2016), is particularly instructive.  In *Wood*, the Ninth Circuit Court of Appeals held that, under the standard reiterated under *CRST Van Expedited, Inc. v. E.E.O.C.*, "[p]rocedural remedies can constitute a material alteration in the parties' legal relationship."  *Wood*, 837 F.3d at 974.  In *Wood*, the plaintiffs challenged the Secretary of the Department of Health and Human Services's approval of an Arizona Medicaid demonstration project under the Fourteenth Amendment, the Social Security Act and the Administrative Procedures Act ("APA").  *Id.* at 972.  The plaintiffs moved for summary judgment, which the district court in *Wood* granted in part, based on

procedural irregularities with the approval of the Medicaid demonstration project under the APA, and remanded the case back to the agency for further considerations. *Id.* at 973. The agency ultimately reached the same conclusion as before the plaintiffs had filed suit and the district court subsequently denied the plaintiffs' motion for attorneys' fees on the ground that they were not prevailing parties because they obtained only "interim" relief. *Id.*

The Ninth Circuit reversed and held that there had indeed been a material alteration in the legal relationship of the parties, even though the agency was free to render the same decision as it had reached prior. *Id.* at 974-75. The Ninth Circuit stated that procedural relief was sufficient to alter the legal relationship of the parties, even if the party fails to obtain substantive relief. *Id.* at 975. As an example, the Ninth Circuit in *Wood* contrasted the *Wood* plaintiffs' obtaining a procedural "do over" at the administrative level to a party obtaining a preliminary injunction, which was ultimately lifted as the case proceeded through the course of litigation. *See id.* at 974-75 (citing *Sole v. Wyner*, 551 U.S. 74 (2007)). In the case of the preliminary injunction, the Ninth Circuit noted that preliminary injunctions are, by nature "transient" and "intended to be temporary," *Id.* at 975 (quoting *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013)), as opposed to procedural challenges under the APA, for which "part and parcel of the relief sought is agency adherence to administrative procedures, apart from any substantive relief," *Id.* The Ninth Circuit reiterated that the test was solely "whether there is a lasting alteration in the legal relationship between the parties." *Id.* The Ninth Circuit focused on the fact that the plaintiffs "left the courthouse with an order that the Secretary violated the APA and had to undertake a 'do over' of her administrative review—a victory that can hardly be described as leaving 'emptyhanded'" as opposed to the hollow victory of a preliminary injunction. *Id.* at 974-75. The Ninth Circuit succinctly stated that the *Wood* plaintiffs obtained "a judicially-sanctioned material alteration in the parties' relationship because 'the

defendants were required to do something directly benefitting the plaintiff[] that they otherwise would not have had to do.'" *Id.* at 974 (alteration in original) (quoting *Carbonell v. INS*, 429 F.3d 894, 900 (9th Cir. 2005)).

The discussion and reasoning in *Wood* demonstrates that it is unnecessary that a party obtain a preclusive judgment, and the mere fact that relief does not prevent the opposing party from refiling its case or resurrecting the offending conduct, or that the relief does not entirely inure to the prevailing party's benefit, does not mean that no alteration of the legal relationship of the parties has occurred. In *United States v. $32,820.56*, the Eighth Circuit stated that there was no material alteration in the legal relationship of the parties because the plaintiff was free to file the claims again. However, the plaintiff in *United States v. $32,820.56*, unlike the agency in *Wood* and the EEOC here, were not required by the dismissal to take further steps to reinitiate the offending conduct. The *United States v. $32,820.56* plaintiff was free to refile its claim whenever it wished. Instead, the cases discussed above suggest that a case-by-case, rather than categorical, analysis is appropriate. Distinctions like the distinction between procedural or substantive remedies in *Wood*, are not dispositive. The test remains whether there is a judicially sanctioned material alteration of the legal relationship of the parties, exactly as the Supreme Court stated in *CRST Van Expedited, Inc. v. E.E.O.C.* No more, no less. Accordingly, even if the court were to consider the EEOC's preclusion argument, it would reject it.[2]

---

[2] Because the court finds that a party need not obtain a preclusive judgment in order to obtain prevailing party status, the court does not reach the question of whether the sixty-seven claims at issue here were dismissed with or without prejudice. *But compare* August 13, 2009 Order (docket no. 263) at 39-40 (stating that the EEOC was barred from pursuing the claims on behalf of the remaining claims in the case and stating that the EEOC's complaint is "DISMISSED" (formatting omitted), *with* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, . . . [an involuntary dismissal sought by a defendant] and

(continued...)

## C. Judicially Sanctioned Material Alteration

Finally, the court must consider whether the dismissal of the sixty-seven claims at issue constituted a judicially-sanctioned material alteration in the legal relationship of the parties. CRST argues that the court's dismissal of the claims in question satisfied this standard because, even if the EEOC were free to re-file the claims, it could not do so "without first performing its statutory [presuit] obligations with respect to each claim." CRST Brief at 3. CRST further argues that the EEOC may not reassert the sixty-seven claims because they would be barred by collateral estoppel. *Id.* The EEOC argues that the court's dismissal of the sixty-seven claims failed to create a material change in the legal relationship of the parties because "[w]hat the EEOC does during the administrative process does not affect legal rights." EEOC Brief at 9. The EEOC stresses that "the administrative process offers a non-litigation vehicle for resolving many charges" and only becomes a statutory prerequisite when the EEOC determines that it will institute litigation in its own name. *Id.* The EEOC argues that it was always free to reinstate the claims against CRST and the fact that it chose not to do so is not evidence that the relationship between itself and CRST was altered by the court's ruling in any way. *Id.*

The court finds that its dismissal of the sixty-seven claims for failure to satisfy presuit obligations constituted a judicially sanctioned material alteration in the legal relationship of CRST and the EEOC. Initially, the court notes that, unlike in *United States v. $32,820.56*, these claims were dismissed by court order, marking them with judicial imprimatur. *See* 838 F.3d at 934. The court further finds that there was a sufficiently material alteration in the legal relationship of the parties to confer prevailing party status on CRST for purposes of the sixty-seven claims at issue. In particular, the fact that the

---

[2](…continued)
any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

EEOC would have to comply with its statutory duties in order to refile its claims, even assuming arguendo that it could refile such claims, is sufficient to materially alter the legal relationship of the parties.[3]

An examination of the policy goals underlying the presuit requirements imposed upon the EEOC illuminates why requiring compliance with such procedures, even if the EEOC were to file these sixty-seven claims anew, would result in the material alteration of the legal relationship of the parties. The Supreme Court has indicated that the EEOC's presuit requirements further Title VII and its policy goals by emphasizing "'[c]ooperation and voluntary compliance' as its 'preferred means.'" *Mach Mining, LLC v. E.E.O.C.*, ___ U.S. ___, ___, 135 S. Ct. 1645, 1651 (2015) (alteration in original) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982)). The EEOC complies with Congress's intent when it engages in the "informal methods of conference, conciliation, and persuasion" prescribed by statute. *Id.* (quoting 42 U.S.C. § 2000e-5(b)). It is well established law that the EEOC's compliance with presuit requirements "serves as a necessary precondition to filing a lawsuit. Only if the [EEOC] is 'unable to secure' an acceptable conciliation agreement—that is, only if its attempt to conciliate has failed—may a claim against the employer go forward." *Id.* (quoting 42 U.S.C. § 2000e-5(f)(1)).

> [I]t is clear that Congress placed great emphasis upon private settlement and the elimination of unfair practices without litigation, on the ground that voluntary compliance is preferable to court action. Indeed, it is apparent that the primary role of the EEOC is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance.

---

[3] However, the court does agree with the EEOC that CRST's argument that a claim can be barred by res judicata or collateral estoppel, yet not be preclusive, makes little sense. *See* EEOC Brief at 10 n.3; *see also* CRST Brief at 3. If a later claim is barred by res judicata or collateral estoppel then, by definition, the earlier judgment indeed had a preclusive effect—as it prevents a litigant from later asserting the same claim.

*Hutchings v. U.S. Indus., Inc.*, 428 F.2d 303, 309 (5th Cir. 1970) (internal citations omitted).

Where, as here, the EEOC so wholly abandoned its duties of investigation and conciliation, it robs CRST of the ability to reach voluntary compliance with the statute, forces CRST to expend funds to defend the suit and frustrates Title VII's purpose. This fact is doubly applicable here, where the court has consistently expressed concern about the so-called "moving target" that the EEOC presented to CRST throughout the early stages of litigation, making it all the more important for the EEOC to scrupulously adhere to its presuit requirements to ensure the most efficient and cost effective disposition of as many claims as possible. Even if the EEOC were able to reassert these claims, it would only be able to do so after attempting conciliation, an outcome that is "part and parcel" of the relief that a defendant would seek against the EEOC if the EEOC failed in its presuit statutory duties. *Wood*, 837 F.3d at 975. Thus, despite the EEOC's claim that the administrative process cannot alter the legal relationship of the parties, a review of the purpose underlying the EEOC's statutory presuit duties demonstrates that providing CRST the opportunity to participate in conciliation attempts at a later time, when it was prevented from doing so earlier by the EEOC's failure to comply with such duties, constitutes a material alteration of the legal relationship of the parties. In light of the court's final rulings, the EEOC is required to do something for the benefit of CRST which it otherwise would not have done. Accordingly, the court finds that a judicially sanctioned material alteration of the legal relationship of the parties occurred here.

The court notes that the EEOC argues that the court should revisit its *Christiansburg* determination as to the sixty-seven claims, stating that the *Christiansburg* determination has not been reviewed by the Eighth Circuit or the Supreme Court. *See* EEOC Brief at 13. The new authority cited by the EEOC in support of its position on the *Christiansburg* issue is unpersuasive, because any clarification in the law regarding the reasonableness of the

actions the EEOC took prior to adding the sixty-seven claims to the suit would not impact the court's analysis, since case law is clear that courts must "refrain from post hoc reasoning and . . . view the reasonableness of the matter from the plaintiff's perspective at the time." *Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392-93 (8th Cir. 1995). As the court found in its February 9, 2010 Order (docket no. 320), initially awarding CRST attorneys' fees and costs, "the EEOC's duties prior to seeking relief on behalf of allegedly aggrieved persons in a § 706 lawsuit [were] well-established" at the time they were instituted. February 9, 2010 Order at 15 (citing *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359-60 (1977)). The court reiterated these findings and standards in the August 1, 2013 Order. *See* August 1, 2013 Order at 25 (citing *EEOC v. Argo Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009) ("The EEOC acts unreasonably in disregarding procedural requirements for suit, and attorneys' fees may be awarded."); *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982) (confirming the district court's award of fees where the EEOC committed clear "procedural and regulatory defects")). The court does so again here. The EEOC's failure to conciliate and investigate the sixty-seven claims at issue caused the resulting claims in the instant action to be frivolous, unreasonable and/or groundless under *Christiansburg*. As the court has repeatedly found throughout these proceedings, the EEOC's practice of presenting a moving target of claimants was an unreasonable litigation tactic, the direct result of which was these claims. The fees associated with the sixty-seven claims for which the EEOC abdicated its statutory presuit obligations stand.

### D. Findings on Remand

As the court stated above, it shall proceed to examine the seventy-eight claims which the court dismissed in a series of orders granting summary judgment to CRST and the appellate fees awarded for the EEOC's 2012 appeal. On appeal of the August 1, 2013 Order, the Eighth Circuit criticized the court for failing to "make particularized findings

of frivolousness, unreasonableness, or groundlessness as to each individual claim upon which it granted summary judgment on the merits to CRST." *E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d at 1183. The Eighth Circuit emphasized that the court "did not discuss specific claimants, choosing instead to make a universal finding that all of the EEOC's claims were without foundation." *Id.* The court shall also consider anew the request for fees associated with the 2012 "merits appeal"[4] of the court's dismissal of all of the claims in this action.[5] The Eighth Circuit also reversed the court's award of appellate costs. *See id.* at 1185. The Eighth Circuit found that the court erred in failing to make a specific finding that the merits appeal itself was frivolous, unreasonable or without foundation, and faulted the court for relying on its findings that the underlying claims satisfied *Christiansburg*. *Id.*

In the CRST Remand Brief, CRST argues that each of the seventy-eight claims that the court dismissed on summary judgment were frivolous, unreasonable or groundless, such to support an award of fees associated with them. *See* CRST Remand Brief at 17-162. CRST also argues that, despite the Eighth Circuit's prohibition on seeking fees for the pattern-or-practice claim, it is nevertheless entitled to fees for its defense of that

---

[4] The court uses the term "merits appeal" to refer to the 2012 appeal of the court's various orders granting summary judgment and dismissing claims for failure to comply with presuit requirements. *See E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d at 670-71. The use of the term "merits appeal" in this context does not imply that all of the issues before the Eighth Circuit in 2012 were merits issues. *See, e.g.*, *E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d at 1181 (finding that the court's dismissal of the sixty-seven claims for the EEOC's abdication of its presuit obligations was not a merits determination). The term is merely meant to differentiate the 2012 appeal from the 2014 appeal, the latter of which was based solely on the issue of attorneys' fees and costs.

[5] The court notes that CRST has requested fees associated with the 2014 appeal in its Motion for a Supplemental Fee Award (docket no. 455). The court shall address whether fees for the 2014 appeal are appropriate in a separate order. The only appellate fees at issue here pertain to the merits appeal.

theory, because defeating the pattern or practice claim was essential to defeating the other individual claims on the merits. *Id.* at 163-67. CRST further argues that the merits appeal was frivolous, unreasonable or groundless, such to justify an award of fees. *Id.* at 168.

The EEOC argues that none of the fees the court previously awarded should be sustained. In particular, the EEOC argues that CRST fails to adequately demonstrate that the fees it is seeking were incurred solely due to the allegedly frivolous claims. Specifically, the EEOC asserts that CRST cannot prove that none of the fees which it seeks were expended in defense of the sixty-seven claims that the court dismissed for failure to comply with presuit requirements or in defense of the pattern-or-practice claim, for both of which the Eighth Circuit expressly forbade the court from awarding fees. *See* EEOC Remand Brief at 5-16. The EEOC also relies on the merits/nonmerits distinction in *Marquart* and argues that the claims that the court dismissed on statute of limitations and judicial estoppel grounds do not justify fees. *See id.* at 16-19. Finally, the EEOC argues that CRST's arguments that each of the individual claims were frivolous, unreasonable or groundless are insufficient to justify a fee award because the EEOC had a good faith legal basis for making each argument, and that the court should refrain from letting hindsight cloud its judgment to justify an award, merely because a claim was ultimately unsuccessful. *See id.* at 17-42.[6]

### 1. Legal standard

In *Christiansburg*, the Supreme Court declared a standard for awarding prevailing defendants attorneys' fees under Title VII's fee-shifting prevision. The Supreme Court

---

[6] The court notes that CRST argued, alternatively, that "[a] Supreme Court decision holding that EEOC's failure to comply with Title VII's pre-suit requirements entitles CRST to an award of fees and expenses with respect to the Pre-Suit Requirements Dismissed Claims would also support an award of fees and expenses to CRST for the Summary Judgment Dismissed Claims." CRST Supplemental Brief at 3. However, the court finds that this issue has not been adequately briefed, and thus declines to award fees on this basis.

observed that "abstract words" must be used to "deal with concrete cases," to whatever extent that is possible, and stated: "[A] district court may in its discretion award attorneys' fees to the prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *Christiansburg*, 434 U.S. at 421. The Supreme Court cautioned that "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421-22. The Eighth Circuit has warned that, "[s]o long as the plaintiff has 'some basis' for [its] claim, a prevailing defendant may not recover attorneys' fees." *Williams v. City of Carl Junction*, 523 F.3d 841, 843 (8th Cir. 2008) (first alteration in original) (quoting *EEOC v. Kenneth Balk & Assocs., Inc.*, 813 F.2d 197, 198 (8th Cir. 1987)).

It has also stated that, merely because the court might determine, "upon careful examination," that the allegations "prove legally insufficient to require a trial," this does not alone mean that the action was groundless or without foundation. *Id.* (quoting *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980) (per curiam)); *see also O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 425 (E.D. La. 2016) ("[T]o determine whether a suit is frivolous, a court must ask whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." (alteration in original) (quoting *Greco v. Velvet Cactus, LLC*, No. 13-3514, 2014 WL 6684913, at *2 (E.D. La. Nov. 25, 2014))). *But see Flowers*, 49 F.3d at 393 ("We reject [the plaintiff's] argument that the District Court's denial of the [defendant's] summary judgment motion precludes an award of attorney's fees because, '[a]lthough in some instances a frivolous case will be quickly revealed as such, it may sometimes be necessary for defendants to 'blow away the smoke screens that plaintiffs had thrown up' before the defendants may prevail.'" (third alteration in original) (quoting *Introcaso v. Cunningham*, 857 F.2d 965, 967 (4th Cir. 1988))); *Grant v. Farnsworth*, 869 F.2d 1149, 1152-53 (8th Cir. 1989) (noting that denials

of a motion for summary judgment and a motion for directed verdict made by a defendant "do not foreclose" a district court from later concluding that the claims were frivolous and groundless).

Courts have developed a variety of factors to consider in determining whether a claim was frivolous, unreasonable or groundless. Such factors include whether the plaintiff was able to establish a prima facie case and whether the claims were dismissed prior to or after a trial. *See, e.g.*, *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) ("In determining whether to assess [attorneys'] fees, the district court must examine (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."). At the most basic, however, the court must determine whether the claims lacked a sufficient bases in law or fact when they were brought. *See, e.g.*, *Hamer v. Cty. of Lake*, 819 F.2d 1362, 1367 (7th Cir. 1987) ("Attorney's fees may be awarded to prevailing defendants under *Christiansburg* when plaintiffs pursue a claim which is frivolous in light of unambiguous case law, just as a fee award is appropriate when a suit is found to lack sufficient basis in fact."); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (defining "frivolous" for *in forma pauperis* purposes as a claim that "lacks an arguable basis in law or in fact"); *Unreasonable*, Black's Law Dictionary (10th ed. 2014) ("Not guided by reason; irrational or capricious."); *Groundless*, Black's Law Dictionary (10th ed. 2014) ("(Of a legal claim or argument) lacking a basis or a rationale <groundless cause of action>.").

In *Fox v. Vice*, the Supreme Court further refined the standard for awarding attorneys' fees to prevailing defendants—in this case where a plaintiff asserts both frivolous and nonfrivolous claims. 563 U.S. 826 (2011). In *Fox*, the Supreme Court stated: "a court may grant reasonable fees to the defendant [where a plaintiff asserts both frivolous and nonfrivolous claims], but only for costs that the defendant would not have incurred but for the frivolous claims." *Id.* at 829. For example, in a case involving both frivolous and

nonfrivolous claims for which an attorney for the defendant takes a deposition which is relevant to all claims in the case, *Fox* forbids the court from awarding fees based on such deposition, because the defendant cannot prove that he or she would not have incurred the fees but for the frivolous claims because "[t]he defendant would have incurred the expense in any event; he [or she] has suffered no incremental harm from the frivolous claim." *Id.* at 836.

The Supreme Court clarified that "the 'but-for' standard [it] require[s] may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims." *Id.* at 837. As an example, the Supreme Court stated that, where a plaintiff brings both frivolous and nonfrivolous claims, but only the frivolous charge, if proven, would have resulted in an award of damages, work performed by the defendant's attorney useful to both claims could be properly shifted. *Id.* However, the Supreme Court also noted that "frivolous claims may increase the cost of defending a suit in ways that are not reflected in the number of hours billed." *Id.* at 838. Where there is tension between determining "whether attorney costs at all relate to a non-frivolous claim" and determining "whether the costs would have been incurred in the absence of the frivolous allegation," the court must answer the latter. *Id.*

Finally, the Supreme Court in *Fox* cautioned that "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* The goal is "not to achieve auditing perfection" in crafting fee awards—rather, courts should aim "to do rough justice." *Id.* The Supreme Court also stated that trial courts have "wide discretion in applying" the standard it set forth for differentiating between fees associated with frivolous and nonfrivolous claims. *Id.* at 829. "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* at 838.

## 2.    *Discussion*

CRST exhaustively walks through each of the seventy eight individual claims for which it seeks costs, detailing why it argues each claim was frivolous, unreasonable or groundless.  In doing so, it impliedly makes five broader arguments regarding, generally, why the claims brought by the EEOC were frivolous, unreasonable or groundless.  The EEOC did not respond by breaking down each individual claim, but instead makes broader arguments responsive to the reasons why the court dismissed the claims in its various orders on summary judgment—essentially arguing that merely obtaining summary judgment on the claims is insufficient for CRST to demonstrate that they met the *Christiansburg* standard and be awarded fees.  *See, e.g.*, EEOC Remand Brief at 19-42.

The EEOC also generally argues that *Fox* precludes any award of fees in this case because CRST cannot meet its heavy burden of demonstrating the amounts of fees it incurred for work "performed solely to defend against the seventy-eight claims" because the classes of claims, including those claims for which CRST has been barred from seeking fees (including fees directly related to the pattern or practice claim or judicial estoppel, which CRST did not prevail on in the merits appeal), all implicated the same or similar work, making it impossible to allocate work specifically to any one allegedly frivolous claim.  *See id.* at 8-11.  Specifically, the EEOC argues that "CRST's inability to match fees incurred with specific claims and then to demonstrate, further, that it incurred those fees solely because of a particular claim that was individually, frivolous, [sic] dooms its fee request." *Id.* at 11 (emphasis omitted).  However, this argument places the cart before the horse.  The EEOC presumes that CRST will be able to demonstrate that some of its claims are frivolous, unreasonable or groundless and preemptively objects that the court cannot grant fees because it is impossible to extricate the fees associated with the frivolous claims from the nonfrivolous ones.  However, the court believes it a better practice to determine which, if any, of the EEOC's claims were frivolous, unreasonable or groundless

before performing a deep dive into whether any fees expended by CRST were expended but for such claims.

### a. Statute of limitations

CRST argues that each claim that the court dismissed because the alleged conduct occurred outside of the statute of limitations was frivolous, unreasonable or groundless when it was brought. A typical example of this type of claim and argument is the EEOC's claim on behalf of Antonia Aguilar. *See* CRST Remand Brief at 19-23. CRST argues that any sexual harassment that occurred prior to February 4, 2005, or 300 days prior to the filing of Monika Starke's initial charge with the EEOC on December 1, 2005, was necessarily time barred and therefore any claims based on such conduct were frivolous, unreasonable and/or groundless. *See, e.g.*, *id.* at 20. CRST notes that the EEOC's basis for the inclusion of the allegedly untimely claims was the pattern-or-practice claim that it purportedly raised on behalf of all the claimants. *See, e.g.*, *id.* As the court noted in its May 11, 2009 Order (docket no. 223), granting CRST summary judgment with respect to the statute of limitations, "[t]he EEOC's entire [theory] is premised upon the proposition that it is immune from § 2000e-5's statute of limitations in this case because it has a viable pattern or practice claim against CRST." May 11, 2009 Order at 12 (emphasis omitted); *see also generally* EEOC's Brief in Opposition to Defendant's Motion for Summary Judgment Based on Statute of Limitations and Other Grounds (docket no. 165). CRST argues that, because the court found the EEOC's pattern-or-practice claim insufficient to survive summary judgment, and because the EEOC could not even allege a prima facie pattern-or-practice claim, the claims ordinarily barred by the statute of limitations and justified by the pattern-or-practice claim were frivolous, unreasonable or groundless. *See, e.g.*, CRST Remand Brief at 20-21.[7]

---

[7] CRST also argues that Aguilar's claim was frivolous, unreasonable or groundless because none of the conduct of which Aguilar complained could possibly meet the standard

(continued...)

The EEOC does not dispute the factual allegations regarding the alleged dates each claimant suffered sexual harassment and the court adopts the same. Instead, the EEOC argues that the court may not award fees based on claims dismissed on statute of limitations grounds because they are not merits decisions—an argument that no longer holds weight after the Supreme Court's opinion in *CRST Van Expedited, Inc. v. E.E.O.C.* *See* EEOC Remand Brief at 16-17. The EEOC also argues that its basis for asserting the pattern-or-practice claim under the continuing violation doctrine was reasonable, and such doctrine relieved it of having to bring any claim within the statute of limitations. *Id.* at 17. The EEOC latches on to language from the court's May 11, 2009 Order suggesting that the court considered whether the EEOC was bound by a statute of limitations and recognized a split of authority at the district courts. *Id.* at 18. It argues that, because it presented a live question of law on which reasonable minds could differ, and in fact a position that has been accepted by the Sixth Circuit Court of Appeals and the United States District Court for the District of Minnesota since, the claims the court dismissed on statute of limitations grounds were not frivolous, unreasonable or groundless.

The court disagrees with the EEOC. Initially, the court notes that the portion of the May 11, 2009 Order on which the EEOC relies to argue that it presented a fair question of law was insubstantial to the court's holding. *See* May 11, 2009 Order at 14 (noting that the question regarding the EEOC's statute of limitations was an "[a]lternate holding" (formatting omitted)). Furthermore, as the court noted in the May 11, 2009 Order, the EEOC resisted summary judgment on these claims purely on the basis of a pattern-or-practice violation. The pattern-or-practice claim formed the basis of the continuing violation that the EEOC alleged in this case. *See* EEOC's Brief in Opposition to Defendant's Motion for Summary Judgment Based on Statute of Limitations and Other

---

[7](…continued)
for severe or pervasive sexual harassment. *Id.* at 22.

Grounds at 8 ("Here, the pattern or practice of sexual harassment alleged by EEOC is a single employment practice, and all women subjected to that practice during the time of its existence are victims."). The EEOC never made a blanket assertion that the statute of limitations did not apply to it and an argument based on the continuing violation doctrine is inapposite, as it necessarily depends on the existence of a pattern-or-practice claim, which the court determined was not viable.

While the EEOC and CRST contest whether the purported pattern-or-practice claim was frivolous, unreasonable or groundless on the purported claim's merits, the court views the claim as frivolous, unreasonable or groundless irrespective of the quantum of evidence that the EEOC adduced in support of it. Neither party addresses the EEOC's failure to properly plead a pattern-or-practice claim in the first instance. Repeatedly throughout the litigation, the court expressed confusion and concern regarding whether a pattern-or-practice claim was actually extant. *See, e.g.*, April 30, 2009 Order (docket no. 197) ("Accordingly, the court assumes without deciding that at least one of two legal principles is true: either (1) § 706 somehow permits the EEOC to pursue a pattern or practice claim and thereby render § 707 a mere redundancy in the law or (2) the EEOC has constructively amended its complaint to assert a § 707 claim against CRST in this lawsuit in addition to its § 706 claim." (footnote omitted)). Then, in 2014, the Eighth Circuit Court of Appeals overturned the court's second fee award, in part, in reiteration of its "prior observation in the [merits] appeal that 'the EEOC did not allege that CRST was engaged in "a pattern or practice" of illegal sex-based discrimination or otherwise plead a violation of Section 707 of Title VII.'" *E.E.O.C. v. CRST Van Expedited*, 774 F.3d at 1179 (internal quotation marks omitted) (quoting *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d at 676 n.13). As the master of its own complaint, it was frivolous, unreasonable and/or groundless for the EEOC to fail to allege a pattern-or-practice violation and then proceed to premise the theory of its case on such a claim. Claims necessarily premised on the inclusion of this claim are likewise frivolous, unreasonable and/or groundless. Accordingly, the claims that

the EEOC brought on behalf of Antonia Aguilar (latest possible date of harassment January 28, 2005), Linda Austin (latest possible date of harassment August 1, 2001), Patrice Cohen (latest possible date of harassment April 13, 2004), Catherine Howard (latest possible date of harassment May 30, 2004), Geraldine Leach (latest possible date of harassment January 24, 2005), Margaret McCain (latest alleged date of harassment November 20, 2003), Karen McCall (McAllister) (latest alleged date of harassment May of 2004), Rachel Perhealth (latest alleged date of harassment February 1, 2005) and Priscilla Stephenson (latest alleged date of harassment 1999) were frivolous, unreasonable and/or groundless. The court further finds that the claims that the EEOC brought on behalf of Faith Shadden (relevant latest possible date of harassment December 25, 2004) and Linda Skaggs (relevant latest alleged date of harassment February 21, 2003)[8] were frivolous, unreasonable or groundless to the extent that such claims were premised on alleged harassment that occurred prior to February 4, 2005.

### b. Concession the claimant suffered no severe or pervasive harassment

CRST argues that it is entitled to fees for all of the claims for which the EEOC conceded that the claimant did not suffer severe or pervasive sexual harassment but relied on the purported pattern-or-practice claim to "piggyback" the claim into the instant litigation. A typical example of this type of claim and argument is the EEOC's claim on behalf of Cristie Basye. *See, e.g.*, CRST Remand Brief at 31-32. CRST states that "[t]he fact that EEOC conceded [that] neither . . . [Basye's trainer's, nor a potential co-driver's,] conduct constituted severe or pervasive sexual harassment establishes the groundless nature of EEOC's claims on behalf of Basye." *Id.*

---

[8] Shadden and Skaggs both alleged that they were harassed by multiple men during their employment with CRST. This ground pertains only to those allegations of harassment which were clearly barred by the statute of limitations. The allegations of harassment that were not barred by the statute of limitations are addressed as appropriate below.

The court agrees. The court has already determined that the pattern-or-practice claim was frivolous, unreasonable and/or groundless because of the EEOC's failure to properly plead the same. That the EEOC apparently recognizes the frivolity of these types of claims in the absence of a pattern-or-practice claim demonstrates that all claims falling under this category are frivolous, unreasonable or groundless.[9] Accordingly, the claims that the EEOC brought on behalf of Cristie Basye, Kathy Cannoles, Andrea Cantrell, Meredith Carney, Helen Ferell, Madeline Lovins, Laura Taylor and Laurie Thompson were frivolous, unreasonable or groundless.

### c.  *No notice or opportunity to remedy*

CRST contends that each claim dismissed because the court found that CRST had no notice or opportunity to remedy the alleged harassment supports an award of fees. A typical example of this type of claim and argument is the EEOC's claim on behalf of Jeana Fowler Allen. *See, e.g.*, *id.* at 25-27. Fowler Allen alleged that she was harassed by two trainers "with whom she drove for a short period of time." *Id.* at 25. Fowler Allen admitted at her deposition that she understood that if she, "as a driver, believed that [she] had experienced sexual harassment, that that should be reported immediately to [her] supervisor or to the human resources department at CRST" and, further, that she "understood that [her] dispatcher was [her] supervisor." Omnibus Rule 56 Appendix[10] at

---

[9] In the EEOC Resistance to CRST's Motion for Summary Judgment Against Class Members Who Allegedly Did Not Experience Severe or Pervasive Sexual Harassment (docket no. 164), the EEOC admitted that Christie Basye, Andrea Cantrell, Meredith Carney and Helen Ferrell did not suffer severe or pervasive sexual harassment. *See id.* at 31. In its July 9, 2009 Order (docket no. 258), the court noted that the EEOC had "condede[d] four . . . allegedly aggrieved persons, Mss. Kathy Cannoles, Madeline Lovins, Laura Taylor and Laurie Thompson, did not suffer actionable sexual harassment." *Id.* at 3.

[10] This citation refers to the appendix filed in support of CRST's "Omnibus LR 56(a)(3) Statement of Undisputed Facts in Support of [Its] Motions for Summary
(continued...)

104-05; *see also* Omnibus Statement of Facts at 20.[11]  CRST argues that, "[a]lthough Fowler Allen understood CRST's reporting procedures for perceived sexual harassment and its policy against retaliation, she did not report anything [relating to sexual harassment] with respect to" either of her trainers.  CRST Remand Brief at 25.  CRST argues that the claimant's failure to properly inform CRST of the alleged harassment clearly doomed the EEOC's claim before it was brought, and that it was frivolous, unreasonable and/or groundless for that reason.

The EEOC argues that it had some basis in law and fact for raising such claims because the EEOC relied on an argument that a claimant's trainer was their "supervisor," thus imputing knowledge of the alleged harassment to CRST.  *See* EEOC Remand Brief at 24.  The EEOC supported such argument by producing evidence that certain persons at CRST characterized a driver's trainer as their *de facto* supervisor.  *See id.*  The EEOC also relies on the Supreme Court's opinion in *Vance v. Ball State University*, which recognized a split of authority regarding the proper definition of the term "supervisor." ___ U.S. ___, ___, 133 S. Ct. 2434, 2443 (2013).  The EEOC highlights that, while the Eighth Circuit ultimately affirmed the court's grant of summary judgment for lack of notice or opportunity to remedy, it did so with a substantial dissent, which viewed the trainers at issue as a driver's supervisor under the law.  *See E.E.O.C. v. CRST Van Expedited*, *Inc.*,

---

[10](…continued)
Judgment" ("Omnibus Statement of Facts"), which was filed in separate but consecutively paginated docket entries at docket nos. 148-6 through 148-41.  The court shall refer to such consecutive pagination when citing to the Omnibus Rule 56 Appendix in this Order.

[11] Like the Omnibus Rule 56 Appendix, the Omnibus Statement of Facts was filed in separate but consecutively paginated docket entries at docket nos. 148-3 and 148-4.  The court shall refer to such consecutive pagination when citing to the Omnibus Statement of Facts in this Order.  Additionally, the court notes that the EEOC has not objected to or challenged the specific factual allegations that CRST makes with respect to each claimant and, thus, the court adopts them in whole.

679 F.3d at 697-98 (Murphy, J., concurring in part and dissenting in part). The EEOC further points to Justice Ginsburg's dissent in *Vance*, in which she used Monika Starke's allegations of harassment as illustrative of why trainers should be considered supervisors under Title VII. *See Vance*, 133 S. Ct. at 2460 (Ginsburg, J., dissenting).

The EEOC further asserts that it had reasonable grounds for asserting these claims "because CRST had notice that female drivers consistently complained about harassment and it failed to prevent or decrease the incidence of harassment." EEOC Remand Brief at 26. Thus, the EEOC argues, its claims on behalf of the women who never formally complained to CRST were not frivolous, unreasonable or groundless "because CRST knew women were at risk of being harassed and failed to take reasonable measures to prevent the harassment in the first instance." *Id.* In support of its position, the EEOC points to evidence that it adduced in its resistance to CRST's motion for summary judgment on the pattern-or-practice claim. *See id.* at 26-27; *see also* Brief in Opposition to CRST's Motion for Summary Judgment on EEOC's Pattern or Practice Claim (docket no. 168) at 12-16. The EEOC focuses on what it perceives as a high number of incidences of harassment that were reported to CRST and its own conclusion that "CRST routinely failed to determine if its sexual harassment policy was violated or to impose any meaningful discipline on drivers who violated the policy." EEOC Remand Brief at 26-27.

The court rejects the EEOC's argument that the claims at issue were reasonable because CRST must have been on notice of all incidents of sexual harassment because it received sporadic complaints of sexual harassment. The EEOC's figure of 9.4% of all female truck drivers who were paired with men between January 1, 2005 and September 8, 2008, who complained of sexual harassment fails to demonstrate that the EEOC's claims on behalf of women for whom CRST had no formal notice were reasonable for several reasons. First, the 9.4% figure only captures a portion of the story. The EEOC concedes that, in its calculation of that figure, it does not take into account "women who were sexually harassed by other women" or "women who were harassed by other CRST

employees, such as fleet managers, recruiters, or drivers with whom they were not assigned." Brief in Opposition to CRST's Motion for Summary Judgment on EEOC's Pattern or Practice Claim at 14. Further, the EEOC's estimate does not take into account any complaints made by men during that time. Of course, such an inquiry would outstrip the scope of the case, but the court recognizes that it would be absurd to envision CRST as keeping a close tally of each individual claim of sexual harassment by a woman paired with a male driver and carefully arrive at the 9.4% figure in the midst of every other complaint or allegation of harassment made during that period. Second, while the court does not view the 9.4% figure as particularly low, it does recognize that the vast majority of female and male pairings were completed without an allegation of harassment. The EEOC does not explain why CRST should have extrapolated this figure to assume that all women were being sexually harassed when driving with male trainers or co-drivers and preemptively remedied a situation that it could not be sure was occurring. Third, the evidence demonstrates that, when CRST became aware of alleged harassment, it promptly took action to remedy it. *See, e.g.*, Part III.D.2.d *infra*; *see also* April 30, 2009 Order at 49-51 (noting, among other things, that at least one male driver was fired after he admitted sexually to harassing a female coworker; many male drivers were given a "no females designation" designed to prevent them from driving with women in order to prevent instances of sexual harassment; and that, when female drivers complained of harassment, CRST took prompt and appropriate actions to extricate the women from the harassing environment). Finally, even if CRST was generally aware of some sort of "culture" which might include instances of sexual harassment, this did not relieve the individual claimants of utilizing the proper procedures to report such harassment, as the court shall discuss below. For these reasons, the mere existence of instances of sexual harassment allegations being brought to CRST in the time leading up to the suit is no bar to finding that all claims, regardless of whether the claimant formally notified CRST of their alleged harassment or not, were frivolous, unreasonable or groundless. As the court

shall now discuss, the failure to follow CRST's written policy for reporting harassment doomed each claim from the outset.

CRST maintained a Professional Driver's Handbook at all relevant times which contained, among other things, "a definition of sexual harassment and addresses reporting, investigations, and corrective actions." Appendix in Support of CRST's Motion for Summary Judgment on EEOC's Pattern and Practice Claim (docket no. 150-5) at 145. The Professional Driver's Handbook further states:

> Employees who are subjected to/or [sic] witness harassment or discrimination should immediately report such conduct to any one of the following members of management:
>
> **Immediate Supervisor**
> **Director of Human Resources . . .**

*Id.* (formatting in original). Additionally, it is undisputed that CRST structured its business, formally, such that "[a]ll drivers report to fleet managers who operate as truck dispatchers." *Id.* at 144. CRST also requires all new drivers to undergo a mandatory orientation period, at the end of which drivers sign an acknowledgment stating that they have received, read and understood CRST's sexual harassment policy. *Id.* at 146.

Where a claimant fails to properly report the harassment through the channels provided to them, courts routinely refuse to impute knowledge on the employer for the misconduct of an employee or even a supervisor. *See, e.g.*, *Chaloult v. Interstate Brands Corp.*, 540 F.3d 64, 74 n.7 (1st Cir. 2008) (noting that, "[c]learly [a harassment plaintiff's] behavior in not complaining was not reasonable" where there was an established policy for reporting harassment and it was undisputed that the plaintiff did not follow it); *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008) (holding that an employer had no way of knowing of alleged harassment where the employee did not follow the established reporting procedures, of which the employee was aware, and did not otherwise make an effort to report the alleged harassment to the employer); *Gordon v.*

*Shafer Contracting Co.*, 469 F.3d 1191, 1195 (8th Cir. 2006) (holding that, where an employee is aware of a company's "antidiscrimination policies and reporting procedures" and was provided with a handbook detailing such policies and "company officials to whom harassment can be reported and [which also] provides their work and home telephone numbers," and the employee fails to utilize such procedure to report harassment, such admission is sufficient to establish the *Ellerth-Faragher* affirmative defense, relieving the employer of liability for the harassment of a supervisor). Furthermore, the court has previously noted that CRST does not operate in a unified work environment, *see* April 30, 2009 Order at 35-36 (outlining the working conditions for an average driver with CRST and noting that "[d]rivers work in distant locations, and supervisors rarely see drivers working together"), a fact which the EEOC has lamented several times, *see, e.g.*, Resistance to CRST's Motion for Summary Judgment Based on Class Members' Failure to Report Alleged Harassment (docket no. 162) at 11 (noting the "unique circumstances of the truck" and noting that the "worksites" that drivers with CRST encounter on a daily basis are different than most others); Resistance to CRST's Motion for Summary Judgment Against Class Members Who Allegedly Did Not Experience Severe or Pervasive Sexual Harassment at 6-7 (same). In such an instance, where any harassment would occur far from the eyes of a supervisor or other member of CRST management, the only available means for CRST to learn of alleged harassment on the trucks would be to have the victim report it or the perpetrator voluntarily confess.

Here, though the claimants were admittedly aware of CRST's established procedures for reporting sexual harassment, they failed to utilize them. There is no evidence as to any of the claimants in this category that CRST had alternate means of knowledge, besides the EEOC's blanket assertion that CRST should have known that these claimants were suffering from sexual harassment because of various other reports. The failure to comply with the reporting procedures, and the lack of facts suggesting that CRST had any way of gaining knowledge of the harassment absent compliance with the reporting

procedures, made such claims frivolous, unreasonable and/or groundless. Additionally, the fact that some women ultimately reported the alleged harassment to CRST is of no import—CRST cannot be held liable for harassment which had already ceased by the time it learned of the conduct and it is unreasonable to base a claim on the argument that it could. *See, e.g.*, *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 851 (8th Cir. 2005) (affirming dismissal of a coworker sexual harassment claim, in part, because the plaintiff failed to notify her manager of sexual harassment until after the coworker had been reassigned to another jobsite); *see also* June 18, 2009 Order (docket no. 251) at 7 ("CRST may not be held liable for sexual harassment it could not stop and that had already ended by the time it was made aware of it.").

The court is mindful, in this instance, of the manner in which the EEOC brought a majority of the claims now at issue. In the weeks leading up to the court-imposed deadline for the EEOC to identify the individual claimants on behalf of whom it was seeking relief, the EEOC piled on claim after claim in a last-ditch attempt to inject as many claimants into the litigation as possible. *See* CRST Remand Brief at 10-11 ("EEOC identified most of its claims on or just before the deadline. In the last eight days before the October 15, 2008 deadline, EEOC nearly quadrupled the number of individual claims it identified—from 76 to 275."). As CRST notes, over half of the seventy-eight claims now at issue were added on the date of the deadline. *Id.* at 11. The haste with which many of the claims were brought further militates in favor of finding that the claims at issue lacked a sufficient basis in fact when they were brought. A more thorough vetting process would have revealed the weaknesses in these claims and the record is clear that CRST lacked actual notice of any alleged harassment due to the claimants' failure to comply with CRST's reporting policies. Therefore, the court finds that claims that the

court ultimately dismissed for lack of notice to CRST were frivolous, unreasonable and/or groundless when brought.[12]

Accordingly, the claims on behalf of the following women were frivolous, unreasonable and/or groundless—the court lays the claims out in table format for ease of reference, alongside citations to the record demonstrating that the claimant admitted that she had received or reviewed the Professional Driver's Handbook; understood their supervisor to be their fleet manager, or acknowledged that the proper person to contact at CRST to report harassment was their dispatcher or fleet manager; and subsequently failed to report the harassment at the time it was occurring:

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Failed to report harassment |
| --- | --- | --- | --- |
| Jeana Fowler Allen | Omnibus Rule 56 Appendix at 104 | *Id.* at 105 | *Id.* at 118 |
| Antionett Balwin | *Id.* at 218 | *Id.* | *Id.* at 222 |
| Mary Beaton | *Id.* at 320 | *Id.* | *Id.* at 325-26 |
| Christine Bell-Boyer | *Id.* at 391 | *Id.* at 391-92 | *Id.* at 396 |
| Natasha Brown | *Id.* at 505 | *Id.* | *Id.* at 508, 512, 515 |
| Kim Chisholm | *Id.* at 649 | *Id.* at 650 | *Id.* at 654 |

[12] Because the court has found that the claims meet the *Christiansburg* standard because they lacked a factual basis, the court declines to consider whether the claims were reasonable due to the EEOC's argument that it had a reasonable basis in law to bring the claims under the theory that the lead drivers were the female drivers' supervisors. *But see E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d at 684 (reiterating the standard for holding a person to be a "supervisor" under Title VII and noting that "[i]t is undisputed that none of CRST's Lead Drivers wielded . . . [the] power" required under the test to meet the definition of supervisor); *Gordon*, 469 F.3d at 1195 (holding that failure to follow reporting policy is fatal to a claim that a supervisor sexually harassed a subordinate under the *Ellerth-Faragher* affirmative defense).

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Failed to report harassment |
|---|---|---|---|
| Linda Connor | *Id.* at 743 | *Id.* at 746 | *Id.* at 756 |
| Catherine Coronado | *Id.* at 760 | *Id.* at 760, 771 | *Id.* at 767 |
| Tamara Demery | *Id.* at 841 | *Id.* | *Id.* at 847 |
| Catherine Granofsky Fletcher | *Id.* at 1120 | *Id.* at 1120-21 | *Id.* at 1124 |
| Angelene Gatewood | *Id.* at 1139[13] | *Id.* at 1136 | *Id.* at 1143-44 |
| Leah Meyers Graham | *Id.* at 1161 | *Id.* at 1162-63, 1169 | *Id.* at 1177 |
| January Jackson | *Id.* at 1516 | *Id.* at 1516-17 | *Id.* at 1519, 1524 |
| Diane Johnson | *Id.* at 1555 | *Id.* at 1557 | *Id.* at 1562 |
| Delila Katzka | *Id.* at 1581 | *Id.* at 1582[14] | *Id.* at 1587 |
| Tina Lott | *Id.* at 1654-55 | *Id.* at 1656 | *Id.* at 1660 |
| Virginia Mason | *Id.* at 1710 | *Id.* at 1712 | *Id.* at 1717 |
| Lucinda McBlair | *Id.* at 1731 | *Id.* at 1732, 1746-47 | *Id.* at 1746-47 |

[13] Though Gatewood never explicitly acknowledged receiving the Professional Driver's Handbook, she did mention what "the driver's handbook" said during a confrontation with her alleged harasser. *Id.* The only reasonable interpretation of such statement would imply that Gatewood had received and read the Professional Driver's Handbook.

[14] Katzka never specifically acknowledged an understanding that her fleet manager was her supervisor. *See id.* at 1582 (answering "[n]ot really" when asked if she knew that her fleet manager was her immediate supervisor). However, Katzka did sign an acknowledgment that she read and understood CRST's sexual harassment policy, which unambiguously states who a driver should contact if he or she feels they have been harassed. *Id.*

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Failed to report harassment |
|---|---|---|---|
| Rosalyn McDaniels | *Id.* at 1845 | *Id.* at 1846-47[15] | *Id.* at 1856-57 |
| Bonnie Moesch | *Id.* at 1914 | *Id.* at 1915[16] | *Id.* at 1918, 1926 |
| Shirley Parker | *Id.* at 2049, 2052-53 | *Id.* at 2050-51, 2053 | *Id.* at 2056-57 |
| Sheree Phillips | *Id.* at 2269 | *Id.* at 2270[17] | *Id.* at 2273, 2276 |

[15] Like Katzka, McDaniels never specifically acknowledged an understanding that her fleet manager or dispatcher was her immediate supervisor. *See id.* at 1846 (stating her understanding that the lead driver was her immediate supervisor). However, McDaniels did admit that CRST briefly advised her during training that she could report sexual harassment to human resources and further admitted to having access to the handbook on the truck during training, which unambiguously states who a driver should contact if he or she feels they have been harassed. *Id.* at 1847.

[16] Moesch never specifically acknowledged receipt of the Professional Driver's Handbook, but did express that she received a copy of CRST's policies, including its policy on sexual harassment. Additionally, she restated CRST's sexual harassment policies as follows: "If you are in a situation that you do not like, all you need to do is tell somebody and the situation will be taken care of." *Id.* at 1915. While this does not explicitly state that the "someone" to whom she referred was her direct supervisor or human resources, she nevertheless acknowledged receipt of the sexual harassment policy, which unambiguously states who a driver to should contact if he or she feels they have been harassed. *Id.* at 1914.

[17] Phillips did not specifically state to whom she believed she should have reported any allegation of sexual harassment. *Id.* at 2270. However, she stated that she "kn[e]w for sure that [the sexual harassment policy] was covered because it's always covered" and, in fact, she retained a copy of the Professional Driver's Handbook and acknowledgment forms until at least the date of her deposition. *Id.* at 2270-71.

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Failed to report harassment |
|------|------|------|------|
| Tammi Pile | *Id.* at 2344 | *Id.*[18] | *Id.* at 2346, 2348, 2351, 2353 |
| Sharon Pinchem | *Id.* at 2390 | *Id.* at 2393-94[19] | *Id.* at 2407-08 |
| Donna Quigley | *Id.* at 2440 | *Id.* at 2441 | *Id.* at 2453 |
| Rachel Tucker | *Id.* at 3212 | *Id.* at 3214 | *Id.* at 3219-20 |

The court notes that the claims brought on behalf of Linda Connor, Tamara Demery, Virginia Mason, Lucinda McBlair, Rosalyn Daniels, Shirley Parker and Sheree Phillips were all dismissed on multiple grounds—that CRST had no notice of the alleged harassment and that the acts by the alleged harasser did not constitute severe or pervasive harassment. Because the court has found that the claims were frivolous, unreasonable and/or groundless because the claimants did not utilize the established reporting procedures to inform CRST of the alleged harassment, the court need not and shall not consider whether the claims were also frivolous, unreasonable and/or groundless based on the severity or pervasiveness of the alleged acts.

Further, as to the claim brought on behalf of Kristi Allen, the court finds that the portion of her claim pertaining to her co-drivers Steven McCauley and Jeff Hudson was

---

[18] Like many other claimants, Pile did not specifically acknowledge being told that she should contact her fleet manager or dispatcher if she felt that she had been sexually harassed. *Id.* at 2344. However, like the other claimants, Pile did sign an acknowledgment that she had reviewed and understood CRST's sexual harassment policy, which contains its reporting procedures. *Id.*

[19] Pinchem did not specifically acknowledge that she understood that she should contact her fleet manager or dispatcher if she felt she had been sexually harassed. *See id.* at 2394. However, she did sign an acknowledgment and remembered that the acknowledgment had been "specifically brought to the attention of the class" during orientation. *Id.* at 2393.

frivolous, unreasonable and/or groundless. Allen attended her driver orientation in Cedar Rapids, Iowa, where she was given a copy of the driver's handbook. *See* Omnibus Rule 56 Appendix at 123-24. Allen admitted at her deposition that she received and covered CRST's sexual harassment policy at orientation. *Id.* at 125. Allen further admitted that she had the telephone numbers for human resources and her dispatcher, whom she acknowledged was her immediate supervisor, in her cell phone. *Id.* During her tenure with CRST, Allen alleges that she was harassed by her trainer, Dean Hale, and two of her co-drivers, McCauley and Hudson. *Id.* at 127. Allen admitted that she never reported any of the alleged harassment perpetrated by McCauley or Hudson to her fleet manager, operations or human resources. *See id.* at 133, 135; *see also id.* at 136 (noting that Allen did not recall having "any other conversations with anyone at CRST, either fleet managers or anyone in operations or human resources" about any of the alleged sexual harassment besides Hale's conduct, which the court shall discuss below). Accordingly, as to Allen's claim as it pertains to McCauley and Hudson, the court finds that such claim was frivolous, unreasonable and/or groundless and can support an award of fees for work performed on those allegations.

Similarly, as to the claim brought on behalf of Darlene Miller, the court finds that the portion of the claim pertaining to Miller's co-driver, Ken Mowerson, was frivolous, unreasonable and/or groundless. Miller attended orientation in Cedar Rapids, Iowa, where she received a copy of CRST's driver's handbook and reviewed CRST's policies, including CRST's sexual harassment policy. *See id.* at 1895-98. Miller acknowledged that she understood that "it was CRST's policy that anyone witnessing or subjected to sexual harassment should report it immediately" and further understood her immediate supervisor to be her fleet manger. *Id.* at 1898. Miller alleges that, during her time working for CRST, she was harassed by her first trainer, whose name she could not recall, and two of her co-drivers, Mowerson and John Roum. *Id.* at 1898-99. Miller admitted that she never contacted anyone at CRST regarding Mowerson's harassment until after she had quit

CRST, and even then could not recall whether she specifically related the harassment. *Id.* at 1903, 1909. Accordingly, as to Miller's claim as it pertains to Mowerson, the court finds such claim was frivolous, groundless and/or unreasonable.

The claim brought on behalf of Sherry O'Donnell is similar to that brought on behalf of Miller. O'Donnell attended orientation in Oklahoma City, Oklahoma, where she received a copy of CRST's handbook, acknowledged receipt and understanding of CRST's various policies, including its policy regarding sexual harassment, and evinced an understanding of CRST's reporting policy. *Id.* at 1987-90. O'Donnell alleged that she was harassed by her co-driver Anthony Sears and second-wave trainer Bill Campbell. O'Donnell admitted that she never contacted anyone at CRST regarding the harassment perpetrated by Campbell until after she had been terminated. *Id.* at 2007.

Debra Hindes alleges that she was harassed by two trainers, Marvin ("Curly") Timmerman and Bobby Roberts, as well as a co-driver, R. Bell, Jr. *See id.* at 1360. Hindes attended orientation in Cedar Rapids, Iowa and there reviewed the Professional Driver's Handbook and CRST's sexual harassment and reporting policies. *Id.* at 1347. Hindes asserts that Bell propositioned her for sex and commented that he and his significant other were "swingers." *Id.* at 1358-59. There is no evidence in the record that Hindes reported any of Bell's conduct to anyone at CRST. Accordingly, as to Hindes's claim as it relates to Bell, the court finds that it was frivolous, unreasonable and/or groundless.

However, as to Betsy Ybarra, the court cannot say that the claim was frivolous, unreasonable and/or groundless. During her deposition, though Ybarra admitted to receiving a handbook outlining CRST's procedures regarding sexual harassment and signed an acknowledgment that she had read and understood the sexual harassment procedures, she staunchly refused to state that she actually read and understood the policy during her deposition. *See id.* at 3400-01. Unlike the other claimants for whom the court relies on the acknowledgment of the sexual harassment policies to find that their claims were

frivolous, unreasonable and/or groundless, Ybarra further stated that she must have lied on the original acknowledgment she signed with CRST, because she knew that they had not covered sexual harassment during orientation and did not subsequently read the policy or the handbook. *Id.* Accordingly, the court cannot say that the claim the EEOC brought on behalf of Ybarra was frivolous, unreasonable and/or groundless and fees on this claim are inappropriate.

In sum, the court finds that there was no basis in fact for the claims which the court dismissed for lack of notice where the women acknowledged receiving CRST's driver's handbook and sexual harassment policy, which clearly laid out a reporting procedure for sexual harassment, and where the women failed to so properly report the alleged harassment. The fact that CRST was generally aware of a number of complaints of sexual harassment stemming from male/female driving teams was insufficient to impute knowledge to CRST of all alleged sexual harassment occurring in its trucks. The court finds that the claims on behalf of the twenty-six women outlined in the table above were frivolous, unreasonable and/or groundless. The court further finds that the portions of the claim based on Kristi Allen's allegations regarding her co-drivers Steve McCauley and Jeff Hudson were frivolous, unreasonable and/or groundless. Similarly, the court finds that the portion of the claim based on Darlene Miller's allegations regarding her co-driver Ken Mowerson was frivolous, unreasonable and/or groundless. The portion of the claim based on Debra Hindes's allegations regarding her co-driver R. Bell, Jr. was also frivolous, unreasonable and/or groundless. Finally, the court finds that the claim brought on behalf of Betsy Ybarra was not frivolous, unreasonable and/or groundless.

### d. *Complaint properly remedied*

CRST argues that each claim that the court dismissed because CRST took appropriate action upon being informed of the alleged harassment was frivolous, unreasonable and/or groundless. The claim that the EEOC brought on behalf of Samantha Cunningham is typical of this type of argument and claim. *See, e.g.*, CRST Remand Brief

at 47-49. Cunningham alleged that she was harassed by her second trainer, Neal Page. *Id.* at 47. During her time driving with Page, Cunningham alleged that Page engaged in a variety of sexually offensive behaviors, including describing his genitals, telling her that he wanted to have sex with her and describing sexual acts that he wanted to perform on her. *See, e.g.*, Omnibus Rule 56 Appendix at 785-86. After Cunningham ended her route with Page, she went back home with her fiancé, but was apparently scheduled to drive with Page again. *See id.* at 786-87. After she arrived home, Cunningham called her dispatcher and explained that she did not wish to drive with Page again. *Id.* Her dispatcher pressured her into returning to the truck with Page, stating that it was difficult to set up an alternate route and driver because of her location at her home in Maine, that she was expected to be on the truck in a few days and that Page was waiting for her and could not drive by himself. *Id.* It was at that time that Cunningham mentioned Page's "sexual talk." *Id.* Cunningham was not required to drive with Page again following the conversation with her dispatcher and management. *Id.* at 786-87. Cunningham indicated at her deposition that, following her drive with Page, she was willing to and, in fact, did continue driving for CRST. *Id.*

CRST argues that this claim was frivolous, unreasonable and/or groundless when brought because the "EEOC knew or should have known that CRST promptly and effectively remedied the situation once it was notified of it. CRST's response upon learning of the alleged harassment prevented any future sexual harassment." CRST Remand Brief at 49. The EEOC does not specifically address CRST's contention that claims similar to Cunningham's were frivolous, unreasonable and/or groundless—rather, it relies on its general defense that the claims it asserted on behalf of these women were reasonable because all of the claims that the court dismissed "for failure to establish a basis for CRST's liability were not frivolous." *See* EEOC Remand Brief at 37 (formatting omitted).

It is well established law that, "[o]nce an employer becomes aware of harassing conduct, it must promptly take remedial action which is reasonably calculated to end it." *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1078 (8th Cir. 2006) (alterations omitted) (quoting *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993)). Under this theory, the employer "may be culpable for harassment to which it did not adequately respond, on the theory that 'the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'" *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123-24 (8th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S.775, 789 (1998)). When determining whether an employer has acted sufficiently to remedy the alleged harassment, courts consider a variety of factors, including: (1) the temporal proximity between the harassment and the remedial action; (2) the options available to the employer to so remedy the harassment—"such as employee training sessions and disciplinary action taken against the harassers"; and (3) whether or not the remedial action actually ended the harassment. *Jenkins v. Winter*, 540 F.3d 742, 749 (8th Cir. 2008) (quoting *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006)). The Eighth Circuit has stated that one month was still "prompt" remedial action under this standard. *See Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 912 (8th Cir. 2006) (finding evidence establishing that an employer acted reasonable to remedy the harassment where the harasser was dismissed with in one month after a formal complaint, preceded by several informal complains, was filed against him).

As the court noted in its April 30, 2009 Order, CRST often took one of a number of courses of action following an allegation and investigation of sexual harassment. *See* April 30, 2009 Order at 49-51. For example, "[a]t least one male driver was fired after he admitted to sexually harassing a female coworker. Further, CRST barred dozens of other male drivers from driving with women. This 'no females designation' did not alter the male drivers' rates of pay." *Id.* at 49. Further, the court noted that "[d]ispatchers

offered and/or made arrangements to extricate drivers from their tractors and harassers as soon as possible" by "offer[ing] to pay or pa[ying] for expenses such as travel, lodging and medical care after extraction." *Id.* Finally, the court notes that the EEOC has provided no evidence that CRST regularly tolerated "repeat offenders" with respect to the claimants' alleged harassers. There is no evidence that the same male drivers and trainers were permitted to continually harass their co-drivers and students unhindered. In fact, as the court noted, CRST took affirmative steps to prevent such a recurrence.

These sorts of actions certainly constitute remedial actions. For each of the claims for which CRST requests fees on this basis, CRST took prompt action that was reasonably calculated to end the harassment and, in fact, removed the woman from the harassing environment and her harasser completely. Additionally, for the reasons stated in Part III.D.2.c supra, the court rejects the EEOC's general contentions that its claims were nonfrivolous or reasonable because CRST should have generally been aware that all of its female drivers were suffering sexual harassment. It is also undisputed that the claimants here received and understood CRST's established antiharassment policy and reporting procedures. The difference between these claimants and the claimants from Part III.D.2.c *supra* is that these claimants actually utilized CRST's reporting procedures. Upon doing so, CRST took prompt and effective remedial action within days of being informed of the alleged harassment, ending the same. Where a claimant is aware of the reporting procedures required by CRST, follows the reporting procedure and the sexual harassment is promptly addressed and the harassment effectively ended, the court finds that a claim based on such a fact pattern is inherently frivolous, unreasonable and/or groundless because the facts clearly and completely bar recovery on behalf of such claimant. *Cf. Anda*, 517 F.3d at 534; *Gordon*, 469 F.3d at 1195; *Powell*, 445 F.3d at 1078.

Accordingly, the claims on behalf of the following women were frivolous, unreasonable and/or groundless—as with the claims above, the court lays these claims out in table format, alongside citations to the record demonstrating that the claimant admitted

that she had received or reviewed the Professional Driver's Handbook; understood her supervisor to be their fleet manager, or acknowledged that the proper person to contact at CRST to report harassment was her dispatcher or fleet manager; and, after making an official report to CRST, was promptly removed from the situation:

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Reported and properly remedied |
|---|---|---|---|
| Tressie Abbott[20] | Omnibus Rule 56 Appendix at 5 | *Id.* at 6 | *Id.* at 8, 15-16 |
| Samantha Cunningham | *Id.* at 781 | *Id.* at 781-82 | *Id.* at 786-87 |
| Denise Desonier | *Id.* at 854 | *Id.* at 854, 856 | *Id.* at 859-61[21] |
| Maybi Fernandez-Fabre | *Id.* at 973-74 | *Id.* at 974[22] | *Id.* at 981-82 |

---

[20] The court originally dismissed the EEOC's claim on behalf of Abbott because it determined that she did not suffer severe or pervasive sexual harassment. *See* July 6, 2009 Order (docket no. 256) at 9-12. However, because the analyses under *Christiansburg* and the court's consideration of summary judgment in the first instance differ, and because CRST makes the alternate argument that the "EEOC knew or should have known that Abbott's permanent separation from [her harasser] within a day after her complaint [of his behavior to CRST] further defeated Abbott's claim," the court shall consider it, and dispose of it, on these grounds. CRST Remand Brief at 19.

[21] While Desonier was already off the truck and away from her harasser by the time she contacted CRST to report the harassment, CRST subsequently placed a "no females" designation on the harasser, a measure that Desonier admitted was "[a]bsolutely" a reasonable precaution. *Id.* at 861.

[22] Although Fernandez-Fabre does not specifically remember discussing the policy at orientation, she did sign an acknowledgment that she received and read the sexual harassment policy and stated that she was "sure [CRST] talked about it" at orientation. *Id.* at 974.

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Reported and properly remedied |
|---|---|---|---|
| Sylvia Griffith[23] | *Id.* at 1314 | *Id.* at 1315 | *Id.* at 1318, 1323 |
| Dequinda Harris | *Id.* at 1332 | *Id.* at 1333 | *Id.* at 1338-39 |
| Tracy Hughes | *Id.* at 1499 | *Id.* at 1500 | *Id.* at 1508-09 |
| Zainabu Jenga | *Id.* at 1541 | *Id.* at 1541-42 | *Id.* at 1535, 1540[24] |
| Brenda Kennett | *Id.* at 1599 | *Id.*[25] | *Id.* at 1592-94, 1596 |
| Ginger Laudermilk | *Id.* at 1612 | *Id.* at 1613 | *Id.* at 1617-18 |
| Patricia Warr Marzett | *Id.* at 1689 | *Id.* at 1690-91 | *Id.* at 1700-02 |
| Nona McCuien | *Id.* at 1804 | *Id.* at 1805 | *Id.* at 1808-09[26] |

---

[23] The court originally dismissed the EEOC's claim on behalf of Griffith because the record did not show that she suffered severe or pervasive sexual harassment. *See* July 9, 2009 Order at 5. At that time the court did not reach CRST's alternate argument that CRST adequately remedied Griffith's complaint. The court does so now.

[24] Jenga contends that she was harassed by both her trainer, Lonnie Grimes, and a co-driver, Dustin Delp. While Jenga did not contact human resources about Grimes's alleged harassment, she did contact her student coordinator, who advised her to contact human resources, but nevertheless agreed to find her a new trainer. *Id.* at 1535.

[25] Kennett testified that she "didn't even read" CRST's sexual harassment policy "but [she] knew to contact" her supervisor or human resources if she experienced something that she felt was harassment. Kennett further admitted that she signed an acknowledgment that she read and understood CRST's policy and reporting procedures. *Id.* at 1599, 1600.

[26] Though McCuien continued driving with her alleged harasser for several days after reporting it to CRST, this occurred as a result of a head injury that McCuien had sustained and because she was concerned about making her way home if she left the truck. *See id.* at 1809. While her dispatcher offered to have her harasser drop her off sooner,

(continued...)

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Reported and properly remedied |
|---|---|---|---|
| Peggy Pratt[27] | *Id.* at 2416-17 | *Id.*[28] | *Id.* at 2420-21 |
| Danette Quintanilla | *Id.* at 2477 | *Id.*[29] | *Id.* at 2486, 2488 |
| Janet Ranney | *Id.* at 2506 | *Id.* | *Id.* at 2519-20, 2522[30] |

[26](...continued)
McCuien "begged" her harasser to let her stay on the truck and continue the trip so she could make it home. *Id.*

[27] The court originally dismissed Pratt because the evidence did not show that she had suffered severe or pervasive sexual harassment or that CRST should have known of the alleged harassment. *See* July 9, 2009 Order at 6. However, CRST also argued the alternate ground that CRST properly remedied the alleged harassment. *See* CRST Remand Brief at 129. The court shall address this claim on that ground.

[28] Though Pratt does not specifically remember her orientation or covering the sexual harassment policy, she does admit that she signed the acknowledgment that she received and read the policy and further states that she must have read the policy because she signed the acknowledgment. *Id.* at 2417.

[29] Quintanilla never specifically acknowledged receipt of the Professional Driver's Handbook or evinced a specific understanding of CRST's reporting procedures. However, she did sign an acknowledgment that she had received and understood CRST's sexual harassment policy and procedures. *Id.* at 2477. In fact, she later did contact her dispatcher to report her harasser's sexual harassment, demonstrating her knowledge of the proper procedures to follow. *See id.* at 2486. In any event, the facts are undisputed that Quintanilla did follow CRST's reporting procedure, even if she did not realize she was doing so at the time.

[30] Like Quintanilla, Ranney never specifically acknowledged receiving the Professional Driver's Handbook but did acknowledge receiving and understanding the sexual harassment policy. *See id.* at 2506. However, Ranney, either purposefully or inadvertently, did in fact follow CRST's reporting policy by reporting the alleged harassment through the proper channels. *See id.* at 2519 (stating that she contacted Lisa Laveck of CRST about her harasser's conduct). Additionally, though the record is unclear

(continued...)

| Name | Received/Reviewed Driver's Handbook | Understood reporting policy | Reported and properly remedied |
|---|---|---|---|
| Mary "Emily" Smith | *Id.* at 2903 | *Id.* at 2904 | *Id.* at 2908-09 |
| Esther Steanhouse[31] | *Id.* at 3007 | *Id.* at 3009 | *Id.* at 3012-14 |
| Jennifer Susson | *Id.* at 3042 | *Id.* | *Id.* at 3052 |
| Christine Taylor | *Id.* at 3063 | *Id.* at 3064 | *Id.* at 3068-69 |
| Robin Timmons | *Id.* at 3140 | *Id.* at 3141-43 | *Id.* at 3149 |
| Sheila Wyrick | *Id.* at 3379 | *Id.*[32] | *Id.* at 3380 |

As with the claims discussed above, the court notes that the claims brought on behalf of Dequinda Harris, Tracy Hughes, Brenda Kennett, Nona McCuien, Christine Taylor and Sheila Wyrick were all dismissed on two grounds—that CRST promptly remedied alleged harassment and that the acts by the alleged harasser did not constitute severe or pervasive harassment. Because the court has found that the claims were

---

[30](...continued) exactly how long after Ranney complained of the harassment that CRST routed her home, the record is also clear that CRST repeatedly asked Ranney what she wanted the company to do. *Id.* at 2522. Ranney repeatedly answered, "I don't know. I don't know," and adamantly refused to allow CRST to place her on a different truck. *Id.* Eventually, when she stated that she wanted to be routed home, CRST complied. *See id.*; *see also* Omnibus Statement of Facts at 464.

[31] The court originally dismissed Steanhouse on the grounds that she did not suffer severe or pervasive sexual harassment. *See* July 6, 2009 Order at 13. However, because CRST makes the alternate argument that the EEOC's claim on behalf of Steanhouse was frivolous, unreasonable and/or groundless because CRST properly remedied her claim, the court shall address it here. *See* CRST Remand Brief at 149.

[32] Although Wyrick did not specifically discuss receiving the Professional Driver's Handbook or orientation, she did admit at her deposition that she "knew" the company's policy regarding sexual harassment and that it was covered during orientation. *Id.* at 3379.

frivolous, unreasonable and/or groundless because the claimants were promptly removed from their harasser and the situation was remedied, the court need not and shall not consider whether the claims were also frivolous, unreasonable and/or groundless based on the severity or pervasiveness of the alleged acts.

The court finds that the claims that the EEOC brought on behalf of Kristi Allen as they pertain to the harassment perpetrated by her trainer, Dean Hale, were frivolous, unreasonable and/or groundless because CRST effectively and promptly removed her from the offending situation. As the court noted above, Allen was undoubtedly aware of CRST's sexual harassment policy and reporting procedures. *Id.* at 123-25. After Allen witnessed Hale urinating in a bottle, noted that he kept swords locked underneath the bottom bunk in the tractor, told Allen that she looked "angelic" when she slept and picked up a hitchhiker, Allen contacted her dispatcher to complain of Hale's behavior. *Id.* at 128-30. Her dispatcher told her to get off the truck at the next truck stop and that CRST would arrange a hotel room and alternate driver for her. *Id.* at 130. Allen admitted that she believed CRST took her complaints seriously and satisfactorily addressed them. *Id.* at 131. Therefore, the court finds that Allen's claim as it pertains to Hale was also frivolous, unreasonable and/or groundless. Because the court has determined that Allen's allegations as to all of her alleged harassers were frivolous, unreasonable and/or groundless, the court need not and shall not reach the alternate ground that Allen did not suffer severe or pervasive harassment.

As the court noted above, Debra Hindes attended orientation in Cedar Rapids, Iowa and there reviewed the Professional Driver's Handbook and CRST's sexual harassment and reporting policies. *Id.* at 1347. As to the portion of Hindes's allegations that related to the alleged harassment perpetrated by Bobby Roberts, her second trainer, the court finds such claim to be frivolous, unreasonable and/or groundless because CRST promptly remedied the alleged harassment. Hindes alleges that Roberts drove without his shirt on at least once, would sometimes urinate in a bottle behind her while she was driving and

made a number of sex-based comments to her. *Id.* at 1353. After complaining of Roberts's behavior to dispatch, dispatch requested that Hindes stay with Roberts until CRST could find Hindes a new co-driver. *Id.* at 1355. Hindes refused to continue driving with Roberts and requested that CRST provide her with a motel room, which they did. *Id.* Accordingly, as to Hindes's contentions as they relate to Roberts, the court finds such claim to be frivolous, unreasonable and/or groundless.

As the court noted above, Darlene Miller alleges that, during her time working for CRST, she was harassed by her first trainer, whose name she could not recall, and two of her co-drivers, Ken Mowerson and John Roum. Miller received a copy of CRST's driver's handbook and reviewed CRST's sexual harassment policy, understanding it to require prompt reporting to her fleet manager. *See id.* at 1895-98. Miller alleges that, at one point during training, she awoke to find her trainer naked on the truck. *Id.* at 1899. Miller immediately contacted her dispatcher to tell CRST that she refused to drive with that trainer any longer and got off the truck. *Id.* Miller further alleges that Roum urinated in bottles in the truck, albeit out of Miller's sight, and continued to do so even after she requested that he stop, and believed Roum to be masturbating on the truck, though she admittedly never saw him do so. *Id.* at 1905-06. Miller contacted Lisa Laveck of CRST about Roum's behavior and told her that, while she understood that she could not be separated from Roum immediately, she wanted a different co-driver. *Id.* at 1907. Three days later, Miller got off the truck and, two days after that, Roum was terminated. *Id.* at 1908. Though the record is unclear as to the precise reason for Roum's termination, Miller was nevertheless satisfied with CRST's handling of her separation from Roum. *Id.* Accordingly, as to Miller's allegations relating to her first driver and Roum, the court finds such claim to be frivolous, unreasonable and/or groundless. Because the court has determined that Miller's allegations as to all of her alleged harassers were frivolous, unreasonable and/or groundless, the court need not and shall not reach the alternate ground that Miller did not suffer severe or pervasive harassment.

As the court noted above, Sherry O'Donnell alleges that she was harassed by her co-driver Anthony Sears and second-wave trainer Bill Campbell. O'Donnell attended orientation in Oklahoma City, where she received a copy of CRST's handbook and acknowledged receipt and understanding of CRST's various policies, including its policy regarding sexual harassment and evinced an understanding of CRST's reporting policy. *Id.* at 1987-90. O'Donnell alleges that Sears repeatedly told her that he was looking for a girlfriend to be his co-driver and invited her, on multiple occasions, to drive naked; Sears frequently drove without pants on, in only his boxer shorts; Sears threatened O'Donnell with physical violence by pretending to kick her in the face and, on one occasion, physically grabbed O'Donnell's face with his fingers and caused her to cut her lip after she told him she did not want to be his girlfriend. *Id.* at 1993, 1996-97, 2020-21. Following the incident of physical violence, O'Donnell contacted CRST and reported that she wanted to get off the truck. *Id.* at 1997. That same date, CRST took her off the truck with Sears and O'Donnell never had to drive with Sears again. *Id.* at 1998. O'Donnell admitted at her deposition that she was pleased at the speed with which CRST took action. *Id.* Accordingly, the court finds that O'Donnell's allegations as they relate to Sears render the claim frivolous, unreasonable and/or groundless. Because the court has determined that O'Donnell's allegations as to both of her harassers were frivolous, unreasonable and/or groundless, the court need not and shall not reach the alternate ground that O'Donnell did not suffer severe or pervasive harassment.

Faith Shadden alleged that she was harassed by several men during her tenure with CRST: her unnamed first co-driver, three other co-drivers and her trainee Carl Bowling. *See id.* at 2596, 2602-04. Shadden admitted at her deposition that, to become a trainer, she was required to attend an orientation covering, among other things, CRST's employee handbook and sexual harassment policy. *Id.* at 2599; *see also id.* at 2616-19 (acknowledgments signed by Shadden indicating that she had received, reviewed and understood CRST's various policies, including its sexual harassment policy). Shadden

alleges that Bowling requested that she tell other people that she was his girlfriend, on one occasion asked her to get in his bunk with him while he was only wearing boxer shorts and on one occasion laid in her bunk with her and refused to get out when she requested that he do so. *Id.* at 2603-04. Shadden contacted her fleet manager about Bowling's conduct and, later that day, Bowling was removed from the truck. *Id.* at 2604-05. Accordingly, the court finds that the EEOC's claim on behalf of Shadden as it relates to Bowling's conduct was frivolous, unreasonable and/or groundless.

Finally, the court finds that the EEOC's claim on behalf of Kathleen Seymour was not frivolous, unreasonable or groundless. Seymour states that she received a driver's handbook at orientation. *See id.* at 2576. However, during her deposition, Seymour adamantly refused to admit that she had reviewed the handbook or CRST's policies, including the policy regarding sexual harassment. *Id.* While Seymour admitted that she had signed acknowledgments that she had received, read and understood the handbook and policies, she stated that such acknowledgments were not true at the time that they were signed. *Id.* at 2577. In fact, Seymour testified that CRST affirmatively told the students at orientation not to read the handbook or policies and to sign the acknowledgments anyway. *See id.* at 2578 (stating that CRST "knew we didn't read [the handbook]" and "we were told to do it in our trucks later on"). Because Seymour allegedly did not know of CRST's policy regarding reporting sexual harassment, and because the burden to demonstrate that *Christiansburg* has been met falls on the party seeking fees, the court cannot find that the EEOC's claim was frivolous, unreasonable and/or groundless. The EEOC had a reasonable basis to proceed on this claim due to Seymour's alleged lack of knowledge of any of CRST's policies regarding sexual harassment, though it was ultimately unsuccessful. *See Christiansburg*, 434 U.S. at 421.

In sum, the court finds that there was no basis in fact for the claims which the court dismissed where the claimant was aware of CRST's reporting policy, followed it and CRST reasonably remedied the alleged harassment. The court finds that the claims on

behalf of the seventeen women outlined in the table above were frivolous, unreasonable and/or groundless. The court further finds that the portions of the claims based on: Kristi Allen's allegations regarding her trainer, Dean Hale; Debra Hindes's allegations regarding her second trainer Bobby Roberts; Darlene Miller's allegations regarding her unnamed first trainer and co-driver John Roum; Sherry O'Donnell's allegations regarding her co-driver Anthony Sears; and Faith Shadden's allegations regarding her trainee Carl Bowling were frivolous, unreasonable and/or groundless. Finally, the court finds that the claim brought on behalf of Kathleen Seymour was not frivolous, unreasonable and/or groundless.

### e. *Not severe or pervasive*

CRST argues generally that, because the EEOC could not establish a prima facie case for any of the claimants, its claims were necessarily frivolous, unreasonable and/or groundless. *See* CRST Remand Reply at 13. The EEOC generally argues that the claims that the court dismissed because the evidence did not show that the claimant suffered from severe or pervasive harassment were not frivolous, unreasonable and/or groundless because "[t]here is no bright line rule as to whether a sexual harassment complaint is severe enough or pervasive enough to establish a hostile environment under federal law." EEOC Remand Brief at 28. The EEOC cites to authority stating that "no single factor is required or determinative [of the issue], and the relevancy and weight of any factor must be evaluated in light of all the facts of a specific case." *Id.* at 29 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997)). In particular, the EEOC states that "the Eighth Circuit has held that a plaintiff who was propositioned for sex just one time presented sufficient evidence of sexual harassment." *Id.* (citing *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001)). The EEOC also argues that "[s]exual behavior short of sexual assault or sexual propositions has also been found to rise to the level of a hostile environment" and that "claims involving graphic discussions of sexual exploits and fantasies can establish such a claim." *Id.* at 41 (citing *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 762 (8th Cir. 1998); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d

1151, 1159 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)). Finally, the EEOC contends that "frequent derogatory comments toward women can constitute severe or pervasive harassment under Title VII." *Id.* (citing *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264-65 (8th Cir. 1997), *abrogated on other grounds by Torgerson*, 643 F.3d 1031). Therefore, the EEOC argues, while it may not have ultimately been successful in carrying its case past summary judgment, its claims were not frivolous, unreasonable and/or groundless because they had some basis in law and fact.

"The Supreme Court has determined . . . that sexual harassment 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' qualifies as [unlawful] sex discrimination under Title VII." *Adams v. O'Reilly Auto., Inc.*, 538 F.3d 926, 928 (8th Cir. 2008) (quoting *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67 (1968)). In order to recover on a claim for sexual harassment, a claimant must meet both an objective and subjective standard regarding the harassment. The objective standard requires that "a reasonable person would find [the environment] hostile or abusive" while the subjective standard requires that "the victim . . . subjectively percieve[s] the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Hostile work environment claims are assessed based on the totality of the circumstances, and courts consider a variety of nondispositive factors in assessing whether a claimant has presented evidence of a hostile work environment such as: "the frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23; *see also O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) ("Hostile work environment claims are assessed based on the totality of the circumstances."). A claimant must make a "high evidentiary showing" when establishing a hostile work environment claim, and is required to demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult"

sufficient to alter the conditions of the victim's employment. *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir. 2007) (quoting *Harris*, 510 U.S. at 21). Additionally, as the EEOC argues, "Title VII does proscribe gender-based harassment even when it is not motivated by sexual desire." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001). Indeed, "gender-based harassment need not be overtly sexual and may include ridicule, ostracism, and other forms of hostility motivated by an anti-female animus." *Id.* at 811. Additionally, the Eighth Circuit has recognized that it was "unaware of any rule of law holding that a single incident can never be sufficiently severe to be hostile-work-environment sexual harassment." *Moring*, 243 F.3d at 456. However, the Eighth Circuit has also stated that "a single incident or isolated incidents generally will not be sufficient." *Moylan v. Maries Cty.*, 792 F.2d 746, 749 (8th Cir. 1986).

Unlike the other categories of claims that CRST argues were frivolous, unreasonable and/or groundless, the court cannot say that there was some conclusive bar to recovery for cases where the court dismissed the claim solely on the grounds that the conduct was not sufficiently severe or pervasive. The court is mindful that the merits of each allegation that a claimant has suffered severe or pervasive sexual harassment rise and fall on their individual facts, and the court cannot merely substitute its judgment that the claims could not survive summary judgment for the demands of *Christiansburg*. Though CRST argues that the EEOC could not even establish a prima facie case of harassment, this alone is not dispositive, even were the court to determine that is true for each claimant. *See Turner*, 91 F.3d at 1422. While it is indeed true that some of the women did not suffer from overt, sexually motivated conduct, such fact alone would not preclude the EEOC from bringing a claim. *See, e.g.*, *Berry*, 260 F.3d at 810-11. Finally, even where a woman suffered only one or isolated incidences of harassing activity, a claimant might still state a claim for relief because there is no hard prohibition on such claims. *See, e.g.*, *Moring*, 243 F.3d at 456. Accordingly, the court finds that the EEOC may have brought some nonfrivolous claims where CRST's only allegation is that the claimant did not suffer

severe or pervasive sexual harassment. Thus, a more searching examination of the facts surrounding each claimant's alleged harassment is appropriate. Only where the level of alleged harassment or egregiousness of the conduct was so low such that a claim would lack any basis in fact will the court determine that a claim was frivolous, unreasonable and/or groundless, and thus able to support a fee award.

As with the claims the court dismissed for lack of notice and because CRST properly remedied the alleged harassment, the court shall present the remaining claims in table format, along with relevant facts and a determination of whether the alleged facts were sufficiently severe or pervasive to warrant a finding that the claim was not frivolous, unreasonable and/or groundless:

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|---|---|---|
| Dorothy Dockery[33] | Dockery alleges that she was harassed by her trainer, David Byerly. Omnibus Rule 56 Appendix at 894. Byerly allegedly stared at her in a sexual manner and asked her questions that made her uncomfortable. *Id.* Dockery also stated that Byerly repeatedly touched her, though she admitted that some of the touching might have been incidental due to the confined space. *Id.* at 898-99. Dockery also believes that she witnessed Byerly masturbating in the truck on one occasion, though she admits that he did not have any body parts exposed and she did not see the same. *Id.* at 899. Byerly regularly used racial slurs and complained about "woman drivers." *Id.* at 900. Byerly also regularly refused to stop to allow Dockery to urinate or purchase feminine products. *Id.* at 904, 918. | Yes |

---

[33] CRST also argues that the EEOC's claim on behalf of Dockery was frivolous, unreasonable and/or groundless because CRST promptly remedied Dockery's complaints. *See* CRST Remand Brief at 55. However, because the court has relied on each claimant's acknowledgment of receipt of CRST's sexual harassment policy, and because Dockery did not testify about the same at her deposition, the court cannot say that the EEOC's claim on such grounds met the demands of *Christiansburg*. *But see* Omnibus Rule 56 Appendix at 924 (signed acknowledgment regarding receipt and understanding of CRST's sexual harassment policy for Dockery).

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|------|------------------------------|-----------------------------------|
| Victoria Holmes | Holmes alleges that she was harassed by her trainer, Jeremy Thurman. *Id*. at 1410. Thurman told Holmes that "women were nuts for him because he was so hot" and that "women everywhere wanted to get into his pants and jump his bones." *Id*. at 1411. Thurman would also regularly speak to his girlfriend on the phone and would have sexually explicit conversations with her, describing specific sexual acts that he wanted to perform with her. *Id*. Holmes alleges that such conversations were "almost nonstop." *Id*. Holmes also alleged that Thurman would urinate in bottles and had stains from his urine on his clothes, which smelled unpleasant. *Id*. at 1413. However, Holmes admitted that Thurman never urinated in front of her. *Id*. | Yes |

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|---|---|---|
| Faith McDaniel[34] | McDaniel alleges that she was harassed by her trainer, John Hines. *Id.* at 1823. When McDaniel first got on the truck, Hines told her that she could sleep in his bunk while he was driving because women are cleaner than men. *Id.* at 1827. On another occasion, he offered to let her sleep in his bunk with him with her "head at one end and his head at the other." *Id.* This made McDaniel uncomfortable. *Id.* Hines also criticized McDaniel's driving and "hurt [her] feelings" with the manner that he spoke to her about her driving. *Id.* at 1823. McDaniel expressed a belief that, had she been male, Hines would have been friendlier to her. *Id.* McDaniel also stated that Hines had a negative attitude about women in general and it made her uncomfortable. *Id.* at 1826-27. At one point, the truck was laid over while Hines was testifying in a court case and invited McDaniel to stay in the hotel room, but she declined. *Id.* at 1827. Hines told McDaniel that he was testifying against a former co-driver, with whom he had "a benefit relationship" and who eventually attacked him | Yes |

---

[34] CRST also argues that the EEOC's claim on behalf of McDaniel was frivolous, unreasonable and/or groundless because McDaniel failed to report the alleged harassment until she left the truck. *See* CRST Remand Brief at 107. However, CRST only advances the lack of notice as an alternate ground for fees and the court cannot determine, with the limited facts CRST has developed in the record, whether McDaniel was meant to get off the truck with Hines when she did (which would support CRST's alternative argument) or whether CRST permitted her to stay off the truck (which would support a separate, but not argued for, argument that CRST properly remedied the harassment). *See, e.g.*, Omnibus Statement of Facts at 362 (stating simply that "McDaniel never said anything about her alleged problems with Hines until she was off the truck in Florida").

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|---|---|---|
| Faith McDaniel cont'd | with a knife. *Id.* at 1825. Hines also made a comment to McDaniel about a woman he found attractive, stating, "[O]h, you can come in my truck with me." *Id.* at 1827. On another occasion, Hines told McDaniel that she looked "good" in a shirt she was wearing, which also made her uncomfortable. *Id.* | Yes |
| Cristina Payne | Payne alleges that she was harassed by her co-driver, Mark Hoagland. *Id.* at 2067. On several occasions, Hoagland invited Payne to join him in his bunk while they were stopped. *Id.* at 2068. When Payne told Hoagland that she was not interested, he would always "just . . . let it lie. Didn't say anything else." *Id.* On another occasion, Payne was in the back of the truck changing her shirt and Hoagland asked to watch. *Id.* When Payne told him no, he did not continue asking to see. *Id.* Payne expressed that these incidents made her fearful that Hoagland would assault her while she was sleeping. *Id.* However, to Payne's knowledge, Hoagland never did so. *Id.* | Yes |

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|---|---|---|
| Isabel Perez[35] | Perez alleges that she was harassed by her trainer, Giles Lopez. *Id.* at 2196. Lopez criticized Perez when she was driving, attributing poor performance to the fact that she "was a lady or because [she] was a woman." *Id.* at 2199. On one occasion, Lopez also feigned as if he was going to strike Perez with his arm and would often call her various derogatory permutations of a "bitch." *Id.* at 2200-01. | Yes |

[35] CRST also argues, in the alternative, that the EEOC's claim on behalf of Perez was frivolous, unreasonable and/or groundless because Perez failed to report any alleged sexual harassment to CRST. *See* CRST Remand Brief at 120. However, at her deposition, Perez testified that she informed CRST of her problems with Lopez and that he had raised his arm as if to strike her and called her "the B word," though she did not use the magic words "sexual harassment." Omnibus Rule 56 Appendix at 2208. The court finds that this was enough for a party to objectively and reasonably believe that Perez informed CRST of the harassment she allegedly suffered.

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|---|---|---|
| Jonne Shepler[36] | Shepler alleges that she was sexually harassed by her trainers, Alex Alston and John Kewley. *Id.* at 2632. Alston showed Shepler pornographic videos that he stored on the truck and offered to watch them with Shepler, though she said she was not interested. *Id.* at 2633-34. After Shepler declined, Alston became irritable and lost his temper on a regular basis. *Id.* at 2647. On one occasion, Alston threw Shepler's belongings around on the truck to express his displeasure. *Id.* at 2635. Kewley invited Shepler to share a bed with him in a hotel twice on one trip at the beginning of their training together. *Id.* at 2636. Shepler told Kewley she was not interested and that he should "back off." *Id.* at 2637. Soon after, Kewley told Shepler that students and trainers were expected to shower together at a truck stop. *Id.* Afterward, Kewley made inappropriate comments to Shepler "on a daily basis" such as bragging about his proficiency at oral sex. *Id.* Kewley also played what Shepler described as audio pornography in the truck while | No as to Alston; yes as to Kewley |

[36] CRST also argues, in the alternative, that the EEOC's claim on behalf of Shepler was frivolous, unreasonable and/or groundless because Shepler did not give notice to CRST of the alleged harassment until after she was off the truck. *See* CRST Remand Brief at 142. However, at her deposition, Shepler only stated that she had spoken to her former recruiter at CRST "numerous times" and had generally informed him of the alleged harassment. *See* Omnibus Rule 56 Appendix at 2643-44. Though Shepler could not be specific about when she spoke to her recruiter, the court cannot find that a claim on her behalf lacked any support in fact. To the contrary, Shepler repeatedly refused to answer whether she told the recruiter of the alleged harassment when she was on the truck or off it, and affirmatively stated that she contacted him "numerous" times. *Id.* On these facts, the court finds that this was sufficient for the EEOC to reasonably believe CRST may have been aware of the alleged harassment.

| Name | Facts of alleged harassment | Sufficiently severe or pervasive? |
|------|----------------------------|-----------------------------------|
| Jonne Shepler cont'd | she was trying to sleep. *Id.* Kewley repeatedly and lewdly propositioned Shepler for sex and would brag about his genitals. *Id.* at 2646. | No as to Alston; yes as to Kewley |

Debra Hindes alleges that she was sexually harassed by two trainers, Marvin ("Curly") Timmerman and Bobby Roberts, as well as a co-driver, R. Bell, Jr. *See id.* at 1360. The court previously addressed Hindes's allegations regarding Roberts and Bell. Hindes alleges that Timmerman was verbally abusive and she had requested a different trainer before she even left for training because he seemed controlling. *Id.* at 1351. While Hindes does not allege that Timmerman made any sexually overt comments to her, she testified that he did mention that he and his wife or girlfriend were not getting along. *Id.* Timmerman forced Hindes to drive down a steep hill, which frightened her. *Id.* at 1349. Timmerman also prevented Hindes from showering, even when she was menstruating, because he wanted to haul the assigned load, stating, "The first five days of training I – is when I'm gonna make my money. So there's sometimes when you're not gonna get a shower." *Id.* On one occasion, when Hindes was exiting her bunk she saw Timmerman's "bare body." *Id.* Upon telling dispatch, she was told to "[j]ust hang in there." *Id.* Finally, after Timmerman took the truck down a mountain and made Hindes fearful and sick to her stomach because of the same, she demanded that CRST take her off the truck. *Id.* at 1349-50. CRST informed Hindes that she would have to get back on the truck with Timmerman because there was no other way to get Hindes a different trainer at that time. *Id.* Upon learning that he was going to drop Hindes off with a different trainer,

Timmerman became upset and stated that "he wasn't [her] f-ing taxicab." *Id.* at 1350.[37] The court finds that there was insufficient evidence of severe and pervasive harassment to make Hindes's claim as it relates to Timmerman nonfrivolous or reasonable. There is no evidence in the record that Timmerman's behavior was gender based or sexually motivated in any way. Even if there was, the incidents of alleged harassment are simply too few and far between to constitute the sort of permeated environment required to prove a sexual harassment claim. Accordingly, the court shall grant fees as to Hindes claim as it relates to Timmerman and, due to the court's earlier findings regarding Roberts and Bell, in total.

Faith Shadden alleged that she was harassed by: her unnamed first co-driver, three other co-drivers (David Bergner, Andre Collins and an unnamed Latino driver from Los Angeles) and her trainee Carl Bowling. *See id.* at 2596, 2602-04. The court has already discussed the harassment by her unnamed first co-driver and Bowling, above. Shadden alleges that Bergner, Collins and the unnamed Latino driver "were all one-timers pretty much" in that "[t]hey hit on you once. You tell them no and they kind of get the picture." *Id.* at 2602. The court finds that, as to these drivers, the EEOC's claim on behalf of Shadden was frivolous, unreasonable and/or groundless. There is simply no basis in fact or law to support a hostile work environment claim as to these three drivers. Because the court has also found that the EEOC could not have reasonably based a claim on Shadden's behalf as to the unnamed first co-driver and Bowling, the court shall grant fees as to Shadden's claim in total.

Finally, Linda Skaggs alleges that she was harassed by her trainer, Dartmouth Robinson, and a co-driver, Eules Baker, Jr. *Id.* at 2865, 2867. The court addressed

---

[37] Although CRST also argues that it promptly remedied Hindes's complaint as it relates to Timmerman, the court finds that it was not frivolous, unreasonable and/or groundless to bring a claim on Hindes's behalf as it relates to Timmerman because Hindes repeatedly complained to CRST and was told she would have to stay on the truck. On these facts, it was not unreasonable, groundless and/or frivolous to believe that CRST may not have properly remedied the alleged harassment.

Skaggs's allegations pertaining to Robinson above in discussing the statute of limitations. Skaggs alleges that Baker began making inappropriate sexual comments almost immediately after they were paired together, boasting about his sexual prowess and experiences. *Id.* at 2868. Skaggs testified that these sort of comments were ongoing, an almost daily occurrence. *Id.* Baker propositioned Skaggs approximately five times for sex or sexual favors, including graphically stating that he wanted to have sex with her. *Id.* at 2869. On one occasion, Baker offered to give Skaggs money in exchange for sex. *Id.* As to the EEOC's claim on behalf of Skaggs as it relates to Baker, the court finds that it was not frivolous, unreasonable and/or groundless. There was sufficient evidence to reasonably believe that Skaggs may have suffered severe or pervasive sexual harassment. Though the court ultimately found that summary judgment was appropriate, a finding that was affirmed by the Eighth Circuit, the court cannot say that CRST has carried its burden of demonstrating that the claim was frivolous, unreasonable and/or groundless as it pertains to Baker. Accordingly, the court shall deny fees as to that portion of the claim.

In sum, the court has found that the claims that the EEOC brought on behalf of Dorothy Dockery, Victoria Holmes, Faith McDaniel, Cristina Payne and Isabel Perez all had sufficient facts of sexual harassment such that they were not frivolous, unreasonable or groundless. There was a sufficient basis for bringing the claims and fees on such claims are not appropriate. Moreover the claim brought on behalf of Jonne Shepler as it relates to her allegations regarding her trainer John Kewley, and the claim brought on behalf of Linda Skaggs as it relates to her allegations regarding her co-driver Eules Baker, Jr. similarly warrant a finding that such claims were not frivolous, unreasonable or groundless. Fees on those portions of those claims are not appropriate. However, the claim brought on behalf of Shepler as it relates to her allegations regarding her trainer Alex Alston; the claim brought on behalf of Debra Hindes as it relates to her trainer Marvin ("Curly") Timmerman; and the claim brought on behalf of Faith Shadden as it relates to her three co-drivers (David Bergner, Andre Collins and an unnamed Latino

driver) were all frivolous, unreasonable and/or groundless because the incidents of alleged harassment were so sparse that there was no basis in fact to support a claim that the harassment they suffered was severe and pervasive.

### 3.    *Summary*

The court has carefully considered each of the seventy-eight claims dismissed on summary judgment and determined that, as to the claims that the EEOC brought on behalf of seven women—Dorothy Dockery, Victoria Holmes, Faith McDaniel, Cristina Payne, Isabel Perez, Kathleen Seymour and Betsy Ybarra—such claims had a sufficient basis in law or fact such that they were not frivolous, unreasonable or groundless.  The court shall deny CRST appropriate fees on those claims in whole.  The court has further determined that the claims of two women—Jonne Shepler and Linda Skaggs—were sufficient as they relate to specific allegations, such that they were not wholly frivolous, unreasonable and/or groundless.  As to the remaining women and remaining portions of claims, the court found such claims to be frivolous, groundless and/or unreasonable for a variety of reasons: the EEOC never properly pled a pattern-or-practice claim, such that any claims predicated on that method of proof satisfied *Christiansburg*; the claimants admitted that they never utilized CRST's reporting procedure, a procedure of which they were admittedly aware, and thus failed to give CRST proper notice; the claimants that complained to CRST of sexual harassment had their complaints properly and promptly remedied; and the claimants did not suffer harassment that was sufficiently severe and pervasive.  The court has also determined, on remand from the Supreme Court and then the Eighth Circuit, that the claims it dismissed due to the EEOC's abdication of its presuit statutory requirements not only constituted a sufficient alteration of the legal relationship of the parties to make CRST a prevailing party, but also that such claims satisfied *Christiansburg*, as the court has found numerous times previously.  In short, fees for all but seven claims, and portions of two claims, from the court's original fee award should be preserved here.  The court shall now

consider the EEOC's argument that no fees can be awarded under *Fox* and, if the court finds fees to be appropriate, make a reasonable calculation of such fees.

### E. Reasonable Fees

As the court noted above, CRST argues that each of the claims for which it now seeks fees meet the *Fox* standard. In order to calculate such award, CRST took the court's previous total fee award for the pre-appeal period and subtracted the amounts it believed it spent to prepare its defenses for the class of claims dismissed for failure to comply with presuit requirements and the amount that it spent preparing for its defense to the EEOC's purported pattern-or-practice claim. *See* CRST Remand Brief at 170. It then took that figure and divided it into 152 equal parts, each part representing one claimant for which the court granted its original fees award. *Id.* CRST then took that figure and multiplied it by seventy-eight, the number of claimants for which it now seeks fees. *Id.* It then added the fees it expended on the pattern-or-practice claim back into that award, for a total of $2,326,512.08. *Id.* at 171. It then determined the appellate fee award it currently seeks by determining the product of: (1) the quotient of (a) the court's original appellate fee award and (b) the 107 claims appealed in the merits appeal; and (2) thirty-three, representing the number of claims for which it now seeks fees. *Id.* The total appellate award requested is $143,482.35. *Id.* CRST then added those figures together to determine its final requested fee award: $2,469,994.43. *Id.*

CRST argues that it should be entitled to recover the entirety of the fees it expended on the pattern-or-practice claim because, while the Eighth Circuit barred the court from awarding fees directly on such claim, it "did not address whether CRST should be awarded its fees and expenses on the ground that [the] EEOC had asserted and relied on its pattern or practice allegations to support its individual claims that had been dismissed on the merits." *Id.* at 163. CRST argues that the EEOC's consistent reliance on its pattern or practice allegations to shore up its case with respect to all of the claims in the instant action essentially shoehorns it in to the merits of the individual claims, such that an award of fees

for this issue is appropriate, not as its own claim, but as part of the total fee award for the individual claims. *Id.* at 164. CRST makes three separate arguments regarding why the pattern-or-practice fees are appropriate under *Fox*: (1) except for the EEOC's claim on behalf of Starke, all of the claims were frivolous and unreasonable, thus any work related to the pattern-or-practice claim, not attributable to Starke's claim, was done solely because of frivolous claims; (2) the pattern-or-practice fees fit under a certain "exception" to *Fox*'s but-for causation requirement because the only fees for which CRST had monetary exposure were the seventy-eight claims dismissed on the merits, as the balance of the claims were dismissed for failure to comply with pre-suit requirements or as interveners; and (3) the pattern-or-practice issue would not have been litigated but for the EEOC's inclusion of all claims other than Starke's. *Id.* at 166-67. Finally, CRST provides an alternate pattern-or-practice fee award based on "a pro-rata share of the fees and costs it expended successfully litigating [the pattern-or-practice claim] . . . to each of the [seventy-eight] claims for which it seeks a fee recovery." *Id.* at 167.

Finally, CRST argues that it should collect an award of appellate fees because the EEOC failed to establish a prima facie case for the thirty-three claims that it appealed. *Id.* at 168. CRST argues that, "[t]he standard of review was de novo, and thus the [Eighth Circuit] reached the same decision [the court] had reached: that none of the [thirty-three] claims asserted a prima facie claim of sexual harassment against CRST." *Id.* (formatting omitted).

The EEOC argues that CRST cannot recover fees for any of the claims that the court found were frivolous, unreasonable and/or groundless because it cannot meet the demands of *Fox*. *See* EEOC Remand Brief at 7-16. In particular, the EEOC argues that CRST cannot tie any of the fees it seeks to recover to specific work performed for any individual claimant. *Id.* at 7. Instead, CRST has calculated its proposed award "by identifying three types of fees by category: 'experts,' 'pattern and practice' and 'pre-suit requirements,' subtracting those fees from the prior fee award, and calculating an average

fee per claimant." *Id.* The EEOC also criticizes CRST for seeking fees based on its defeat of the pattern-or-practice claim, which was defeated as its own claim, not as part of any individual claim. *Id.* The EEOC argues that it cannot challenge any of the particular fees that CRST seeks because CRST has not provided spreadsheets or tables documenting the amount of fees it seeks. *Id.* at 8.

The EEOC points out that the categories of fees that CRST now seeks are different from those used in the first application for a fees award, years ago. *Id.* The EEOC faults CRST for failing to "provide[] . . . information about how [the previous] categories overlap with the new categorization." *Id.* The EEOC argues that "[i]t is difficult to conceive of any legal research that CRST performed solely to defend against the seventy-eight claims" and reiterates that the Eighth Circuit barred the court from awarding fees based on the pattern-or-practice claim, the claims dismissed for failure to comply with presuit requirements and those dismissed on judicial estoppel grounds. *Id.* at 9. The EEOC's arguments boil down to a view that, "pursuant to *Fox*, CRST's inability to match fees incurred with specific claims and then to demonstrate, further, that it incurred those fees *solely* because of a particular claim that was individually, frivolous, dooms its fee request." *Id.* at 11; *see also id.* at 12 ("CRST cannot obtain fees for work that it cannot segregate to frivolous claims, a task it admits it cannot do."); *id.* at 14 ("Work performed on any frivolous claim was also work used for the pattern or practice issue and the majority of non-frivolous claims. CRST cannot meet its extremely difficult burden to prove otherwise.").

The EEOC disagrees with CRST's reading of *Fox* and the so-called "exception" to the "but-for" rule outlined in *Fox*. *See id.* at 15. The EEOC first points out that the "exception" relied upon by CRST is not a true exception but is instead an illustration of the but-for rule. *Id.* It also argues that CRST was incorrect insofar as it alleged that the seventy-eight claims were the only claims for which CRST had financial exposure, because

the claims that were dismissed for failure to pursue presuit requirements were nonfrivolous and could have carried financial exposure. *Id.*

Finally, the EEOC argues that appellate fees are not appropriate. *See id.* at 31-35. The EEOC argues that CRST's argument essentially conflates the EEOC's ultimate inability to prevail on appeal to the fact that it was a frivolous appeal. *Id.* at 32. The EEOC contends that "CRST has not attempted to show that 'no reasonable person would have thought he could succeed' on the claims EEOC appealed or that there was 'no foundation in law upon which the appeal[s] could be brought.'" *Id.* at 32-33 (alteration in original) (quoting *E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d at 1185). The EEOC argues that none of its appeals were frivolous, unreasonable or groundless because it made good-faith legal arguments regarding whether CRST's trainers constituted supervisors and whether CRST had constructive notice of the alleged harassment based on the number of complaints CRST received and Eighth Circuit precedent. *Id.* at 33-34. The EEOC also argues that CRST fails to identify the fees that it would not have incurred but for the frivolous appeals. *Id.* at 35.

In response, CRST reiterates its general arguments that its request complies with *Fox*. *See* CRST Remand Reply at 5-8. CRST acknowledges that "more trial preparation work may have been done on the [seventy-two] claims . . . dismissed on pre-suit requirements grounds than on the [seventy-eight] claims dismissed on summary judgment" and that "CRST's average fees and expenses for these [seventy-eight] claims may be too high." *Id.* at 9-10. Thus, CRST reduced its requested fee award by $4,452.69 for a total fee award request of $2,465,541.74. *Id.* at 10, 27. CRST also generally criticizes the EEOC's technocratic approach to the fee award, arguing that the "EEOC's erroneous arguments against a fee award demonstrate that the agency has lost sight of the Supreme Court's admonition in [*Fox*], that a fee request should be treated in a practical, non-technical manner so that 'rough justice' can be achieved." *Id.* at 5.

The court agrees with CRST on this final point. While the court is mindful of *Fox*'s admonition that only those fees attributable to frivolous claims should be awarded, the Supreme Court did not condone the strict, technocratic approach for which the EEOC advocates. The Supreme Court noted that the application of the *Fox* standard should be done flexibly in light of the specifics of each case. For example, the Supreme Court noted that merely looking toward the number of hours billed may not be enough in a specific circumstance, and the court should look to the context in which fees were incurred. *See Fox*, 563 U.S. at 838. *Fox* further reminds courts that the basic question is "whether the costs would have been incurred in the absence of the frivolous allegation" and not "whether attorney costs at all relate to a non-frivolous claim." *Id.* To require CRST to provide detailed, minute-by-minute documentation of the work it specifically performed on each individual claim that the court has determined are frivolous, unreasonable and/or groundless would not only require CRST to predict the future at the time it was performing the work such to support an eventual fee award, but would also be impractical and impossible in light of the way that the case was litigated. As the EEOC apparently recognizes, the work performed in this litigation was performed in such a manner as to make it "impossible to identify fees incurred for each individual claim." *See* EEOC Remand Brief at 11 ("This difficulty comes as no surprise—this was the nature of the litigation."). To rob CRST of its ability to recoup fees for work that would not have been performed "in the absence of the frivolous litigation," *Fox*, 563 U.S. at 838, merely because it cannot scrupulously tie each cent of fees incurred to individual claims undercuts the policy underlying the fee shifting provision. Furthermore, the Supreme Court does not demand mathematical precision or certainty—courts are warned away from the temptation to become "green-eyeshade accountants." *Id.* For the court to pour over the record to calculate each individual claim would violate *Fox*'s demand to do "rough justice" and the admonition to "take into account [a court's] overall sense of a suit, and . . . use estimates in calculating and allocating an attorney's time." *Id.*

Thus, the court finds that the general method by which CRST calculated the fees it now seeks was appropriate. CRST took the court's original fee calculation, subtracted the fees which the Eighth Circuit declared could not be awarded and then created a per-claimant average for the remaining fees. It then calculated the per-claimant average by the number of claims for which it currently seeks fees. Being mindful of the manner in which this case was litigated, the court's familiarity with the proceedings and the Supreme Court's admonition to do "rough justice," the court finds that this method properly approximates the amount of fees expended for each claimant. The court has carefully and thoroughly examined the supporting documentation that CRST has provided in support of its fee request and finds it adequate to support an award of fees. *See* CRST Remand Brief Exhibit 2 (docket no. 416-2); CRST Remand Brief Exhibit 6 (docket no. 416-6); CRST Remand Reply at 29-32. The court shall address the specific fee calculation below, but shall first discuss whether fees for the pattern-or-practice claim and/or the 2012 merits appeal are appropriate.

### 1. *Pattern-or-practice fees*

The court finds that so-called "pattern-or-practice fees" are appropriate for the claims that the court dismissed because the statute of limitations had run and for which the EEOC conceded that there was no severe or pervasive harassment. The Eighth Circuit reversed the court's 2013 fee award, in part, insofar as the award included "attorneys' fees to CRST based on a purported pattern-or-practice claim." *E.E.O.C. v. CRST Van Expedited, Inc.*, 774 F.3d at 1179. However, as CRST argues, the fees CRST now seeks are not "based" on the purported pattern or practice claim—rather, they are based on the individual claims that were frivolous, unreasonable and/or groundless because the EEOC's sole basis for asserting them in the instant litigation was the unreasonable reliance on the pattern-or-practice claim. While at first blush this may seem a mere exercise in semantics, it is a meaningful distinction. The base question presented by the *Fox* standard is "whether the costs would have been incurred in the absence of the frivolous allegation." *Fox*, 563

U.S. at 838.  Here, at least as to the claims that the court found were frivolous, unreasonable and/or groundless on statute of limitations grounds and where the EEOC conceded such claims were not severe or pervasive, the fees expended to defeat the portion of the pattern-or-practice claim directly relating to them would not have been incurred but for the frivolous claims.  If the EEOC had not unreasonably relied on a pattern-or-practice claim, it admittedly would not have been able to assert all of the claims that it did—in particular, the claims the court dismissed on statute of limitations grounds and because the EEOC conceded the alleged harassment was not severe or pervasive.  Thus, the fees expended to defeat the pattern-or-practice claim, at least as they relate to such other claims, would not have been incurred but for the assertion of such claims in the first place.

CRST seeks the entirety of the fees it expended on the pattern-or-practice claim because the EEOC relied on the pattern-or-practice allegation to argue for punitive damages and as a burden-shifting mechanism as to all of the individual claims.  *See* CRST Remand Brief at 163-64.  However, the court declines to award the entirety of the pattern-or-practice fees on this basis.  The reasons that CRST cites for why it believes it is entitled to the entirety of the fees are essentially the reasons that the EEOC gave in bringing the pattern-or-practice allegations in the first instance.  To now award CRST all of the fees it expended to defend against such allegations would be essentially to award fees just on the pattern-or-practice claim, a practice the Eighth Circuit prohibited.  Similarly, the court views CRST's secondary "pro rata" argument as overbroad as well.  The court declines to grant a pro rata share of the pattern-or-practice fees for all seventy-eight claims for which it now seeks fees.  The court does not view such pro rata share as being incurred but for the frivolous, unreasonable and/or groundless claims at issue here.  As the court exhaustively noted above, the court had independent grounds for awarding fees on behalf of all claimants but the ones dismissed due to the statute of limitations and where the EEOC conceded the conduct was not severe or pervasive.

Thus, the court finds that the appropriate award for those claims is: $53,336.16. The court arrived at this number by taking CRST's calculated total dollar amount attributable to the pattern or practice issue, $456,320.90, dividing it by 154, the total number of individual claims brought by the EEOC, to get the average dollar figure per claimant, $2,963.12. The court then multiplied that number by the seventeen claimants which depended upon the improper pattern-or-practice claim to remain viable, and added an additional $2,963.12, which represents two "half-shares" for the portions of Faith Shadden and Linda Skaggs's claims that the court found were frivolous, unreasonable and/or groundless on statute of limitations grounds. The court shall add this award to the total calculated award below.

## 2. *Appellate fees*

The court declines to award appellate fees. CRST's arguments on this issue are not well taken. The fact that the Eighth Circuit conducted a de novo review on appeal and reached the same conclusion as the court as to the thirty-three claims for which CRST seeks appellate fees, does not alone render the EEOC's appeal of those claims frivolous, unreasonable and/or groundless. To the contrary, though CRST rightfully does not seek fees as to Tillie Jones or Monika Starke, the EEOC was ultimately successful on its appeal as to two of the women, the grounds for appeal of which were substantially similar to many of the claims for which CRST now seeks appellate fees. In short, the court cannot find that CRST has carried its burden of demonstrating that the appeal was frivolous, unreasonable or without foundation. Accordingly, the court declines to award appellate fees.

## 3. *General fees*

The court previously awarded $4,229,211.67 in attorneys' fees, out-of-pocket expenses and taxable costs for the pre-appeal period. *See* August 1, 2013 Order. In order to arrive at its proposed fee award, CRST subtracted $128,414.50, which represents "fees for work on the pre-suit requirements issue," and then a further $456,320.90 for fees for

work on the pattern-or-practice allegation. *See* CRST Remand Brief at 170. CRST then took that $3,644,476.27, which represents the originally-awarded fees associated solely with the individual claims dismissed on summary judgment, and divided it by 152, the number of claims on which the August 1, 2013 award was based. *Id*. The resulting figure, $23,976.81, is the average amount of fees and costs expended per claimant. *Id*. CRST then multiplied that figure by seventy-eight, the number of claims for which CRST requests an award. *Id*.

However, because the court has found that the EEOC's claims on behalf of Dorothy Dockery, Victoria Holmes, Faith McDaniel, Cristina Payne, Isabel Perez, Kathleen Seymour and Betsy Ybarra were not frivolous, unreasonable and/or groundless, the court must exclude them from the factor of claims for which the court is granting fees. Additionally, the court shall reduce this factor by an additional $23,976.81 for the portions of Jonne Shepler and Linda Skaggs's claims that the court found were not frivolous, unreasonable and/or groundless. Thus, the court's calculated award for the individual claims comes to $1,678,376.70.

From that figure, the court adds the additional $53,336.16 for the pattern or practice claims and then adds back in the $128,414.50 representing the claims dismissed for failure to comply with presuit requirements, which the court has now determined should be granted. The court further declines to reduce the fee award by the additional $4,452.69 conceded by CRST in the CRST Remand Reply. Such amount was subtracted because it appeared as if the fees were disproportionately being spent on the claims dismissed for presuit requirements as the case drew closer to trial and the court began issuing orders on summary judgment. *See* CRST Remand Reply at 9-10. Because the court has determined that fees for the claims dismissed for failure to comply with presuit obligations should now be awarded, there is no need to calculate this further reduction. Because the court has declined to award fees for the appeal, the court shall not add any additional fees for the same. Thus, the court's final award totals: $1,860,127.36.

As the court has noted above, such award is not based on mathematical precision and nicety, rather it is arrived at under a flexible and commonsense application of the *Fox* standard in light of the realities of the case, how it was litigated and the court's unique understand of these proceedings. The goal under *Fox* is to aim for "rough justice," and rough justice has been achieved.

## *IV. CONCLUSION*

In light of the foregoing, CRST is **AWARDED** attorneys' fees, out-of-pocket expenses and taxable costs in the amount of $1,860,127.36. The court shall direct the Clerk of Court to enter judgment after the court rules on CRST's pending Motion for Supplemental Fee Award (docket no. 455).

**IT IS SO ORDERED**.

**DATED** this 22nd day of September, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA